TONY WEST
Assistant Attorney General
ANDRE BIROTTE, JR.
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director
ANTHONY J. COPPOLINO
E-mail: tony.coppolino@usdoj.gov
LYNN Y. LEE (SBN #235531)
E-mail: lynn.lee@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Telephone: 202-514-4782
Facsimile: 202-616-8460
*Attorneys for the Federal Bureau of Investigation and Defendants Mueller and Martinez Sued in their Official Capacities*

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION

| | |
|---|---|
| YASSIR FAZAGA et al.,<br><br>    Plaintiffs<br><br>v.<br><br>FEDERAL BUREAU OF<br>   INVESTIGATION et al.<br><br>    Defendants. | CASE: SA11-CV-00301 CJC (VBKx) |

**DECLARATION OF CHRISTOPHER N. MORIN**

I, Christopher N. Morin, declare as follows:

1. I am currently the Unit Chief of the FOIA/Privacy Act ("FOIPA") Litigation Support Unit ("LSU"), Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), formerly located at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C., and currently relocated to Winchester, Virginia. I have been employed by the Federal Bureau of Investigation ("FBI") since March 14, 2010. Prior to joining the FBI,

from December 7, 2007, to February 19, 2010, I was the Acting Assistant Judge Advocate General of the United States Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From November 13, 1984 to December 6, 2007, I served as a Navy Judge Advocate at various commands and worked on record processing matters. I am also an attorney who has been licensed to practice law in the State of Ohio since 1984.

   2. In my official capacity as the Unit Chief of the FOIPA LSU I supervise nine Legal Administrative Specialists ("LASs") whose collective mission is to support the FBI Office of the General Counsel ("OGC") FOIA Litigation Unit ("FLU") in all FOIA litigation and other legal units within OGC with regard to Privacy Act litigation. The LSU is responsible for justifying the search, review, classification, and processing of records for release in response to FOIA/PA requests, and for drafting declarations in support of RIDS responses to FOIA and Privacy Act requests. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

   3. In the course of my official duties, I have become aware that Yassir Fazaga, Ali Uddin Malik, and Yasser AbdelRahim (collectively, "plaintiffs") have filed a lawsuit alleging that the FBI, through a paid confidential informant named Craig Monteilh, infiltrated several mosques in southern California and indiscriminately collected information on plaintiffs and "hundreds if not thousands" of other Muslims solely on the basis of their religion and in violation of their constitutional and statutory rights. Based on my review of the Complaint, I understand that plaintiffs claim in part that the FBI collected and maintained records describing the exercise of their First Amendment rights in violation of the

Privacy Act, 5 U.S.C. § 552a. Compl. ¶¶ 241-43. I further understand that plaintiffs seek, among other relief, the destruction or return of "any information gathered through the unlawful surveillance program by [Craig] Monteilh and/or Operation Flex … and any information derived from that unlawfully obtained information." *Id.* at 62 (Prayer for Relief, ¶ b).

4. This declaration is submitted in support of the FBI's motion for summary judgment with respect to plaintiffs' Privacy Act claim. The purpose of this declaration is to address why the information plaintiffs seek to expunge is exempt from such destruction by application of the Privacy Act. In providing this declaration, I am relying on my review of information provided to me in my official capacity, including files relating to the reporting of Monteilh, Operation Flex, and other information related to the investigative activity potentially at issue in this case.

5. I cannot fully discuss on the public record all of the details concerning the collection of information by Monteilh or Operation Flex. I am able to attest that the records maintained by the FBI concerning Monteilh's source work and Operation Flex constitute investigatory material compiled for law enforcement and criminal investigation purposes. I am advised that Operation Flex was the name given by the FBI to a group of counterterrorism investigations on which Monteilh was reporting.

6. The information gathered by Monteilh and concerning Operation Flex is located in the FBI's Central Records System ("CRS") and the Electronic Surveillance ("ELSUR") indices. Pursuant to 5 U.S.C. §§ 552a(j) and (k) and 28 C.F.R. § 16.96, both the FBI's CRS and ELSUR indices have been expressly exempted from those portions of the Privacy Act which address the federal government's obligations to provide individuals access to records concerning them and to amend any portion of such records which is not accurate, relevant,

timely, or complete. 5 U.S.C. § 552a(d). The exemption applies to records that are maintained by "any agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws" and consist of "information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual," as well as other "investigatory material compiled for law enforcement purposes." 5 U.S.C. §§ 552a(j)(2)(B), (k)(2). As noted above, the records concerning information collected by Monteilh and for Operation Flex in the CRS and ELSUR indices constitute investigatory material compiled for law enforcement and criminal investigation purposes.

      7. As explained in the FBI's regulations, the CRS has been exempted from the Privacy Act's amendment and access requirements in part because "requir[ing] the FBI to amend information thought to be incorrect, irrelevant or untimely, because of the nature of the information collected and the essential length of time it is maintained, would create an impossible administrative and investigative burden by forcing the agency to continuously retrograde its investigations attempting to resolve questions of accuracy[.]" 28 C.F.R. §§ 16.96(a)(1), (b)(2)(iii). The ELSUR indices have been exempted from the Privacy Act's amendment and access requirements because "access to records in this system would compromise ongoing investigations, reveal investigatory techniques and confidential informants, and invade the privacy of private citizens who provide information in connection with a particular investigation." 28 C.F.R. §§ 16.96(c)(1), (d)(2).

      8. Even if the records at issue were not exempt by statute and regulation from the Privacy Act's amendment provisions, their destruction could significantly impair the FBI's ability to conduct any ongoing or future investigations. The FBI maintains and preserves its investigative records – subject to strict records

retention schedules agreed to in conjunction with the National Archives and Records Administration ("NARA") – for several reasons.

9. First, when the FBI receives new information that may relate to an ongoing or prior investigation, it examines and seeks to verify that information in the context of information it has already received. Thus, if the FBI's existing records regarding Monteilh and Operation Flex were destroyed, and further information relating to the investigative matter at issue were later brought to the FBI's attention, the investigating agent would not have the complete context in which to evaluate the newly received information and properly assess the matter.

10. Second, the maintenance of investigative records permits the FBI to assess the reliability of sources of information it receives over time. The premature destruction of files would severely hinder the FBI's ability to evaluate the accuracy and credibility of information received from the same source over the course of several years or even decades.

11. Finally, the FBI maintains investigative records for historic and accountability purposes. The premature destruction of records relating to investigative activities, in addition to being in violation of the NARA-imposed record retention and destruction schedules, would significantly impede any future inquiry into how the FBI responded to information it received.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of August, 2011.

CHRISTOPHER N. MORIN
Unit Chief
FOIPA Litigation Support Unit
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

-5-