TONY WEST
Assistant Attorney General
ANDRE BIROTTE, JR.
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director
ANTHONY J. COPPOLINO
E-mail: tony.coppolino@usdoj.gov
LYNN Y. LEE (SBN #235531)
E-mail: lynn.lee@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Telephone: 202-514-4782
Facsimile: 202-616-8460
*Attorneys for the Federal Bureau of Investigation and Defendants Mueller and Martinez Sued in their Official Capacities*

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION

| | |
|---|---|
| YASSIR FAZAGA et al., <br><br> Plaintiffs <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION et al., <br><br> Defendants. | CASE: SA11-CV-00301 CJC (VBKx) |

**DECLARATION OF ERIC H. HOLDER
ATTORNEY GENERAL OF THE UNITED STATES**

I, Eric H. Holder, hereby state and declare as follows:

1. I am the Attorney General of the United States and head of the United States Department of Justice ("DOJ"), an Executive Department of the United States. *See* 28 U.S.C.§§ 501, 503, 509. The purpose of this declaration is to assert, at the request of the Director of the Federal Bureau of Investigation ("FBI"), and in my capacity as Attorney General and head of DOJ, a formal claim of the state secrets privilege in order to protect the national security interests of the

1. United States. The statements made herein are based on my personal knowledge, on information provided to me in my official capacity, and on my evaluation of that information.

2. In the course of my official duties, I have been informed that the plaintiffs in this action—three Muslim residents of southern California—have filed a class action against the FBI, FBI Director Robert Mueller and Steven M. Martinez, Assistant Director in Charge of the FBI's Los Angeles Field Office, in their official capacities, and several FBI employees in their individual capacities, claiming alleged violations of the Free Exercise Clause and Establishment Clause of the First Amendment, the Religious Freedom Restoration Act, the equal protection principles of the Fifth Amendment, the Privacy Act, the Fourth Amendment, and the Foreign Intelligence Surveillance Act, and for conspiracy to violate the plaintiffs' civil rights pursuant to 42 U.S.C. § 1985(3). I understand that the plaintiffs allege that the defendants, through the use of a paid confidential informant, engaged in an impermissible investigation to collect personal information indiscriminately on the plaintiffs and others based solely on their religion in violation of their rights under the Constitution and statutory law.

3. I have read and carefully considered the public and classified declarations of Mark Giuliano ("Giuliano Declaration"), Assistant Director of the FBI's Counterterrorism Division. After careful and actual personal consideration of the matter, I have concluded that disclosure of the three categories of information described below and in more detail in the classified Giuliano Declaration could reasonably be expected to cause significant harm to the national security, and I therefore formally assert the state secrets privilege over this information. The classified Giuliano Declaration, which is available for the Court's *ex parte, in camera* review, describes in classified detail the information over which I am asserting the state secrets privilege. As Attorney General, I possess original classification authority under § 1.3 of Executive Order ("E.O.")

-2-

13526, dated December 29, 2009. *See* 75 Fed. Reg. 707. The classified Giuliano Declaration is properly classified under § 1.2 of E.O. 13526 because public disclosure of the information contained in that declaration also could reasonably be expected to cause significant harm to national security.

4. In unclassified terms, my privilege assertion encompasses information in the following categories:

(i) *Subject Identification*: Information that could tend to confirm or deny whether a particular individual was or was not the subject of an FBI counterterrorism investigation, including in Operation Flex.

(ii) *Reasons For Counterterrorism Investigations and Results*: Information that could tend to reveal the initial reasons (*i.e.*, predicate) for an FBI counterterrorism investigation of a particular person (including in Operation Flex), any information obtained during the course of such an investigation, and the status and results of the investigation. This category includes any information obtained from the U.S. Intelligence Community related to the reasons for an investigation.

(iii) *Sources and Methods*: Information that could tend to reveal whether particular sources and methods were used in a counterterrorism investigation of a particular subject, including in Operation Flex. This category includes previously undisclosed information related to whether court-ordered searches or surveillance, confidential human sources, and other investigative sources and methods were used in a counterterrorism investigation of a particular person, the reasons such methods were used, the status of the use of such sources and methods, and any results derived from such methods.

5. As indicated above and explained further below, I have determined that disclosure of information falling into the foregoing categories could reasonably be expected to cause significant harm to national security.

6. First, I concur with the FBI's determination that the disclosure of the identities of subjects of counterterrorism investigations, including in Operation

Flex, reasonably could be expected to cause significant harm to national security. As the FBI has explained, such disclosures would alert those subjects to the FBI's interest in them and cause them to attempt to flee, destroy evidence, or alter their conduct so as to avoid detection of their future activities, which would seriously impede law enforcement and intelligence officers' ability to determine their whereabouts or gain further intelligence on their activities. In addition, as the FBI has explained, knowledge that they were under investigation could enable subjects to anticipate the actions of law enforcement and intelligence officers, possibly leading to counter-surveillance that could place federal agents at higher risk, and to ascertain the identities of confidential informants or other intelligence sources, placing those sources at risk. Such knowledge, as the FBI has further explained, could also alert associates of the subjects to the fact that the FBI is likely aware of their associations with the subjects and cause them to take similar steps to avoid scrutiny.

7. Second, I agree with the FBI that disclosure that an individual is not a subject of a national security investigation could likewise reasonably be expected to cause significant harm to national security. As the FBI has explained, disclosure that some persons are not subject to investigation, while the status of others is left unconfirmed, would inherently reveal that FBI concerns remain as to particular persons. Allowing such disclosures, as the FBI indicates, would enable individuals and terrorist groups alike to manipulate the system to discover whether they or their members are subject to investigation. Further, as the FBI has pointed out, individuals who desire to commit terrorist acts could be motivated to do so upon discovering that they are not being monitored.

8. In addition, I agree with the FBI's judgment that where an investigation of a subject has been closed, disclosure that an individual was formerly the subject of a counterterrorism investigation could also reasonably be expected to cause significant harm to national security. Again, I agree with the

FBI that, to the extent that an individual had terrorist intentions that were not previously detected, the knowledge that he or she is no longer the subject of investigative interest could embolden him or her to carry out those intentions. Moreover, as the FBI indicates, the fact that investigations are closed does not mean that the subjects have necessarily been cleared of wrongdoing, as closed cases are often reopened based on new information. As the FBI has also explained, even if the former subjects are law-abiding, the disclosure that they had been investigated could still provide valuable information to terrorists and terrorist organizations about the FBI's intelligence and concerns, particularly where the former subjects have associates whom the FBI may still be investigating based on suspected ties to terrorist activity. As the FBI has further explained, disclosure of the FBI's interest in the closed subject could alert such associates to the FBI's interest in them and lead them to destroy evidence or alter their conduct so as to avoid detection of their future activities.

9. Third, I agree with the FBI's judgment that disclosure of the reasons for and substance of a counterterrorism investigation—whether the initial predicate for opening an investigation, information gained during the investigation, or the status or results of the investigation—could also reasonably be expected to cause significant harm to national security. As the FBI has determined, such disclosures would reveal to subjects who are involved in or planning to undertake terrorist activities what the FBI knows or does not know about their plans and the threat they pose to national security. Even if the subjects have no terrorist intentions, as the FBI has explained, disclosure of the reasons they came under investigation may reveal sensitive intelligence information about them, their associates, or a particular threat that would harm other investigations. More generally, as the FBI has also explained, disclosure of the reasons for an investigation could provide insights to persons intent on committing terrorist

attacks as to what type of information is sufficient to trigger an inquiry by the FBI, and what sources and methods the FBI employs to obtain information on a person.

10. Finally, I agree with the FBI that the disclosure of certain information that would tend to describe, reveal, confirm or deny the existence or use of FBI investigative sources and methods, or techniques used in the counterterrorism investigations at issue in this case could likewise be reasonably expected to cause significant harm to national security. This aspect of my privilege assertion would include information that would tend to reveal whether court-ordered searches or surveillance, confidential human sources, and other investigative sources and methods were used in a counterterrorism investigation of a particular person, the reasons for and the status of the use of such sources and methods, and any results derived from such methods. The disclosure of such information, as the FBI has explained, could reveal not only the identities of particular subjects but also the steps taken by the FBI in counterterrorism matters. I agree with the FBI's assessment that such information would effectively provide a road map to adversaries on how the FBI goes about detecting and preventing terrorist attacks.

11. Any further elaboration concerning the foregoing matters on the public record would reveal information that could cause the very harms my assertion of the state secrets privilege is intended to prevent. The classified Giuliano Declaration, submitted for *ex parte, in camera* review, provides a more detailed explanation of the information over which I am asserting the privilege and the harms to national security that would result from disclosure of that information.

12. On September 23, 2009, I announced a new Executive Branch policy governing the assertion and defense of the state secrets privilege in litigation. Under this policy, the Department of Justice will defend an assertion of the state secrets privilege in litigation, and seek dismissal of a claim on that basis, only when "necessary to protect against the risk of significant harm to national

-6-

security." See Exhibit 1 (State Secrets Policy) ¶ 1(A). The policy provides further that an application of a privilege assertion must be narrowly tailored and that dismissal be sought pursuant to the privilege assertion only when necessary to prevent significant harm to national security. *Id.* ¶ 1(B). Moreover, "[t]he Department will not defend an invocation of the privilege in order to: (i) conceal violations of the law, inefficiency, or administrative error; (ii) prevent embarrassment to a person, organization, or agency of the United States government; (iii) restrain competition; or (iv) prevent or delay the release of information the release of which would not reasonably be expected to cause significant harm to national security." *Id.* ¶ 1(C). The policy also established detailed procedures for review of a proposed assertion of the state secrets privilege in a particular case. *Id.* ¶ 2. Those procedures require submissions by the relevant government departments or agencies specifying "(i) the nature of the information that must be protected from unauthorized disclosure; (ii) the significant harm to national security that disclosure can reasonably be expected to cause; [and] (iii) the reason why unauthorized disclosure is reasonably likely to cause such harm." *Id.* ¶ 2(A). Based on my personal consideration of the matter, I have determined that the requirements for an assertion and defense of the state secrets privilege have been met in this case in accord with the September 2009 State Secrets Policy.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of July, 2011, in Washington, D.C.

ERIC H. HOLDER
Attorney General of the United States

-7-

# EXHIBIT 1 TO DECLARATION OF ATTORNEY GENERAL ERIC H. HOLDER



# Office of the Attorney General
## Washington, D. C. 20530

September 23, 2009

MEMORANDUM FOR HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES
MEMORANDUM FOR THE HEADS OF DEPARTMENT COMPONENTS

FROM: THE ATTORNEY GENERAL

SUBJECT: Policies and Procedures Governing Invocation of the State Secrets Privilege

I am issuing today new Department of Justice policies and administrative procedures that will provide greater accountability and reliability in the invocation of the state secrets privilege in litigation. The Department is adopting these policies and procedures to strengthen public confidence that the U.S. Government will invoke the privilege in court only when genuine and significant harm to national defense or foreign relations is at stake and only to the extent necessary to safeguard those interests. The policies and procedures set forth in this Memorandum are effective as of October 1, 2009, and the Department shall apply them in all cases in which a government department or agency thereafter seeks to invoke the state secrets privilege in litigation.

## 1. Standards for Determination

**A. Legal Standard.** The Department will defend an assertion of the state secrets privilege ("privilege") in litigation when a government department or agency seeking to assert the privilege makes a sufficient showing that assertion of the privilege is necessary to protect information the unauthorized disclosure of which reasonably could be expected to cause significant harm to the national defense or foreign relations ("national security") of the United States. With respect to classified information, the Department will defend invocation of the privilege to protect information properly classified pursuant to Executive Order 12958, as amended, or any successor order, at any level of classification, so long as the unauthorized disclosure of such information reasonably could be expected to cause significant harm to the national security of the United States. With respect to information that is nonpublic but not classified, the Department will also defend invocation of the privilege so long as the disclosure of such information reasonably could be expected to cause significant harm to the national security of the United States.

**B. Narrow Tailoring.** The Department's policy is that the privilege should be invoked only to the extent necessary to protect against the risk of significant harm to national security. The Department will seek to dismiss a litigant's claim or case on the basis of the state secrets privilege only when doing so is necessary to protect against the risk of significant harm to national security.

Memorandum for Heads of Executive Departments and Agencies                               Page 2
Memorandum for the Heads of Department Components
Subject:  State Secrets Privilege

    **C. Limitations.** The Department will not defend an invocation of the privilege in order to: (i) conceal violations of the law, inefficiency, or administrative error; (ii) prevent embarrassment to a person, organization, or agency of the United States government; (iii) restrain competition; or (iv) prevent or delay the release of information the release of which would not reasonably be expected to cause significant harm to national security.

2. **Initial Procedures for Invocation of the Privilege**

    **A. Evidentiary Support.** A government department or agency seeking invocation of the privilege in litigation must submit to the Division in the Department with responsibility for the litigation in question[1] a detailed declaration based on personal knowledge that specifies in detail: (i) the nature of the information that must be protected from unauthorized disclosure; (ii) the significant harm to national security that disclosure can reasonably be expected to cause; (iii) the reason why unauthorized disclosure is reasonably likely to cause such harm; and (iv) any other information relevant to the decision whether the privilege should be invoked in litigation.

    **B. Recommendation from the Assistant Attorney General.** The Assistant Attorney General for the Division responsible for the matter shall formally recommend in writing whether or not the Department should defend the assertion of the privilege in litigation. In order to make a formal recommendation to defend the assertion of the privilege, the Assistant Attorney General must conclude, based on a personal evaluation of the evidence submitted by the department or agency seeking invocation of the privilege, that the standards set forth in Section 1(a) of this Memorandum are satisfied. The recommendation of the Assistant Attorney General shall be made in a timely manner to ensure that the State Secrets Review Committee has adequate time to give meaningful consideration to the recommendation.

3. **State Secrets Review Committee**

    **A. Review Committee.** A State Secrets Review Committee consisting of senior Department of Justice officials designated by the Attorney General will evaluate the

---

[1] The question whether to invoke the privilege typically arises in civil litigation. Requests for invocation of the privilege in those cases shall be addressed to the Civil Division. The question whether to invoke the privilege also may arise in cases handled by the Environment and Natural Resources Division (ENRD), and requests for invocation of the privilege shall be addressed to ENRD in those instances. It is also possible that a court may require the Government to satisfy the standards for invoking the privilege in criminal proceedings. *See United States v. Araf*, 533 F.3d 72, 78-80 (2d Cir. 2008); *but see United States v. Rosen*, 557 F.3d 192, 198 (4th Cir. 2009). In such instances, requests to submit filings to satisfy that standard shall be directed to the National Security Division.

Memorandum for Heads of Executive Departments and Agencies       Page 3
Memorandum for the Heads of Department Components
Subject: State Secrets Privilege

Assistant Attorney General's recommendation to determine whether invocation of the privilege in litigation is warranted.

**B. Consultation.** The Review Committee will consult as necessary and appropriate with the department or agency seeking invocation of the privilege in litigation and with the Office of the Director of National Intelligence. The Review Committee must engage in such consultation prior to making any recommendation against defending the invocation of the privilege in litigation.

**C. Recommendation by the Review Committee.** The Review Committee shall make a recommendation to the Deputy Attorney General, who shall in turn make a recommendation to the Attorney General.[2] The recommendations shall be made in a timely manner to ensure that the Attorney General has adequate time to give meaningful consideration to such recommendations.

4. **Attorney General Approval**

   **A. Attorney General Approval.** The Department will not defend an assertion of the privilege in litigation without the personal approval of the Attorney General (or, in the absence or recusal of the Attorney General, the Deputy Attorney General or the Acting Attorney General).

   **B. Notification to Agency or Department Head.** In the event that the Attorney General does not approve invocation of the privilege in litigation with respect to some or all of the information a requesting department or agency seeks to protect, the Department will provide prompt notice to the head of the requesting department or agency.

   **C. Referral to Agency or Department Inspector General.** If the Attorney General concludes that it would be proper to defend invocation of the privilege in a case, and that invocation of the privilege would preclude adjudication of particular claims, but that the case raises credible allegations of government wrongdoing, the Department will refer those allegations to the Inspector General of the appropriate department or agency for further investigation, and will provide prompt notice of the referral to the head of the appropriate department or agency.

---

[2] In civil cases, the review committee's recommendation should be made through the Associate Attorney General to the Deputy Attorney General, who shall in turn make a recommendation to the Attorney General.

Memorandum for Heads of Executive Departments and Agencies     Page 4
Memorandum for the Heads of Department Components
Subject: State Secrets Privilege

## 5. Reporting to Congress

The Department will provide periodic reports to appropriate oversight committees of Congress with respect to all cases in which the Department invokes the privilege on behalf of departments or agencies in litigation, explaining the basis for invoking the privilege.

## 6. Classification Authority

The department or agency with classification authority over information potentially subject to an invocation of the privilege at all times retains its classification authority under Executive Order 12958, as amended, or any successor order.

## 7. No Substantive or Procedural Rights Created

This policy statement is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity, by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.