WILMER CUTLER PICKERING
  HALE AND DORR LLP
Brian R. Michael (SBN: 240560)
brian.michael@wilmerhale.com
P. Patty Li (SBN: 266937)
Patty.li@wilmerhale.com
katie Moran (SBN: 272041)
Katie.moran@wilmerhale.com
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Telephone:  (213) 443-5300
Facsimile:  (213) 443-5400

WILMER CUTLER PICKERING
  HALE AND DORR LLP
Howard M. Shapiro (admitted *pro hac vice*)
howard.shapiro@wilmerhale.com
Carl J. Nichols (admitted *pro hac vice*)
carl.nichols@wilmerhale.com
Annie Owens (admitted *pro hac vice*)
annie.owens@wilmerhale.com
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

Attorneys for Defendants J. Stephen Tidwell
and Barbara Walls

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| YASSIR FAZAGA *et al.*,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION *et al.*,<br><br>                    Defendants. | Case No. SA CV 11-00301-CJC (VBKx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS OF INDIVIDUAL-CAPACITY DEFENDANTS J. STEPHEN TIDWELL AND BARBARA WALLS**<br><br>Date:   November 14, 2011<br>Time:   1:30 p.m.<br>Judge:  Hon. Cormac J. Carney<br>Crtrm:  Courtroom 9B |

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

PLEASE TAKE NOTICE that defendants J. Stephen Tidwell and Barbara Walls ("Defendants") will bring the following Motion to Dismiss before the Honorable Cormac J. Carney, United States District Judge, in his courtroom, U.S. Courthouse, 411 West Fourth Street, Santa Ana, California, on November 14, 2011 at 1:30 p.m., or at such time as the Court may direct that matter be heard.

Defendants move to dismiss Counts 1-7, 9, and 10 against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The grounds for this motion are based on the accompanying memorandum of law, any argument offered at a hearing on this motion, and the files and records of this case.

Pursuant to Local Rule 7-3, the parties conferred in connection with the relief sought in this motion on July 15, 2011, and on August 1, 2011.  Plaintiffs oppose this motion.

DATED:  August 9, 2011

Respectfully submitted,

WILMER CUTLER PICKERING
   HALE AND DORR LLP

By:  /s/ Brian R. Michael

Brian R. Michael
P. Patty Li
Katie Moran
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone:  (213) 443-5300
Facsimile:  (213) 443-5400

Howard M. Shapiro
Carl J. Nichols
Annie L. Owens
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

*Attorneys for Defendants J. Stephen Tidwell and Barbara Walls*

*Wilmer Cutler Pickering Hale and Dorr LLP*
*350 South Grand Avenue, Suite 2100*
*Los Angeles, CA 90071*

WILMER CUTLER PICKERING
   HALE AND DORR LLP
Brian R. Michael (SBN: 240560)
brian.michael@wilmerhale.com
P. Patty Li (SBN: 266937)
patty.li@wilmerhale.com
Katie Moran (SBN: 272041)
katie.moran@wilmerhale.com
350 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

WILMER CUTLER PICKERING
   HALE AND DORR LLP
Howard M. Shapiro (admitted *pro hac vice*)
howard.shapiro@wilmerhale.com
Carl J. Nichols (admitted *pro hac vice*)
carl.nichols@wilmerhale.com
Annie L. Owens (admitted *pro hac vice*)
annie.owens@wilmerhale.com
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Attorneys for Defendants J. Stephen Tidwell
and Barbara Walls

Wilmer Cutler Pickering Hale and Dorr LLP<br>350 South Grand Avenue, Suite 2100<br>Los Angeles, CA 90071

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| YASSIR FAZAGA *et al.*, | ) No. SA CV 11-00301-CJC (VBKx) |
| Plaintiffs, | ) **MEMORANDUM OF LAW IN** |
| | ) **SUPPORT OF MOTION TO** |
| vs. | ) **DISMISS OF INDIVIDUAL-** |
| | ) **CAPACITY DEFENDANTS J.** |
| FEDERAL BUREAU OF | ) **STEPHEN TIDWELL AND** |
| INVESTIGATION *et al.*, | ) **BARBARA WALLS** |
| | ) |
| Defendants. | ) |
| | ) Date: November 14, 2011 |
| | ) Time: 1:30 p.m. |
| | ) Judge: Hon. Cormac J. Carney |
| | ) Crtrm: Courtroom 9B |

1

2

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................4

    A. Allegations Regarding "Operation Flex" .......................................................6

    B. Allegations Regarding Defendants Tidwell and Walls .................................8

ARGUMENT ..........................................................................................................9

I.    THE GOVERNMENT'S ASSERTION OF THE STATE-SECRETS
       PRIVILEGE MANDATES DISMISSAL OF COUNTS 1-7 ........................10

II.   THE COURT SHOULD DECLINE PLAINTIFFS' INVITATION TO
       EXTEND A *BIVENS* REMEDY TO THIS CONTEXT ...............................13

    A. No Court Has Extended *Bivens* To This Context.........................................13

    B. Special Factors Preclude Plaintiffs' *Bivens* Causes Of Action .....................15

        1. National Security Issues And The Government's Assertion Of State-
           Secrets Privilege Preclude A *Bivens* Remedy ......................................15

        2. Existing Remedial Statutory Schemes Constitute Special Factors
           Counseling Hesitation ............................................................................17

III. PLAINTIFFS FAIL TO STATE VALID FIRST AND FIFTH
      AMENDMENT CLAIMS UNDER 42 U.S.C. § 1985(3) .............................20

IV. TIDWELL AND WALLS ARE ENTITLED TO QUALIFIED IMMUNITY
      ON ALL OF PLAINTIFFS' CLAIMS........................................................22

    A. Qualified Immunity Bars Plaintiffs' First And Fifth Amendment Claims ...23

    B. Qualified Immunity Bars Plaintiffs' Fourth Amendment Claim ..................26

        1. Plaintiffs Fail To Allege That Tidwell Or Walls Was Personally
           Involved In The Purported Searches, Or That A Sufficient Causal
           Connection Between Their Conduct And The Alleged Violation
           Otherwise Existed ..................................................................................27

        2. Plaintiffs Fail To Allege A Reasonable Expectation Of Privacy In The
           Circumstances Of The Alleged Searches ...............................................28

    C. Qualified Immunity Bars Plaintiffs' RFRA Claim .......................................30

        1. RFRA Does Not Permit Suits For Damages Against Individual-
           Capacity Defendants .............................................................................31

         2. Plaintiffs Have Not Alleged A "Substantial Burden" On Free Exercise ...32

    D. Qualified Immunity Bars Plaintiffs' FISA Claim .........................................33

CONCLUSION.....................................................................................................35

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

# **TABLE OF AUTHORITIES**

<u>Federal Cases</u>

*ACLU v. NSA,*
  493 F.3d 644 (6th Cir. 2007)...................................................................33

*Addisu v. Fred Meyer, Inc.,*
  198 F.3d 1130 (9th Cir. 2000)................................................................20

*Al-Haramain Islamic Foundation, Inc. v. Bush,*
  507 F.3d 1190 (9th Cir. 2007)................................................................10

*Amnesty Int'l v. Clapper,*
  638 F.3d 118 (2d Cir. 2011)...................................................................19

*Arar v. Ashcroft,*
  585 F.3d 559 (2d Cir. 2009) (en banc)..............................................*passim*

*Ashcroft v. al-Kidd,*
  131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) ....................................*passim*

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......................................*passim*

*Beattie v. Boeing Co.,*
  43 F.3d 559 (10th Cir. 1994) ..................................................................16

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .............21, 25

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
  403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) ............2, 13, 15

*Black v. United States,*
  62 F.3d 1115 (8th Cir. 1995)............................................................10, 17

*Boumediene v. Bush,*
  553 U.S. 723, 128 S. Ct. 2229, 171 L. Ed. 2d 41 (2008) ....................15

*Bray v. Alexandria Women's Health Clinic,*
  506 U.S. 263, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993) .......................26

*Bush v. Lucas,*
  462 U.S. 367, 103 S. Ct. 2404, 76 L. Ed. 2d 648 (1983) ..............*passim*

*Carlson v. Green,*
  446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980) ........................13

*Chappell v. Wallace,*
  462 U.S. 296, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983) ...............14, 16

*Church of Lukumi Babalu Aye, Inc. v. Hialeah,*
  508 U.S. 520, 113 S.Ct. 2217, 124 L. Ed. 2d 472 (1993) ...............11, 24

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

*Community House, Inc. v. City of Boise,*
  623 F.3d 945 (9th Cir. 2010)..............................................................................23

*Correctional Servs. Corp. v. Malesko,*
  534 U.S. 61, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001) ...............................*passim*

*Davis v. Passman,*
  442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979) ......................................13

*Downie v. City of Middleburg Heights,*
  301 F.3d 688 (6th Cir. 2002)..............................................................................18

*Edgerly v. City & Cnty. of San Francisco,*
  599 F.3d 946 (9th Cir. 2010)...........................................................................4, 27

*El-Masri v. United States,*
  479 F.3d 296 (4th Cir. 2007)........................................................................10, 12

*FDIC v. Meyer,*
  510 U.S. 471, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) ....................................14

*Fitzgerald v. Penthouse Int'l, Ltd.,*
  776 F.2d 1236 (4th Cir. 1985)............................................................................12

*General Dynamics Corp. v. United States,*
  131 S. Ct. 1900, 179 L. Ed. 2d 957 (2011) .................................................10, 12

*Griffin v. Breckenridge,*
  403 U.S. 88, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971) ..................................21, 26

*Haig v. Agee,*
  453 U.S. 280, 101 S. Ct. 2766, 69 L. Ed. 2d 640 (1981) ................................1, 15

*Harlow v. Fitzgerald,*
  457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ....................................22

*Holder v. Humanitarian Law Project,*
  130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010) .......................................................15

*Holly v. Scott,*
  434 F.3d 287 (4th Cir. 2006)..............................................................................13

*Hunter v. Bryant,*
  502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) ................................3, 23

*In re NSA Telecomm. Records Litig.,*
  564 F. Supp. 2d 1109 (N.D. Cal. 2008) .............................................................34

*In re NSA Telecomm. Records Litig.,*
  595 F. Supp. 2d 1077 (N.D. Cal. 2009) .............................................................34

*Karim-Panahi v. Los Angeles Police Dept.,*
  839 F.2d 621 (9th Cir. 1988)..............................................................................21

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

*Kasza v. Browner*,
   133 F.3d 1159 (9th Cir. 1998)...................................................................10

*Keen v. Noble*,
   No. CV F 04-5645, 2007 WL 2789561 (E.D. Cal. Sept. 20, 2007)....................32

*Kentucky v. Graham*,
   473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ...................................31

*Kwai Fun Wong v. United States*,
   373 F.3d 952 (9th Cir. 2004).........................................................................28

*Jean-Pierre v. Bureau of Prisons*,
   No. 09-266, 2010 WL 3852338 (W.D. Pa. July 30, 2010) ................................31

*Lacey v. Maricopa Cnty.*,
   Nos. 09-15703, 09-15806, 2011 WL 2276198 (9th Cir. June 9, 2011) ..............27

*Lebron v. Rumsfeld*,
   764 F. Supp. 2d 787 (D.S.C. 2011) ..........................................................11, 33

*Leer v. Murphy*,
   844 F.2d 628 (9th Cir. 1988).........................................................................27

*Lepp v. Gonzales*,
   No. C-05-0566, 2005 WL 1867723 (N.D. Cal. Aug. 2, 2005) ..........................32

*Lincoln v. Vigil*,
   508 U.S. 182, 113 S. Ct. 2024, 124 L. Ed. 2d 101(1993) ...............................1, 15

*Lyall v. City of Los Angeles*,
   No. 09-7353, 2011 WL 61626 (C.D. Cal. Jan. 6, 2011) .........................4, 28, 29

*Mitchell v. Forsyth*,
   472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) ..................................23

*Mohamed v. Jeppesen Dataplan, Inc.*,
   614 F.3d 1070 (9th Cir. 2010).................................................................*passim*

*Navajo Nation v. U.S. Forest Service*,
   535 F.3d 1058 (9th Cir. 2008) (en banc).........................................................32

*Pearson v. Callahan*,
   555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) .............................23, 26

*Presbyterian Church (U.S.A.) v. United States*,
   870 F.2d 518 (9th Cir. 1989)...................................................................*passim*

*Rakas v. Illinois*,
   439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978) ......................................27

*Safford Unified School District No. 1 v. Redding*,
   129 S. Ct. 2633, 174 L. Ed. 2d 354 (2009) .....................................................23

*Saucier v. Katz,*
   533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) ...................................26

*Schweiker v. Chilicky,*
   487 U.S. 412, 108 S. Ct. 2460, 101 L. Ed. 370 (1988) .............................14, 17, 20

*Sever v. Alaska Pulp Corp.,*
   978 F.2d 1529 (9th Cir. 1992) ...................................................................................21

*Smith v. Maryland,*
   442 U.S. 735, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979) ...........................................30

*United Bhd. of Carpenters & Joiners of Am. v. Scott,*
   463 U.S. 825, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983) .......................................21

*United States v. Aguilar,*
   883 F.2d 662 (9th Cir. 1989) .....................................................................................29

*United States v. Duggan,*
   743 F.2d 59 (2d Cir. 1984) ........................................................................................19

*United States v. Forrester,*
   512 F.3d 500 (9th Cir. 2007) .....................................................................................30

*United States v. Gonzalez,*
   328 F.3d 543 (9th Cir. 2003) .....................................................................................29

*United States v. Hinton,*
   222 F.3d 664 (9th Cir. 2000) .....................................................................................30

*United States v. Little,*
   753 F.2d 1420 (9th Cir. 1984) ...................................................................................30

*United States v. Mayer,*
   503 F.3d 740 (9th Cir. 2007) .................................................................................4, 29

*United States v. Nerber,*
   222 F.3d. 597 (9th Cir. 2000) ....................................................................................28

*United States v. Stanley,*
   483 U.S. 669, 107 S. Ct. 3054, 97 L. Ed. 2d 550 (1987) .......................14, 16, 17

*United States v. Stewart,*
   590 F.3d 93 (2d Cir. 2009) ........................................................................................19

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
   865 F.2d 1539 (9th Cir. 1989) (en banc) ..................................................................21

*United States v. Reynolds, Inc.,*
   345 U.S. 1, 73 S. Ct. 528, 97 L. Ed. 2d 727 (1953) .................................................10

*Western Radio Servs. Co. v. United States Forest Serv.,*
   578 F.3d 1116 (9th Cir. 2009) ...................................................................................14

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

*Washington v. Davis,*
  426 U.S. 229, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976) .................................. 11, 24

*Wilkie v. Robbins,*
  551. U.S. 537, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007) ................................. 14

*Webb v. Cnty. of Trinity,*
  734 F. Supp. 2d 1018 (E.D. Cal. 2010)................................................................ 26

*Wilson v. Layne,*
  526 U.S. 603, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) .................................. 32

*Wilson v. Libby,*
  535 F.3d 697 (D.C. Cir. 2008) ..............................................................16, 18, 20

*Worldwide Church of God v. Philadelphia Church of God, Inc.,*
  227 F.3d 1110 (9th Cir. 2000) .............................................................................. 32

Federal Statutes

42 U.S.C. § 2000bb-1—2000bb-4 ...........................................................*passim*

50 U.S.C. § 552a .................................................................................................... 18

50 U.S.C. § 1801 ............................................................................................... 19, 33

50 U.S.C. § 1809 .................................................................................................... 34

50 U.S.C. § 1810 ............................................................................................... 19, 33

Legislative History

H.R. Rep. No. 95-1283 (1978) .............................................................................. 34

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

Defendants J. Stephen Tidwell and Barbara Walls respectfully submit this Memorandum in Support of their Motion to Dismiss the Complaint ("Compl.").

## INTRODUCTION

Plaintiffs ask this Court to create unprecedented and unjustified remedies against two Federal Bureau of Investigation ("FBI") supervisors based on those officials' alleged knowledge and supervision of a counterterrorism investigation undertaken following the terrorist attacks of September 11, 2001.  The courts consistently have rejected efforts to impose liability on government officials in similar circumstances, and for good reason:  Determinations regarding sensitive national security matters have long been considered an area in which courts should hesitate to tread.  *See Arar v. Ashcroft*, 585 F.3d 559, 575 (2d Cir. 2009) (en banc) (affirming dismissal of action against numerous government officials because determinations relating to national security "fall within 'an area of [exclusive] executive action in which courts have long been hesitant to intrude' absent congressional authorization" (quoting *Lincoln v. Vigil*, 508 U.S. 182, 192, 113 S. Ct. 2024, 2031, 124 L. Ed. 2d 101, 112 (1993))); *see Haig v. Agee*, 453 U.S. 280, 292, 101 S. Ct. 2766, 2774, 69 L. Ed. 2d 640, 652 (1981) ("Matters intimately related to . . . national security are rarely proper subjects for judicial intervention.").  Such cases also often risk the disclosure of critical national security and counterterrorism information.  *See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1088-89 (9th Cir. 2010).  And the specter of potential damages liability risks chilling the effective conduct of national security and counterterrorism activities.  *See Arar*, 585 F.3d at 574.

This case presents precisely these concerns, and the Complaint must be dismissed as to Defendants Tidwell and Walls for four separate and independent reasons.  *First*, the government's assertion of the state-secrets privilege requires dismissal of Counts 1-7.  Each of those causes of action is predicated upon, and requires the adjudication of, Plaintiffs' claim that Defendants Tidwell and Walls

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

were aware of and approved unlawful investigative activities and electronic surveillance based solely on Plaintiffs' religion.  To defend against that claim fully and effectively, Defendants would seek to demonstrate that they had non-discriminatory, national-security-related reasons for investigating specific individuals, and that the particular investigative methods used were narrowly tailored to achieve specific, legitimate counterterrorism goals.  But that is precisely the information over which the government has asserted the state-secrets privilege.  *See* Gov't Br. 27-28, 30-35;[1] *infra* Argument § I.   Because this information will be unavailable to Tidwell and Walls for their defense, these causes of action against them must be dismissed.  *Jeppesen*, 614 F.3d at 1082-83 (assertion of state-secrets privilege requires dismissal when it precludes a defendant from adequately raising and supporting available defenses).

     *Second*, as to Counts 1, 3, 6, and 9, this Court should decline Plaintiffs' invitation to create a new *Bivens* damages remedy against FBI officials arising from an informant's allegedly discriminatory activities conducted during a counterterrorism investigation.  It is well established that courts should refrain from creating damages remedies wherever "special factors counsel[] hesitation in the absence of affirmative action by Congress," *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396, 91 S. Ct. 1999, 2005, 29 L. Ed. 2d 619, 626 (1971), and special factors strongly counsel against extending *Bivens* to this context.  Courts have long recognized that national security concerns constitute just such a special factor, *see, e.g.*, *Arar*, 585 F.3d at 575, and the government's assertion of the state-secrets privilege makes plain that this case implicates substantial national security issues.  Further, three comprehensive statutory schemes upon which Plaintiffs rely—the Privacy Act, the Religious Freedom Restoration Act ("RFRA"), and the Foreign Intelligence Surveillance Act ("FISA")—are additional

---

[1] "Gov't Br." refers to the government's memorandum in support of its motion, the Background section of which is incorporated by reference herein.

special factors that strongly evince Congress' desire *not* to allow judicially created causes of action for the alleged constitutional torts.  That is true even where (as here) Plaintiffs cannot prevail on their statutory claims:  The question is not whether complete relief is available, but whether Congress has already spoken as to who should decide whether a cause of action should exist.  *See Bush v. Lucas*, 462 U.S. 367, 380, 103 S. Ct. 2404, 2412, 76 L. Ed. 2d 648, 659 (1983).

> *Third*, as to Counts 2, 4, and 7, Plaintiffs fail to state valid claims under 42 U.S.C. § 1985(3) because they do not allege facts plausibly showing the existence of a conspiracy to violate Plaintiffs' civil rights, much less that Tidwell or Walls—both of whom are alleged to have acted solely in a supervisory capacity—personally acted with the purpose of depriving Plaintiffs of equal protection, or were motivated by class-based animus.

> *Finally*, Tidwell and Walls are entitled to qualified immunity on all of Plaintiffs' claims.  Qualified immunity shields government officers from suits for damages based on their exercise of discretionary duties, and courts must "resolv[e] [such] immunity questions at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589, 595 (1991).  Officers are entitled to such immunity unless Plaintiffs can show *both* that their conduct violated a statutory or constitutional right *and* that the right was so clearly established at the time that "*every* reasonable official would have understood that what he is doing violates that right."  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149, 1159 (2011) (internal quotation marks omitted) (emphasis added).  Here, Tidwell and Walls are entitled to qualified immunity and dismissal of all claims asserted against them because:

- Plaintiffs' First and Fifth Amendment claims (Counts 1-4, 6-7) fail plausibly to allege, as they must, that Tidwell and Walls "acted with discriminatory purpose." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868, 882-83 (2009).  At most, Plaintiffs allege that Tidwell and Walls are liable for the actions of the informant and their subordinates, but it is long established that

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

"[g]overnment officials may *not* be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Id.*  It therefore follows that it was not clearly established at the time that Tidwell and Walls could be held liable in these circumstances.

- Plaintiffs' Fourth Amendment claim (Count 9) fails plausibly to allege that Tidwell or Walls was "personally involved" in an unlawful search or that a "sufficient causal connection exists" between a search and their alleged conduct.  *Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010) (internal quotation marks omitted).  Plaintiffs also fail to allege that an unlawful search occurred:  The recordings at issue were conducted in places open to the public or into which the informant had been invited, and thus there was no reasonable expectation of privacy.  Undercover operations, in which the agent is a so-called "invited informer," are not "searches" under the Fourth Amendment.  *See United States v. Mayer*, 503 F.3d 740, 750 (9th Cir. 2007); *Lyall v. City of Los Angeles*, No. 09-7353, 2011 WL 61626, at *13 (C.D. Cal. Jan. 6, 2011).  It therefore also follows that it was not clearly established at the time that Tidwell and Walls could be held liable in such circumstances.

- Plaintiffs' RFRA claim (Count 5) must be dismissed both because RFRA does not create a damages cause of action against individual defendants and because Plaintiffs have not adequately pleaded that Tidwell or Walls placed a "substantial burden" on their religion.  Liability under such circumstances thus necessarily could not have been clearly established at the time.

- Plaintiffs' FISA claim (Count 10) fails to allege that Plaintiffs are "aggrieved persons" with standing to sue—defined as a person with a reasonable expectation of privacy—because they do not plausibly allege that they had such an expectation.  Therefore, it also could not have been clearly established at the time that Tidwell and Walls could be held liable in such circumstances.

For these reasons, discussed more fully below, Plaintiffs' claims against Defendants Tidwell and Walls must be dismissed.

## BACKGROUND

Plaintiffs Yassir Fazaga, Ali Uddin Malik, and Yasser AbdelRahim allege that, since September 11, 2001, the FBI has "focused much of its counterterrorism efforts on broad investigations in the Muslim communities of the United States."

1    Compl. ¶ 24.[2]  The allegations in their Complaint arise from an investigation known

2    as "Operation Flex."  *Id.* ¶ 85; *see also* Gov't Br. 6-7.  According to Plaintiffs, "at

3    some time prior to July 2006," the FBI employed an informant to "infiltrate" several

4    Southern California mosques and "covertly gather information" about the Muslim

5    community.  Compl. ¶¶ 1, 2, 46.

6         Plaintiffs allege that "[o]ver the course of fourteen months" the FBI directed

7    the informant, Craig Monteilh, to "indiscriminately collect personal information on

8    hundreds and perhaps thousands of innocent Muslim Americans in Southern

9    California."  *Id.* ¶ 2.  Plaintiffs claim in a conclusory manner that this investigation

10   "did not result in even a single conviction related to counterterrorism . . . because the

11   FBI did not gather the information based on suspicion of criminal activity," but

12   instead did so "simply because the targets were Muslim."  *Id.* ¶ 3.  Plaintiffs contend

13   that in carrying out this investigation, "Defendants operated under the principles set

14   forth in" the Attorney General's Guidelines for FBI National Security Investigations

15   and Foreign Intelligence Collection (later named the Guidelines for Domestic FBI

16   Operations) and the FBI's Domestic Intelligence and Operations Guides ("DIOG"),

17   which expressly prohibit investigative activity solely on the basis of religion.  *Id.*

18   ¶¶ 32-34, 36-37; *see also* Gov't Br. 7-9.[3]  Nonetheless, Plaintiffs claim these policies

19   allegedly authorized the FBI to "engage in intrusive investigations of First

20   Amendment protected activity, and specifically religious practices, without any

21

22   _____

23   [2] Defendants do not admit the veracity or relevance of these facts, which are restated
     as alleged in the Complaint solely for the purpose of this Motion.

24   [3] These binding FBI guidelines require that investigative activity be undertaken only
     for a "valid purpose," and explicitly provide that they "do not authorize investigating
25   or collecting or maintaining information on United States persons solely for the
     purpose of monitoring activities protected by the First Amendment."  Gov't Br. 8; *see
26   also* Public Giuliano Decl. ¶4, Tab 2 (Excerpts 2008 AG Guidelines) at 13.  Similarly,
     the DIOG requires that "investigative activity [be] conducted" for "an authorized
27   purpose," and provides that an authorized purpose may not be solely to monitor the
     "exercise of other rights secured by the Constitution."  Indeed, FBI investigative
28   activity "may not be based solely on race, ethnicity, national origin or religion."
     Gov't Br. 8; *see also* Public Giuliano Decl. ¶4, Tab 3 (Excerpts from DIOG) at 21.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1  factual basis to believe any criminal violations or threat to the national security

2  existed."  Compl. ¶ 35.

3  **A.      Allegations Regarding "Operation Flex"**

4         Plaintiffs allege that Defendants Kevin Armstrong and Paul Allen were FBI

5  special agents assigned to the Orange County area who acted as the informant's

6  handlers.  *Id.* ¶¶ 18-19.  According to Plaintiffs, "[a]t some time prior to July 2006,"

7  Armstrong and Allen recruited the informant, and thereafter directed him to pose as

8  a Muslim convert and use various techniques to conduct surveillance of, and gather

9  intelligence on, congregants of several Southern California mosques.  *Id.* ¶¶ 2, 46-

10  51, 83-117.  Plaintiffs claim that, during this operation, the informant gathered

11  covertly "hundreds of phone numbers"; "thousands of email addresses"; "hundreds

12  of hours of video recordings that captured the interiors of mosques, homes,

13  businesses, and the associations of hundreds of Muslims"; "thousands of hours of

14  audio recording of conversations . . . and other Muslim religious and cultural events

15  occurring in mosques"; as well as addresses, license plate numbers, brochures,

16  newsletters and bulletins, and lists of attendees at various lectures, courses, and

17  prayer sessions.  *Id.* ¶¶ 2, 104-06, 126-29, 133, 172-73.  Plaintiffs allege that they

18  met the informant while he was acting in this covert capacity.[4]  *Id.* ¶ 52.

19         Despite Plaintiffs' claim that the investigation improperly targeted them

20  "solely due to their religion," *id.* ¶¶ 83, 163, they also allege that the operation was

21  intended to gather information regarding individuals who may have connections to

22  terrorist organizations, such as the Taliban, Hezbollah, and Hamas, and that agents

23  Allen and Armstrong told the informant that "everyone knows somebody."  *Id.* ¶

24  113.  Allen and Armstrong also allegedly directed the informant to gather

25

26  ─────────────────
[4] The Complaint alleges that until February of 2009, Plaintiffs did not know, and
27  "could not reasonably have known" that the informant was working for the FBI, or
    that they had been subjected to surveillance.  *Id.* ¶ 156.  Plaintiffs allegedly altered
    their religious practices only *after* the informant ceased his activities.  *Id.* ¶¶ 61, 179-
28  81, 192-94, 210-12.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

information regarding matters associated with counterterrorism efforts, including: (a) individuals who may be sympathetic to and/or interested in "mujahideen," violent "jihadist" activities, and religious extremism or radicalism (*id.* ¶¶ 92, 107-09, 143, 167, 171, 184, 189); (b) Arabic speakers and foreign nationals from Egypt, Pakistan, India, Syria, and Lebanon (*id.* ¶ 99); (c) individuals' views on "politics and violence" (*id.* ¶¶ 99, 110); (d) charitable giving, fundraising, and financial information (*id.* ¶¶ 101-02, 129, 142, 178, 205); (e) individuals' planned and actual travel to Yemen, Saudi Arabia, and Egypt (*id.* ¶¶ 103, 110, 182, 186-87, 200, 202); (f) telephone, international call, and email information associated with "persons of interest who were believed to be linked to terrorism" (*id.* ¶ 128); and (g) a suspected cell of the Muslim Brotherhood led by Plaintiff AbdelRahim (*id.* ¶¶ 195-96).

Plaintiffs allege that as part of these efforts, Allen and Armstrong provided the informant with, and directed him to use, recording devices. *Id.* ¶ 119. According to Plaintiffs, "[a]fter about September 2006," the agents gave the informant "a cell phone and two key fobs" containing audio-recording devices that he allegedly used to record "every moment he worked undercover, regardless of whom he was meeting or what was discussed." *Id.* ¶¶ 111, 120. Further, Plaintiffs claim that, on unspecified occasions, the informant allegedly left recording devices unattended in mosques to record conversations that took place while he was not present, *id.* ¶¶ 121, 123, although the only parties identified as having been recorded in this manner are Plaintiffs Malik and AbdelRahim, and not Plaintiff Fazaga.[5] *Id.* ¶¶ 188, 206.

Plaintiffs also allege that, "[b]eginning in about February 2007," agents outfitted the informant with a "shirt button" camera that he used "as often as several days per week" to capture video and audio recordings of the "internal layout of mosques, to film basketball or soccer games . . . , to film guest lectures at mosques

---

[5] Plaintiffs do not allege that any Defendant directed the informant to record conversations in this manner. Rather, they claim only that Armstrong and Allen received notes in which the informant stated he had done so, and that the agents "never told him not to do this." *Id.* ¶ 188.

. . . , and to record the interiors of people's houses." *Id.* ¶¶ 104, 124-25.   For example, according to Plaintiffs, the informant was directed to record a lecture given at Fazaga's mosque, the Orange County Islamic Foundation, as well as to record interior areas and a donation booth within it, none of which are areas alleged to be non-public. *Id.* ¶¶ 168, 170, 178.  Plaintiffs also claim that the informant—after being invited in—was directed to record the interior of AbdelRahim's house, which was "shared by five young, unmarried Muslim Egyptian men with different skills and backgrounds—including a computer analyst, a pharmacist, an accountant, and one who handled logistics," whom the FBI suspected of being a cell of the Muslim Brotherhood led by AbdelRahim. *Id.* ¶¶ 195-96.

Plaintiffs also allege that the informant successfully gathered information deemed relevant to counterterrorism efforts.  Specifically, Plaintiffs claim that: (a) the FBI deemed his information as "particularly valuable" and that it had "proven to be essential" to a federal prosecution; (b) the "information . . . was followed by people 'at the highest levels'"; (c) "the operation was among the ten most important intelligence investigations going on in the country"; and (d) information regarding individuals' finances, foreign assets, and immigration issues "would be shared with other agencies." *Id.* ¶¶ 141-42, 159.

## B.      Allegations Regarding Defendants Tidwell and Walls

With regard to Defendants Tidwell and Walls, the Complaint, in a mere 8 of its 246 paragraphs, offers only generalized, conclusory assertions arising from their supervisory positions. *See id.* ¶¶ 20-21, 45, 134, 137, 141, 147, 149.  Plaintiffs allege that from August 2005 until December 2007, Defendant Tidwell served as the FBI Assistant Director in Charge of the Los Angeles Field Office ("LAFO") with supervisory authority over all operations in the Central District of California, and that during an unspecified period of time, Defendant Walls was the FBI Special Agent in Charge of the Santa Ana branch office of the LAFO. *Id.* ¶¶ 20-21.  "Upon information and belief," Plaintiffs allege that Tidwell "authorized the search for" and

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

"the selection of" the informant, read the informant's "notes of his activities," and "authorized and directed the actions of" Armstrong and Allen in the handling of the informant. *Id.* ¶¶ 20, 137. Likewise, Plaintiffs claim "[u]pon information and belief" that Walls was regularly apprised of the information Armstrong and Allen collected through the informant, "directed the action of [the] agents on various instances based on that information," and "actively monitored, directed, and authorized the actions of Agents Armstrong and Allen . . . for the purpose of surveilling Plaintiffs and other[s] . . . because they were Muslim." *Id.* ¶ 21.

In a similar fashion, Plaintiffs claim that Tidwell and Walls, along with agents Armstrong, Allen, and supervisor Pat Rose, "maintained extremely close oversight and supervision of" the informant, and "because they made extensive use of the results of his surveillance, they knew about the methods of surveillance he used in great detail and authorized them." *Id.* ¶ 134. Plaintiffs also allege that Walls "[e]ventually" ordered Armstrong and Allen to cease using the informant because "she no longer trusted him"; that there was "significant conflict" between Walls and the agents regarding how to handle the operation; that an audit team was examining Walls's "handling of one of the leads from the operation"; and that Walls was present at one of the final meetings with the informant, during which she instructed him "to stay silent about the operation." *Id.* ¶¶ 21, 147, 149. Otherwise, Plaintiffs offer no specific facts regarding Tidwell's or Walls's involvement in, much less authorization of, the informant's activities.

1

**ARGUMENT**

2

**I.    THE GOVERNMENT'S ASSERTION OF THE STATE-SECRETS
      PRIVILEGE MANDATES DISMISSAL OF COUNTS 1-7**

3

4

Counts 1-7 against Tidwell and Walls must be dismissed in light of the

5

government's assertion of the state-secrets privilege.[6]  *See* Gov't Br. § II.  It is well

6

established that the state-secrets privilege "permits the government to bar the

7

disclosure of information if 'there is a reasonable danger' that disclosure will

8

'expose . . . matters which, in the interest of national security, should not be

9

divulged.'"  *Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1196

10

(9th Cir. 2007) (quoting *United States v. Reynolds, Inc.*, 345 U.S. 1, 10, 73 S. Ct.

11

528, 534, 97 L. Ed. 2d 727, 727 (1953)).[7]

12

When the government invokes the state-secrets privilege, "the evidence is

13

completely removed from the case," *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th

14

Cir. 1998), and "is absolutely privileged, irrespective of the plaintiffs' countervailing

15

need for it," *Jeppesen*, 614 F.3d at 1082.  If the removal of privileged information

16

precludes a defendant from adequately raising and supporting available defenses, the

17

action must be dismissed.  *See id.* at 1083; *Kasza*, 133 F.3d at 1166; *see also*

18

*General Dynamics Corp. v. United States*, 131 S. Ct. 1900, 1907, 179 L. Ed. 2d 957,

19

965 (2011) (where state-secrets assertion precludes litigation, "the traditional course

20

is to leave the parties where they stood when they knocked on the courthouse door").

21

22

23

[6] Although the government has not argued that its assertion of the state-secrets
privilege mandates immediate dismissal of the Fourth Amendment and FISA claims
(Counts 9 and 10), and has stated its intent to produce certain evidence relevant to
those claims, Gov't Br. 4, Defendants Tidwell and Walls reserve the right to seek
dismissal of these claims on state-secrets grounds following a review of such
evidence.

24

25

26

[7] The government may, as here, invoke the privilege "at the pleading stage, rather
than waiting for an evidentiary dispute to arise during discovery or trial." *Jeppesen*,
614 F.3d at 1081; *see El-Masri v. United States*, 479 F.3d 296, 308 (4th Cir. 2007)
(state-secrets assertion and dismissal of case at pleading stage proper); *Black v.
United States*, 62 F.3d 1115, 1117-19 (8th Cir. 1995) (same).

27

28

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

Here, the Attorney General's invocation of the state-secrets privilege deprives Tidwell and Walls of information relevant to their ability to defend against Counts 1-7, making the full and fair litigation of those claims impossible.  Each of these counts is predicated on, and would require the adjudication of, Plaintiffs' allegations that Tidwell and Walls approved and supervised unlawful investigative activities and electronic surveillance based solely on Plaintiffs' religion.  Indeed, to prevail on their claims, Plaintiffs "must plead and prove that [Tidwell and Walls] acted with discriminatory purpose."  *Iqbal*, 129 S. Ct. at 1948; *see Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 540-41, 113 S. Ct. 2217, 2230-31, 124 L. Ed. 2d 472, 494-95 (1993) (First Amendment); *Washington v. Davis*, 426 U.S. 229, 240, 96 S. Ct. 2040, 2048, 48 L. Ed. 2d 597, 607-08 (1976) (Fifth Amendment).  In their defense, Tidwell and Walls would seek to show that they had non-discriminatory, national-security and law-enforcement-related reasons for investigating specific individuals, and that the methods they used were narrowly tailored to achieve an important government interest in combating terrorism.  But the state-secrets assertion precludes them from mounting such a defense because the privilege removes from the case precisely the information needed to make those showings: (1) "subject identification" information, including evidence tending to confirm or deny that a particular person was the subject of an FBI counterterrorism investigation; (2) the "reasons for counterterrorism investigation and results," including evidence that "could tend to reveal the predicate for an FBI counterterrorism investigation"; and (3) the "sources and methods" used in any counterterrorism investigation, including the one at issue.[8]  *See* Gov't Br. 27-28.  Put simply, as a result of the Attorney General's assertion of the state-secrets privilege,

---

[8] Likewise, with respect to the RFRA claim (Count 5), the state-secrets assertion deprives Tidwell and Walls of the ability to fully litigate a key defense:  that the investigation was "in furtherance of a compelling governmental interest"—or, indeed, that it was in furtherance of any governmental interest at all.  42 U.S.C. § 2000bb–1(b)(1); *see Lebron v. Rumsfeld*, 764 F. Supp. 2d 787, 804 (D.S.C. 2011).

Defendants Tidwell and Walls are precluded from defending themselves fully and adequately against Plaintiffs' claims. *See El-Masri v. United States*, 479 F.3d 296, 309-10 (4th Cir. 2007).

For similar reasons, Counts 1-7 must be dismissed because they are so intertwined with state secrets that "there is no feasible way to litigate [their] liability without creating an unjustifiable risk of divulging state secrets." *Jeppesen*, 614 F.3d at 1087; *see El-Masri*, 479 F.3d at 312. Tidwell's and Walls's alleged roles in the counterterrorism investigation and the propriety of their actions cannot be isolated from the privileged aspects of this case related to the investigation and its targets, predicates, sources, and methods. Where the "facts underlying plaintiffs' claims are so infused with . . . secrets," the case must be dismissed because "*any* plausible effort . . . to defend against them would create an unjustifiable risk of revealing state secrets, even if plaintiffs could make a prima facie case on one or more claims with nonprivileged evidence." *Jeppesen*, 614 F.3d at 1088. Particularly where, as here, the witnesses likely to be called at trial have personal knowledge of the state secrets relevant to the claims, "the parties would have every incentive to probe dangerously close to the state secrets themselves. In these circumstances, state secrets could be compromised even without direct disclosure by a witness." *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1243 (4th Cir. 1985); *see General Dynamics*, 131 S. Ct. at 1907 (dismissal required where "[e]very document request or question to a witness would risk further disclosure, since both sides have an incentive to probe up to the boundaries of state secrets").

Because the state-secrets invocation deprives Defendants Tidwell and Walls of the ability to fully litigate available defenses, and because litigation of Plaintiffs' claims would risk divulging privileged national-security information, Counts 1-7 must be dismissed.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1

## II.   THE COURT SHOULD DECLINE PLAINTIFFS' INVITATION TO EXTEND A *BIVENS* REMEDY TO THIS CONTEXT

2

3        Plaintiffs urge this Court to create a new *Bivens* damages remedy against FBI

4   officials arising from an informant's allegedly discriminatory activities conducted

5   during a counterterrorism investigation undertaken in the wake of September 11,

6   2011.  No court has recognized a *Bivens* damages remedy in these circumstances,

7   and for good reasons:  (1) this case implicates substantial national security issues,

8   and the courts have long held that national security concerns constitute a special

9   factor counseling against the creation of a *Bivens* damages remedy, *see, e.g.*, *Arar*,

10   585 F.3d at 575; and (2) the Privacy Act, RFRA, and FISA all strongly evince

11   Congress' desire *not* to allow judicially created causes of action for the alleged

12   constitutional torts, *see Bush*, 462 U.S. at 373 (power to infer *Bivens* remedy "is to

13   be exercised in the light of relevant policy determinations made by the Congress").

14        A.      No Court Has Extended *Bivens* To This Context

15        In *Bivens*, the Supreme Court "recognized for the first time an implied private

16   action for damages against federal officers alleged to have violated a citizen's

17   constitutional rights."  *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 122 S.

18   Ct. 515, 519, 151 L. Ed. 2d 456, 462 (2001); *see Bivens*, 403 U.S. 388 (recognizing

19   cause of action under Fourth Amendment for unlawful search of private residence).

20   Because "[a] *Bivens* cause of action is implied without any express congressional

21   authority whatsoever," *Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006), however, it

22   is "disfavored," *Iqbal*, 129 S. Ct. at 1948.  Indeed, since *Bivens*, the Supreme Court

23   has "extended its holding only twice," *Malesko*, 534 U.S. at 70, to circumstances not

24   implicated here, *see Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d

25   846 (1979) (employment discrimination in violation of Fifth Amendment); *Carlson*

26   *v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980) (Eighth Amendment

27   violation by federal prison officials).  And for the last thirty years, the Supreme

28   Court has "consistently refused to extend *Bivens* liability to *any* new context or new

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1  category of defendants." *Malesko*, 534 U.S. at 68 (emphasis added) (violation of

2  Eighth Amendment by prison officials working for private federal contractor); *see*

3  *also Wilkie v. Robbins*, 551 U.S. 537, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007)

4  (extortion by federal officers in violation of Fifth Amendment); *FDIC v. Meyer*, 510

5  U.S. 471, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) (deprivation of property in

6  violation of Fifth Amendment); *Schweiker v. Chilicky*, 487 U.S. 412, 108 S. Ct.

7  2460, 101 L. Ed. 370 (1988) (denial of Social Security disability benefits in violation

8  of Fifth Amendment); *United States v. Stanley*, 483 U.S. 669, 107 S. Ct. 3054, 97 L.

9  Ed. 2d 550 (1987) (injuries incident to military service); *Bush*, 462 U.S. 367

10  (defamation and retaliatory demotion of federal employee in violation of First

11  Amendment); *Chappell v. Wallace*, 462 U.S. 296, 103 S. Ct. 2362, 76 L. Ed. 2d 586

12  (1983) (racial discrimination by military superiors).  In determining whether a

13  particular case presents a new "context," the inquiry does not focus on the

14  constitutional right allegedly violated; rather, the term "context" "reflect[s] a

15  potentially recurring scenario that has similar legal and factual components."  *Arar*,

16  585 F.3d at 572; *see Western Radio Servs. Co. v. United States Forest Serv.*, 578

17  F.3d 1116, 1119 (9th Cir. 2009) (relevant "context" can be either "factual" or

18  "legal").

19      Of particular relevance here, the Supreme Court has never recognized a

20  *Bivens* remedy for alleged religious discrimination or for an allegedly unlawful

21  search arising from an informant's electronic surveillance conducted during a

22  counterterrorism investigation.  Indeed, the Supreme Court has altogether "declined

23  to extend *Bivens* to a claim sounding in the First Amendment," *Iqbal*, 129 S. Ct. at

24  1948 (citing *Bush*, 462 U.S. 367), and Defendants are aware of no court that has

25  inferred a damages cause of action under the Fourth or Fifth Amendment to remedy

26  alleged injuries in a factual and legal context analogous to this case.  *Cf. Arar*, 585

27  F.3d at 572.

28

**B.      Special Factors Preclude Plaintiffs' *Bivens* Causes Of Action**

While no court has extended *Bivens* to the context presented by this case, the Supreme Court also has long held that recognizing a *Bivens* cause of action is inappropriate where there are "[any] special factors counseling hesitation in the absence of affirmative action by Congress."  403 U.S. at 396.  This standard "is remarkably low," and courts should refuse to recognize a *Bivens* remedy "whenever thoughtful discretion would pause even to consider."  *Arar*, 585 F.3d at 574.  Special factors "d[o] not concern the merits of the particular remedy that [i]s sought.  Rather, they relate to the question of who should decide whether such a remedy should be provided . . . [and] whether there are reasons for allowing Congress to prescribe the scope of relief that is made available."  *Bush*, 462 U.S. at 380.  This case is replete with special factors indicating that Congress, not the judiciary, is the appropriate branch to determine whether to create a remedy for the injuries alleged in the Complaint.

**1.      National Security Issues And The Government's Assertion Of State-Secrets Privilege Preclude A *Bivens* Remedy**

The Supreme Court consistently has recognized that judicial creation of a new cause of action is inappropriate in cases involving "determinations relating to national security" because such issues "fall within 'an area of [exclusive] executive action in which courts have long been hesitant to intrude' absent congressional authorization."  *Arar*, 585 F.3d at 575 (quoting *Lincoln*, 508 U.S. at 182); *see Haig*, 453 U.S. at 292 ("Matters intimately related to . . . national security are rarely proper subjects for judicial intervention.").  Given the expertise of the executive and legislative branches, in "litigation implicat[ing] sensitive and weighty interests of national security," the judgment of the political branches "is entitled to deference."  *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2727, 177 L. Ed. 2d 355, 386 (2010); *see Boumediene v. Bush*, 553 U.S. 723, 797, 128 S. Ct. 2229, 2276-77, 171 L. Ed. 2d 41, 96-97 (2008) ("neither the Members of this Court nor most federal judges begin the day with briefings that may describe new and serious threats to our

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1    Nation and its people").  Courts have thus repeatedly declined to extend *Bivens* to

2    such suits because they "unavoidably influence[] government policy, probe[]

3    government secrets, invade[] government interests, enmesh[] government lawyers,

4    and thereby elicit[] government funds for settlement."  *Arar*, 585 F.3d at 574; *see*

5    *Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008); *Beattie v. Boeing Co.*, 43 F.3d

6    559, 563 (10th Cir. 1994); *see also Stanley*, 483 U.S. at 682-84 (*Bivens* remedy

7    inappropriate because "the mere process of arriving at correct conclusions would

8    disrupt the military regime"); *Chappell*, 462 U.S. at 301 (no *Bivens* remedy where

9    military and national security issues implicated).

10        This Court should decline to recognize a *Bivens* remedy in this case, which

11   necessarily probes into the predicates, subjects, and methods of an FBI

12   counterterrorism investigation.  Plaintiffs ask the Court to assess whether the

13   purposes and goals of the investigation were necessary and appropriate; who the

14   specific targets and subjects of the investigation were and how and why they were

15   identified; and whether the specific techniques were appropriately tailored to achieve

16   the purposes and goals of the investigation.  Indeed, the Complaint makes clear that

17   in addition to seeking compensation for alleged constitutional injuries, Plaintiffs are

18   challenging the executive branch's counterterrorism-related investigatory policies.

19   *See, e.g.*, Compl. ¶¶ 24-27, 28-37.   But those are precisely the kinds of claims that

20   are inappropriate for resolution through a judicially created damages remedy that

21   would second-guess the judgments of executive branch officials involved in

22   counterterrorism activities.  *See Arar*, 585 F.3d at 574 ("Our federal system of

23   checks and balances provides means to consider allegedly unconstitutional executive

24   policy, . . . a private action . . . against individual policymakers is not one of them.").

25        Moreover, as discussed *supra* at Argument § I, to defend against Plaintiffs'

26   First and Fifth Amendment claims, Defendants would seek to show, among other

27   things, that they had non-discriminatory, national-security or law-enforcement

28   reasons for allegedly investigating specific individuals and that the methods they

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1  used were narrowly tailored to achieve important government interests.  But as the

2  government's assertion of the state-secrets privilege demonstrates, Defendants

3  cannot do so without risking the disclosure of sensitive national-security and

4  counterterrorism information.  The assertion of the state-secrets privilege thus

5  underscores the need for hesitation before creating a new *Bivens* remedy that could

6  expose such sensitive information.  *See id.* at 575-76 (state-secrets assertion

7  additional factor in declining to create *Bivens* remedy); *Black*, 62 F.3d at 1118

8  (claim dismissed where "protected information precludes [plaintiff] from

9  establishing a prima facie *Bivens* claim and . . . continued litigation carries with it

10  the risk that privileged information might be disclosed").

### 2.  Existing Remedial Statutory Schemes Constitute Special Factors Counseling Hesitation

13  Even if this case did not implicate national security concerns, several federal

14  statutory schemes reflect Congress' intent that it, rather than the judiciary, should

15  decide whether to create a damages remedy in this case.  The relevant inquiry is

16  whether Congress, by legislating in the area, has spoken as to who should determine

17  whether a cause of action exists.  *See Bush*, 462 U.S. at 380 (special factors are

18  "related to the question of who should decide whether such a remedy should be

19  provided").  If Congress has provided a remedy for a particular harm, judicial

20  supplementation of the remedy through an implied *Bivens* action is unwarranted.

21  *Malesko*, 534 U.S. at 69.  If, on the other hand, Congress has legislated in a

22  particular area and declined to provide a damages remedy, courts should infer that

23  Congress believes such a remedy to be inappropriate.  *See, e.g.*, *Bush*, 462 U.S. 367;

24  *Chilicky*, 487 U.S. 412.  A court therefore should not create a *Bivens* remedy merely

25  because existing statutory remedies do not provide a particular plaintiff complete

26  relief.  *See, e.g.*, *Stanley*, 483 U.S. at 683 ("[I]t is irrelevant to a 'special factors'

27  analysis whether the laws currently on the books afford [a plaintiff] an 'adequate'

28  federal remedy for his injuries."); *Chilicky*, 487 U.S. at 421-22 (absence of statutory

1   relief does not imply that courts should award damages); *Malesko*, 534 U.S. at 69

2   (remedy should not "be implied simply for want of any other means for challenging

3   a constitutional deprivation in federal court").

4       Plaintiffs' constitutional claims (Counts 1, 3, 6, 9) are variations on a theme:

5   They allege discriminatory, illegal surveillance designed to collect and maintain

6   information related to their First Amendment activity.  But Congress already has

7   fashioned three comprehensive statutory schemes relevant to those claims.  First, the

8   Privacy Act, 5 U.S.C. § 552a, sets out extensive requirements regulating "the

9   collection, maintenance, use, and dissemination of information about individuals by

10  federal agencies."  *See Wilson*, 535 F.3d at 707 (internal quotation marks omitted).

11  In particular, the Act expressly forbids the maintenance of any "record describing

12  how any individual exercises rights guaranteed by the First Amendment unless

13  expressly authorized by statute or by the individual about whom the record is

14  maintained or unless pertinent to and within the scope of an authorized law

15  enforcement activity."  5. U.S.C. § 552a(e)(7).  The Act authorizes damages actions

16  against the government for failure to comply with its provisions, *id.* § 552a(g), and

17  indeed Plaintiffs are pursuing such a claim in Count 8.  But precisely because of its

18  scope and the existence of this cause of action, the Privacy Act has been held to

19  foreclose *Bivens* remedies for alleged violations of First and Fifth Amendment

20  rights.  *See Wilson*, 535 F.3d at 706-11; *Downie v. City of Middleburg Heights*, 301

21  F.3d 688, 697 (6th Cir. 2002).

22      Plaintiffs' First and Fifth Amendment *Bivens* claims (Counts 1, 3, 6) allege

23  that the FBI targeted Plaintiffs due to their religion and burdened their exercise

24  thereof.  But Congress has already legislated extensively in this area through RFRA,

25  42 U.S.C. §§ 2000bb–2000bb–4, which prohibits the "government" from

26  "substantially burden[ing] a person's exercise of religion," unless the burden is

27  shown to be "in furtherance of a compelling governmental interest" and "the least

28  restrictive means of furthering that compelling governmental interest."  *Id.*

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1  § 2000bb–1(a), (b).  Like the Privacy Act, RFRA creates a statutory cause of action,

2  pursuant to which a person may assert an alleged violation "in a judicial proceeding

3  and obtain appropriate relief against a government." *Id.* § 2000bb–1(c).  Plaintiffs

4  have asserted precisely such a claim against all Defendants in Count 5.

5  Finally, Plaintiffs' Fourth Amendment *Bivens* claim (Count 9) alleges that

6  Plaintiffs' rights were violated by "unreasonable searches . . . including . . . audio

7  recording Plaintiffs' communications without a warrant . . . ; video recording in

8  homes and other places . . . ; and entering and planting electronic listening devices . .

9  . without a warrant."  Compl. ¶ 244.  Again, however, Congress has legislated

10 heavily in this field through FISA, 50 U.S.C. §§ 1801, *et seq.*  FISA prescribes

11 "procedures under which federal officials . . . obtain authorization to conduct

12 electronic surveillance for foreign intelligence purposes." *Amnesty Int'l v. Clapper*,

13 638 F.3d 118, 122 (2d Cir. 2011).  FISA comprehensively regulates "surveillance for

14 the purpose of gathering foreign intelligence information, which is defined to

15 include 'information that relates to, and if concerning a United States person is

16 necessary to, the ability of the United States to protect against . . . international

17 terrorism.'" *United States v. Stewart*, 590 F.3d 93, 126 (2d Cir. 2009).  Indeed,

18 "Congress passed FISA to settle what it believed to be the unresolved question of the

19 applicability of the Fourth Amendment warrant requirement to electronic

20 surveillance for foreign intelligence purposes, *and to remove any doubt as to the*

21 *lawfulness of such surveillance.*" *United States v. Duggan*, 743 F.2d 59, 73 (2d Cir.

22 1984) (emphasis added) (internal quotation marks and citation omitted).  FISA also

23 creates a damages remedy for "aggrieved person[s] subjected to illegal electronic

24 surveillance" where "the defendant intentionally engaged in that illegal electronic

25 surveillance, or intentionally used or disclosed the information derived therein with

26 knowledge of, or reason to know of, the illegal manner in which it was collected."

27 50 U.S.C. § 1810.  Plaintiffs again have asserted precisely such a claim against all

28 Defendants in Count 10.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1   These three statutory schemes thus strongly counsel against the creation of

2   *Bivens* damages remedies in this case.  To be sure, the Privacy Act does not

3   authorize a damages remedy against *individuals* like Tidwell and Walls, but it does

4   create such a cause of action against the government, and in light of the

5   comprehensive nature of the statutory scheme, Congress' decision not to permit

6   damages against individuals must preclude the judicial creation of such a remedy.

7   *See Chilicky*, 487 U.S. at 423; *Wilson*, 535 F.3d 707-08.  Similarly, to the extent

8   RFRA or FISA does not allow for damages claims against government officers in

9   their individual capacities or does not provide these Plaintiffs complete relief, *see*

10  *infra* Argument § IV, inferring a *Bivens* cause of action would likewise be

11  inappropriate.  In such a situation, the relevant inquiry "is not what remedy the court

12  should provide for a wrong that would otherwise go unaddressed," but whether a

13  statutory scheme "should be augmented by the creation of a new remedy," a

14  question that "cannot be answered simply by noting that existing remedies do not

15  provide complete relief for the plaintiff."  *Bush*, 462 U.S. at 388; *see id.* at 373

16  (refusing to infer cause of action, even while assuming "a federal right has been

17  violated and Congress has provided a less than complete remedy for the wrong");

18  *Wilson*, 535 F.3d at 711 (statute precludes *Bivens* remedy even when it provides no

19  remedy whatsoever).

20  **III.   PLAINTIFFS FAIL TO STATE VALID FIRST AND FIFTH
          AMENDMENT CLAIMS UNDER 42 U.S.C. § 1985(3)**

21

22  Plaintiffs' Complaint also invokes 42 U.S.C. § 1985(3) as a cause of action for

23  Plaintiffs' First and Fifth Amendment claims (Counts 2, 4, 7).  To state a claim

24  under Section 1985(3), Plaintiffs must both adequately allege a constitutional

25  violation—which they have failed to do, for the reasons set forth *infra* Argument

26  §§ IV.A and IV.B—and *also* allege:  "(1) the existence of a conspiracy to deprive

27  the plaintiff of the equal protection of the laws; (2) an act in furtherance of the

28  conspiracy[;] and (3) a resulting injury."  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130,

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1    1141 (9th Cir. 2000); *see United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463

2    U.S. 825, 828-29, 103 S. Ct. 3352, 3354, 3356-57, 77 L. Ed. 2d 1049, 1054-55

3    (1983).

4          The existence of a conspiracy, of course, requires an agreement among the co-

5    conspirators, and in this context Plaintiffs must allege that the Defendants had "an

6    agreement or meeting of the minds to violate constitutional rights."  *United*

7    *Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989)

8    (en banc) (internal quotation marks omitted).  But it is not enough to allege such an

9    agreement in wholly conclusory terms; instead, Plaintiffs must allege facts plausibly

10   suggesting a "further circumstance pointing toward a meeting of the minds."  *Bell*

11   *Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929,

12   941 (2007).  Moreover, Plaintiffs "must demonstrate a deprivation of [equal

13   protection] motivated by 'some . . . invidiously discriminatory animus behind the

14   conspirators' action.'"  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir.

15   1992) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798, 29

16   L. Ed. 2d 338, 348 (1971)).

17         On even the most lenient reading of the Complaint, Plaintiffs have failed

18   properly to allege the existence of such a conspiracy.  The Complaint lacks *any*

19   factual, non-conclusory allegation that any Defendant, let alone Tidwell or Walls,

20   reached an agreement or came to a "meeting of the minds" with anyone to violate

21   Plaintiffs' constitutional rights.  *See United Steelworkers*, 865 F.2d at 1540.  While

22   Plaintiffs do attempt to recite the elements of Section 1985(3) in Counts 2, 4, and 7,

23   it has long been established that under Section 1985(3), "[a] mere allegation of

24   conspiracy without factual specificity is insufficient."  *Karim-Panahi v. Los Angeles*

25   *Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).  Moreover, under the Supreme

26   Court's recent decision in *Twombly*, a Plaintiff must allege additional facts that

27   make plausible the existence of an agreement.  *See* 550 U.S. at 557 ("naked assertion

28   of conspiracy . . . gets the complaint close to stating a claim, but without some

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1   further factual enhancement it stops short of the line between possibility and

2   plausibility of entitlement to relief" (internal quotation marks and citation omitted)).

3        Indeed, far from alleging the necessary elements of a Section 1985(3) claim

4   with "factual specificity," the Complaint attributes *no* purpose at all to Tidwell's

5   alleged actions.  While the Complaint does allege in the most general terms that

6   Walls "monitored, directed, and authorized the actions of Agents Armstrong and

7   Allen . . . for the purpose of surveilling Plaintiffs . . . because they were Muslim,"

8   Compl. ¶ 21, this conclusory assertion simply is not "entitled to the assumption of

9   truth."  *Iqbal* 129 S. Ct. at 1951.[9]  As the Supreme Court made clear in *Iqbal*,

10   "[t]hreadbare recitals of the elements of a cause of action, supported by mere

11   conclusory statements, do not suffice."  *Id.* at 1949.

## IV.   TIDWELL AND WALLS ARE ENTITLED TO QUALIFIED IMMUNITY ON ALL OF PLAINTIFFS' CLAIMS

14        Even if the government's assertion of the state-secrets privilege did not

15   require dismissal of Counts 1-7; even if the Court were to recognize a *Bivens* cause

16   of action for some of Plaintiffs' claims; and even if the Court were to hold that

17   Plaintiffs had adequately alleged the existence of a conspiracy under Section

18   1985(3), dismissal of all claims against Defendants Tidwell and Walls would still be

19   required because they are entitled to qualified immunity.  "Qualified immunity

20   shields federal and state officials from money damages unless a plaintiff pleads facts

21   showing (1) that the official violated a statutory or constitutional right, and (2) that

22   the right was 'clearly established' at the time of the challenged conduct."  *al-Kidd*,

23   131 S. Ct. at 2080 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct.

24   2727, 2738, 73 L. Ed. 2d 396, 410 (1982)).  For a right to be clearly established,

---

25

26   [9] For the reasons discussed in the memorandum of law in support of the motion to dismiss filed concurrently with this motion by Defendants Rose, Allen, and

27   Armstrong, Plaintiffs' Section 1985(3) claim also fails because the intracorporate conspiracy doctrine bars claims alleging that members of the same or governmental

28   body conspired with each other while acting in the course and scope of their employment.

1    "existing precedent must have placed the statutory or constitutional question beyond

2    debate." *al-Kidd*, 131 S. Ct. at 2083.  Qualified immunity permits government

3    officials "to make reasonable but mistaken judgments about open legal questions.

4    When properly applied, it protects all but the plainly incompetent or those who

5    knowingly violate the law." *Id.* at 2085 (internal quotation marks omitted).

6         Qualified immunity is "an *immunity from suit* rather than a mere defense to

7    liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526-27, 105 S. Ct. 2806, 2815-16, 86

8    L. Ed. 2d 411, 425 (1985).  Accordingly, the Supreme Court "repeatedly ha[s]

9    stressed the importance of resolving immunity questions at the earliest possible stage

10   in litigation," *Hunter*, 502 U.S. at 227; *see Community House, Inc. v. City of Boise*,

11   623 F.3d 945, 967 (9th Cir. 2010), and frequently has upheld the early dismissal of

12   claims against officials on qualified immunity grounds.  *See, e.g.*, *al-Kidd*, 131 S. Ct.

13   at 2083-85; *Safford Unified School District No. 1 v. Redding*, 129 S. Ct. 2633, 2643-

14   44, 174 L. Ed. 2d 354, 365-66 (2009); *Pearson v. Callahan*, 555 U.S. 223, 243-45,

15   129 S. Ct. 808, 822, 172 L. Ed. 2d 565, 580-81 (2009).

16        In this case, Tidwell and Walls are entitled to qualified immunity on all claims

17   asserted against them (Counts 1-7 and 9-10) for two closely related reasons.  First,

18   the Complaint fails to state any claim that Tidwell or Walls engaged in conduct that

19   violated Plaintiffs' rights.  Second, even if Plaintiffs had plausibly alleged such

20   claims, the Complaint does not allege violations of clearly established rights such

21   that it would have been clear at the time to "every reasonable official" that the

22   alleged conduct was unlawful.  *al-Kidd*, 131 S. Ct. at 2083.

23   **A.     Qualified Immunity Bars Plaintiffs' First And Fifth Amendment**
         **Claims**
24

25        Tidwell and Walls are entitled to qualified immunity on Plaintiffs' First and

26   Fifth Amendment claims (Counts 1-4 and 6-7), which allege that "Defendants have

27   engaged in a scheme to target Plaintiffs for surveillance because of [their] adherence

28   to and practice of the religion of Islam."  Compl. ¶¶ 222, 224, 227, 230, 236, 238.  It

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1  is well-established that government officials cannot be held liable for constitutional

2  claims on a *respondeat superior* theory, and the Complaint lacks any well-pleaded

3  factual allegations "that allow[] the court to draw the reasonable inference that

4  [Tidwell and Walls are] liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at

5  1949.   And because the Complaint does not allege a constitutional violation, it

6  necessarily follows that it was not clearly established at the time that Tidwell and

7  Walls could be held liable in these circumstances.

8       Courts have long recognized that "a plaintiff must plead that each

9  Government-official defendant, through the official's own individual actions, has

10  violated the Constitution," and that such defendants "may not be held liable for the

11  unconstitutional conduct of their subordinates." *Id.* at 1948.  Plaintiffs, however,

12  seek compensatory, liquidated, and punitive damages against Tidwell and Walls for

13  the alleged actions of the informant and their subordinates.  Such *respondeat*

14  *superior* liability is plainly foreclosed by binding precedent.  *See id.*

15       In addition, where, as here, "the claim is invidious discrimination in

16  contravention of the First and Fifth Amendments," the Supreme Court has made

17  clear "that the plaintiff must plead and prove that the defendant acted with

18  discriminatory purpose." *Id.*; *see Church of Lukumi Babalu Aye*, 508 U.S. at 540-41

19  (First Amendment); *Washington v. Davis*, 426 U.S. at 240 (Fifth Amendment).

20  "[P]urposeful discrimination requires more than intent as volition or intent as

21  awareness of consequences." *Iqbal*, 129 S. Ct. at 1948 (internal quotation marks and

22  citation omitted).  It requires "a decisionmaker's undertaking a course of action

23  because of, not merely in spite of . . . adverse effects upon an identifiable group."

24  *Id.* (internal quotation marks and citation omitted).  Applying that standard in *Iqbal*,

25  the Supreme Court made clear that qualified immunity barred claims of "invidious

26  discrimination in contravention of the First and Fifth Amendments" where

27  defendants only allegedly supervised the implementation of federal counterterrorism

28  policies that discriminated against Muslims. *Id.* at 1944, 1948.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

As in *Iqbal*, the Complaint in this case does not plausibly allege that Tidwell or Walls "adopted and implemented the . . . policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of" Plaintiffs' religion. *Id*. at 1948-49.  As discussed above, Plaintiffs attribute *no* purpose at all to Tidwell's alleged conduct, and their description of his mere supervision and implementation of counterterrorism policies (Compl. ¶ 20) cannot "plausibly suggest an entitlement to relief."  *See Iqbal*, 129 S. Ct. at 1951 (allegations that Attorney General was "principal architect" of "invidious policy" and FBI Director was "instrumental" in executing it insufficient).  And although Plaintiffs claim that Walls "monitored, directed, and authorized the actions of Agents Armstrong and Allen . . . for the purpose of surveilling Plaintiffs . . . because they were Muslim" (Compl. ¶ 21), this is nothing more than a bare assertion that, under *Iqbal* and *Twombly*, does not plead facts with sufficient specificity that they are "entitled to the assumption of truth."  *Iqbal*, 129 S. Ct. at 1950; *see id*. at 1949 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Twombly*, 550 U.S. at 555.

Moreover, any allegation that Tidwell and Walls themselves purposefully discriminated against Plaintiffs on the basis of religion would be implausible in light of Plaintiffs' other allegations.  After all, the Complaint alleges that Defendants "operated under the principles set forth" in the Attorney General's Guidelines and the DIOG, which explicitly *prohibited* investigative activity based solely on religion and First Amendment activities.  *See* Compl. ¶ 37.  Similarly, the Complaint contains numerous allegations that the investigation was related to valid counterterrorism efforts.  *See supra* Background § A.  Such allegations offer precisely the kind of "obvious alternative explanation" that this Court should credit as more plausible than Plaintiffs' general and conclusory allegations of "purposeful, invidious discrimination" on the part of Tidwell or Walls.  *Iqbal*, 129 S. Ct. at 1951.  Indeed, as the Supreme Court recognized in *Iqbal*,

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1

2

3

4

> It should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the [September 11] attacks would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims.

5   *Id.*

6   Because the Complaint fails to allege a violation of the First and Fifth

7   Amendments, logically it could not have been clearly established at the time that

8   Tidwell's and Walls's alleged conduct violated Plaintiffs' rights.  *See Presbyterian*

9   *Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir. 1989) (rejecting

10  argument that undercover electronic surveillance of church services violated clearly

11  established First Amendment rights); *see also al-Kidd*, 131 S. Ct. at 2084 ("We have

12  repeatedly told courts . . . not to define clearly established law at a high level of

13  generality." (internal citation omitted)); *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.

14  Ct. 2151, 2158-59, 150 L. Ed. 2d 272, 284 (2001) (right clearly established if "[t]he

15  contours of the right [are] sufficiently clear that a reasonable official would

16  understand that what he is doing violates that right" (internal quotation marks and

17  citation omitted)), *overruled on other grounds by Pearson*, 555 U.S. 223.[10]

18  **B.     Qualified Immunity Bars Plaintiffs' Fourth Amendment Claim**

19  For similar reasons, qualified immunity bars Plaintiffs' Fourth Amendment

20  claim against Tidwell and Walls (Count 9), which alleges that the informant, at the

21

22  _____

[10] Qualified immunity is also appropriate with respect to the Section 1985(3) constitutional claims alleged in Counts 2, 4, and 7 because it is not clearly

23  established—and was certainly not clearly established in 2006 and 2007—that this provision applies to conspiracies other than those motivated by racial animus.  The

24  Ninth Circuit has not determined whether a religious group may be a protected class for purposes of Section 1985(3).  *See Webb v. Cnty. of Trinity*, 734 F. Supp. 2d 1018,

25  1033 n.8 (E.D. Cal. 2010).  Indeed, the Supreme Court has acknowledged that this issue remains open, noting that it has "addressed and upheld a claim under § 1985(3)"

26  only once, "and that case involved race discrimination."  *Bray v. Alexandria Clinic Women's Health*, 506 U.S. 263, 269, 113 S. Ct. 753, 759, 122 L. Ed. 2d 34, 46 (1993)

27  (citing *Griffin*, 403 U.S. 88).  Therefore, even if the Complaint had plausibly alleged the existence of a conspiracy, qualified immunity requires dismissal of the First and

28  Fifth Amendment claims under Section 1985(3) given the unsettled nature of the law.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1  direction of the FBI, conducted unlawful video and audio recording of Plaintiffs in

2  mosques, in homes, and at sporting events.  As an initial matter, it is well established

3  that undercover surveillance of a religious community does not, without more,

4  violate clearly established Fourth Amendment rights.  *See Presbyterian Church*, 870

5  F.2d at 527.  Moreover, Plaintiffs again seek improperly to hold Tidwell and Walls

6  accountable for the conduct of the informant and their subordinates, while failing to

7  allege that either Tidwell or Walls had any personal involvement in or directed the

8  allegedly unlawful searches, much less that the informant's conduct occurred in

9  circumstances in which Plaintiffs had a reasonable expectation of privacy.[11]

10  Because there was no violation here, it necessarily follows that it was not clearly

11  established at the time that Tidwell's and Walls's alleged conduct violated the

12  Fourth Amendment.

13       **1.**    **Plaintiffs Fail To Allege That Tidwell Or Walls Was Personally Involved In The Purported Searches, Or That A Sufficient Causal Connection Between Their Conduct And The Alleged Violation Otherwise Existed**

16  Plaintiffs can state a Fourth Amendment claim against supervisors such as

17  Tidwell or Walls only by plausibly alleging that they were "personally involved" in

18  the allegedly unlawful search or that a "sufficient causal connection exists" between

19  their alleged conduct and the violation.  *Edgerly*, 599 F.3d at 961 (internal quotation

20  marks omitted); *Lacey v. Maricopa Cnty.*, Nos. 09-15703, 09-15806, 2011 WL

21  2276198, at *13 (9th Cir. June 9, 2011) (same); *see also Leer v. Murphy*, 844 F.2d

22  628, 633 (9th Cir. 1988) (when evaluating constitutional deprivations, "[t]he inquiry

23  into causation must be individualized and focus on the duties and responsibilities of

24  each individual defendant").  To satisfy this requirement, Plaintiffs must allege, at a

25  minimum, that Tidwell and Walls "set[] in motion a series of acts by others which

26

27  [11] Defendants address only the Fourth Amendment claims specific to Plaintiffs, and not those alleged with respect to unnamed individuals, as Fourth Amendment rights "are personal rights" that may not be asserted vicariously.  *Rakas v. Illinois*, 439 U.S.

28  128, 138, 99 S. Ct. 421, 427-28, 58 L. Ed. 2d 387, 397-98 (1978).

1   [they knew] or reasonably should [have known] would cause others to inflict the

2   constitutional injury."  *Kwai Fun Wong v. United States*, 373 F.3d 952, 966 (9th Cir.

3   2004) (internal quotation marks and citation omitted).

4        The Complaint fails to satisfy these requirements.  It does not allege in any

5   manner whatsoever that either Tidwell or Walls was "personally involved" in the

6   purported searches, nor does it offer any facts—much less specific ones—showing

7   that "a sufficient causal connection exists" between their actions and the alleged

8   Fourth Amendment violations, such as personally directing the agents or the

9   informant to engage in activities that could plausibly constitute an unlawful search.

10  At most, the Complaint alleges in the most general terms that Tidwell and Walls

11  authorized and supervised the overall investigation.  But such generalized

12  allegations are insufficient to state a Fourth Amendment Claim.  *See Lyall*, 2011 WL

13  61626, at *13 ("[A]bsent evidence of culpable inaction that caused or set in motion

14  the alleged constitutional violations suffered by Plaintiffs, the Court finds that

15  Plaintiffs cannot establish supervisory liability[.]").  And since Plaintiffs have failed

16  to allege that Defendants Tidwell and Walls had the requisite personal involvement

17  necessary to state a claim against them, it certainly follows that it was not clearly

18  established at the time that Tidwell and Walls could be held liable for an alleged

19  Fourth Amendment violation based on the conduct alleged.

### 2.   Plaintiffs Fail To Allege A Reasonable Expectation Of Privacy In The Circumstances Of The Alleged Searches

22       Even if Plaintiffs had adequately alleged the personal involvement of

23  Defendants Tidwell and Walls in the purported searches, to invoke the Fourth

24  Amendment, Plaintiffs must also establish that the alleged conduct infringed on a

25  legitimate expectation of privacy that society recognizes as reasonable.  *See United

26  States v. Nerber*, 222 F.3d. 597, 599 (9th Cir. 2000).  But Plaintiffs do not allege, nor

27  could they, that they had a reasonable expectation of privacy with respect to any of

28  the challenged recordings.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1    Plaintiffs allege that the informant was directed by the case agents to conduct

2  recordings in Plaintiff AbdelRahim's home, but they also allege that the informant

3  did so only *after having been invited in*.  *See* Compl. ¶ 195.  Undercover operations,

4  in which the agent is a so-called "invited informer," are not "searches" under the

5  Fourth Amendment.  *Mayer*, 503 F.3d at 750 (citing *United States v. Aguilar*, 883

6  F.2d 662, 701 (9th Cir. 1989)).  Indeed, "[t]he Supreme Court [has] unmistakably

7  declared that persons have no expectation of privacy or confidentiality in their

8  conversations and relations with other persons, no matter how secretive the setting."

9  *Aguilar*, 883 F.2d at 703.  Therefore, pursuant to the "invited informer" doctrine,

10  Plaintiff AbdelRahim lacked any expectation of privacy with regard to the

11  informant's alleged recording in his home.[12]  *See Mayer*, 503 F.3d at 751 ("no

12  probable cause [is] required under the invited informer doctrine").

13    In addition, Plaintiffs allege that the informant was directed to conduct

14  recordings in mosques, at lectures, and at sporting events; however, they do not

15  allege that these places were closed to the general public when the recordings

16  purportedly occurred.  Because individuals could freely enter and exit these spaces

17  (as the informant apparently did), Plaintiffs lacked a reasonable expectation of

18  privacy in the conversations that occurred there.  *See Lyall*, 2011 WL 61626, at *5

19  (no reasonable expectation of privacy at warehouse that "was not used for residential

20  purposes," was used to host a public event, and over which plaintiffs possessed no

21  possessory interest); *United States v. Gonzalez*, 328 F.3d 543, 547-48 (9th Cir. 2003)

22  (video surveillance of hospital mail room did not violate Fourth Amendment

23  because there was no reasonable expectation of privacy in room whose doors remain

24  open throughout business day and which receives "heavy foot traffic during business

25

26  _____

    [12] The Complaint also alleges in conclusory terms, without more, that "the FBI had
27  electronic listening devices in AbdelRahim's house . . . car and phone."  Compl. ¶
    204.  Plaintiffs do not allege which individual-capacity Defendants participated in this
28  claimed activity, and claims wholly lacking in factual support should be rejected by
    the Court.  *See Iqbal*, 129 S. Ct. at 1949.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

hours"); *United States v. Little*, 753 F.2d 1420, 1435-36 (9th Cir. 1984) (no reasonable expectation of privacy in reception area when public and other workers may enter area freely).

Likewise, Plaintiffs' allegations that the informant gathered license plate numbers, addresses, telephone numbers, email addresses, and attendee lists are insufficient to state a Fourth Amendment claim. The Complaint does not allege any facts showing the informant gathered this information from non-public sources or otherwise using unlawful means. And to the extent others provided this information to the informant, "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743-44, 99 S. Ct. 2577, 2582, 61 L. Ed. 2d 220, 239-29 (1979) (telephone numbers); *see also United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2007) (to/from addresses of email messages); *United States v. Hinton,* 222 F.3d 664, 675 (9th Cir. 2000) (address affixed to envelope).

Because none of the surveillance alleged in the Complaint occurred in circumstances in which Plaintiffs had a reasonable expectation of privacy, they have therefore failed plausibly to allege that such surveillance was clearly established at the time to violate the Fourth Amendment.

### C.    Qualified Immunity Bars Plaintiffs' RFRA Claim

Defendants Tidwell and Walls are also entitled to qualified immunity on Plaintiffs' RFRA claim (Count 5) because RFRA does not provide a damages cause of action against individuals and, even if it did, Plaintiffs fail to allege that Tidwell's or Walls's actions have placed a substantial burden on Plaintiffs' free exercise of religion. Indeed, Plaintiffs' RFRA claim presents precisely the kind of balancing of interests for which qualified immunity is particularly appropriate.

### 1.    RFRA Does Not Permit Suits For Damages Against Individual-Capacity Defendants

As a threshold matter, RFRA permits "a person whose religious exercise has been burdened" to "assert that violation as a claim or defense in a judicial proceeding" and to "obtain appropriate relief against a government."  42 U.S.C. § 2000bb–1(c).   The individual-capacity defendants like Tidwell and Walls are not "governments," however, and therefore this provision does not authorize damages suits against them.  RFRA's definition of "government," read in context, reaffirms this reading.  The statute defines "government" to include "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, a State, or subdivision of a State."  *Id.* § 2000bb-2(1).  The term "official" is most naturally read to authorize official-capacity suits, which, consistent with the text, would seek "relief against [the] government."  *Id.* § 2000bb–1(c); *see Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3104-05, 87 L. Ed. 2d 114, 121 (1985) (official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" (internal quotation marks omitted)).

Even if this Court were to hold that RFRA permits damages actions against government officials in their individual capacities, this principle is far from clearly established today, much less at the time of the investigation in this case.  Indeed, at least one court recently has concluded that RFRA *does not* "support damage claims against government officials in their individual capacity."  *Jean-Pierre v. Bureau of Prisons*, No. 09-266, 2010 WL 3852338, at *6 n.4 (W.D. Pa. July 30, 2010).  And although other courts have permitted such actions, these decisions did not rely upon the text of RFRA itself, and in any event were district court decisions that would be insufficient to create a clearly established right.  *See al-Kidd*, 131 S. Ct. at 2084 (district court decision "is not 'controlling authority' in any jurisdiction, much less in the entire United States," as "controlling authority" requires "a robust 'consensus

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1  of cases of persuasive authority'" (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119

2  S. Ct. 1692, 1700, 143 L. Ed. 2d 818, 832 (1999)); *see, e.g.*, *Lepp v. Gonzales*, No.

3  C-05-0566, 2005 WL 1867723, at *8 (N.D. Cal. Aug. 2, 2005); *Keen v. Noble*, No.

4  CV F 04-5645, 2007 WL 2789561, at *9 (E.D. Cal. Sept. 20, 2007).

5  ### 2.  Plaintiffs Have Not Alleged A "Substantial Burden" On Free Exercise

6

7  Plaintiffs also fail to allege, as they must, facts sufficient to plead that

8  Tidwell's or Walls's activities placed a "substantial burden" on Plaintiffs' exercise

9  of religion.[13]

10  Under RFRA, Plaintiffs must allege and prove a substantial interference with

11  the right of free exercise.  *See Worldwide Church of God v. Philadelphia Church of*

12  *God, Inc.*, 227 F.3d 1110, 1120 (9th Cir. 2000).  A "substantial burden" on free

13  exercise exists only when the government "has coerced the Plaintiffs to act contrary

14  to their religious beliefs under threat of sanctions, or condition a governmental

15  benefit upon conduct that would violate the Plaintiffs' religious beliefs."  *Navajo*

16  *Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1063 (9th Cir. 2008) (en banc).  But

17  Plaintiffs do not make a plausible claim that Defendants Tidwell or Walls did

18  either.[14]  "[A] government action that decreases the spirituality, the fervor, or the

19  satisfaction with which a believer practices his religion is not what Congress has

20  labeled a 'substantial burden' . . . on the free exercise of religion."  *Id.*, 535 F.3d at

21  _____

22  [13] Because "substantial burden" refers to constitutional Free Exercise standards, *see Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1063 (9th Cir. 2008) (en banc), the

23  Complaint has also failed to state a claim for violation of the Free Exercise Clause (Counts 3 and 4).

24  [14] Plaintiffs allege that they did not know of the informant's activities until *after* the purported surveillance ended, and only then did Plaintiffs Malik and AbdelRahim

25  claim to have decreased their mosque attendance.  Compl. ¶¶ 76, 212.  They do not allege that their religious exercise was substantially burdened by the informant's

26  activities while ongoing, and any subsequent change in their mosque attendance is motivated only by speculative, after-the-fact concerns regarding imagined

27  investigations, not the informant's alleged conduct.  Plaintiff Fazaga also alleges the informant caused damage to the "trust within and cohesion of his congregation,"

28  which "directly undermined the Islamic practice of jama'ah, or worship in a congregation."  *Id.* ¶ 63.  These claims do not go to Fazaga's own religious exercise.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

1063.  Quite simply, the allegations in the Complaint cannot be plausibly read to suggest coercion of any kind or the conditioning of any governmental benefit.

For the same reasons, Tidwell and Walls could not have been expected reasonably to believe at the time that the alleged conduct violated RFRA.  Qualified immunity protects government officials who do not have fair warning about the legality of their actions, and therefore courts have made clear that the very kind "of sophisticated balancing of interests" inherent in RFRA "is the very type of discretionary decision making that prevents a finding of clearly established federal law on the issue." *Lebron*, 764 F. Supp. 2d at 805 (granting qualified immunity on RFRA claim) (internal quotation marks omitted).  Indeed, qualified immunity is particularly appropriate in this case because RFRA *permits* a substantial burden on religion where the government can demonstrate that its actions were "in furtherance of a compelling state interest" and it used "the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb–1(b)(2).

### D.        Qualified Immunity Bars Plaintiffs' FISA Claim

Finally, qualified immunity bars Plaintiffs' FISA claim under 50 U.S.C. § 1810 (Count 10).  As an initial matter, Plaintiffs fail to allege facts demonstrating that they are "aggrieved person[s]" who may bring such a claim.  Section 1810 of FISA authorizes suits only by an "aggrieved person," which is defined as "the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance."  50 U.S.C. § 1801(k).  "Electronic surveillance," in turn, is defined as the use of an electronic device "for monitoring to acquire information . . . under circumstances in which a person has *a reasonable expectation of privacy*[.]"  *Id.* § 1801(f)(4) (emphasis added).  As discussed *supra* Argument § IV.B.2, however, Plaintiffs had no reasonable expectation of privacy in the circumstances alleged in the Complaint, and for that same reason, they have failed to allege that they were aggrieved by electronic surveillance.  *See ACLU v. NSA*, 493 F.3d 644, 683 (6th Cir. 2007) ("[A]ggrieved person is intended to be

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

coextensive with, but no broader than, those persons who have standing to raise claims under the Fourth Amendment with respect to electronic surveillance.") (citation omitted); *In re NSA Telecomm. Records Litig.*, 595 F. Supp. 2d 1077, 1084 (N.D. Cal. 2009) (requiring "particularized and specific" allegations to state a claim under Section 1810).

Even if Plaintiffs adequately had pleaded that they are "aggrieved person[s]" subjected to electronic surveillance, the Complaint also lacks the requisite allegations that Defendants Tidwell or Walls intended to conduct illegal electronic surveillance.  Under 50 U.S.C. § 1809—the "violation of which forms the basis for liability under section 1810," *In re NSA Telecomm. Records Litig.*, 564 F. Supp. 2d 1109, 1125 (N.D. Cal. 2008)—liability attaches only if a particular defendant has "*intentionally* engag[ed] in electronic surveillance under color of law except as authorized by statute," *id.* (emphasis added) (internal quotation marks omitted); *see also* H.R. Rep. No. 95-1283, at 97 (1978) (statute should be interpreted as requiring "intentional violation of an order or one of the specified provisions, not just intentional conduct").  But the Complaint fails to allege that either Tidwell or Walls personally conducted or authorized any surveillance activity with the intent to violate the law, and this claim must fail on that ground as well.

For all of the same reasons—and particularly in light of the dearth of judicial guidance in this area, *see In re NSA Telecomm. Records Litig.*, 564 F. Supp. 2d at 1137 (noting "[t]he lack of precedents under section 1810")—it was not clearly established at the time that Tidwell and Walls could be held liable for violating FISA in the circumstances alleged.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

## CONCLUSION

For the foregoing reasons, Defendants Tidwell and Walls's Motion to Dismiss should be granted in its entirety.

Dated:  August 9, 2011

Respectfully submitted,

WILMER CUTLER PICKERING
  HALE AND DORR LLP

By:     /s/ Brian R. Michael

Brian R. Michael
P. Patty Li
Katie Moran
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone:  (213) 443-5300
Facsimile:  (213) 443-5400

Howard M. Shapiro
Carl J. Nichols
Annie L. Owens
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

*Attorneys for Defendants*
*J. Stephen Tidwell and Barbara Walls*