1  TONY WEST
   Assistant Attorney General
2  ANDRE BIROTTE, JR.
3  United States Attorney
   VINCENT M. GARVEY
4  Deputy Branch Director
5  ANTHONY J. COPPOLINO
   E-mail: tony.coppolino@usdoj.gov
6  LYNN Y. LEE (SBN #235531)
7  E-mail: lynn.lee@usdoj.gov
8  U.S. Department of Justice
   Civil Division, Federal Programs Branch
9  20 Massachusetts Avenue, N.W.
   Washington, D.C. 20001
10 Telephone:  202-305-0531
11 Facsimile:   202-616-8470
   *Attorneys for Defendants*
12 *Federal Bureau of Investigation,*
13 *Robert Mueller and Steven Martinez*
14 *in their Official Capacities*
15

16              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
17

18 YASSIR FAZAGA *et al.*,            CASE:  SA11-CV-00301 CJC
                                      (VBKx)
19            Plaintiffs,

20      v.                            **GOVERNMENT DEFENDANTS'**
21                                    **RESPONSE TO PLAINTIFFS'**
                                      ***EX PARTE* APPLICATION**
   FEDERAL BUREAU OF INVESTIGATION
22 *et al.*
                                      Judge:   Hon. Cormac J. Carney
23            Defendants.

24

25

26

27

28

GOVERNMENT DEFENDANTS'
RESPONSE TO EX PARTE APPLICATION                    Case No. SA11-CV-301 CJC (VBKx)

# **INTRODUCTION**

Contending that they have at least a "colorable argument" that the state secrets privilege is unavailable here as a matter of law, plaintiffs have sought extraordinary relief to prevent the Court from even reading the Government's classified submissions prior to full briefing on its pending Motion to Dismiss and for Summary Judgment. Whether the Court would prefer to read the Government's submissions now, after briefing, or at any time prior to issuing a decision lies fully within the Court's discretion. However, there is no doubt that *in camera, ex parte* review of the submissions at any time the Court chooses is fully consistent with due process principles.

At the outset, plaintiffs have articulated no harm that would justify the relief they seek. Even the cases they cite — which are inapposite — apply only to a court's reliance on *ex parte* submissions, not its mere exposure to such submissions. More to the point, plaintiffs cite no authority even suggesting that the applicability of the state secrets privilege can be decided without considering the very information offered by the Government to show the harms to national security at stake. Courts, including the Ninth Circuit, have repeatedly held that *ex parte* submissions are appropriate for deciding whether the Government has established a basis for the privilege in a particular case.

Plaintiffs contend that a different approach is required here because they purportedly seek injunctive relief to remedy an ongoing constitutional violation arising out of a "domestic" investigation. Even assuming plaintiffs correctly characterize their complaint for purposes of this motion, whether the state secrets privilege has been properly asserted turns not on the type of investigation or claim at issue, but on whether harm to national security could reasonably be expected to result from disclosure of the privileged information. As to that question, the Court would be most directly informed by reviewing the very submission plaintiffs ask the Court not to read.

1

GOVERNMENT DEFENDANTS'
RESPONSE TO EX PARTE APPLICATION                    Case No. SA11-CV-301 CJC (VBKx)

For these reasons, the Government does not agree that these important submissions are off limits until after the Court decides whether the privilege may be asserted here. The Government of course defers to the Court on when it wishes to review the classified submissions.  But the Government opposes plaintiffs' motion because there is no legal bar to the Court's review of these materials at any point while the privilege assertion is pending, and because the materials are relevant — indeed, essential — to deciding whether the Government's invocation of the state secrets privilege should be sustained.

## BACKGROUND

On August 2, 2011, the day after the Government Defendants filed their dispositive motion in this case, plaintiffs requested that the Government "stipulate that the Court should not review the *in camera, ex parte* evidence and argument until it has made an initial determination as to whether or not the state secrets doctrine can properly be invoked in this case." *See* Tab 1.  Plaintiffs stated that they intended to brief that issue either prior to or as part of their response to the Government's motion to dismiss.  *See id*. The Government declined to so stipulate because, as set forth below, plaintiffs' request has no basis in law and would exclude the very information that supports invocation of the privilege in this case.  Later that same day, plaintiffs indicated that they would file an *ex parte* application "requesting that the Court not review the sealed, in camera submissions until it has ruled that, as a matter of law, the state secrets privilege can be invoked in this case." *See id*.  Plaintiffs filed their application on August 4, 2011.

## ARGUMENT

I.   **THERE IS NO DUE PROCESS BAR TO THE COURT'S REVIEW OF THE GOVERNMENT'S CLASSIFIED SUBMISSIONS**.

Plaintiffs contend that the Court should refrain from reviewing the Government's *in camera, ex parte* submissions in support of the Attorney General's state secrets privilege assertion because due process considerations disfavor *ex parte* review in these

2

1   circumstances.  Pls.' *Ex Parte* App. at 4-5.  Plaintiffs also appear to suggest that the Court

2   should refrain from such review because they plan to argue that the privilege could not be

3   asserted in this case as a matter of law.  *Id.* at 5-8.  As explained below, there is no legal

4   bar to an assertion of the privilege in this case.  But the Court need not even reach that

5   issue because there is manifestly no due process concern that forestalls the Court's

6   review of the Government's *ex parte* submissions.

7           Plaintiffs' argument is flawed at the outset.  Their request for emergency relief

8   presumes that due process would preclude the Court from even examining classified

9   evidence, even if the Court were ultimately to decide that such evidence is irrelevant to

10  the issues at hand.  But there is no basis for that presumption.  Once presented, classified

11  evidence (like other evidence) can be relied upon or not as the law requires.  However, no

12  case suggests that the Court's mere *exposure* to such evidence somehow taints the

13  proceedings so as to justify the plaintiffs' intrusion on the Court's discretion to review the

14  materials presented to it.

15          Even if plaintiffs' concern were focused on the Court's reliance on, rather than its

16  exposure to, classified evidence, their argument would fare no better.  The Ninth Circuit

17  has specifically countenanced the use of *ex parte* classified submissions in state secrets

18  privilege cases.  *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1084 n.6 (9th Cir.

19  2010) (en banc); *Al-Haramain Islamic Found. v. Bush*, 507 F.3d 1190, 1203 (9th Cir.

20  2007); *Kasza v. v. Browner*, 133 F.3d 1159, 1169-70 (9th Cir. 1998).   In *Jeppesen*, the

21  Ninth Circuit "thoroughly and critically" reviewed the Government's public and

22  classified submissions and found that "[t]he government's classified disclosures to the

23  court are persuasive that compelled or inadvertent disclosure of such information in the

24  course of litigation would seriously harm legitimate national security interests."

25  *Jeppesen*, 614 F.3d at 1086.  Such submissions serve the vital purpose of allowing courts

26  to independently evaluate the basis for the privilege assertion.  *See id.* at 108; *see also Al-*

27

28

3

1     *Haramain*, 507 F.3d at 1203-04 (noting, in upholding privilege, that court had examined

2 both public and sealed declarations and was "satisfied that the basis for the privilege is

3 exceptionally well documented").  Tellingly, plaintiffs, in making their due process

4 argument, do not cite a single case involving the state secrets privilege, and pointedly

5 ignore the three Ninth Circuit cases — as well as cases from other circuits — that directly

6 conflict with their argument.  *See also El-Masri v. United States*, 479 F.3d 296, 312 (4th

7 Cir. 2007) (noting "[w]e have reviewed the Classified Declaration, as did the district

8 court, and the extensive information it contains is crucial to our decision in this matter"

9 and that "[a]n inherent feature of the state secrets privilege . . . is that the party against

10 whom it is asserted will often not be privy to the information that the Executive seeks to

11 protect"); *Ellsberg v. Mitchell*, 709 F.2d 51, 59 (D.C. Cir. 1983) (noting, in reviewing

12 state secrets privilege assertion, that "we have examined all of the various affidavits and

13 exhibits submitted to the District Court for *in camera* inspection"); *Halkin v. Helms*, 598

14 F.2d 1, 5 (D.C. Cir. 1978) ("It is settled that in camera proceedings are an appropriate

15 means to resolve disputed issues of privilege.").

16     The principal authority on which plaintiffs rely, *American-Arab Anti-Discrim.*

17 *Comm .v. Reno*, 70 F.3d 1045 (9th Cir. 1995), actually undermines their argument.  In

18 that case, the Ninth Circuit held that the Government's use of undisclosed classified

19 information to deny applications for legalization under a 1986 immigration statute

20 violated due process.  *Reno*, 70 F.3d at 1070.  However, the court specifically

21 distinguished cases in which the Government, as defendant, seeks to withhold

22 information on the ground that its disclosure would harm national security.  The Ninth

23 Circuit noted that "[a] formal claim of a 'state secrets privilege' may prevent discovery

24 and shield the use of materials against the Government," but that the Government there

25 was seeking to use the undisclosed information as a "sword against the aliens."  *Id.*

26 (citing *United States v. Reynolds*, 345 U.S. 1, 6-7, 73 S. Ct. 528, 531-32, 97 L. Ed. 727

27

28

4

(1953), and *Ellsberg*, 709 F.2d at 64).[1]  *See also Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986) (Ginsburg, J.) (citing general rule against deciding cases on their merits based on *ex parte* consideration of evidence, but specifically noting several exceptions to that rule, including use of *ex parte* proceedings to rule on claims of state secrets privilege and Freedom of Information Act requests).

Here, the Government does not rely upon its *in camera, ex parte* submissions to prevail on the merits of plaintiffs' claims but rather to protect privileged information from disclosure.  That process necessarily entails providing the Court a detailed explanation of the privileged information and reasons why disclosure of this information would harm national security.  *See, e.g., Jeppesen*, 614 F.3d at 1086.  Mere review of this information by the Court, in order to determine whether it should be excluded from this case, does not constitute the use of that information to decide the plaintiffs' claims on the merits.  As such, it does not violate plaintiffs' due process rights, and the Court can and should deny plaintiffs' motion on this basis alone.

## II.   THERE IS NO LEGAL BAR TO THE STATE SECRETS PRIVILEGE ASSERTION IN THIS CASE.

Assuming *arguendo* that it has any bearing on their current request, plaintiffs' contention that the state secrets privilege is inapplicable to this case — because it supposedly involves "injunctive relief from an on-going constitutional violation arising from a domestic law enforcement program implemented against United States citizens

---

[1] Similarly, the other cases plaintiffs cite for their argument that the Court should not review the Government's *in camera* submissions involved criminal prosecutions or other proceedings in which the Government was seeking to use *ex parte* evidence as a sword rather than a shield.

GOVERNMENT DEFENDANTS'
RESPONSE TO EX PARTE APPLICATION                          Case No. SA11-CV-301 CJC (VBKx)

(and lawful permanent residents) on United States soil"— is entirely without foundation. Pls.' App. at 6.[2]

To be clear, Government Defendants recognize that the state secrets privilege is to be invoked only rarely, and that it requires a "serious, considered judgment" reflecting the "personal judgment," in this instance, of the Attorney General. *Jeppesen*, 614 F.3d at 1080. And the privilege is invoked only after application of the Administration's state secrets review policy, reflected in its September 23, 2009 memorandum. *Id.* at 1090. But nothing in the case law or Executive Branch policy provides that the privilege, having been properly invoked, is subject to the novel categorical bars that plaintiffs ask this Court to impose. While plaintiffs claim to have reviewed sixty cases on the matter, *see* Pls.' App. at 6, they do not cite a single case in support of their theory. That is because the applicability of the state secrets privilege does not turn on the nature of the claim asserted or the relief sought, or on a plaintiff's characterization of the claim. Rather, the privilege applies where the disclosure of information in litigation reasonably could be expected to harm national security. *Reynolds*, 345 U.S at 10-11; *Al-Haramain Islamic Found.*, 507 F.3d at 1196. Neither the Supreme Court nor the Ninth Circuit has ever given the slightest indication that this longstanding principle must give way in cases involving particular claims or facts.

To the extent that plaintiffs imply otherwise, the state secrets privilege has been upheld in cases involving constitutional claims. *See, e.g., Al-Haramain*, 507 F.3d at 1193; *El-Masri*, 479 F.3d at 299-300; *Ellsberg*, 709 F.2d at 52; *Halkin*, 598 F.2d at 3, 8. And plaintiffs cite no case — nor is the Government aware of any — where a court has

---

[2] The Government also takes issue with this characterization of plaintiffs' claims. As to the individual capacity defendants, plaintiffs are in fact seeking damages, and the Government has asserted privilege over the information these defendants will need to defend themselves. In addition, although plaintiffs seek the destruction or return of information that plaintiffs allege was collected, there is no dispute that the alleged confidential source in this case is no longer providing information to the FBI.

6

rejected application of the privilege as a legal matter because constitutional claims

seeking *injunctive relief* were at issue.  Indeed, contrary to plaintiffs' characterization of

*Al-Haramain*, the privilege was upheld in that case, where constitutional claims were at

issue and the plaintiffs did seek injunctive relief, including (as here) the destruction of

records.  *See Al-Haramain Islamic Found. v. Bush*, 451 F. Supp. 2d 1215, 1218 (D. Or.

2006), *rev'd,*507 F.3d at 1204-05.[3]  *See also Halkin*, 598 F.2d at 3 (plaintiffs seeking

declaratory and injunctive relief as well as damages for constitutional claims); *ACLU v.

Nat'l Security Agency*, 493 F.3d 644, 649-50 (6th Cir. 2007) (Batchelder, J.) (noting, in

action seeking injunction against allegedly unconstitutional warrantless wiretapping, that

district court had upheld state secrets privilege); *Doe v. CIA*, 2007 WL 30099, *1, 4

(S.D.N.Y. Jan. 4, 2007), *aff'd*, 576 F.3d 95 (2d Cir. 2009) (dismissing action seeking

declaratory and injunctive relief for constitutional and statutory claims based on state

secrets privilege); *Edmonds v. U.S. Dep't. of Justice*, 323 F. Supp. 2d 65, 68 (D.D.C.

2004), *aff'd*, 161 Fed. Appx. 6 (D.C. Cir. 2005) (same).[4]

Plaintiffs' proposition that the Attorney General could not even assert the privilege

on behalf of the investigative information at issue, because it allegedly involves an

investigation within the United States of United States citizens, is likewise meritless.

There is plainly no bar on an assertion of the state secrets privilege to protect information

held by the FBI.  *See Molerio v. FBI*, 749 F.2d 815, 820-22 (D.C. Cir. 1984) (Scalia, J.)

(state secrets privilege validly invoked to protect FBI intelligence information related to

---

[3]  Plaintiffs also mischaracterize the Ninth Circuit's holding in *Al-Haramain*.  The Ninth
Circuit held that because the privilege assertion foreclosed plaintiffs from establishing
standing, the case *should* be dismissed *unless* the privilege was preempted by statute —
an issue not yet resolved and currently on appeal.  *Al-Haramain*, 507 F.3d at 1205-06.

[4] Although the district court's opinion in *Edmonds* did not discuss the relief sought, the
plaintiff's complaint in that case requested declaratory and injunctive relief in addition to
damages.

GOVERNMENT DEFENDANTS'
RESPONSE TO EX PARTE APPLICATION                         Case No. SA11-CV-301 CJC (VBKx)

decision to deny employment); *Edmonds*, 323 F. Supp. 2d at 70-77 (upholding Attorney General state secrets privilege assertion to protect classified FBI information); *see also Ellsberg*, 709 F.2d at 56-59 (upholding Attorney General state secrets privilege assertion to protect information concerning FBI wiretaps); *Jabara v. Kelly*, 75 F.R.D. 475, 482-89 (E.D. Mich. 1975) (same).  The FBI undertakes investigations for many reasons, including the protection of national security by seeking to detect and prevent terrorist attacks on the homeland that may originate with terrorist entities overseas or through individuals in the United States radicalized by foreign powers or organizations.  *See* Public Declaration of Mark F. Giuliano ¶ 7.  Here, the FBI seeks to protect certain counterterrorism investigative information in this case, and the Attorney General has attested that disclosure of the privileged information reasonably could be expected to cause significant harm to national security.  *See* Declaration of Attorney General Eric H. Holder ("Holder Decl.") ¶ 3. Whether a state secrets privilege assertion is appropriate in a particular case does not turn on *where* the FBI investigates the threat of terrorism but on the harm to national security would result from a disclosure.

Finally, it is beyond dispute that the FBI maintains and routinely protects information classified under Executive Order 13526, which expressly applies to "national security information" and to disclosures of such information that would cause damage to national security.  *See* E.O. 13526, § 1.2(c) (classification levels), 75 Fed. Reg. 707 (Dec. 29, 2009).  In this very case, Attorney General Holder has attested that the classified declaration of FBI Assistant Director Giuliano, which plaintiffs seek to prevent the Court from reading, is properly classified under the Executive Order because its disclosure would harm national security.  *See* Holder Decl. ¶ 3.  Moreover, courts have specifically recognized in the FOIA context that the FBI may protect national security information related to counterterrorism investigations, including the identities of investigative subjects.  *See, e.g., Council on American-Islamic Relations, California v. FBI,* 749 F.

8

Supp. 2d 1104, 1110-13 (S.D. Cal. 2010). Plaintiffs offer no reason why the Attorney General could not seek to protect the very same national security information through the state secrets privilege.

## **CONCLUSION**

The Government reiterates that whether the Court wishes to read the Government Defendants' classified submissions now, or would prefer to wait until all briefing is completed, lies fully within its discretion. But there is no legal impediment to the Court's review of these submissions on due process or any other grounds. For these reasons, plaintiffs' *ex parte* application should be denied.

9

GOVERNMENT DEFENDANTS'
RESPONSE TO EX PARTE APPLICATION                    Case No. SA11-CV-301 CJC (VBKx)

1     Dated: August 10, 2011                              Respectfully submitted,

2

3                                           TONY WEST

4                                           Assistant Attorney General

5                                           ANDRE BIROTTE, JR.

6                                           United States Attorney

7                                           VINCENT M. GARVEY

8                                           Deputy Director, Federal Programs Branch

9                                     */s/ Anthony J. Coppolino*

10                                         ANTHONY J. COPPOLINO

11                                         Special Litigation Counsel

12                                     */s/ Lynn Y. Lee*

13                                         Lynn Y. Lee (SBN #235531)

14                                         Trial Attorney

15                                         U.S. Department of Justice, Civil Division

16                                         Federal Programs Branch
                                      Tel: (202) 305-0531

17                                         Fax: (202) 616-8470
                                      E-mail:  Lynn.Lee@usdoj.gov

18

19                                         *Attorneys for Defendants Sued in their Official Capacities*

20

21

22

23

24

25

26

27

28

                                   10