# EXHIBIT 1

**SCHEPER KIM & HARRIS LLP**
DAVID C.  SCHEPER (State Bar No.  120174)
dscheper@scheperkim.com
ALEXANDER H.  COTE (State Bar No.  211558)
acote@scheperkim.com
ANGELA M.  MACHALA (State Bar No.  224496)
amachala@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA  90071-2025
Telephone: (213) 613-4655
Facsimile:  (213) 613-4656

**Attorneys for Defendants**
**Pat Rose, Kevin Armstrong and Paul**
**Allen**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| YASSIR FAZAGA, ALI UDDIN MALIK, YASSER ABDELRAHIM, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION; ROBERT MUELLER, DIRECTOR OF THE FEDERAL BUREAU OF INVESTIGATION, in his official capacity; STEVEN M.  MARTINEZ, ASSISTANT DIRECTOR IN CHARGE, FEDERAL BUREAU OF INVESTIGATION'S LOS ANGELES DIVISION, in his official capacity; J. STEPHEN TIDWELL; BARBARA WALLS; PAT ROSE; KEVIN ARMSTRONG; PAUL ALLEN, <br><br> Defendants. | CASE NO. <br><br> SACV 11-00301-JST(VBKx) <br><br> **CORRECTED NOTICE OF MOTION AND MOTION BY DEFENDANTS PAT ROSE, KEVIN ARMSTRONG AND PAUL ALLEN TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT; NOTICE OF JOINDER IN MOTIONS TO DISMISS BY (1) DEFENDANTS FEDERAL BUREAU OF INVESTIGATION, ROBERT MUELLER, AND STEVEN MARTINEZ AND (2) DEFENDANTS STEPHEN TIDWELL AND BARBARA WALLS** <br><br> **Date:**  November 14, 2011 <br> **Time:**  1:30 PM <br> **Court:** Hon.  Cormac J.  Carney |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 14, 2011, at 1:30 PM, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Cormac J. Carney, located at 411 West Fourth Street, Room 1053, Santa Ana, CA 92701, defendants Pat Rose, Kevin Armstrong and Paul Allen (collectively the "Agent Defendants") will, and hereby do, move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing each and every cause of action in Plaintiffs' Class Action Complaint.

The Agent Defendants move on the ground that Plaintiffs have failed to state a claim as to any cause of action against the Agent Defendants, because:

(1) Plaintiffs have failed to allege an entitlement to *Bivens* relief, an improper government purpose, a message of disapproval of religion or improper entanglement with respect to their First Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action;

(2) Plaintiffs have failed to allege a conspiracy formed for an unconstitutional purpose, an improper government purpose, a message of disapproval of religion or improper entanglement with respect to their Second Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action;

(3) Plaintiffs have failed to allege an entitlement to *Bivens* relief, an improper purpose, a burden on their free exercise of religion, that the complained of conduct was not narrowly tailored and that the conduct was not justified by a compelling government interest with respect to their Third Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action;

(4) Plaintiffs have failed to allege a conspiracy formed for an unconstitutional purpose, a burden on their free exercise of religion, that the complained of

conduct was not narrowly tailored and that the conduct was not justified by a compelling government interest with respect to their Fourth Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action;

(5) Plaintiffs have failed to allege a burden on their free exercise of religion, that the complained of conduct was not narrowly tailored and that the conduct was not justified by a compelling government interest with respect to their Fifth Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action;

(6) Plaintiffs have failed to allege a violation of the First Amendment with respect to their Sixth Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action;

(7) Plaintiffs have failed to allege a conspiracy formed for an unconstitutional purpose, a violation of the First Amendment with respect to their Seventh Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action;

(8) Plaintiffs have failed to allege a reasonable expectation of privacy with respect to their Ninth Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action; and

(9) Plaintiffs have failed to allege the existence of a clearly established right with respect for their Tenth Cause of Action and because the Agent Defendants are entitled to qualified immunity to this cause of action.

This motion is based on the accompanying Memorandum of Points and Authorities, and all pleadings and papers on file with the Court in this action.

PLEASE TAKE FURTHER NOTICE that the Agent Defendants hereby join in the motions to dismiss filed by (1) Defendants Federal Bureau of Investigation, Robert Mueller and Steven Martinez (Docket No. 32) and (2) Defendants Stephen

1  Tidwell and Barbara Walls, (because the arguments raised therein apply with equal

2  force to the Agent Defendants).

3  **<u>Statement of Local Rule 7-3 Compliance</u>**

4  Counsel for all parties conferred on this motion on July 15, 2011.

5  DATED: August 11, 2011          SCHEPER KIM & HARRIS LLP

6                                  DAVID C. SCHEPER
                                   ALEXANDER H. COTE

7                                  ANGELA M. MACHALA

8

9

10                                 By:      /s/
                                        _____
11                                     David C. Scheper
                                       Attorneys for Defendants Pat Rose, Kevin
12                                     Armstrong and Paul Allen

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................. 1

II.    FACTUAL BACKGROUND ............................................................ 2

       A.    Plaintiffs Allege that the FBI Had Specific Neutral Reasons for
             Investigating Them ........................................................... 3

       B.    Investigative Techniques Allegedly Employed By the FBI ............... 5

       C.    Plaintiffs Learned of Monteilh's Actions After the Fact ................. 6

III.   LEGAL STANDARD ON MOTIONS UNDER RULE 12(B)(6) AND *IQBAL* ......... 6

IV.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1985(3) ............... 7

       A.    Plaintiffs Fail To Allege A Conspiracy Under Section 1985(3) ........... 7

       B.    Plaintiffs Failed To Allege An Unlawful Purpose......................... 9

             1.    Failure to Allege Purpose of Interfering With Religion............. 10

             2.    Failure to Allege Purposeful Discrimination........................... 11

             3.    Inability to Prove Purposeful Disruption or Discrimination ...... 12

V.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER *BIVENS*........................ 13

       A.    Plaintiffs' *Bivens* Claims are Precluded By the Privacy Act............. 13

       B.    Plaintiffs Fail To Allege An Unlawful Purpose .......................... 17

VI.    THE AGENT DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY. ............. 18

       A.    Legal Standard for Evaluating Qualified Immunity ...................... 18

       B.    Defendant Pat Rose is Entitled To Qualified Immunity on All
             Claims under *Iqbal*........................................................ 18

       C.    All Defendants Are Entitled To Qualified Immunity on
             Plaintiff's First Amendment and RFRA Claims............................ 19

             1.    Plaintiffs Fail to Sufficiently Allege a Burden on The Free
                   Exercise of Their Religion............................................ 20

             2.    The Use of A Confidential Informant was Narrowly
                   Tailored to Advance a Compelling Government Interest .......... 22

             3.    Defendants Are Entitled To Qualified Immunity...................... 24

       D.    Plaintiffs Fail to State a Claim Under the Establishment Clause
             of the First Amendment .................................................. 24

             1.    Plaintiffs Fail To Allege Improper Purpose ........................ 25

2.   Plaintiffs Fail To Allege the Sending of A Message ..................25

3.   Plaintiffs Failed to Plead Excessive Entanglement ...................27

4.   Defendants Are Entitled To Qualified Immunity ......................27

E.   All Defendants Are Entitled to Qualified Immunity on Plaintiffs' Equal Protection Claims ........................................................................27

F.   Defendants Are Entitled to Qualified Immunity On Plaintiffs' Fourth Amendment Claims. ......................................................................28

1.   Recording of Audio Communications .......................................29

2.   Video Surveillance .....................................................................31

3.   Listening Devices In Mosques ...................................................32

G.   Plaintiffs' FISA Claim Is Barred by Qualified Immunity. ...................33

VII.   CONCLUSION ...............................................................................................34

JOINDER .........................................................................................................36

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Action v. Gannon*,
   450 F.2d 1227 (8th Cir. 1971)................................................................10, 11

*Adams v. Johnson*,
   |355 F.3d 1179 (9th Cir. 2004) ............................................................... 14

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009) ...........................................................................Passim

*Ashcroft v. al-Kidd*,
   131 S.Ct. 2074 (2011) ........................................................................... 18

*Berry v. Hollander*,
   925 F.2d 311 (9th Cir. 1991)................................................................ 14

*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971 ..............................................................................Passim

*Bray v. Alexandria Women's Health Clinic*,
   506 U.S. 263 (1993) ............................................................................. 9, 10

*Cammack v. Waihee*,
   932 F.2d 765 (9th Cir. 1991)................................................................ 27

*Chambliss v. Foote*,
   562 F.2d 1015 (5th Cir. 1977),
   aff'g, 421 F. Supp. 12 (E.D. La. 1976)................................................ 8

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) ............................................................................. 22, 23

*Cooper v. FAA*,
   596 F.3d 538 (9th Cir. 2010)................................................................ 15

*Crowe v. County of San Diego*,
   608 F.3d 406 (9th Cir. 2010)................................................................ 7

*Denney v. City of Albany*,
   247 F.3d 1172 (11th Cir. 2001)............................................................ 8

*Devereaux v. Perez*,
   218 F.3d 1045 (9th Cir. 2000)............................................................. 27

*Dickerson v. Alachua County Comm'n*,
   200 F.3d 761 (11th Cir. 2000).............................................................. 7

*Doe v. Chao*,
   540 U.S. 614 (2004) ............................................................................. 14

*Downie v. City of Middleburg Heights*,
   301 F.3d 688 (6th Cir. 2002)................................................................ 15

*Pers. Admin'r of Mass v. Feeney,*
    442 U.S. 256 (1979) ................................................................................ 17

*Fonda v. Gray,*
    707 F.2d 435 (9th Cir. 1983) .................................................................... 7

*Haig v. Agee,*
    453 U.S. 280 (1981) ................................................................................ 23

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ................................................................................ 18

*Hobson v. Wilson,*
    737 F.2d 1 (D.C. Cir. 1984) ............................................................ 10, 11

*Hoefer v. Fluor Daniel, Inc.,*
    92 F. Supp. 2d 1055 (C.D. Cal. 2000) ................................................. 7, 8

*Gooden v. Howard County,*
    954 F.2d 960 (4th Cir. 1992) .................................................................... 9

*In re Nat'l Sec. Agency Telecomms. Records Litig.,*
    564 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................. 34

*Kasza v. Browner,*
    133 F.3d 1159 (9th Cir. 1998) ......................................................... 13, 32

*Katz v. United States,*
    389 U.S. 347 (1967) ................................................................................ 30

*Kotarski v. Cooper,*
    866 F.2d 311 (9th Cir. 1989) .................................................................. 14

*Kreisner v. City of San Diego,*
    1 F.3d 775 (9th Cir. 1993) ...................................................................... 25

*Laird v. Tatum,*
    408 U.S. 1 (1972) .................................................................................... 22

*Lemon v. Kurtzman,*
    403 U.S. 602 (1971) .................................................................... 24, 25, 27

*Libas Ltd. v. Carillo,*
    329 F.3d 1128 (9th Cir. 2003) ................................................................ 14

*Navajo Nation v. U.S. Forrest Service,*
    535 F.3d 1058 (9th Cir. 2008) ............................................... 20, 21, 22, 23

*Nelson Radio & Supply Co. v. Motorola, Inc.,*
    200 F.2d 911 (5th Cir. 1952) .................................................................... 7

*Nurre v. Whitehead,*
    580 F.3d 1087 (9th Cir. 2009) ............................................... 24, 25, 26, 27

*Orin v. Barclay,*
    272 F.3d 1207 (9th Cir. 2001)...................................................................28

*Pearson v. Callahan,*
    555 U.S. 223 (2009) .............................................................................18

*Portman v. County of Santa Clara,*
    995 F.2d 898 (9th Cir. 1993).....................................................................8

*Presbyterian Church v. United States,*
    870 F.2d 518 (9th Cir. 1989)...................................................................30

*Rabkin v. Dean,*
    856 F. Supp. 543 (N.D. Cal. 1994) .............................................................8

*Rakas v. Illinois,*
    439 U.S. 128 (1978).........................................................................29, 32

*Runs After v. United States,*
    766 F.2d 347 (8th Cir. 1985).....................................................................8

*Schweiker v. Chilicky,*
    487 U.S. 412 (1988) .............................................................................14

*Smith v. Maryland,*
    442 U.S. 735 (1978).............................................................................29

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott,*
    463 U.S. 825 (1983) ...............................................................................7

*United States v. Aguilar,*
    883 F.2d 662 (9th Cir. 1988).........................................................24, 29, 30

*United States v. Crawford,*
    323 F.3d 700 (9th Cir. 2003)...................................................................30

*United States v. Davis,*
    326 F.3d 361 (2nd Cir. 2003)...................................................................31

*United States v. Gering,*
    716 F.2d 615 (9th Cir. 1983)...................................................................21

*United States v. Lee,*
    359 F.3d 194 (3rd Cir. 2004) ...................................................................31

*United States v. Nerber,*
    222 F.3d 597 (9th Cir. 2000)...............................................................29, 31

*United States v. Taketa,*
    923 F.2d 665 (9th Cir. 1991)...............................................................29, 31

*United States v. White,*
    401 U.S. 745 (1971) .............................................................................29

*Vernon v. City of Los Angeles,*
    27 F.3d 1385 (9th Cir. 1994)..........................................20, 21, 22, 26

*Warth v. Seldin,*
    422 U.S. 490 (1975) ...............................................................3

*Western Radio Servs. Co. v. U.S. Forest Serv.,*
    578 F.3d 1116 (9th Cir. 2009),
    *cert. denied* 130 S. Ct. 2402 (2010) .............................13, 14, 17

*Wilson v. Libby,*
    535 F.3d 697 (D.C. Cir. 2008),
    *cert. denied* 129 S.Ct. 2825 (2009) ..................................15, 17

*Wright v. Ill. Dept. of Children & Family Servs.,*
    40 F.3d 1492 (7th Cir. 1994)...............................................8

## FEDERAL STATUTES

5 U.S.C. § 552a(a)(3)..............................................................14

5 U.S.C. § 552a(e)(7)..........................................................14, 15, 16

5 U.S.C. § 552a(g)(1)(D).........................................................15

5 U.S.C. § 552a(g)(4) ............................................................15

42 U.S.C. § 1983.................................................................28

42 U.S.C. § 1985................................................................8, 9

42 U.S.C. § 1985(3).........................................................Passim

50 U.S.C. § 1801(f) .............................................................33

50 U.S.C. § 1809................................................................33

50 U.S.C. § 1810................................................................33

50 U.S.C. §§ 1801-71 ...........................................................33

## FEDERAL REGULATIONS

39 C.F.R. § 233.3(c)(1)...........................................................21

## I.    INTRODUCTION

Plaintiffs allege in the most conclusory manner that current and former FBI Agents Pat Rose, Kevin Armstrong, and Paul Allen (the "Agent Defendants") directed confidential informant Craig Monteilh to "infiltrate" mosques throughout Southern California as part of a "dragnet" investigation of *all* Muslims "simply because the targets were Muslim" and "without further specification."  But the Complaint undercuts these allegations by asserting that the FBI had specific and neutral reasons for investigating *these Plaintiffs*.  By Plaintiffs' own account, the FBI told Monteilh that it began investigating Plaintiffs because: (a) Plaintiff Fazaga espoused "radical" beliefs and had ties with "anti-American" groups; (b) Plaintiff Malik traveled to Yemen for religious schooling, thereafter underwent a dramatic change in behavior and dress, and was barred from entering Saudi Arabia; and (c) Plaintiff AbdelRahim was suspected of being the charismatic leader of a terrorist cell.  Plaintiffs conspicuously fail to allege that these FBI statements were false, and that failure is fatal to Plaintiffs' claim of religious discrimination.

Even if Plaintiffs had *alleged* a discriminatory intent, they will be unable to adduce *evidence* in support of that allegation if the Court sustains the government's assertion of the state secrets privilege.  Plaintiffs would be unable to prove their allegations of discriminatory purpose, and the Agent Defendants will be unable to refute them, without access to the potentially privileged evidence.  Accordingly, the Agent Defendants join in the government's argument that the religious discrimination claims against the Agent Defendants (the First through Seventh Causes of Action) must be dismissed if the Court sustains the government's assertion of the state secrets privilege.

Each of Plaintiffs' claims fail for additional reasons.  *First,* Plaintiffs' Second, Fourth and Seventh causes of action allege a conspiracy among all defendants to violate Plaintiffs' First Amendment and Equal Protection rights, pursuant to 42 U.S.C. § 1985(3).  However, as a matter of law, the Agent Defendants cannot

1    conspire with the FBI or other FBI agents under the intracorporate conspiracy

2    doctrine.  Moreover, Plaintiffs fail to allege that the Agent Defendants acted with

3    the specific purpose of violating the Plaintiffs' First Amendment and Equal

4    Protection rights.

5    *Second,* Plaintiffs' First, Third and Sixth causes of action allege a violation of

6    their First and Fifth Amendment rights pursuant to *Bivens v. Six Unknown Named*

7    *Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  However, these

8    claims must be dismissed because (a) the Privacy Act is a comprehensive remedial

9    scheme that supplants a *Bivens* remedy for the types of constitutional injuries

10   alleged here, and (b) Plaintiffs have failed to allege that any Defendant acted with

11   the specific purpose of discriminating against Defendants.

12   *Third,* the Agent Defendants are entitled to qualified immunity on all claims,

13   as the constitutional and statutory rights they supposedly violated were not "clearly

14   established" at the time of the alleged violations.  Moreover, Defendant Rose is

15   separately entitled to qualified immunity on all claims because Plaintiffs seek to

16   hold her liable under an impermissible *respondeat superior* theory.

17   For all of the foregoing reasons, and for the reasons stated in the motions to

18   dismiss filed by (1) Defendants Federal Bureau of Investigation ("FBI"), Robert

19   Mueller and Steven Martinez (Docket No.  32) and (2) Defendants Stephen Tidwell

20   and Barbara Walls – each of which the Agent Defendants expressly join – Plaintiffs'

21   complaint should be dismissed for failure to state a claim.

22   **II.    FACTUAL BACKGROUND**

23   The factual allegations are capably summarized in the government's motion

24   to dismiss, and need not be repeated at length here.  (Docket No. 32 at 6-9.) Instead,

25   the Agent Defendants briefly address the facts relevant to this motion.

26

27

28

**A.**    **Plaintiffs Allege that the FBI Had Specific Neutral Reasons for Investigating Them**

Plaintiffs allege in a conclusory fashion that the FBI targeted Muslims in Orange and Los Angeles counties "because of their religion and religious practice" and gathered information about them "simply because the targets were Muslim." (Compl. ¶¶ 3, 6.)  Plaintiffs also describe the FBI's investigation as a "dragnet" and allege that the "central feature of the FBI agents' instructions to Monteilh was their directive that he gather information on Muslims, without any further specification." (*Id.* at ¶ 86.)  To the extent there was any "further specification" at all, Plaintiffs contend, Agents Armstrong and Allen instructed Monteilh to collect information on "Muslims who were particularly religious." (*Id.*)

However, when considering whether Plaintiffs have stated a claim, the Court should focus on whether the Agent Defendants have violated *these particular Plaintiffs'* rights, not the abstract rights of third parties.  Plaintiffs generally have no standing to seek a remedy for injuries purportedly (or possibly) suffered by others. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").  Here, Plaintiffs allege facts demonstrating that the FBI had at least *some* basis, apart from religious discrimination, for investigating *these Plaintiffs*.

Plaintiff Fazaga is an imam of the Orange County Islamic Foundation ("OCIF"), a mosque in Mission Viejo which Monteilh purportedly surveilled. (Compl. ¶¶ 12, 53 164.)  According to the Complaint, Agents Armstrong and Allen told Monteilh at the outset that they suspected Fazaga might be a "radical" for a number of reasons, including the fact he was a member of a suspected "anti-American" group.  (*Id.* at ¶¶ 165-67.)

Plaintiff Malik attended religions services at the Islamic Center of Irvine ("ICOI").  (Compl.  ¶¶ 13, 67.)  Much as they allegedly did with Fazaga, Agents

1   Armstrong and Allen purportedly identified Malik as a "radical" due to his conduct.
2   (Compl. ¶¶ 182-83.)  In particular, Agents Armstrong and Allen allegedly told
3   Monteilh that the FBI became interested in Malik because he "had been a surfer kid
4   in Newport Beach who wore dyed hair, but had travelled to Yemen to attend a
5   religious school, and had returned to the U.S. wearing traditional Muslim dress and
6   a full beard." (*Id.* at ¶ 182.)  Malik admits that these statements are true. (*Id.* at ¶
7   66.)  According to Plaintiffs, "Agents Armstrong and Allen told Monteilh *that*
8   *Malik's change in behavior* in embracing religion and traditional dress was highly
9   suspicious and for that reason they needed to investigate him." (*Id.* at ¶ 183
10  (emphasis added).)  In other words, it was Malik's dramatic change in behavior, not
11  Malik's religious practices themselves, that prompted the FBI to investigate Malik.
12  (*Id.*)  Indeed, the Complaint does not allege that Malik was particularly religious –
13  to the contrary, it states that Malik had fallen "into attending prayers only when it
14  was convenient." (*Id.* at ¶ 189.)  Most significantly, the Complaint acknowledges
15  that the FBI told Monteilh that it had started investigating Malik *before* recruiting
16  Monteilh, and had become interested in him because of his association with other
17  individuals and groups already under investigation. (*Id.* at ¶ 185)  Moreover, Malik
18  had allegedly been barred from entering Saudi Arabia after his time in Yemen,
19  further piquing the FBI's interest in him. (*Id.* at ¶ 186.)

20          Finally, according to the Complaint, Plaintiff AbdelRahim also attended
21  religious services at ICOI. (Compl. ¶¶ 14, 77.)  AbdelRahim alleges that his home
22  was under surveillance by the FBI before it recruited Monteilh because the FBI
23  feared he was part of (and perhaps the leader of) a terrorist cell. (*Id.* at ¶¶ 195-96.)
24  Plaintiffs also allege that the FBI obtained a warrant to search AbdelRahim's storage
25  unit – an admission that the FBI had *at least* probable cause to believe that
26  contraband or evidence of a crime would be found in that particular place. (*Id.* at ¶
27  209.)

28

1    Admittedly, the Complaint couches some of the foregoing justifications for

2    investigating Plaintiffs as statements made by Agents Armstrong and Allen to

3    Monteilh.  But Plaintiffs conspicuously fail to deny their truth.  They also fail to

4    deny that Agents Allen and Armstrong honestly believed or suspected these

5    statements to be true.  The facts alleged above, coupled with Plaintiffs' failure to

6    deny them, undercut the contention that the FBI was motivated solely by religion.

7    **B.    Investigative Techniques Allegedly Employed By the FBI**

8    Plaintiffs' Ninth Cause of Action asserts that Monteilh, without a warrant,

9    (i) recorded conversations where no party consented, (ii) video recorded in homes

10   and other places where Plaintiffs had a reasonable expectation of privacy and

11   (iii) installed electronic listening devices in mosques.  (Compl. ¶ 244.)

12   With respect to audio recording of conversations, Plaintiffs allege that

13   Monteilh attended and recorded prayer services led by Fazaga and lectures hosted

14   by Fazaga.  (*Id.* at ¶¶ 168, 169, 174.)  This is the sole allegation that Fazaga was

15   recorded by Monteilh.  Likewise, AbdelRahim attended Arabic language teachings

16   at ICOI, which Monteilh also attended and recorded.  (*Id.* at ¶ 206.)  Plainitffs also

17   allege that Monteilh recorded "conversations he had with AbdelRahim and the other

18   members of [AbdelRahim's] house."  (*Id.* at ¶ 196.)  Monteilh purportedly recorded

19   Malik "talking in the prayer hall, particularly after *ishaa* prayer."  (*Id.* at ¶ 188.)

20   Monteilh also recorded conversations where Malik expressed a desire to pray more

21   regularly.  (*Id.* at ¶¶ 189-90.)  Plaintiffs also allege that Monteilh possessed a

22   recording device in the form of a key fob or cell phone, that Monteilh left it

23   unattended and recording in various locations throughout the mosque, and that

24   Malik was recorded using these methods.  (*See, e.g., id.* at ¶ 188.)

25   With respect to video recording, Plaintiffs allege that Monteilh recorded

26   individuals donating to "a cause for some kind of relief for Muslims abroad."  (*Id.* at

27   ¶ 178.)  Monteilh allegedly also videoed other aspects of OCIF, including "security

28   measures," entrances and exits and a library available for congregants to use.  (*Id.* at

1  ¶¶ 170-171.)  The Complaint does not allege that any of these events or locations
2  were closed to the public.  Plaintiffs also allege that Monteilh recorded the interior
3  of AbdelRahim's home, after AbdelRahim invited Monteilh inside.  (*Id.* at ¶ 197.)
4  He also allegedly recorded video of casual soccer games that AbdelRahim played.
5  (*Id.* at ¶ 201.)

6      Finally, Plaintiffs allege that the FBI planted "listening devices" in mosques.
7  Apart from the device allegedly used by Monteilh, however, the Complaint fails to
8  identify any "listening devices," where they were installed, or who they recorded.

9      **C.    Plaintiffs Learned of Monteilh's Actions After the Fact**

10      Plaintiffs claim to have been ignorant of Monteilh's role as confidential
11  informant during the time he was allegedly working with the FBI.  (*See, e.g.,*
12  Compl. ¶¶ 1, 5.)  Monteilh's surveillance activities allegedly ended in October,
13  2007, but Plaintiffs claim they did not discover his role until February 24, 2009.  (*Id.*
14  at ¶¶ 148, 155.)  Plaintiffs contend that they "did not know and could not reasonably
15  have known that Monteilh was working for the FBI as an informant" prior to this
16  date.  (*Id.* at ¶ 156.)  This action followed on February 22, 2011.

17  **III.    LEGAL STANDARD ON MOTIONS UNDER RULE 12(B)(6) AND *IQBAL***

18      "To survive a motion to dismiss, a complaint must contain sufficient factual
19  matter, accepted as true, to state a claim to relief that is plausible on its face."
20  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quotes omitted).  "A claim has facial
21  plausibility when the plaintiff pleads factual content that allows the court to draw
22  the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*
23  Plaintiffs must offer "more than a sheer possibility that a defendant has acted
24  unlawfully."  *Id.*  To the extent the Complaint "pleads facts that are merely
25  consistent with a defendant's liability, it stops short of the line between possibility
26  and plausibility of entitlement to relief."  *Id.* (quotations omitted).

27
28

## IV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1985(3)

### A. Plaintiffs Fail To Allege A Conspiracy Under Section 1985(3)

Plaintiffs' Second, Fourth, and Seventh Causes of Action allege that Defendants conspired among themselves to violate Plaintiffs' First Amendment and Equal Protection rights, in violation of 42 U.S.C. § 1985(3). (Compl. ¶¶ 225, 232, 239.) In order to successfully plead a cause of action pursuant to Section 1985(3), Plaintiffs must allege, in a non-conclusory fashion, four elements: (1) a conspiracy (2) for the purpose of depriving Plaintiffs of the equal protection of the laws or of equal privileges and immunities, and (3) an act in furtherance of the conspiracy (4) that causes injury to the Plaintiffs. *See United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-829 (1983). Plaintiffs fail the first element because they do not allege (except in the most conclusory language) that the Agent Defendants reached an agreement or "meeting of the minds" to violate Plaintiffs' constitutional rights. *See, e.g., Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010).

In addition, Plaintiffs fail the first element because an entity cannot conspire with its own employees or agents. *See Hoefer v. Fluor Daniel, Inc.*, 92 F. Supp. 2d 1055, 1057 (C.D. Cal. 2000). "'It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself anymore than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'" *Hoefer*, 92 F. Supp. 2d at 1057 (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir. 1952)); *see also Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983). The Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits have extended this "intracorporate conspiracy doctrine" to Section 1985(3) claims, finding that the doctrine's logic applies equally in both contexts. *See Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 768-69 (11th Cir. 2000) (listing Circuits); *Hoefer*, 92 F. Supp. 2d at 1059 (same); *Blunt v. County of Sacramento*, No. 2:04-cv-1743, 2006

1  U.S. Dist. LEXIS 11099 at *36 (E.D. Cal. Mar. 2, 2006) (noting only the First and

2  Third Circuits ruling contrary to the clear majority).

3      Accordingly, where members of the same corporation or governmental body

4  allegedly conspired with each other while acting in the course and scope of their

5  employment, federal courts have held that the intracorporate conspiracy doctrine

6  bars a Section 1985(3) claim.  *See, e.g., Denney v. City of Albany*, 247 F.3d 1172,

7  1190-91 (11th Cir. 2001) (rejecting alleged conspiracy among city employees);

8  *Wright v. Ill. Dept. of Children & Family Servs.,* 40 F.3d 1492, 1508 (7th Cir. 1994)

9  (same for employees of department of children & family services); *Runs After v.*

10  *United States*, 766 F.2d 347, 354 (8th Cir. 1985) (same for Tribal Council);

11  *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977), *aff'g*, 421 F. Supp. 12, 15 (E.D.

12  La. 1976) (same for employees of public university).

13      While the Ninth Circuit has declined to decide whether the intracorporate

14  conspiracy doctrine applies to a Section 1985 claim, *see Portman v. County of Santa*

15  *Clara*, 995 F.2d 898, 910 (9th Cir. 1993), the vast majority of California district

16  courts to consider the issue have held that the doctrine does apply.  *See, e.g.,*

17  *Woldeab v. 7-Eleven, Inc.*, No. 03-0615, 2006 U.S. Dist. LEXIS 82191, *9 (S.D.

18  Cal. Nov 8, 2006) ("After reviewing the numerous Ninth Circuit district court

19  decisions cited in the briefs . . . the modern and majority rule is that the

20  [intracorporate conspiracy doctrine] does bar" a 1985(3) claim); *Hoefer*, 92 F.

21  Supp. 2d at 1059; *see also Rabkin v. Dean*, 856 F. Supp. 543, 551 (N.D. Cal. 1994);

22  *Blunt,* 2006 U.S. Dist. LEXIS at *36; *Mory v. City of Chula Vista*, No. 07CV0462,

23  2008 U.S. Dist. LEXIS 9911, *19 (S.D. Cal. Feb. 11, 2008) (same).  Ninth Circuit

24  district courts outside of California have also applied the doctrine to Section 1985(3)

25  claims.  *See, e.g., Schmitz v.  Mars, Inc.*, 261 F.  Supp.  2d 1226, 1235 (D.  Or.

26  2003) ("This Court finds most persuasive the analysis of the *Hoefer* court and the

27  majority of circuit courts that have held the intracorporate conspiracy doctrine

28

1  applies to § 1985 actions."); *Wolde-Giorgis v. Dillard*, No. 06-0289, 2006 U.S.

2  Dist. LEXIS 71356 (D. Ariz. Sept. 22, 2006) (same).

3      Here, all of the conspirators identified by Plaintiffs are part of a single

4  government entity, the FBI. (Compl. ¶¶ 15-22.) Plaintiffs allege that Defendants

5  conspired to investigate Plaintiffs because of their adherence to and practice of

6  Islam, actions taken during the performance of their official, not personal, duties.

7  Accordingly, because Defendants were all effectively acting as the FBI itself when

8  they entered into their alleged illicit agreement, they could not have engaged in a

9  conspiracy as a matter of law, and Plaintiffs' Section 1985(3) claims must be

10  dismissed.

11      **B.   Plaintiffs Failed To Allege An Unlawful Purpose**

12      A Section 1985(3) conspiracy "for the purpose of depriving … any person or

13  class of persons of the equal protection of the laws, or of equal privileges and

14  immunities under the laws," requires an intent to deprive persons of a protected

15  right. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 274 (1993). As the

16  Supreme Court noted in *Bray*, a

17      "conspiracy is not 'for the purpose' of denying equal protection simply
       because it has an effect upon a protected right. The right must be
18      '*aimed at*'; its impairment must be a conscious objective of the
       enterprise…. [T]he 'intent to deprive of a right' requirement demands
19      that the defendant do more than merely be aware of a deprivation of
       right that he causes, and more than merely accept it; he must act at least
20      in part for the very purpose of producing it."

21  *Id.* at 275-76 (citation omitted) (emphasis in original). Plaintiffs alleging unlawful

22  conspiracy must plead specific facts in a nonconclusory fashion to survive a motion

23  to dismiss. *See Gooden v. Howard County*, 954 F.2d 960, 969-70 (4th Cir. 1992).

24  Simply copying the statute's language to the complaint is inadequate. *Id.*

25      The case law is replete with Section 1985(3) claims that fail this standard.

26  For example, in *Bray*, the Supreme Court reversed an injunction prohibiting

27  demonstrations at abortion clinics, holding, *inter alia*, that the abortion clinics had

28  not demonstrated that the constitutionally protected right alleged to have been

- 9 -

1   violated by the protestors (the right to travel interstate) was a "conscious objective

2   of the enterprise" as opposed to a right merely incidentally affected. *Bray*, 506 U.S.

3   at 275.  The Court explained that "Petitioners oppose abortion, and it is irrelevant to

4   their opposition whether the abortion is performed after interstate travel." *Id.* at 276.

5   The Court also noted that "a conspiracy to rob an interstate traveler would not, of

6   itself, violate [18 U.S.C.] § 241 [the criminal counterpart to 1985(3)].  But if the

7   *predominant purpose* of the conspiracy is to impede or prevent the exercise of the

8   right of interstate travel, or to oppress a person because of his exercise of that right,

9   then . . . the conspiracy becomes a proper object of [Section 241]." *Id.* at 275

10  (internal quotation marks omitted) (emphasis added).

11              ***1.    Failure to Allege Purpose of Interfering With Religion***

12              Courts analyzing Section 1985(3) claims have found conscious interference

13  with plaintiff's religious liberties when the defendants' conduct was intended to

14  disrupt services.  For example, in *Action v. Gannon,* 450 F.2d 1227 (8th Cir. 1971),

15  members of a predominantly white Catholic parish sued the Black Liberation Front

16  and an interracial organization to enjoin those groups from disrupting religious

17  services.  The defendants allegedly entered the church during services, formed a line

18  in front of the communion rail, blocked the area where services were to be held

19  (resulting in cancellation of the services), and otherwise actively disrupted the

20  congregants' rights of freedom of assembly and worship. *Id.* at 1229-30.  The

21  Eighth Circuit held that this purported scheme was cognizable under Section

22  1985(3), as the purpose of the conspiracy was to interfere with the plaintiffs' First

23  Amendment rights of freedom of assembly and worship. *Id.*  Likewise, in *Hobson v.*

24  *Wilson*, 737 F.2d 1 (D.C. Cir. 1984), the purpose of the alleged conspiracy was to

25  disrupt and impede plaintiffs' efforts to associate with others to express opposition

26  to the Vietnam War and other government actions. *Hobson,* 737 F.2d at 9.  To

27  accomplish that goal, the FBI allegedly distributed false press releases tarnishing the

28  reputation of one of the members of the targeted group and encouraged sources to

1   "stimulate dissension" in the group. *Id.* at 12. These deliberate efforts to disrupt the

2   exercise of First Amendment rights were actionable under Section 1985(3).

3       In contrast to the plaintiffs in *Action* and *Hobson*, here Plaintiffs allege no

4   similar purposeful violation of their First or Fifth Amendment rights. They allege

5   no deliberate disruption of their religious activities or other actions to dissuade

6   members from attending services. Indeed, the allegedly violative conduct was

7   covert – meaning that Plaintiffs *were not supposed to find out about it.* (*See e.g.*

8   Compl. ¶ 156 ("Plaintiffs did not know and could not reasonably have known that

9   Monteilh was working for the FBI as an informant").) To the extent Plaintiffs'

10  rights of freedom of assembly and worship were allegedly affected, this occurred

11  only *after* Monteilh ceased being an informant and his previous informant activities

12  were revealed. Plaintiffs' alleged injury was thus *incidental* to the alleged

13  conspiracy, not its purpose, as in *Action* and *Hobson*. If it had been Defendants'

14  conscious objective to deprive Plaintiffs of their rights, then the scheme would

15  undoubtedly have been an overt plan to impede or prevent gatherings of Muslims at

16  mosques or to otherwise inhibit their religion, rather than a covert investigation

17  about which Plaintiffs were deliberately kept ignorant. Thus, Plaintiffs have not

18  sufficiently alleged that Defendants "aimed at" or acted with the "conscious

19  objective" of depriving Plaintiffs of their First or Fifth Amendment rights. Any

20  alleged effect in this case on Plaintiffs' constitutional rights was tangential to

21  Defendants' alleged conspiracy to covertly conduct surveillance.

22          **2.    *Failure to Allege Purposeful Discrimination***

23      Presumably, Plaintiffs will argue that they have alleged a purposeful violation

24  of their rights because the Agent Defendants intentionally discriminated against

25  them on the basis of religion. But this argument also fails, because Plaintiffs allege

26  in the Complaint that the FBI began investigating them for neutral, investigative

27  reasons. Specifically, they allege that Agents Armstrong and Allen told Monteilh

28  that the FBI feared that Plaintiff Fazaga espoused "radical" beliefs and had ties with

1  "anti-American" groups.  (Compl. ¶¶ 164-167.)  They also allege that Plaintiff

2  Malik traveled to Yemen for religious schooling and thereafter underwent a

3  dramatic change in behavior and dress.  (*Id.* at ¶¶ 66, 182-183.)  Plaintiffs further

4  allege that Agents Allen and Armstrong told Monteilh to investigate Malik because

5  "*Malik's change in behavior* in embracing religion and traditional dress was highly

6  suspicious."  (*Id.* at ¶ 183 (emphasis added).)  That is, the FBI was concerned with

7  Malik's change in behavior, not his religious practice *per se*.  The FBI was also

8  concerned with Saudi Arabia's refusal to admit Malik into the country.  (*Id.* at ¶

9  186.)  Similarly, Plaintiffs allege that the government obtained a search warrant of

10  Plaintiff AbdelRahim's storage unit – necessarily admitting that the government had

11  *at least* probable cause to believe the storage unit contained contraband or evidence

12  of a crime.  (*Id.* at ¶ 209.) Moreover, Plaintiffs allege that the FBI told Monteilh of

13  their concern that AbdelRahim might be part of – or perhaps the leader of – a

14  terrorist cell.  (*Id.* at ¶¶ 195-196.) Plaintiffs nowhere allege that any of these

15  concerns were pretextual or not sincerely held by any defendant, let alone the Agent

16  Defendants.

17  **3.   *Inability to Prove Purposeful Disruption or Discrimination***

18  Even if Plaintiffs had sufficiently *alleged* an intent to disrupt Plaintiffs'

19  religious practice or a discriminatory purpose, the government's assertion of the

20  state secrets privilege could preclude *evidence* supporting that allegation.  If the

21  Court upholds the government's assertion of the privilege, this will foreclose inquiry

22  into the "reasons for counterterrorism investigation and results," including

23  information about "the predicate for an FBI counterterrorism investigation of a

24  particular person," like each Plaintiff.  (Docket No. 32 at 28:1-4.)  With the question

25  of *why* the government investigated these particular Plaintiffs off the table, Plaintiffs

26  cannot prevail on their claim that the government intended to disrupt religion or

27  intended to discriminate on the basis of religion.  Similarly, Defendants will be

28

1    unable to defend themselves from this charge.  Accordingly, dismissal is

2    appropriate.  *See Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998).

3    **V.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER *BIVENS***

4          **A.    Plaintiffs' *Bivens* Claims are Precluded By the Privacy Act**

5          Plaintiffs' First, Third and Sixth Causes of Action seek monetary damages for

6    violations of the Free Exercise, Establishment and Equal Protection Clauses directly

7    under the First and Fifth Amendments to the United States Constitution pursuant to

8    *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388

9    (1971).  (Compl.  ¶¶ 222, 227, 236.)  However, the Supreme Court has never

10   recognized a *Bivens* action for violations of the Free Exercise, Establishment or

11   Equal Protection Clauses.  *See, e.g., Wilkie v. Robbins*, 551 U.S.  537, 550 (2007)

12   (noting that the Supreme Court has recognized *Bivens* claims in just three contexts:

13   unreasonable searches in violation of the Fourth Amendment, employment

14   discrimination in violation of the Due Process Clause and prisoner abuse under the

15   Eighth Amendment).  Accordingly, Plaintiffs have no "automatic entitlement" to a

16   judicially devised cause of action for money damages under *Bivens*.  *Id.*

17         "In *Wilkie*, the Court distilled its 35-year history of Bivens jurisprudence into

18   a two-step analysis for determining congressional intent as to the appropriateness of

19   a *Bivens* remedy."  *Western Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116,

20   1120 (9th Cir. 2009), *cert. denied* 130 S. Ct. 2402 (2010).  "First, the Court

21   determines whether there is 'any alternative, existing process for protecting' the

22   plaintiff's interests."  *Id.*  "Such an alternative remedy would raise the inference that

23   Congress 'expected the Judiciary to stay its *Bivens* hand' and 'refrain from

24   providing a new and freestanding remedy in damages.'"  *Id.* (*citing Wilkie*, 551 U.S.

25   at 550, 554).[1]

26   ───────────────

27   [1] The second step involves determining "whether there are nevertheless 'factors

28   counseling hesitation' before devising such an implied right of action."  *Id.* at 1120.
     (footnote continued)

1    The Supreme Court has repeatedly found that Congressional action has

2  foreclosed the creation of a *Bivens* remedy for the same types of constitutional

3  injuries alleged here.  *See, e.g., Bush v.  Lucas*, 462 U.S.  367, 388 (1983) (claim

4  precluded by an "elaborate remedial system" – culminating with the Civil Service

5  Reform Act – for dealing with federal employee claims of First Amendment

6  discrimination); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) (Social Security

7  Act precluded Fifth Amendment due process claim).  The Ninth Circuit has found

8  numerous examples of statutory schemes that preclude *Bivens* claims, including

9  claims arising under the Fifth and First Amendments.  *See, e.g., Kotarski v. Cooper*,

10  866 F.2d 311, 312 (9th Cir. 1989) (following *Bush*); *Western Radio*, 578 F.3d at

11  1117 (Administrative Procedures Act bars First and Fifth Amendment claims);

12  *Adams v. Johnson*, 355 F.3d 1179 (9th Cir. 2004) (Internal Revenue Code bars First

13  and Fifth Amendment claims); *Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir.

14  2003) (customs laws bar claims presumably brought under Fifth Amendment);

15  *Berry v. Hollander*, 925 F.2d 311, 314 (9th Cir. 1991) (Veterans Administration

16  regulations bar First and Fifth Amendment regulations).

17    In 1974, Congress enacted the Privacy Act in order to set forth "detailed

18  instructions" governing the government's "collection, maintenance, use, and

19  dissemination of information" about individuals in agency records.  *Doe v. Chao*,

20  540 U.S. 614, 618 (2004); *see also* 5 U.S.C. § 552a(a)(3).  Of particular relevance

21  here, the Privacy Act explicitly requires federal agencies to "maintain no record

22  describing how any individual exercises rights guaranteed by the First Amendment"

23  unless certain exceptions apply.  5 U.S.C. § 552a(e)(7).  The term "maintain" as

24  used in subsection (e)(7) includes "collect."  *Id.* § 552a(a)(3).  Thus, the Privacy Act

25  _____

26  This motion addresses the first part of the *Wilkie* test, as framed by *Western Radio*.
27  The Agent Defendants join in Defendants Walls and Tidwell's analysis of the
     second part of the test.
28

1  limits the government's ability to collect information on a citizen's religious

2  activity.

3      Congress also crafted a carefully calibrated set of judicial remedies for

4  violations of the Privacy Act, including violations of the constitutional provisions of

5  subsection (e)(7).  A citizen aggrieved by a violation of the Privacy Act may bring a

6  civil suit against the agency, and obtain a minimum $1000 in damages, plus

7  attorneys' fees in all cases where the agency's conduct was willful or intentional.  5

8  U.S.C. § 552a(g)(1)(D), (g)(4); *see generally Cooper v. FAA*, 596 F.3d 538, 543

9  (9th Cir. 2010) (describing remedies available under the Privacy Act).

10     Courts have recognized that the Privacy Act is a comprehensive remedial

11  scheme that supplants *Bivens* claims.  In *Downie v. City of Middleburg Heights*, 301

12  F.3d 688 (6th Cir. 2002), a former informant sued federal officers who allegedly

13  disseminated false information about him in violation of the First Amendment,

14  because he criticized an ongoing investigation.  The Sixth Circuit refused to imply a

15  *Bivens* remedy under the First Amendment "because the Privacy Act is a

16  comprehensive legislative scheme that provides a meaningful remedy for the kind of

17  wrong" informant alleged.  *Id.* at 696.  Because each of the informants'

18  constitutional claims arose out of the "the creation, maintenance, and dissemination

19  of false records," dismissal of the *Bivens* claim was warranted.  *Id.*

20     More recently, in *Wilson v. Libby*, 535 F.3d 697 (D.C. Cir.  2008), *cert.*

21  *denied* 129 S.Ct. 2825 (2009), Valerie Wilson and Joseph Wilson sued, among

22  others, Vice President Richard Cheney, for disclosing Valerie Wilson's status as a

23  covert agent for the CIA.  "The Wilsons' *Bivens* claims were based on alleged

24  violations of their Fifth Amendment rights to equal protection of the laws, of Joseph

25  Wilson's First Amendment right to freedom of speech, and of Valerie Wilson's

26  Fifth Amendment rights to privacy and property."  *Id.* at 703.  As in *Downie*, the

27  *Wilson* court held that the Privacy Act was a "'comprehensive scheme' that stops us

28  from providing additional remedies under *Bivens*."  *Id.* at 707.  Even though the

1    constitutional claims were "pled in terms of privacy, property, due process, or the

2    First Amendment," the Court concluded that the Wilsons nonetheless sought

3    damages "from the improper disclosure of information covered by the Privacy Act,"

4    and therefore dismissed the *Bivens* claim.  *Id.*

5         Plaintiffs' *Bivens* claims here allege harm from the improper "collection" of a

6    "record describing how any individual exercises rights guaranteed by the First

7    Amendment" – conduct which is expressly prohibited by the Privacy Act.

8    Throughout the complaint, Plaintiffs allege that the FBI "gathered the information

9    [about Plaintiffs] simply because the targets were Muslim." (*See, e.g.,* Compl. ¶ 3.)

10   Indeed, the First, Third and Sixth Causes of Action under *Bivens* each seek relief for

11   a supposed "scheme to target Plaintiffs for surveillance because of Plaintiffs'

12   adherence to and practice of the religion of Islam."  (*Id.* at ¶¶ 222, 227, 236.)

13        Congress fashioned the Privacy Act to remedy precisely the injury alleged

14   here: that a federal agency would collect information on how Plaintiffs "exercise

15   rights guaranteed by the First Amendment."  5 U.S.C. § 552a(e)(7).  Indeed,

16   Plaintiffs cannot dispute that their complaint falls within the ambit of the Privacy

17   Act, in light of their Eighth Cause of Action, which asserts a violation of the very

18   subsection (e)(7) of the Privacy Act that precludes their *Bivens* claims.  Specifically,

19   the Eight Cause of Action alleges that the FBI "collected and maintained records

20   describing how Plaintiffs exercise their rights to free speech and free exercise of

21   religion guaranteed by the First Amendment." (Compl. ¶ 241.)  As Plaintiffs admit

22   in their Eighth Cause of Action, the Privacy Act provides them with a remedy for

23   the constitutional violation alleged in the Complaint.

24        Admittedly, the Privacy Act limits Plaintiffs to recovery of damages from the

25   United States, and not the Agent Defendants individually.  But this does not save

26   Plaintiffs' *Bivens* claims.  When "the design of a Government program suggests that

27   Congress has provided what it considers adequate remedial mechanisms for

28   constitutional violations that may occur in the course of its administration, we have

1    not created additional *Bivens* remedies." *Western Radio,* 578 F.3d at 1120 (citations

2    omitted).  Indeed, the plaintiffs in *Wilson* argued that "the Privacy Act should not be

3    found comprehensive and preclusive of Bivens remedies here because three

4    defendants [including Vice President Cheney] in this case are exempted from its

5    terms."  *Wilson,* 535 F.3d at 707.  However, the D.C. Circuit rejected this argument,

6    noting that "[t]he failure of the Privacy Act to provide complete relief to the

7    Wilsons, however, does not undermine its status as a 'comprehensive scheme' that

8    stops us from providing additional remedies under *Bivens*."  *Id.*  Congress need not

9    grant a remedy for every constitutional wrong in order to supplant the *Bivens*

10   remedy:  that Congress has acted is enough to defeat an implied right of action for

11   damages under *Bivens*.  Accordingly, the Agent Defendants' motion to dismiss the

12   First, Third and Sixth Causes of Action should be granted.

13            **B.    Plaintiffs Fail To Allege An Unlawful Purpose**

14            Much like Section 1985(3), a discrimination claim under *Bivens* requires that

15   Plaintiffs allege an intentional violation of Plaintiffs' rights.  *Ashcroft v. Iqbal*, 129

16   S. Ct. 1937 (U.S. 2009).  The Court noted that "[w]here the claim is invidious

17   discrimination in contravention of the First and Fifth Amendments, our decisions

18   make clear that the plaintiff must plead and prove that the defendant acted with

19   discriminatory purpose."  *Id.* at 1948.  This purpose is "more than 'intent as volition

20   or intent as awareness of consequences.'"  *Id.* (*quoting Pers.  Admin'r of Mass.  v.*

21   *Feeney*, 442 U.S. 256, 279 (1979).)  "It instead involves a decisionmaker's

22   undertaking a course of action because of, not merely in spite of, the action's

23   adverse effects upon an identifiable group."  *Id.* (alterations omitted).  In other

24   words, Plaintiffs must show that the policy at issue was adopted "not for a neutral,

25   investigative reason but for the purpose of discriminating on account of … religion."

26   *Id.* at 1949.  This intent must be supported by factual allegations, not mere

27   conclusions.  *Iqbal*, 129 S. Ct.  at 1949 ("pleading that offers labels and conclusions

28   or a formulaic recitation of the elements of a cause of action will not do.")

As described above, Plaintiffs fail to allege that any Defendant acted with the requisite purpose to establish Plaintiffs' First and Fifth claims. (*See* Parts IV.B.1 and B.2, *supra*.)  Moreover, even if Plaintiffs adequately *allege* a discriminatory purpose, they will be unable to obtain *evidence* on that point if the Court sustains the government's assertion of the state secrets privilege. (*See* Part IV.B.3, *supra*.)

## VI.   THE AGENT DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

### A.   Legal Standard for Evaluating Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).  To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 2083.  The Court is free to address the two inquiries of qualified immunity in any order. *Pearson*, 555 U.S. at 236.

### B.   Defendant Pat Rose is Entitled To Qualified Immunity
### on All Claims under *Iqbal*

Because qualified immunity is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S.  511, 526 (1985), courts have evaluated the sufficiency of the allegations of the defendant's personal involvement in the deprivation of the right at the second stage of the qualified immunity analysis.

1  "Government officials may not be held liable for the unconstitutional conduct of

2  their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 129 S.

3  Ct. 1937, 1948 (2009).  Because vicarious liability is inapplicable to a federal

4  constitutional tort suit, a plaintiff must plead that each Government official, through

5  the official's own individual actions, has violated the Constitution.  *Id.*

6       Plaintiffs allege that Defendant Rose was the Special Agent in charge of the

7  entire Santa Ana branch office and who supervised Agents Armstrong and Allen

8  during the time period in question.  (Compl. ¶ 22.)  However, out of 246 paragraphs

9  in the Complaint, only four refer to Defendant Rose.  Of those four paragraphs, only

10  two have anything to do with the allegations at the core of this case.  First, Plaintiffs

11  allege that "Defendant Rose was apprised of the information Agents Armstrong and

12  Allen collected through Monteilh, and authorized the actions of Agents Armstrong

13  and Allen at all times relevant in this action." (Compl. ¶ 22.)  Second, Plaintiffs

14  allege that that Defendant "Rose maintained extremely close oversight and

15  supervision of Monteilh [and] knew about the methods of surveillance he used in

16  great detail and authorized them."  (Compl. ¶ 134.)  These are allegations of

17  *respondeat superior*, nothing more.[2]  Accordingly, Plaintiffs have failed to state a

18  claim against Defendant Rose.

19       **C.    All Defendants Are Entitled To Qualified Immunity on Plaintiff's**

20            **First Amendment and RFRA Claims**

21       Plaintiffs' First, Second, Third, Fourth, Fifth, Sixth and Seventh Causes of

22  Action, alleged under *Bivens* and 42 U.S.C. § 1985(3) for First and Fifth

23  Amendment violations, are barred by the intracorporate conspiracy doctrine,

24

25  _____

26  [2] Plaintiffs also allege that Defendant Rose gave a speech at the Irvine Pacific Club, and also planned to open a "Muslim gym" so that the FBI could monitor Muslims while they exercised.  (Compl. ¶¶ 22, 41, 141.)  The Complaint does not seek any relief for these supposed actions by Rose, so these allegations are irrelevant.

27

28

1   precluded by the Privacy Act, must be dismissed for failure to adequately plead a

2   specific intent or purpose to violate the Plaintiffs' rights and must be dismissed if

3   the state secrets privilege forecloses inquiry into the government's specific intent.

4   (*See* Parts IV and V, *supra*.)  However, even if the Court reaches the merits of

5   Plaintiffs' constitutional and statutory violations, qualified immunity nevertheless

6   shields the Agent Defendants from personal liability.

7           **1.       *Plaintiffs Fail to Sufficiently Allege a Burden on The Free***

8                         ***Exercise of Their Religion***

9           Plaintiffs' Third and Fourth Causes of Action allege a violation of the Free

10  Exercise Clause of the First Amendment, while the Fifth Cause of Action alleges a

11  violation of the Religious Freedom Restoration Act ("RFRA").[3]  To prevail,

12  Plaintiffs must allege that Defendants have burdened their free exercise of religion.

13  *See Vernon v. City of Los Angeles*, 27 F.3d 1385, 1393 (9th Cir. 1994).  The free

14  exercise of religion can be burdened *only* when "individuals are forced to choose

15  between following the tenets of their religion and receiving a governmental benefit

16  (*Sherbert*)[,] or coerced to act contrary to their religious beliefs by the threat of civil

17  or criminal sanctions (*Yoder*)."  *Navajo Nation*, 535 F.3d at 1070.  For example, in

18  *Navajo Nation*, plaintiffs alleged that the government's use of recycled wastewater

19  on a sacred mountain imposed a substantial burden on their exercise of religion in

20  violation of RFRA.[4]  *Id.* at 1062-63.  The Ninth Circuit found that the use of the

21

22  _____

23  [3] RFRA protects the same religious freedoms embodied by the Free Exercise
    Clause, and the analysis under RFRA is substantially the same as the analysis under

24  the *Free Exercise Clause*.  *See generally Navajo Nation v. U.S. Forrest Service*, 535
    F.3d 1058, 1070 (9th Cir.  2008).  Accordingly, these causes of action are addressed

25  collectively.

26  [4] The Ninth Circuit explained that there is no distinction between "burden" or

27  "substantial burden," as the United States Supreme Court has used the terms
    interchangeably.  *Navajo Nation*, 535 F.3d at 1075 n.17.

28

1  recycled wastewater did not constitute a substantial burden because the plaintiffs

2  were not forced "to choose between following the tenets of their religion and

3  receiving a governmental benefit" and were not coerced "to act contrary to their

4  religion under the threat of civil or criminal sanctions." *Id.* at 1070.

5      A government investigation does not impose a burden on the free exercise of

6  religion unless it coerces the target of the investigation to do (or not do) something.

7  For instance, in *Gering*, an ordained minister challenged the government's use of a

8  mail cover[5] to collect information pertaining to contributors of a sponsorship

9  program. *United States v. Gering*, 716 F.2d 615, 618 (9th Cir. 1983). The minister

10  argued that the mail cover amounted to a *per se* violation of his religious rights

11  under the First Amendment, because "the mere potential for abridgement of

12  religious freedom should invalidate the mail cover." *Id.* at 619. The Ninth Circuit

13  rejected this argument, holding that the mere potential for abridgement of First

14  Amendment rights without some showing that "the mail covers were improperly

15  used and burdened his free exercise or associational rights" was insufficient to show

16  a violation. *Id.* at 620.

17      Similarly, in *Vernon*, a retired Assistant Chief of the Los Angeles Police

18  Department claimed that a government investigation "retarded him in the exercise of

19  his religious beliefs, including worship, consultation with his pastor, participation in

20  Christian fellowship, and giving public testimony to his faith without severe

21  consequences." *Vernon*, 27 F.3d at 1390. The district court found that plaintiff

22  Vernon failed to establish a substantial burden on his free exercise, finding it

23  "inadequate for a plaintiff merely to allege that government action subjectively

24  'chills' his religious behavior, especially where the government action is neither

25  regulatory, proscriptive, or compulsory in nature." *Id.* at 1394 (quoting district

26

27  [5] A mail cover records the information on the outside of mail. 39 C.F.R. §
   233.3(c)(1).

28

court's order).  On appeal, the Ninth Circuit affirmed, characterizing Vernon's claims as "mere subjective chilling effects with neither 'a claim of specific present objective harm nor a threat of specific future harm.'"  *Id.* at 1395 (quoting *Laird v. Tatum*, 408 U.S. 1, 13 (1972)).  The Court noted that such "chilling effects" are not constitutionally cognizable.  *Id.* at 1395.

Here, Plaintiffs have alleged no actions by the Agent Defendants that burden their free exercise of religion.  At most, Plaintiffs allege some reluctance to engage in religious practices well after Monteilh's role in the investigation ended.  (*See* Compl. ¶¶ 62, 63, 76, 179, 181, 191 and 192.)  However, Plaintiffs fail to allege any action on the part of Defendants, through the use of the informant or otherwise, that forced them to choose between following the tenets of their religion and receiving a governmental benefit, or that coerced them to act contrary to their religious beliefs by the threat of civil or criminal sanctions.  Plaintiffs allege nothing more than "mere subjective chilling effects," which are insufficient as a matter of law to burden religion.  Without such a burden, the Plaintiffs cannot state a cause of action for violation of the Free Exercise Clause or RFRA.

### 2. *The Use of A Confidential Informant was Narrowly Tailored to Advance a Compelling Government Interest*

Even if Plaintiffs had alleged a cognizable burden on their religious rights, the mere existence of that burden is not enough to violate the Free Exercise Clause or RFRA.  Neither the Free Exercise Clause nor RFRA prohibit the government from burdening the free exercise of religion if the action is "justified by a compelling government interest."  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993); *Navajo Nation*, 535 F.3d at 1068.  It appears that Plaintiffs contend that because the investigation was motivated by naked discrimination, the government could have no legitimate purpose.

Yet Plaintiffs allege in the Complaint that the FBI began investigating them for neutral, investigative  reasons, namely because the FBI (a) believed that Plaintiff

Fazaga espoused "radical" beliefs and had ties with "anti-American" groups; (b) believed that Plaintiff Malik traveled to Yemen for religious schooling, thereafter underwent a dramatic change in behavior and dress, and was barred from entering Saudi Arabia; and (c) believed that Plaintiff AbdelRahim was the charismatic leader of a terrorist cell. (*See* Part IV.B.2, *supra*.) Thus, despite the claim that the investigation targeted Plaintiffs solely because of their religion, the Complaint actually alleges that the FBI's concern was investigating potential terrorism. As a result, any burden on the Plaintiffs' religious beliefs was justified by a compelling government interest, because "[i]t is obvious and unarguable that no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (U.S. 1981) (internal citations omitted).

Even if Plaintiffs had sufficiently *alleged* discriminatory purpose, the government's assertion of the state secrets privilege could preclude *evidence* supporting that claim. If the Court upholds the government's assertion of the privilege, it will take the question of *why* the government investigated these particular Plaintiffs off the table. (*See* Part IV.B.3, *supra*.) Accordingly, the Free Exercise and RFRA claims should be dismissed.

Moreover, Plaintiffs fail to allege that the use of Monteilh as a confidential informant in the alleged investigation was not narrowly tailored, or the least restrictive means, to further the government's interest in preventing terrorism. The Free Exercise Clause requires that government action be narrowly tailored to further a compelling government interest, *Lukumi*, 508 U.S. at 531-32, while RFRA requires that the government employ the least restrictive means to further a compelling government interest. *Navajo Nation*, 535 F.3d at 1068. The Fourth Amendment determines the limits of government investigations, and, as explained in greater detail below, Plaintiffs fail to allege facts demonstrating that Defendants' use of Monteilh violated the protections of Fourth Amendment. Standing alone, the First Amendment does not "prohibit law enforcement officials from using an

1  indispensable method of criminal investigation appropriate in any other

2  circumstance." *United States v. Aguilar*, 883 F.2d 662, 705 (9th Cir. 1988).

3  Because the use of a confidential informant is permitted by the Fourth Amendment,

4  Plaintiffs have failed to allege that the investigation was not narrowly tailored, nor

5  the least restrictive means, to further the government's interest in investigating

6  potential threats to national security.

7        **3.    Defendants Are Entitled To Qualified Immunity**

8        For the foregoing reasons, Plaintiffs have failed to allege a violation of the

9  Free Exercise Clause, which ends the qualified immunity analysis. For the same

10  reasons, any violation of Plaintiffs' rights was not "clearly established" at the time

11  of the alleged violation. The authorities cited above reveal that it is at best an open

12  question whether a criminal investigation can burden free exercise rights, especially

13  where the investigation fails to condition any benefit or sanction on the exercise of

14  those rights and where there is no allegation that the investigation was pursued for

15  the purpose of discrimination rather than for "a neutral, investigative reason." *Iqbal*,

16  129 S. Ct. at 1494.

17    **D.    Plaintiffs Fail to State a Claim Under the Establishment Clause of**

18          **the First Amendment**

19        Plaintiffs' First and Second Causes of Action allege a violation of the

20  Establishment Clause of the First Amendment, which prohibits any law "respecting

21  an establishment of religion." U.S. CONST. AMEND I. The Complaint does not

22  allege that Defendants Allen or Armstrong had authority over the broader FBI

23  investigation of Southern California mosques. Therefore, Plaintiffs' Establishment

24  Clause claims against Allen and Armstrong are limited to the handling of Monteilh.

25        The United States Supreme Court has interpreted the Establishment Clause to

26  forbid not only the preference but also the hostility towards any religion. *Nurre v.*

27  *Whitehead*, 580 F.3d 1087, 1095-96 (9th Cir. 2009). The Ninth Circuit applies the

28  traditional test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971) to determine

1 whether the government's actions have offended the Establishment Clause. *Id.* at

2 1095-96.  In order to state a claim under the Establishment Clause, Plaintiffs must

3 allege that Government (1) did not have a secular purpose for its conduct, (2) that its

4 principal or primary effect was the advancement or inhibition of religion, and (3)

5 that it fostered an excessive governmental entanglement with religion. *Id.* (*citing*

6 *Lemon*, 403 U.S. at 612-613).

7 ### 1.   *Plaintiffs Fail To Allege Improper Purpose*

8 The first prong of the *Lemon* test requires Plaintiffs to allege that "the

9 government's actual purpose is to endorse or disapprove of religion." *Kreisner v.*

10 *City of San Diego*, 1 F.3d 775, 782 (9th Cir. 1993) (*quoting Lynch v. Donnelly*, 465

11 U.S. 668, 673 (1984) (O'Connor, J., concurring).)  Government action will survive

12 the purpose prong unless the "government acts with the ostensible and predominant

13 purpose of inhibiting religion." *Nurre*, 580 F.3d at 1096 (internal quotations and

14 citations omitted).  "A reviewing court must be reluctant to attribute unconstitutional

15 motives to government actors in the face of a plausible secular purpose." *Kreisner*,

16 1 F.3d at 782 (internal quotations and citations omitted).

17 Plaintiffs fail to allege that the Agent Defendants used Monteilh with the

18 purpose of inhibiting religion or even to discriminate among religions.  First, the

19 Complaint admits that the investigation was covert, which is utterly inconsistent

20 with an intent to inhibit religion.  (*See* Part IV.B.1, *supra*.)  Second, the Complaint

21 alleges that there were neutral, investigative reasons for the FBI's investigation of

22 these particular Plaintiffs.  (*See* Part IV.B.2, *supra*.)  Third, even if Plaintiffs

23 adequately *allege* a discriminatory purpose or an intent to inhibit religion, they will

24 be unable to obtain *evidence* on that point if the Court sustains the government's

25 assertion of the state secrets privilege.  (*See* Part IV.B.3, *supra*.)

26 ### 2.   *Plaintiffs Fail To Allege the Sending of A Message*

27 The second prong of the *Lemon* test requires Plaintiffs to plead that

28 government action "could be construed as sending primarily a message of…

1  disapproval of religion." *Vernon*, 27 F.3d at 1398 (citing *County of Allegheny v.*

2  *ACLU*, 492 U.S. 573, 592-93 (1989)).  Government action has the primary effect of

3  disapproving of religion if it is likely to be perceived by nonadherents of the

4  controlling denominations as a disapproval of their religious choices.  *Nurre*, 580

5  F.3d at 1096.  However, "[t]his is an objective test, asking whether a reasonable

6  observer who is 'informed and familiar with the history of the government practice

7  at issue,' would perceive the action as having a non-secular effect." *Id.* (internal

8  citations and quotations omitted).  "[T]he key consideration in this second prong

9  analysis is whether the government action 'primarily' disapproves of religious

10  beliefs." *Vernon,* 27 F.3d at 1398.

11      Moreover, the mere fact that it is possible to infer disapproval of religion is

12  not enough to invalidate government action under the second prong.  In *Vernon*, the

13  plaintiff challenged an investigation to determine "whether his religious views were

14  having an impermissible effect on his on-duty police department performance."

15  *Vernon*, 27 F.3d at 1388.  The court rejected Vernon's challenge to the

16  investigation, even though religion, and Vernon's religious beliefs in particular,

17  were the subject of the investigation.  The court found that, because the primary

18  purpose of the investigation was "any possible impermissible or illegal" conduct,

19  disapproval of religion could not be "objectively construed as the primary focus or

20  effect of the investigation." *Id.* at 1398-99.

21      Here, Plaintiffs fail to allege that Defendants' actions could be construed as

22  sending a message of disapproval of Islam.  To the contrary, Plaintiffs admit that the

23  investigation was covert and unknown to them while it was ongoing.  (*See* Part

24  IV.B.1, *supra*.)  Because the government's admitted purpose was to *conceal* the

25  investigation from Plaintiffs – and from any other potential targets of the

26  investigation – disapproval of religion could not be objectively construed as the

27  primary focus or effect of the investigation.  Defendants cannot "send a message" of

28  disapproval through action that neither Plaintiffs nor anyone else knew about.

### 3. Plaintiffs Failed to Plead Excessive Entanglement

The third and final prong of the *Lemon* test requires a showing that the government action "foster[s] excessive entanglement with religion." *Lemon*, 403 U.S. at 613. Not all entanglements violate the Establishment Clause, but only those "that demonstrate that a government program has the impermissible effect of evidencing hostility toward religion." *Nurre*, 580 F.3d at 1097. "The entanglement prong seeks to minimize the interference of religious authorities with secular affairs and secular authorities in religious affairs." *Cammack v. Waihee*, 932 F.2d 765, 780 (9th Cir. 1991). Here, Plaintiffs fail to allege any interference with religious affairs, nor can they, when the covert nature of the investigation necessarily precludes any entanglement. (*See* Part IV.B.1, *supra*.)

### 4. Defendants Are Entitled To Qualified Immunity

For the foregoing reasons, Plaintiffs have failed to allege a violation of the Establishment Clause, which ends the qualified immunity analysis. For the same reasons, any violation of Plaintiffs' rights was not "clearly established" at the time of the alleged violation. This is particularly true here, because when "the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered clearly established at least in the absence of closely corresponding factual and legal precedent." *Devereaux v. Perez*, 218 F.3d 1045, 1055 (9th Cir. 2000) (internal citations and quotations omitted). The authorities cited above reveal that it is at best an open question whether a covert criminal investigation whose admitted purpose is investigating terrorists can send a message of disapproval of religion. Accordingly, Plaintiffs fail to allege that the Agent Defendants knowingly violated Plaintiffs' rights.

### E. All Defendants Are Entitled to Qualified Immunity on Plaintiffs' Equal Protection Claims

Plaintiffs' Equal Protection claims are subsumed by, and co-extensive with, Plaintiffs' First Amendment claims, as "[i]t is generally unnecessary to analyze laws

1  which burden the exercise of First Amendment rights by a class of persons under the

2  equal protection guarantee, because the substantive guarantees of the Amendment

3  serve as the strongest protection against the limitation of these rights." *Orin v.*

4  *Barclay*, 272 F.3d 1207, 1213 (9th Cir. 2001) (*citing* John E.  Nowak, Ronald D.

5  Rotunda & J.  Nelson Young, Handbook on Constitutional Law (1978)).

6       In *Orin*, a protestor was told by a community college official that he could

7  conduct an anti-abortion protest on campus only if he refrained from, among other

8  things, couching his protest in overtly religious terms. *Id* at 1211.  After his

9  subsequent arrest at the protest, Plaintiff sued the college official, a police officer,

10  and others under 42 U.S.C. §§ 1983 and 1985(3) for, *inter alia*, violation of the

11  Equal Protection Clause and his First Amendment free exercise rights. *Id.*  The

12  Ninth Circuit, noting that Plaintiff's Equal Protection claim appeared to be "no more

13  than a First Amendment claim dressed in equal protection clothing," held it

14  subsumed by, and co-extensive with, his First Amendment claim, and thus analyzed

15  Plaintiff's free exercise claims directly rather than as a component of his Equal

16  Protection claim. *Id.*  Here, Plaintiffs' Equal Protection claims are likewise

17  subsumed by their First Amendment claims.  Thus, the Agent Defendants are

18  entitled to qualified immunity on Plaintiffs' Equal Protection claims for the same

19  reasons argued above.

20      **F.**    **Defendants Are Entitled to Qualified Immunity On Plaintiffs'**

21          **Fourth Amendment Claims.**

22       Plaintiffs' Ninth Cause of Action asserts that Defendants violated their rights

23  under the Fourth Amendment in three ways: (i) by recording their communications

24  without a warrant; (ii) by conducting video surveillance; and (iii) by planting

25  listening devices in mosques without a warrant.  (Compl.  ¶ 244.)  In order to

26  overcome the Agent Defendants assertion of qualified immunity, Plaintiffs are

27  required to show that these actions violated established rights under the Fourth

28  Amendment.

1    The Fourth Amendment protects individuals from unreasonable searches and

2   seizures.  U.S. CONST. AMEND. IV.  "Fourth Amendment rights are personal rights

3   which, like some other constitutional rights, may not be vicariously asserted."

4   *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (internal citations omitted).  The

5   protections of the Fourth Amendment only apply if an individual can demonstrate

6   that the government action invaded upon his legitimate expectation of privacy.

7   *Smith v. Maryland*, 442 U.S. 735, 740-41 (1978); *see also United States v. Taketa*,

8   923 F.2d 665, 670-671 (9th Cir. 1991) (internal citations omitted).  Government

9   action will not offend the Fourth Amendment unless: (1) the individual has

10   exhibited a subjective expectation of privacy and (2) the individual's subjective

11   expectation of privacy is one that society is prepared to recognize as reasonable.

12   *Smith*, 442 U.S. at 740-41; *see also United States v. Nerber*, 222 F.3d 597, 599 (9th

13   Cir. 2000) (internal citations omitted).  Plaintiffs can establish a subjective

14   expectation of privacy if they allege that they sought to preserve something as

15   private.  *Smith*, 442 U.S. at 740-41.  Whether or not an expectation of privacy is

16   objectively reasonable is a question of law.  *Nerber*, 222 F.3d at 599.

17                    ***1.    Recording of Audio Communications***

18    Plaintiffs allege that Monteilh made audio recordings of conversations where

19   none of the participating parties consented.  (Compl. ¶ 244.)  Plaintiffs claim that

20   Monteilh allegedly left his recording devices unattended in the prayer hall while

21   Malik and AbdelRahim were present.[6]  (Compl. ¶¶ 188, 206.)  The Complaint does

22   not allege that the FBI obtained any unattended recordings of Plaintiff Fazaga.  As a

23   _____

24   [6] The Fourth Amendment does not prohibit recordings made by Monteilh when he

25   was present because Monteilh necessarily consented to the recording.  *United States*

26   *v. White*, 401 U.S. 745, 749 (1971).  Indeed, the Fourth Amendment does not even
     characterize the government's use of undercover informers as a "search" because it

27   does not intrude upon a legitimate expectation of privacy.  *United States v. Aguilar*,
     883 F.2d 662 (9th Cir. 1988).

28

1   result, only Malik and AbdelRahim may assert that these audio recordings violated

2   their Fourth Amendment rights.

3        The Fourth Amendment does not protect information that an individual

4   "knowingly exposes to the public, even in his own home or office." *Katz v. United*

5   *States*, 389 U.S. 347, 351 (1967).  Even the inadvertent disclosure of information is

6   not protected by the Fourth Amendment, as the risk of being overheard by an

7   eavesdropper is a risk we assume whenever we speak. *Hoffa v. United States*, 385

8   U.S. 293, 303 (1966); *see also Aguilar*, 883 F.2d at 702-03.  And because "the

9   Fourth Amendment protects people, not places," an individual cannot invoke the

10  protections of the Fourth Amendment simply due to his location. *Katz*, 389 U.S. at

11  351.  The protections of the Fourth Amendment extend to a particular place only

12  when the individual claiming the protection demonstrates that he has a "legitimate

13  expectation of privacy in the invaded place." *United States v. Crawford*, 323 F.3d

14  700, 706 (9th Cir. 2003) (internal citations and quotations omitted).  Activities that

15  take place within a church or other religious institution are not afforded a greater

16  expectation of privacy than normally provided by the Fourth Amendment. *Aguilar*,

17  883 F.2d at, 696-703 (9th Cir. 1988); *see also Presbyterian Church v. United States*,

18  870 F.2d 518, 527 (9th Cir. 1989).

19       Plaintiffs have failed to allege a legitimate expectation of privacy in their

20  communications in the prayer hall.  Neither Malik nor AbdelRahim allege that they

21  sought to preserve their communications in the prayer hall as private.  Rather, Malik

22  and AbdelRahim conducted the alleged conversations in an area seemingly open to

23  the public, and populated by Monteilh and other unidentified third parties.  (Compl.

24  ¶¶ 188, 206.)  By having these conversations in a location that was open to the

25  public, Malik and AbdelRahim bore the risk of being overheard, and therefore

26  lacked a subjective expectation of privacy.

27

28

## 2.    *Video Surveillance*

Plaintiffs allege that, on several occasions, Monteilh carried a covert video recording device with him.  (Compl. ¶ 104, 124, 125, 168, 175, 197, 201.)  However, only Fazaga and AbdelRahim can assert a claim with regards to the alleged video surveillance, because Plaintiffs have not alleged that Malik was the subject of any of the recordings.  (*Id.*)

Video surveillance is not per se impermissible under the Fourth Amendment. *United States v. Taketa*, 923 F.2d 665 (9th Cir. 1991).  For example, individuals do not have a reasonable expectation to be free from video surveillance in public places.  *Id.*  Similarly, individuals do not have a reasonable expectation to be free from video surveillance while in the presence of a government informant, because the information shared with, or visible to, the government agent is not protected by the Fourth Amendment.  *See Nerber*, 222 F.3d at 604 ("defendants bore the risk that their activities with the informants were being surveilled" using a video camera)*; see also United States v.  Brathwaite*, 458 F.3d 376, 380-81 (5th Cir. 2006) (defendant "forfeited his privacy interest in those activities that were exposed to the CI".); *United States v. Lee*, 359 F.3d 194, 201-02 (3rd Cir. 2004) ("just as Lee gave up any expectation of privacy in things he allowed [the informant] to hear, Lee also gave up any expectation of privacy in the things he allowed [the informant] to see"); *see also United States v. Davis*, 326 F.3d 361, 366 (2nd Cir. 2003) ("Once Davis invited [the informant] into his residence, Davis forfeited his privacy interest in those activities that were exposed to [the informant].").

Plaintiffs' Fourth Amendment claim related to the alleged video recordings fails because Plaintiffs have not alleged that they had a legitimate expectation of privacy in any of activities allegedly captured on the recordings.  Instead, each of the alleged recordings were taken with a device that Monteilh supposedly had installed in his shirt button, and all video footage was recorded in his presence. (Compl. ¶¶ 104, 124, 125, 168, 175, 197, 201.)  Recordings made when the

1  informant is present, of activities made accessible to him by Plaintiffs, is not

2  protected by the Fourth Amendment.  Furthermore, two of the alleged recordings

3  occurred in public places, the mosque and a soccer field, where individuals do not

4  have a reasonable expectation to be free from video surveillance.  (*Id.* at ¶¶ 168,

5  201.)  As a matter of law, Fazaga and AbdelRahim did not have a reasonable

6  expectation to be free from video surveillance in any of these instances, thus their

7  Fourth Amendment claim, with respect to the video recordings, fails.

8  ### 3.    *Listening Devices In Mosques*

9  Plaintiffs allege that the FBI planted "listening devices" in mosques, but fail

10  to allege that any of these "listening devices" (apart from the device used by

11  Monteilh, discussed above) recorded *their* conversations.  This is fatal to the claim:

12  Plaintiffs' Fourth Amendment claims must be limited to the alleged intrusions on

13  *their* personal rights, not the rights of others.  *Rakas*, 439 U.S. at 133-34.  With no

14  allegation that *these* Plaintiffs were recorded, the claim fails.

15  Moreover, if the Court upholds the government's assertion of the state secrets

16  privilege, litigation of this claim will be foreclosed, as the privilege covers evidence

17  regarding the existence, use and justification of listening devices in mosques – apart

18  from those devices allegedly used by Monteilh.  (Docket No. 32 at 28:5-11 (stating

19  that "previously undisclosed information related to ... sources and methods used in a

20  counterterrorism investigation of a particular person" is protected by the state

21  secrets doctrine).)  Without access to this classified information, Plaintiffs cannot

22  prove – and the Agent Defendants cannot refute – the allegation that the government

23  planted "listening devices" in mosques.  Accordingly, dismissal is proper.  *See*

24  *Kasza*, 133 F.3d at 1166.[7]

25

26  ---

[7] Although not included in their Ninth Cause of Action, Plaintiffs also allege that the
27  FBI placed electronic listening devices in Plaintiff AbdelRahim's home, car and cell
28  phone and video cameras outside his home.  (Compl. ¶ 204.)  To the extent
(footnote continued)

### G.    Plaintiffs' FISA Claim Is Barred by Qualified Immunity.

Plaintiffs' Tenth Cause of Action alleges that the Agent Defendants violated Section 1810 of the Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1801-71, for warrantless electronic surveillance.  (*See* Compl. ¶ 246.)  Specifically, Plaintiffs allege that the Agent Defendants, acting through Monteilh, used electronic, mechanical, and/or other surveillance devices, without a warrant, to monitor Plaintiffs and their communications and to acquire information under circumstances in which Plaintiffs had a reasonable expectation of privacy and a warrant was required for law enforcement purposes.  (*Id.*)

The Agent Defendants did not violate clearly established law of which a reasonable person would have known, and thus are entitled to qualified immunity on this claim.  First, FISA provides a private right of action only to an "aggrieved person," someone who was the target of electronic surveillance under circumstances in which he or she had a reasonable expectation of privacy.  *See* 50 U.S.C. §§ 1801(f), 1809, 1810.  As discussed above, Plaintiffs had no reasonable expectation of privacy in the circumstances alleged.  (*See* Part VI.F., *supra*.)

Second, since FISA Section 1810 was enacted more than thirty years ago, only two published decisions have addressed it, both in the same case.  *See In re Nat'l Sec. Agency Telecomms. Records Litig.*, 564 F. Supp. 2d 1109 (N.D. Cal. 2008) and 700 F. Supp. 2d 1182 (N.D. Cal. 2010).  Neither case established that the type of warrantless surveillance alleged here creates civil liability under Section 1810 for governmental officials sued in their individual capacity, as the Agent Defendants are sued here.  Indeed, in one of those decisions the court held that a

---

Plaintiffs intend to seek a remedy for this alleged conduct, their effort will be in vain if the Court sustains the government's assertion of the state secrets privilege, for the same reasons.

Section 1810 claim for warrantless electronic surveillance claim may only be alleged against government officials in their *official*, as opposed to personal, capacity. *See In re Nat'l Sec. Agency Telecomms. Records Litig.*, 700 F. Supp. 2d 1182, 1202-03 (N.D. Cal. 2010). The court there reasoned that the nature of the wrongdoing by governmental actors alleged in FISA cases "is official rather than individual or personal," as it is only "officers and employees acting in their official capacities that would engage in surveillance of the type contemplated by FISA." *Id.* at 1192-93, 1203.

Due to the utter dearth of case law clearly establishing that the Agent Defendants' conduct violated Section 1810 of FISA, they are entitled to qualified immunity on this cause of action.

## VII.   CONCLUSION

While Plaintiffs' Complaint is replete with broad allegations of a discriminatory investigation by the FBI of Muslims in Southern California, Plaintiffs fail sufficiently to allege that the Agent Defendants violated these particular Plaintiffs' rights. Moreover, even if Plaintiffs had sufficiently alleged a violation of their rights, the Agent Defendants are entitled to qualified immunity as

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    any such violation was not "clearly established" at the time.  For this reason, and for

2    the reasons set forth above and in the motions to dismiss filed by the Government

3    Defendants and Defendants Tidwell and Walls, the Agent Defendants' motion to

4    dismiss Plaintiffs' Complaint should be granted.

5    DATED: August 11, 2011            Respectfully submitted,

6                                      SCHEPER KIM & HARRIS LLP
7                                      DAVID C.  SCHEPER
                                       ALEXANDER H.  COTE
8                                      ANGELA M.  MACHALA

9

10

11                                     By: _____/s/_____

12                                          David C.  Scheper
                                            Attorneys for Defendants Pat Rose, Kevin
13                                          Armstrong and Paul Allen

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JOINDER**

2    Defendants Rose, Armstrong and Allen hereby join in the motions to dismiss

3  filed by (1) Defendants Federal Bureau of Investigation, Robert Mueller and Steven

4  Martinez (Docket No. 32) and (2) Defendants Stephen Tidwell and Barbara Walls,

5  because the arguments raised therein apply with equal force to Agents Rose,

6  Armstrong and Allen.

7  DATED: August 11, 2011          Respectfully submitted,

8                                                    SCHEPER KIM & HARRIS LLP

9                                                    DAVID C. SCHEPER
                                                      ALEXANDER H. COTE

10                                                   ANGELA M. MACHALA

11

12

13                                  By:  _____/s/_____

14                                            David C. Scheper
                                               Attorneys for Defendants Pat Rose, Kevin

15                                            Armstrong and Paul Allen

16

17

18

19

20

21

22

23

24

25

26

27

28