**SCHEPER KIM & HARRIS LLP**
DAVID C. SCHEPER (State Bar No. 120174)
dscheper@scheperkim.com
ALEXANDER H. COTE (State Bar No. 211558)
acote@scheperkim.com
ANGELA M. MACHALA (State Bar No. 224496)
amachala@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
Telephone: (213) 613-4655
Facsimile:  (213) 613-4656

**Attorneys for Defendants**
**Pat Rose, Kevin Armstrong and Paul**
**Allen**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| YASSIR FAZAGA, ALI UDDIN MALIK, YASSER ABDELRAHIM,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION; ROBERT MUELLER, DIRECTOR OF THE FEDERAL BUREAU OF INVESTIGATION, in his official capacity; STEVEN M. MARTINEZ, ASSISTANT DIRECTOR IN CHARGE, FEDERAL BUREAU OF INVESTIGATION'S LOS ANGELES DIVISION, in his official capacity; J. STEPHEN TIDWELL; BARBARA WALLS; PAT ROSE; KEVIN ARMSTRONG; PAUL ALLEN,<br><br>Defendants. | CASE NO.<br><br>SACV 11-00301-JST(VBKx)<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANTS PAT ROSE, KEVIN ARMSTRONG AND PAUL ALLEN TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; NOTICE OF JOINDER IN MOTIONS TO DISMISS BY (1) DEFENDANTS UNITED STATES OF AMERICA, FEDERAL BUREAU OF INVESTIGATION, ROBERT MUELLER, AND STEVEN MARTINEZ AND (2) DEFENDANTS STEPHEN TIDWELL AND BARBARA WALLS**<br><br>**Date:**  January 30, 2012<br>**Time:**  1:30 PM<br>**Judge:** Hon. Cormac J. Carney |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 30, 2012, at 1:30 PM, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Cormac J. Carney, located at 411 West Fourth Street, Room 1053, Santa Ana, CA 92701, defendants Pat Rose, Kevin Armstrong and Paul Allen (collectively the "Agent Defendants") will, and hereby do, move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing each and every cause of action in Plaintiffs' First Amended Class Action Complaint.

The Agent Defendants move on the ground that Plaintiffs have failed to state a claim as to any cause of action against the Agent Defendants, because:

(1) Plaintiffs have failed to allege an entitlement to *Bivens* relief, an improper government purpose, a message of disapproval of religion or improper entanglement with respect to their First Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action;

(2) Plaintiffs have failed to allege a conspiracy formed for an unconstitutional purpose, an improper government purpose, a message of disapproval of religion or improper entanglement with respect to their Second Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action;

(3) Plaintiffs have failed to allege an entitlement to *Bivens* relief, an improper purpose, a burden on their free exercise of religion, that the complained of conduct was not narrowly tailored and that the conduct was not justified by a compelling government interest with respect to their Third Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action;

(4) Plaintiffs have failed to allege a conspiracy formed for an unconstitutional purpose, a burden on their free exercise of religion, that the complained of

conduct was not narrowly tailored and that the conduct was not justified by a compelling government interest with respect to their Fourth Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action;

(5) Plaintiffs have failed to allege a burden on their free exercise of religion, that the complained of conduct was not narrowly tailored and that the conduct was not justified by a compelling government interest with respect to their Fifth Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action;

(6) Plaintiffs have failed to allege a violation of the First Amendment with respect to their Sixth Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action;

(7) Plaintiffs have failed to allege a conspiracy formed for an unconstitutional purpose, a violation of the First Amendment with respect to their Seventh Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action;

(8) Plaintiffs have failed to allege a reasonable expectation of privacy with respect to their Ninth Cause of Action and because the Agent Defendants are entitled to qualified immunity for this cause of action; and

(9) Plaintiffs have failed to allege the existence of a clearly established right with respect for their Tenth Cause of Action and because the Agent Defendants are entitled to qualified immunity to this cause of action.

This motion is based on the accompanying Memorandum of Points and Authorities, and all pleadings and papers on file with the Court in this action.

PLEASE TAKE FURTHER NOTICE that the Agent Defendants hereby join in the motions to dismiss filed by (1) Defendants United States of America, Federal Bureau of Investigation, Robert Mueller and Steven Martinez (Docket No. 55) and (2) Defendants Stephen Tidwell and Barbara Walls because the arguments raised

1  therein apply with equal force to the Agent Defendants.

2  **<u>Statement of Local Rule 7-3 Compliance</u>**

3  Counsel for all parties conferred on this motion on November 1, 2011.

4  DATED: Nobvember 11, 2011        SCHEPER KIM & HARRIS LLP

5  DAVID C. SCHEPER
   ALEXANDER H. COTE

6  ANGELA M. MACHALA

7

8

9  By:   __/s/_____

10  David C. Scheper
    Attorneys for Defendants Pat Rose, Kevin

11  Armstrong and Paul Allen

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ...................................................................................... 1

II.  FACTUAL BACKGROUND ...................................................................... 2

    A.  The FBI Had Specific Neutral Reasons For Investigating Plaintiffs ............................................................................................ 2

    B.  Investigative Techniques Allegedly Employed By the FBI ................. 5

    C.  Plaintiffs Learned Of Monteilh's Actions After The Fact .................... 6

III.  LEGAL STANDARD UNDER *IQBAL* ...................................................... 6

IV.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1985(3) ..................................................................................................... 6

    A.  Plaintiffs Fail To Allege A Conspiracy Under Section 1985(3) ........... 6

    B.  Plaintiffs Failed To Allege An Unlawful Purpose ............................... 9

        1.  Failure To Allege Purpose Of Interfering With Religion ........... 10

        2.  Failure to Allege Purposeful Discrimination ............................. 11

        3.  Inability to Prove Purposeful Disruption or Discrimination ...... 12

V.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER *BIVENS* ..................... 13

    A.  Plaintiffs' *Bivens* Claims Are Precluded By The Privacy Act ............. 13

    B.  Plaintiffs Fail To Allege An Unlawful Purpose ................................... 17

VI.  THE AGENT DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ............................................................................................ 18

    A.  Legal Standard For Evaluating Qualified Immunity ........................... 18

    B.  Defendant Rose Is Entitled To Qualified Immunity Under *Iqbal* ...... 18

    C.  Qualified Immunity Bars The Free Exercise And RFRA Claims ........ 20

        1.  Plaintiffs Allege No Burden On Their Free Exercise Of Religion ................................................................................... 20

        2.  The Investigation Advanced A Compelling Government Interest ..................................................................................... 22

        3.  The Agent Defendants Are Entitled To Qualified Immunity ................................................................................... 24

    D.  Qualified Immunity Bars The Establishment Clause Claims ............... 24

        1.  Plaintiffs Fail To Allege Improper Purpose ............................... 25

2.      Plaintiffs Fail To Allege the Sending of A Message .................26

3.      Plaintiffs Failed To Plead Excessive Entanglement ..................27

4.      The Agent Defendants Are Entitled To Qualified
        Immunity ...............................................................................27

E.      Qualified Immunity Bars The Equal Protection Claims ......................28

F.      Qualified Immunity Bars The Unlawful Search Claims ......................28

1.      Recording Of Audio Communications .......................................29

2.      Video Surveillance ...................................................................31

3.      Surveillance Devices In Mosques ..............................................32

G.      Qualified Immunity Bars The FISA Claim ...........................................34

VII.   CONCLUSION ...........................................................................................35

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Action v. Gannon,*
    450 F.2d 1227 (8th Cir. 1971) ...................................................................10

*Adams v. Johnson,*
    355 F.3d 1179 (9th Cir. 2004) ...................................................................14

*Ashcroft v. al-Kidd,*
    131 S. Ct. 2074 (2011) ...............................................................................18

*Berry v. Hollander,*
    925 F.2d 311 (9th Cir. 1991) .....................................................................14

*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,*
    403 U.S. 388 (1971) ................................................................2, 13, 15, 20

*Blunt v. County of Sacramento,*
    No. 2:04-cv-1743, 2006 U.S. Dist. LEXIS 11099
    (E.D. Cal. Mar. 2, 2006) ..............................................................................8

*Bray v. Alexandria Women's Health Clinic,*
    506 U.S. 263 (1993) ...............................................................................9, 10

*Bush v. Lucas,*
    462 U.S. 367 (1983) ...................................................................................14

*Cammack v. Waihee,*
    932 F.2d 765 (9th Cir. 1991) .....................................................................27

*Chambliss v. Foote,*
    562 F.2d 1015 (5th Cir. 1977),
    *aff'g,* 421 F. Supp. 12 (E.D. La. 1976) .......................................................8

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520 (1993) ..............................................................................23, 24

*Cooper v. FAA,*
    596 F.3d 538 (9th Cir. 2010) .....................................................................15

*County of Allegheny v. ACLU,*
    492 U.S. 573 (1989) ...................................................................................26

*Crowe v. County of San Diego,*
    608 F.3d 406 (9th Cir. 2010) .......................................................................7

*Denney v. City of Albany,*
    247 F.3d 1172 (11th Cir. 2001) ...................................................................8

*Devereaux v. Perez,*
    218 F.3d 1045 (9th Cir. 2000) ...................................................................27

*Dickerson v. Alachua County Comm'n,*
   200 F.3d 761 (11th Cir. 2000)..................................................................7

*Doe v. Chao,*
   540 U.S. 614 (2004) ...............................................................................15

*Downie v. City of Middleburg Heights,*
   301 F.3d 688 (6th Cir. 2002)..................................................................15

*Fonda v. Gray,*
   707 F.2d 435 (9th Cir. 1983)....................................................................7

*Gooden v. Howard County,*
   954 F.2d 960 (4th Cir. 1992)....................................................................9

*Haig v. Agee,*
   453 U.S. 280 (U.S. 1981) .......................................................................23

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ...............................................................................18

*Hobson v. Wilson,*
   737 F.2d 1 (D.C. Cir. 1984) ..............................................................10, 11

*Hoefer v. Fluor Daniel, Inc.,*
   92 F. Supp. 2d 1055 (C.D. Cal. 2000)...................................................7, 8

*Hoffa v. United States,*
   385 U.S. 293 (1966) ...............................................................................30

*Illinois v. Gates,*
   462 U.S. 213 (1983) ...............................................................................12

*In re Nat'l Sec. Agency Telecomms. Records Litig.,*
   564 F. Supp. 2d 1109 (N.D. Cal. 2008) .............................................34, 35

*Kasza v. Browner,*
   133 F.3d 1159 (9th Cir. 1998.)...........................................................13, 34

*Katz v. United States,*
   389 U.S. 347 (1967) ...........................................................................30, 31

*Kee v. City of Rowlett* Texas,
   247 F.3d 206 (5th Cir. 2001)...............................................................30, 31

*Kotarski v. Cooper,*
   866 F.2d 311 (9th Cir. 1989)..................................................................14

*Kreisner v. City of San Diego,*
   1 F.3d 775 (9th Cir. 1993).......................................................................25

*Laird v. Tatum,*
   408 U.S. 1 (1972) ...................................................................................22

*Lemon v. Kurtzman,*
    403 U.S. 602 (1971) ...................................................................................25

*Libas Ltd. v. Carillo,*
    329 F.3d 1128 (9th Cir. 2003) ...............................................................14

*Lynch v. Donnelly,*
    465 U.S. 668 (1984) ...................................................................................25

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ...................................................................................19

*Mory v. City of Chula Vista,*
    No. 07CV0462, 2008 U.S. Dist. LEXIS 9911 (S.D. Cal. Feb. 11, 2008).........8

*Nelson Radio & Supply Co. v. Motorola, Inc.,*
    200 F.2d 911 (5th Cir. 1952)....................................................................7

*Navajo Nation v. U.S. Forest Service,*
    535 F.3d 1058 (9th Cir. 2008)....................................................21, 23, 24

*Nurre v. Whitehead,*
    580 F.3d 1087 (9th Cir. 2009)....................................................25, 26, 27

*Orin v. Barclay,*
    272 F.3d 1207 (9th Cir. 2001) ...............................................................28

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ...................................................................................18

*Pers. Admin'r of Mass. v. Feeney,*
    442 U.S. 256 (1979) ...................................................................................17

*Portman v. County of Santa Clara,*
    995 F.2d 898 (9th Cir. 1993).....................................................................8

*Presbyterian Church v. United States,*
    870 F.2d 518 (9th Cir. 1989).................................................................30

*Rabkin v. Dean,*
    856 F. Supp. 543 (N.D. Cal. 1994) .........................................................8

*Rakas v. Illinois,*
    439 U.S. 128 (1978) .........................................................................29, 33

*Runs After v. United States,*
    766 F.2d 347 (8th Cir. 1985).....................................................................8

*Schmitz v. Mars, Inc.,*
    261 F. Supp. 2d 1226 (D. Or. 2003)........................................................8

*Schweiker v. Chilicky,*
    487 U.S. 412 (1988) ...................................................................................14

*Smith v. Maryland,*
    442 U.S. 735 (1978) ................................................................29

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott,*
    463 U.S. 825 (1983) ..................................................................7

*United States v. Aguilar,*
    883 F.2d 662 (9th Cir. 1988)................................24, 30, 31

*United States v. Brathwaite,*
    458 F.3d 376 (5th Cir. 2006)................................................32

*United States v. Davis,*
    326 F.3d 361 (2nd Cir. 2003) ..............................................32

*United States v. Gering,*
    716 F.2d 615 (9th Cir. 1983) ...............................................21

*United States v. Lee,*
    359 F.3d 194 (3rd Cir. 2004) ...............................................32

*United States v. Nerber,*
    222 F.3d 597 (9th Cir. 2000) .........................................29, 32

*United States v. Parks,*
    285 F.3d 1133 (9th Cir. 2000) ..............................................12

*United States v. Taketa,*
    923 F.2d 665 (9th Cir. 1991).....................................29, 31, 32

*United States v. White,*
    401 U.S. 745 (1971) ..............................................................29

*Vernon v. City of Los Angeles,*
    27 F.3d 1385 (9th Cir. 1994).............................21, 22, 26, 27

*Warth v. Seldin,*
    422 U.S. 490 (1975) ................................................................3

*Western Radio Servs. Co. v. U.S. Forest Serv.,*
    578 F.3d 1116 (9th Cir. 2009),
    *cert. denied* 130 S. Ct. 2402 (2010) ..............................13, 14, 17

*Wilkie v. Robbins,*
    551 U.S. 537 (2007) .........................................................13, 14

*Wilson v. Libby,*
    535 F.3d 697 (D.C. Cir. 2008),
    *cert. denied* 129 S.Ct. 2825 (2009) ..............................15, 16, 17

*Woldeab v. 7-Eleven, Inc.,*
    No. 03-0615, 2006 U.S. Dist. LEXIS 82191 (S.D. Cal. Nov 8, 2006) ...........8

*Wolde-Giorgis v. Dillard,*
    No. 06-0289, 2006 U.S. Dist. LEXIS 71356 (D. Ariz. Sept. 22, 2006) ..........9

*Wright v. Ill. Dept. of Children & Family Servs.,*
   40 F.3d 1492 (7th Cir. 1994)..................................................................8


### **FEDERAL STATUTES**

42 U.S.C. § 1985(3) ........................................................................2, 7, 20

5 U.S.C. § 552a(a)(3) ..............................................................................15

5 U.S.C. § 552a(e)(7) ..............................................................................15

5 U.S.C. § 552a(g)(1)(D) ...................................................................15, 16

5 U.S.C. § 552a(g)(4) ..............................................................................15

50 U.S.C. § 1801(f)..................................................................................34

50 U.S.C. § 1809......................................................................................34

50. U.S.C. § 1810.....................................................................................34

U.S. Const. Amend I................................................................................24

U.S. Const. Amend. IV............................................................................29


### **FEDERAL REGULATIONS**

39 C.F.R. § 233.3(c)(1)............................................................................21


### **TREATISES**

John E. Nowak *et al.*, Handbook on Constitutional Law (1978) ..............28

**I.      INTRODUCTION**

In their First Amended Complaint ("FAC"), Plaintiffs allege in the most conclusory manner that current and former FBI Agents Pat Rose, Kevin Armstrong, and Paul Allen (the "Agent Defendants") directed confidential informant Craig Monteilh to "infiltrate" mosques throughout Southern California as part of a "dragnet" investigation of *all* Muslims "simply because the targets were Muslim" and "without further specification." But the FAC undercuts these allegations by asserting that the FBI had articulated specific and neutral reasons for investigating *these Plaintiffs*. By Plaintiffs' own account, the FBI told Monteilh that it began investigating Plaintiffs because: (a) Plaintiff Fazaga was a "radical"; (b) Plaintiff Malik traveled to Yemen for religious schooling, underwent a dramatic change in behavior and dress, and was denied entry to Saudi Arabia; and (c) Plaintiff AbdelRahim was suspected of being the charismatic leader of a Muslim Brotherhood cell. Plaintiffs do not allege that these specific neutral reasons were pretextual or were not sincerely believed by the Agent Defendants, and thus Plaintiffs' claim of religious discrimination fails.

Even if Plaintiffs had sufficiently *alleged* a discriminatory intent, they will be unable to adduce *evidence* in support of that allegation if the Court sustains the government's assertion of the state secrets privilege. Plaintiffs would be unable to prove their allegations of discriminatory purpose, and the Agent Defendants will be unable to refute them, without access to the potentially privileged evidence. Accordingly, the Agent Defendants join in the government's argument that the religious discrimination claims against the Agent Defendants (the First through Seventh Causes of Action) must be dismissed if the Court sustains the government's assertion of the state secrets privilege.

Each of Plaintiffs' claims fail for additional reasons. *First,* Plaintiffs' Second, Fourth and Seventh causes of action allege a conspiracy among all defendants to violate Plaintiffs' First Amendment and Equal Protection rights, pursuant to 42

1   U.S.C. § 1985(3). However, as a matter of law, the Agent Defendants cannot

2   conspire with the FBI or other FBI agents under the intracorporate conspiracy

3   doctrine. Moreover, Plaintiffs fail to allege that the Agent Defendants acted with the

4   specific purpose of violating the Plaintiffs' constitutional rights.

5   *Second,* Plaintiffs' First, Third and Sixth causes of action allege a violation of

6   their First and Fifth Amendment rights pursuant to *Bivens v. Six Unknown Named*

7   *Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). However, these claims

8   must be dismissed because (a) the Privacy Act is a comprehensive remedial scheme

9   that supplants a *Bivens* remedy for the types of constitutional injuries alleged here,

10  and (b) Plaintiffs have failed to allege that any of the Agent Defendants acted with

11  the specific purpose of discriminating against Plaintiffs.

12  *Third,* the Agent Defendants are entitled to qualified immunity on all claims,

13  as the constitutional and statutory rights they supposedly violated were not "clearly

14  established" at the time of the alleged violations. Moreover, Defendant Rose is

15  separately entitled to qualified immunity on all claims because Plaintiffs seek to

16  hold her liable under an impermissible *respondeat superior* theory.

17  For the foregoing reasons, and for the reasons stated in the motions to dismiss

18  filed by (1) Defendants United States of America, Federal Bureau of Investigation

19  ("FBI"), Robert Mueller and Steven Martinez (Docket No. 55) and (2) Defendants

20  Stephen Tidwell and Barbara Walls – each of which the Agent Defendants expressly

21  join – Plaintiffs' FAC should be dismissed.

22  **II.    FACTUAL BACKGROUND**

23  The factual allegations are capably summarized in the government's motion

24  to dismiss, and need not be repeated at length here. (Docket No. 55 at 7-9.) Instead,

25  the Agent Defendants briefly address the facts relevant to this motion.

26  **A.    The FBI Had Specific Neutral Reasons For Investigating Plaintiffs**

27  Plaintiffs allege in a conclusory fashion that the FBI targeted Muslims in

28  Orange and Los Angeles counties "because of their religion and religious practice"

1   and gathered information about them "simply because the targets were Muslim."

2   (FAC ¶¶ 3, 6.) Plaintiffs also describe the FBI's investigation as a "dragnet" and

3   allege that the "central feature of the FBI agents' instructions to Monteilh was their

4   directive that he gather information on Muslims, without any further specification."

5   (*Id.* at ¶¶ 3, 89.) To the extent there was any "further specification" at all, Plaintiffs

6   contend, Agents Armstrong and Allen instructed Monteilh to collect information on

7   "Muslims who were particularly religious." (*Id.*)

8        However, the Court must consider whether Plaintiffs have alleged that the

9   Agent Defendants violated *these particular Plaintiffs'* rights, not the abstract rights

10  of absent third parties. Plaintiffs generally have no standing to seek a remedy for

11  injuries purportedly (or possibly) suffered by others. *Warth v. Seldin*, 422 U.S. 490,

12  499 (1975) (a party "generally must assert his own legal rights and interests, and

13  cannot rest his claim to relief on the legal rights or interests of third parties"). Here,

14  Plaintiffs allege facts demonstrating that the FBI had at least *some* basis, apart from

15  religious discrimination, for investigating *these Plaintiffs*.

16       Plaintiff Fazaga is an imam of the Orange County Islamic Foundation

17  ("OCIF"), a mosque in Mission Viejo which Monteilh purportedly surveilled. (FAC

18  ¶¶ 12, 55, 168.) According to the FAC, Agents Armstrong and Allen told Monteilh

19  at the outset that they suspected Fazaga might be a "radical" for a number of

20  reasons, including the fact he directed students to conduct demonstrations and

21  served as a board member of a prominent Muslim newspaper that spoke out against

22  certain U.S. government policies and actions. (*Id.* at ¶¶ 169-171.)

23       Plaintiff Malik attended religious services at the Islamic Center of Irvine

24  ("ICOI"). (FAC ¶¶ 13, 69.) Much as they allegedly did with Fazaga, Agents

25  Armstrong and Allen purportedly identified Malik as a "radical" due to his conduct.

26  (FAC ¶¶ 186-188.) In particular, Agents Armstrong and Allen allegedly told

27  Monteilh that the FBI became interested in Malik because he "had been a surfer kid

28  in Newport Beach who wore dyed hair, but had travelled to Yemen to attend a

religious school, and had returned to the U.S. wearing traditional Muslim dress and a full beard." (*Id.* at ¶ 186.) Malik admits he traveled to Yemen and also that his dress and appearance changed dramatically during this time period. (*Id.* at ¶¶ 68-69.) According to Plaintiffs, "Agents Armstrong and Allen told Monteilh *that Malik's change in behavior* in embracing religion and traditional dress was highly suspicious and for that reason they needed to investigate him." (*Id.* at ¶ 187 (emphasis added).) It was Malik's dramatic change in behavior, not his religious practices themselves, that prompted the FBI to investigate Malik. (*Id.*) Indeed, the FAC does not allege that Malik was particularly religious – to the contrary, it states that Malik had fallen "into attending prayers only when it was convenient." (*Id.* at ¶ 194.) Most significantly, the FAC acknowledges that the FBI told Monteilh that it had started investigating Malik *before* recruiting Monteilh, and had become interested in him because of his association with other individuals and groups already under investigation. (*Id.* at ¶ 189) Moreover, Agents Allen and Armstrong allegedly told Monteilh that the FBI's interest in Malik was further piqued when he was blocked from entering Saudi Arabia after traveling to Yemen. (*Id.* at ¶ 190.)

Plaintiff AbdelRahim also attended religious services at ICOI. (FAC ¶¶ 14, 80.) AbdelRahim alleges that his home was under surveillance by the FBI before it recruited Monteilh because the FBI feared he was part of (and perhaps the leader of) a Muslim Brotherhood cell. (*Id.* at ¶¶ 200-201.) Plaintiffs also allege that the FBI obtained a warrant to search AbdelRahim's storage unit – an admission that the FBI had *at least* probable cause to believe that contraband or evidence of a crime would be found in that particular place. (*Id.* at ¶ 214.)

Admittedly, the FAC couches some of the foregoing justifications for investigating Plaintiffs as statements made by Agents Armstrong and Allen to Monteilh. However, while Plaintiffs appear to dispute the accuracy of some of the FBI's information, they do not allege that these investigative reasons were pretextual or that Agents Allen and Armstrong did not *honestly believe* the

1  information to be true. The facts alleged above, coupled with Plaintiffs' failure to

2  deny their truth or the Agent Defendants' honest belief in them, undercut the

3  contention that the FBI was motivated solely by religion.

4  **B.  Investigative Techniques Allegedly Employed By the FBI**

5  Plaintiffs' Ninth Cause of Action asserts that Monteilh, without a warrant,

6  (i) recorded conversations where no party consented, (ii) video recorded in homes

7  and other places where Plaintiffs had a reasonable expectation of privacy and

8  (iii) installed electronic listening devices in mosques. (FAC ¶ 251.)

9  With respect to audio recording of conversations, Plaintiffs allege that

10  Monteilh attended and recorded prayer services led by Fazaga and lectures hosted

11  by Fazaga. (*Id.* at ¶¶ 172-173, 178.) This is the sole allegation that Fazaga was

12  recorded by Monteilh. Likewise, AbdelRahim attended Arabic language teachings at

13  ICOI, which Monteilh also attended and recorded. (*Id.* at ¶ 211.) Plaintiffs also

14  allege that Monteilh recorded "conversations he had with AbdelRahim and the other

15  members of [AbdelRahim's] house." (*Id.* at ¶ 201.) Monteilh purportedly recorded

16  Malik "talking in the prayer hall, particularly after *ishaa* prayer." (*Id.* at ¶ 192.)

17  Monteilh also recorded conversations where Malik expressed a desire to pray more

18  regularly. (*Id.* at ¶¶ 194-195.) Plaintiffs also allege that Monteilh possessed a

19  recording device in the form of a key fob or cell phone, that Monteilh left it

20  unattended and recording in various locations throughout the mosque, and that

21  Malik was recorded using these methods. (*See, e.g., id.* at ¶ 192.)

22  With respect to video recording, Plaintiffs allege that Monteilh recorded

23  individuals donating "for some kind of relief for Muslims abroad." (*Id.* at ¶ 182.)

24  Monteilh allegedly also videoed other aspects of OCIF, including "security

25  measures," entrances and exits and a library available for congregants to use. (*Id.* at

26  ¶¶ 174-175.) The FAC does not allege that any of these events or locations were

27  closed to the public. Plaintiffs also allege that Monteilh recorded the interior of

28  AbdelRahim's home, after AbdelRahim invited Monteilh inside, and casual soccer

1  games that AbdelRahim played. (*Id.* at ¶¶ 202, 206.)

2  Finally, Plaintiffs allege that the FBI planted "listening devices" in mosques,

3  and that Agents Allen and Armstrong "caused such electronic surveillance

4  equipment to be installed at the Mission Viejo mosque." (*Id*. at ¶¶ 95, 251.)

5  However, the FAC fails to identify any "listening devices," when they were

6  installed, how Plaintiffs learned of them, who discovered the devices, where in the

7  mosque they were installed, or any other facts to corroborate this allegation.

8  ### C.    Plaintiffs Learned Of Monteilh's Actions After The Fact

9  Plaintiffs allege they were ignorant of Monteilh's role as confidential

10  informant during the time he was allegedly working with the FBI. (*See, e.g.,* FAC ¶¶

11  1, 5.) Monteilh's surveillance activities allegedly ended in October 2007, but

12  Plaintiffs claim they did not discover his role until February 24, 2009. (*Id.* at ¶¶ 152,

13  159.) Plaintiffs contend that they "did not know and could not reasonably have

14  known that Monteilh was working for the FBI as an informant" prior to this date.

15  (*Id.* at ¶ 160.) This action followed on February 22, 2011.

16  ### III.    LEGAL STANDARD UNDER *IQBAL*

17  "To survive a motion to dismiss, a complaint must contain sufficient factual

18  matter, accepted as true, to state a claim to relief that is plausible on its face."

19  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotes omitted). "A claim has facial

20  plausibility when the plaintiff pleads factual content that allows the court to draw

21  the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

22  Plaintiffs must offer "more than a sheer possibility that a defendant has acted

23  unlawfully." *Id.* To the extent the FAC "pleads facts that are merely consistent with

24  a defendant's liability, it stops short of the line between possibility and plausibility

25  of entitlement to relief." *Id.* (quotations omitted).

26  ### IV.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1985(3)

27  ### A.    Plaintiffs Fail To Allege A Conspiracy Under Section 1985(3)

28  Plaintiffs' Second, Fourth, and Seventh Causes of Action allege that the

individual capacity defendants conspired among themselves to violate Plaintiffs' First Amendment and Equal Protection rights, in violation of 42 U.S.C. § 1985(3). (FAC ¶¶ 230, 237, 244.) In order to successfully plead a cause of action pursuant to Section 1985(3), Plaintiffs must allege, in a non-conclusory fashion, four elements: (1) a conspiracy (2) for the purpose of depriving Plaintiffs of the equal protection of the laws or of equal privileges and immunities, and (3) an act in furtherance of the conspiracy (4) that causes injury to the Plaintiffs. *See United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-829 (1983). Plaintiffs fail the first element because they do not allege (except in the most conclusory language) that the Agent Defendants reached an agreement or "meeting of the minds" to violate Plaintiffs' constitutional rights. *See, e.g., Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010). The lack of any factual, non-conclusory allegation that any defendant entered into such an agreement is fatal to the Section 1985(3) claims.

In addition, Plaintiffs fail the first element of a Section 1985(3) claim because an entity cannot conspire with its own employees or agents. *See Hoefer v. Fluor Daniel, Inc.*, 92 F. Supp. 2d 1055, 1057 (C.D. Cal. 2000). "'It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself anymore than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'" *Hoefer*, 92 F. Supp. 2d at 1057 (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir. 1952)); *see also Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983). The Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits have extended this "intracorporate conspiracy doctrine" to Section 1985(3) claims, finding that the doctrine's logic applies equally in both contexts. *See Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 768-69 (11th Cir. 2000) (listing Circuits); *Hoefer*, 92 F. Supp. 2d at 1059 (same); *Blunt v. County of Sacramento*, No. 2:04-cv-1743, 2006 U.S. Dist. LEXIS 11099 at *36 (E.D. Cal. Mar. 2, 2006) (noting only the First and Third Circuits ruling contrary to the clear majority).

1   Accordingly, where members of the same corporation or governmental body

2   allegedly conspired with each other while acting in the course and scope of their

3   employment, federal courts have held that the intracorporate conspiracy doctrine

4   bars a Section 1985(3) claim. *See, e.g., Denney v. City of Albany*, 247 F.3d 1172,

5   1190-91 (11th Cir. 2001) (rejecting alleged conspiracy among city employees);

6   *Wright v. Ill. Dept. of Children & Family Servs.,* 40 F.3d 1492, 1508 (7th Cir. 1994)

7   (same for employees of department of children & family services); *Runs After v.*

8   *United States*, 766 F.2d 347, 354 (8th Cir. 1985) (same for Tribal Council);

9   *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977), *aff'g*, 421 F. Supp. 12, 15 (E.D.

10   La. 1976) (same for employees of public university).

11   While the Ninth Circuit has not yet decided whether the intracorporate

12   conspiracy doctrine applies to Section 1985 claims, *see Portman v. County of Santa*

13   *Clara*, 995 F.2d 898, 910 (9th Cir. 1993), the vast majority of California district

14   courts to consider the issue have held that the doctrine does apply. *See, e.g.,*

15   *Woldeab v. 7-Eleven, Inc*., No. 03-0615, 2006 U.S. Dist. LEXIS 82191, *9 (S.D.

16   Cal. Nov 8, 2006) ("the modern and majority rule is that the [intracorporate

17   conspiracy doctrine] does bar" a 1985(3) claim); *Hoefer*, 92 F. Supp. 2d at 1059; *see*

18   *also Rabkin v. Dean,* 856 F. Supp. 543, 551 (N.D. Cal. 1994); *Blunt,* 2006 U.S. Dist.

19   LEXIS at *36; *Mory v. City of Chula Vista*, No. 07CV0462, 2008 U.S. Dist. LEXIS

20   9911, *19 (S.D. Cal. Feb. 11, 2008). Ninth Circuit district courts outside of

21   California have also applied the doctrine to Section 1985(3) claims. *See, e.g.,*

22   *Schmitz v. Mars, Inc*., 261 F. Supp. 2d 1226, 1235 (D. Or. 2003) ("This Court finds

23   most persuasive the analysis of the *Hoefer* court and the majority of circuit courts

24   that have held the [] doctrine applies to § 1985 actions."); *Wolde-Giorgis v. Dillard*,

25   No. 06-0289, 2006 U.S. Dist. LEXIS 71356 (D. Ariz. Sept. 22, 2006).

26   Here, all of the conspirators identified by Plaintiffs are part of a single

27   government entity, the FBI. (FAC ¶¶ 15-22.) Plaintiffs allege that the individual

28   capacity defendants conspired to investigate Plaintiffs because of their practice of

- 8 -

1   Islam, actions taken during the performance of their official (not personal) duties.

2   Because these defendants were all effectively acting as the FBI itself when they

3   entered into their alleged illicit agreement, they could not have engaged in a

4   conspiracy as a matter of law, and Plaintiffs' Section 1985(3) claims fail.

5   ### B.   Plaintiffs Failed To Allege An Unlawful Purpose

6   A Section 1985(3) conspiracy "for the purpose of depriving … any person or

7   class of persons of the equal protection of the laws, or of equal privileges and

8   immunities under the laws," requires an intent to deprive persons of a protected

9   right. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 274 (1993). As the

10  Supreme Court noted in *Bray*, a

11   conspiracy is not "for the purpose" of denying equal protection simply

12   because it has an effect upon a protected right. The right must be

13   "*aimed at*"; its impairment must be a conscious objective of the

14   enterprise…. [T]he "intent to deprive of a right" requirement demands

15   that the defendant do more than merely be aware of a deprivation of

16   right that he causes, and more than merely accept it; he must act at least

17   in part for the very purpose of producing it.

18  *Id.* at 275-76 (citation omitted) (emphasis in original). Plaintiffs alleging an

19  unlawful conspiracy must plead specific facts in a nonconclusory fashion to survive

20  a motion to dismiss. *See Gooden v. Howard County*, 954 F.2d 960, 969-70 (4th Cir.

21  1992). Simply copying the statute's language to the complaint is inadequate. *Id.*

22   The case law is replete with Section 1985(3) claims that fail this standard. For

23  example, in *Bray*, the Supreme Court reversed an injunction prohibiting

24  demonstrations at abortion clinics, holding, *inter alia*, that the abortion clinics had

25  not demonstrated that the constitutionally protected right alleged to have been

26  violated by the protestors (the right to travel interstate) was a "conscious objective

27  of the enterprise" as opposed to a right merely incidentally affected. *Bray*, 506 U.S.

28  at 275. The Court explained that "Petitioners oppose abortion, and it is irrelevant to

their opposition whether the abortion is performed after interstate travel." *Id.* at 276. The Court also noted that "a conspiracy to rob an interstate traveler would not, of itself, violate [18 U.S.C.] § 241 [the criminal counterpart to 1985(3)]. But if the *predominant purpose* of the conspiracy is to impede or prevent the exercise of the right of interstate travel, or to oppress a person because of his exercise of that right, then . . . the conspiracy becomes a proper object of [Section 241]." *Id.* at 275 (internal quotation marks omitted) (emphasis added).

### 1.    *Failure To Allege Purpose Of Interfering With Religion*

Courts analyzing Section 1985(3) claims have found conscious interference with the plaintiff's religious liberties when the defendant's conduct was intended to disrupt services. For example, in *Action v. Gannon,* 450 F.2d 1227 (8th Cir. 1971), members of a predominantly white Catholic parish sued the Black Liberation Front and an interracial organization to enjoin those groups from disrupting religious services. The defendants allegedly entered the church during services, formed a line in front of the communion rail, blocked the area where services were to be held (resulting in cancellation of the services), and otherwise actively disrupted the congregants' rights of freedom of assembly and worship. *Id.* at 1229-30. The Eighth Circuit held that this purported scheme was cognizable under Section 1985(3), as the purpose of the conspiracy was to interfere with the plaintiffs' First Amendment rights of freedom of assembly and worship. *Id.* Likewise, in *Hobson v. Wilson*, 737 F.2d 1 (D.C. Cir. 1984), the purpose of the alleged conspiracy was to disrupt and impede plaintiffs' efforts to associate with others to express opposition to the Vietnam War and other government actions. *Hobson,* 737 F.2d at 9. To accomplish that goal, the FBI allegedly distributed false press releases tarnishing the reputation of one of the members of the targeted group and encouraged sources to "stimulate dissension" in the group. *Id.* at 12. These deliberate efforts to disrupt the exercise of First Amendment rights were actionable under Section 1985(3).

In contrast to the plaintiffs in *Action* and *Hobson*, here Plaintiffs allege no

1   similar purposeful violation of their First Amendment rights. They allege no

2   deliberate disruption of their religious activities or other actions to dissuade

3   members from attending services. Indeed, the allegedly violative conduct was *covert*

4   – meaning that Plaintiffs *were not supposed to find out about it*. (*See e.g.* FAC ¶ 160

5   ("Plaintiffs did not know and could not reasonably have known that Monteilh was

6   working for the FBI as an informant").) A covert investigation cannot be intended to

7   dissuade the investigative target from attending services because, by definition, the

8   target does not know about the investigation. To the extent Plaintiffs' rights of

9   freedom of assembly and worship were allegedly affected, this occurred only *after*

10  Monteilh ceased being an informant and his previous activities were revealed.

11  Plaintiffs' alleged injury was thus *incidental* to the alleged conspiracy to conduct

12  surveillance, not its purpose, as in *Action* and *Hobson*. If it had been the Agent

13  Defendants' conscious objective to deprive Plaintiffs of their rights, then the scheme

14  would undoubtedly have been an overt plan to impede gatherings of Muslims at

15  mosques or to otherwise inhibit their religion, rather than a covert investigation

16  about which Plaintiffs were deliberately kept ignorant. Thus, Plaintiffs have not

17  sufficiently alleged that the Agent Defendants acted with the purpose of depriving

18  Plaintiffs of their First or Fifth Amendment rights.

19              **2.    *Failure to Allege Purposeful Discrimination***

20          Presumably, Plaintiffs will argue that they have alleged a purposeful violation

21  of their rights because the Agent Defendants intentionally discriminated against

22  them on the basis of religion. But this argument also fails, because Plaintiffs allege

23  in the FAC that the FBI began investigating them for neutral reasons. Specifically,

24  they allege that Agents Armstrong and Allen told Monteilh that the FBI feared that

25  Plaintiff Fazaga was a "radical." (FAC ¶¶ 168-171.) They also allege that Plaintiff

26  Malik traveled to Yemen for religious schooling and underwent a dramatic change

27  in behavior and dress. (*Id.* at ¶¶ 68-69, 186-187.) Plaintiffs further allege that Agents

28  Allen and Armstrong told Monteilh to investigate Malik because "*Malik's change in*

*behavior* in embracing religion and traditional dress was highly suspicious." (*Id.* at ¶ 187 (emphasis added).) That is, the FBI was concerned with Malik's change in behavior, not his religious practice *per se*. Agents Allen and Armstrong also allegedly told Monteilh that Malik had been denied entry into Saudi Arabia. (*Id.* at ¶ 190.) Similarly, Plaintiffs allege that the government obtained a search warrant of Plaintiff AbdelRahim's storage unit – necessarily admitting that the government had *at least* probable cause to believe the storage unit contained contraband or evidence of a crime. (*Id.* at ¶ 214.); *see Illinois v. Gates*, 462 U.S. 213, 238 (1983) (stating that a magistrate must find that probable cause exists before issuing a warrant); *see also United States v. Parks*, 285 F.3d 1133, 1142 (9th Cir. 2000) (same). Moreover, Plaintiffs allege that the FBI told Monteilh of their concern that AbdelRahim might be part of – or perhaps the leader of – a terrorist cell. (*Id.* at ¶¶ 200-201.) Plaintiffs nowhere allege that any of these concerns were pretextual or not sincerely held by any defendant, let alone the Agent Defendants.[1]

### 3.      Inability to Prove Purposeful Disruption or Discrimination

Even if Plaintiffs had sufficiently *alleged* an intent to disrupt Plaintiffs' religious practice or a discriminatory purpose, the government's assertion of the state secrets privilege could preclude *evidence* supporting that allegation. If the Court upholds the government's assertion of the privilege, this will foreclose inquiry into the "reasons for counterterrorism investigation and results," including information about "the predicate for an FBI counterterrorism investigation of a particular person," like each Plaintiff. (Docket No. 55 at 43:8-12.) With the question of *why* the government investigated these particular Plaintiffs off the table, Plaintiffs

---

[1] In their First Amended Complaint, Plaintiffs allege that, upon re-entering the U.S. in 2006, Malik informed some unidentified U.S. officials that he actually did *not* attempt to enter Saudi Arabia during his travels. However, Plaintiffs fail to allege how or why the Agent Defendants would have come to know this information.

cannot prevail on their claim that the government intended to disrupt religion or intended to discriminate on the basis of religion. Similarly, the Agent Defendants will be unable to defend themselves from this charge. Accordingly, dismissal is appropriate. *See Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998.)

## V.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER *BIVENS*

### A.     Plaintiffs' *Bivens* Claims Are Precluded By The Privacy Act

Plaintiffs' First, Third and Sixth Causes of Action seek monetary damages for violations of the Free Exercise, Establishment and Equal Protection Clauses directly under the First and Fifth Amendments to the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (FAC ¶¶ 227, 232, 241.) However, the Supreme Court has never recognized a *Bivens* action for violations of the Free Exercise, Establishment or Equal Protection Clauses. *See, e.g., Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (noting that the Supreme Court has recognized *Bivens* claims in just three contexts: unreasonable searches in violation of the Fourth Amendment, employment discrimination in violation of the Due Process Clause, and prisoner abuse under the Eighth Amendment). Accordingly, Plaintiffs have no "automatic entitlement" to a judicially devised cause of action for money damages under *Bivens*. *Id.*

"In *Wilkie*, the Court distilled its 35-year history of *Bivens* jurisprudence into a two-step analysis for determining congressional intent as to the appropriateness of a *Bivens* remedy." *Western Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1120 (9th Cir. 2009). "First, the Court determines whether there is 'any alternative, existing process for protecting' the plaintiff's interests." *Id.* "Such an alternative remedy would raise the inference that Congress 'expected the Judiciary to stay its *Bivens* hand' and 'refrain from providing a new and freestanding remedy in

1    damages.'" *Id.* (*citing Wilkie,* 551 U.S. at 550, 554).[2]

2           The Supreme Court has repeatedly found that Congressional action has

3    foreclosed the creation of a *Bivens* remedy for the same types of constitutional

4    injuries alleged here. *See, e.g., Bush v. Lucas*, 462 U.S. 367, 388 (1983) (claim

5    precluded by an "elaborate remedial system" – culminating with the Civil Service

6    Reform Act – for dealing with federal employee claims of First Amendment

7    discrimination); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) (Social Security

8    Act precluded Fifth Amendment due process claim). The Ninth Circuit has

9    identified several statutory schemes that preclude *Bivens* claims, including claims

10   arising under the Fifth and First Amendments. *See, e.g., Kotarski v. Cooper*, 866

11   F.2d 311, 312 (9th Cir. 1989) (following *Bush*); *Western Radio*, 578 F.3d at 1117

12   (Administrative Procedures Act bars First and Fifth Amendment claims); *Adams v.*

13   *Johnson*, 355 F.3d 1179 (9th Cir. 2004) (Internal Revenue Code bars First and Fifth

14   Amendment claims); *Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir. 2003)

15   (customs laws bar claims presumably brought under Fifth Amendment); *Berry v.*

16   *Hollander*, 925 F.2d 311, 314 (9th Cir. 1991) (Veterans Administration regulations

17   bar First and Fifth Amendment regulations).

18          In 1974, Congress enacted the Privacy Act in order to set forth "detailed

19   instructions" governing the government's "collection, maintenance, use, and

20   dissemination of information" about individuals in agency records. *Doe v. Chao*,

21   540 U.S. 614, 618 (2004); *see also* 5 U.S.C. § 552a(a)(3). Of particular relevance

22   here, the Privacy Act explicitly requires federal agencies to "maintain no record

23   describing how any individual exercises rights guaranteed by the First Amendment"

24

25   _____

26   [2] The second step involves determining "whether there are nevertheless 'factors
     counseling hesitation' before devising such an implied right of action." *Id.* at 1120.

27   The Agent Defendants join in Defendants Walls and Tidwell's and Defendants
     United States of America, FBI, Mueller and Martinez's analysis of this second step.

28

1   unless certain exceptions apply. 5 U.S.C. § 552a(e)(7). The term "maintain" as used

2   in subsection (e)(7) includes "collect." *Id.* § 552a(a)(3). Thus, the Privacy Act limits

3   the government's ability to collect information on a citizen's religious activity.

4         Congress also crafted a carefully calibrated set of judicial remedies for

5   violations of the Privacy Act, including violations of the constitutional provisions of

6   subsection (e)(7). A citizen aggrieved by a violation of the Privacy Act may bring a

7   civil suit against the agency, and obtain a minimum $1000 in damages, plus

8   attorneys' fees in all cases where the agency's conduct was willful or intentional. 5

9   U.S.C. § 552a(g)(1)(D), (g)(4); *see generally Cooper v. FAA*, 596 F.3d 538, 543

10  (9th Cir. 2010) (describing remedies available under the Privacy Act).

11        Courts have recognized that the Privacy Act is a comprehensive remedial

12  scheme that supplants *Bivens* claims. In *Downie v. City of Middleburg Heights*, 301

13  F.3d 688 (6th Cir. 2002), a former informant sued federal officers who allegedly

14  disseminated false information about him in violation of the First Amendment,

15  because he criticized an ongoing investigation. The Sixth Circuit refused to imply a

16  *Bivens* remedy under the First Amendment "because the Privacy Act is a

17  comprehensive legislative scheme that provides a meaningful remedy for the kind of

18  wrong" informant alleged. *Id.* at 696. Because each of the informants' constitutional

19  claims arose out of the "the creation, maintenance, and dissemination of false

20  records," dismissal of the *Bivens* claim was warranted. *Id.*

21        More recently, in *Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008), *cert. denied*

22  129 S. Ct. 2825 (2009), Valerie Wilson and Joseph Wilson sued, among others, Vice

23  President Richard Cheney, for disclosing Valerie Wilson's status as a covert agent

24  for the CIA. "The Wilsons' *Bivens* claims were based on alleged violations of their

25  Fifth Amendment rights to equal protection of the laws, of Joseph Wilson's First

26  Amendment right to freedom of speech, and of Valerie Wilson's Fifth Amendment

27  rights to privacy and property." *Id.* at 703. As in *Downie*, the *Wilson* court held that

28  the Privacy Act was a "'comprehensive scheme' that stops us from providing

1   additional remedies under *Bivens*." *Id.* at 707. Even though the Wilsons "pled in

2   terms of privacy, property, due process, or the First Amendment," the Court

3   concluded that they sought damages "from the improper disclosure of information

4   covered by the Privacy Act," and therefore dismissed the *Bivens* claim. *Id.*

5       Plaintiffs' *Bivens* claims here allege harm from the improper "collection" of a

6   "record describing how any individual exercises rights guaranteed by the First

7   Amendment" – conduct which is expressly prohibited by the Privacy Act.

8   Throughout the complaint, Plaintiffs allege that the FBI "gathered the information

9   [about Plaintiffs] simply because the targets were Muslim." (*See, e.g.,* FAC ¶ 3.)

10  Indeed, the First, Third and Sixth Causes of Action under *Bivens* each seek relief for

11  a supposed "scheme to target Plaintiffs for surveillance because of Plaintiffs'

12  adherence to and practice of the religion of Islam." (*Id.* at ¶¶ 227, 232, 241.)

13      Congress fashioned the Privacy Act to remedy precisely the injury alleged

14  here: that a federal agency would collect information on how Plaintiffs "exercise

15  rights guaranteed by the First Amendment." 5 U.S.C. § 552a(e)(7). Indeed, Plaintiffs

16  cannot dispute that their complaint falls within the ambit of the Privacy Act, in light

17  of their Eighth Cause of Action, which asserts a violation of the very subsection

18  (e)(7) of the Privacy Act that precludes their *Bivens* claims. Specifically, the Eighth

19  Cause of Action alleges that the FBI "collected and maintained records describing

20  how Plaintiffs exercise their rights to free speech and free exercise of religion

21  guaranteed by the First Amendment." (FAC ¶ 246.) As Plaintiffs admit in their

22  Eighth Cause of Action, the Privacy Act provides them with a remedy for the

23  constitutional violation alleged in the FAC.

24      Admittedly, the Privacy Act limits Plaintiffs to recovery of damages from the

25  United States, and not from the Agent Defendants individually. But this does not

26  save Plaintiffs' *Bivens* claims. When "the design of a Government program suggests

27  that Congress has provided what it considers adequate remedial mechanisms for

28  constitutional violations that may occur in the course of its administration, we have

not created additional *Bivens* remedies." *Western Radio,* 578 F.3d at 1120 (citations omitted). Indeed, the plaintiffs in *Wilson* argued that "the Privacy Act should not be found comprehensive and preclusive of Bivens remedies here because three defendants [including Vice President Cheney] in this case are exempted from its terms." *Wilson,* 535 F.3d at 707. However, the D.C. Circuit rejected this argument, noting that "[t]he failure of the Privacy Act to provide complete relief to the Wilsons, however, does not undermine its status as a 'comprehensive scheme' that stops us from providing additional remedies under *Bivens*." *Id.* Congress need not grant a remedy for every constitutional wrong in order to supplant the *Bivens* remedy: that Congress has acted is enough to defeat an implied right of action for damages under *Bivens*. Accordingly, the Agent Defendants' motion to dismiss the First, Third and Sixth Causes of Action should be granted.

## B.    Plaintiffs Fail To Allege An Unlawful Purpose

Much like Section 1985(3), a discrimination claim under *Bivens* requires that Plaintiffs allege an intentional violation of Plaintiffs' rights. *Iqbal*, 129 S. Ct. at 1948-49 (2009). The Court noted that "[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Id.* at 1948. This purpose is "more than 'intent as volition or intent as awareness of consequences.'" *Id.* (*quoting Pers. Admin'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).) "It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Id.* (alterations omitted). In other words, Plaintiffs must show that the policy at issue was adopted "not for a neutral, investigative reason but for the purpose of discriminating on account of … religion." *Id.* at 1949. This intent must be supported by factual allegations, not mere conclusions. *Iqbal*, 129 S. Ct. at 1949 ("pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.")

1    As described above, Plaintiffs fail to allege that any Defendant acted with the

2    requisite purpose to establish Plaintiffs' First and Fifth claims. (*See* Parts IV.B.1 and

3    B.2, *supra*.) Moreover, even if Plaintiffs adequately *allege* a discriminatory purpose,

4    they will be unable to obtain *evidence* on that point if the Court sustains the

5    government's assertion of the state secrets privilege. (*See* Part IV.B.3, *supra*.)

6    **VI.   THE AGENT DEFENDANTS ARE ENTITLED TO QUALIFIED**

7    **IMMUNITY**

8        **A.     Legal Standard For Evaluating Qualified Immunity**

9    The doctrine of qualified immunity protects government officials "from

10   liability for civil damages insofar as their conduct does not violate any clearly

11   established statutory or constitutional rights of which a reasonable person would

12   have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Qualified immunity

13   balances two important interests – the need to hold public officials accountable

14   when they exercise power irresponsibly and the need to shield officials from

15   harassment, distraction, and liability when they perform their duties reasonably."

16   *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).

17   "Qualified immunity shields federal and state officials from money damages

18   unless a plaintiff pleads facts showing (1) that the official violated a statutory or

19   constitutional right, and (2) that the right was 'clearly established' at the time of the

20   challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). To be

21   clearly established, "existing precedent must have placed the statutory or

22   constitutional question beyond debate." *Id.* at 2083. The Court is free to address the

23   two inquiries of qualified immunity in any order. *Pearson*, 555 U.S. at 236.

24       **B.     Defendant Rose Is Entitled To Qualified Immunity Under *Iqbal***

25   Because qualified immunity is "an immunity from suit rather than a mere

26   defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), courts have

27   evaluated the sufficiency of the allegations of the defendant's personal involvement

28   in the deprivation of the right at the second stage of the qualified immunity analysis.

1   "Government officials may not be held liable for the unconstitutional conduct of

2   their subordinates under a theory of *respondeat superior*." *Iqbal*, 129 S. Ct. at 1948.

3   Because vicarious liability is inapplicable to a federal constitutional tort suit, a

4   plaintiff must plead that each Government official, through the official's own

5   individual actions, has violated the Constitution. *Id.*

6        Plaintiffs allege that Defendant Rose was the Special Agent in charge of the

7   entire Santa Ana branch office and who supervised Agents Armstrong and Allen

8   during the time period in question. (FAC ¶ 22.) However, out of 260 paragraphs in

9   the FAC, only four refer to Defendant Rose. Of those four paragraphs, only two

10  have anything to do with the allegations at the core of this case. First, Plaintiffs

11  allege that "Defendant Rose was regularly apprised of the information Agents

12  Armstrong and Allen collected through Monteilh; directed the action of FBI agents

13  on various occasions based on that information; and actively monitored, directed,

14  and authorized the actions of Agents Armstrong and Allen at all times relevant in

15  this action." (FAC ¶ 22.) Second, Plaintiffs allege that that Defendant "Rose

16  maintained extremely close oversight and supervision of Monteilh [and] knew in

17  great detail the nature and scope of the operation, including the methods of

18  surveillance Monteilh used and the criteria used to decide his targets, and

19  continually authorized their ongoing use." (FAC ¶ 138.) These are allegations of

20  *respondeat superior*, nothing more.[3]

21       Moreover, these allegations lack factual detail and are nothing more than the

22  sort of conclusions the Supreme Court rejected in *Iqbal*, where the respondent

23  alleged that the petitioners "knew of, condoned, and willfully and maliciously

24

25

26  [3] Plaintiffs also allege that Defendant Rose gave a speech at the Irvine Pacific Club, and also planned to open a "Muslim gym" so that the FBI could monitor Muslims while they exercised. (FAC ¶¶ 22, 43, 145.) The FAC does not seek any relief for these supposed actions by Rose, so these allegations are irrelevant.

27

28

agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national original and for no legitimate penological interest.'" *Iqbal*, 129 S. Ct. at 1951. The Supreme Court held that these allegations were not entitled to the assumption of truth because they were a mere "'formulaic recitation of the elements' of a constitutional discrimination claim." *Id*. at 1951. "As such, the allegations [were] conclusory and not entitled to be assumed true." *Id*. Plaintiffs' complaint similarly fails to plead sufficient facts to state a claim against Defendant Rose.

### C.    Qualified Immunity Bars The Free Exercise And RFRA Claims

Plaintiffs' First, Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action, alleged under *Bivens* and 42 U.S.C. § 1985(3) for First and Fifth Amendment violations, are barred by the intracorporate conspiracy doctrine, precluded by the Privacy Act, must be dismissed for failure to adequately plead a specific intent or purpose to violate the Plaintiffs' rights, and must be dismissed if the state secrets privilege forecloses inquiry into the government's specific intent. (*See* Parts IV and V, *supra*.) However, even if the Court reaches the merits of Plaintiffs' constitutional and statutory violations, qualified immunity nevertheless shields the Agent Defendants from personal liability.

#### 1.    *Plaintiffs Allege No Burden On Their Free Exercise Of Religion*

Plaintiffs' Third and Fourth Causes of Action allege a violation of the Free Exercise Clause of the First Amendment, while the Fifth Cause of Action alleges a violation of the Religious Freedom Restoration Act ("RFRA").[4] To prevail, Plaintiffs must allege that the Agent Defendants have burdened their free exercise of

---

[4] RFRA protects the same religious freedoms embodied by the Free Exercise Clause*,* and therefore these causes of action are addressed collectively. *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1070 (9th Cir. 2008).

religion. *See Vernon v. City of Los Angeles*, 27 F.3d 1385, 1393 (9th Cir. 1994). The free exercise of religion can be burdened *only* when "individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit (*Sherbert*)[,] or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions (*Yoder*)." *Navajo Nation*, 535 F.3d at 1070. For example, in *Navajo Nation*, plaintiffs alleged that the government's use of recycled wastewater on a sacred mountain imposed a substantial burden on their exercise of religion in violation of RFRA.[5] *Id.* at 1062-63. The Ninth Circuit found that the use of the recycled wastewater did not constitute a substantial burden because the plaintiffs were not forced "to choose between following the tenets of their religion and receiving a governmental benefit" and were not coerced "to act contrary to their religion under the threat of civil or criminal sanctions." *Id.* at 1070.

A government investigation does not impose a burden on the free exercise of religion unless it coerces the target of the investigation to do (or not do) something. For instance, in *Gering*, an ordained minister challenged the government's use of a mail cover (*see* 39 C.F.R. § 233.3(c)(1)) to investigate the contributors to a sponsorship program. *United States v. Gering*, 716 F.2d 615, 618 (9th Cir. 1983). The minister argued that the mail cover amounted to a *per se* violation of his religious rights under the First Amendment, because "the mere potential for abridgement of religious freedom should invalidate the mail cover." *Id.* at 619. The Ninth Circuit rejected this argument, holding that the mere potential for abridgement of First Amendment rights without some showing that "the mail covers were improperly used and burdened his free exercise or associational rights" was insufficient to show a violation. *Id.* at 620.

─────────────────

[5] The Ninth Circuit explained that there is no distinction between "burden" or "substantial burden," as the United States Supreme Court has used the terms interchangeably. *Navajo Nation*, 535 F.3d at 1075 n.17.

Similarly, in *Vernon*, a retired Assistant Chief of the Los Angeles Police Department claimed that a government investigation "retarded him in the exercise of his religious beliefs, including worship, consultation with his pastor, participation in Christian fellowship, and giving public testimony to his faith without severe consequences." *Vernon*, 27 F.3d at 1390. The district court found that plaintiff Vernon failed to establish a substantial burden on his free exercise, finding it "inadequate for a plaintiff merely to allege that government action subjectively 'chills' his religious behavior, especially where the government action is neither regulatory, proscriptive, or compulsory in nature." *Id.* at 1394 (quoting district court's order). On appeal, the Ninth Circuit affirmed, characterizing Vernon's claims as "mere subjective chilling effects with neither 'a claim of specific present objective harm nor a threat of specific future harm.'" *Id.* at 1395 (quoting *Laird v. Tatum*, 408 U.S. 1, 13 (1972)). The Court noted that such "chilling effects" are not constitutionally cognizable. *Id.* at 1395.

Here, Plaintiffs have alleged no actions by the Agent Defendants that burden their free exercise of religion. At most, Plaintiffs allege some reluctance to engage in religious practices well after Monteilh's role in the investigation ended. (*See* FAC ¶¶ 64-65, 78, 183, 185, 196-197.) However, Plaintiffs fail to allege any action on the part of the Agent Defendants, through the use of the informant or otherwise, that forced them to choose between following the tenets of their religion and receiving a governmental benefit, or that coerced them to act contrary to their religious beliefs by the threat of civil or criminal sanctions. Plaintiffs allege nothing more than "mere subjective chilling effects," which are insufficient as a matter of law to burden religion. Without such a burden, the Plaintiffs cannot state a cause of action for violation of the Free Exercise Clause or RFRA.

### 2. The Investigation Advanced A Compelling Government Interest

Even if Plaintiffs had alleged a cognizable burden on their religious rights, the

- 22 -

1    mere existence of that burden is not enough to violate the Free Exercise Clause or

2    RFRA. Neither the Free Exercise Clause nor RFRA prohibit the government from

3    burdening the free exercise of religion if the action is "justified by a compelling

4    government interest." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508

5    U.S. 520, 531-32 (1993); *Navajo Nation*, 535 F.3d at 1068. It appears that Plaintiffs

6    contend that because the investigation was motivated by naked discrimination, the

7    government could have had no legitimate purpose.

8        Yet Plaintiffs allege in the FAC that the FBI began investigating them for

9    neutral, investigative reasons, namely because the FBI (a) believed that Plaintiff

10   Fazaga espoused "radical" beliefs ; (b) believed that Plaintiff Malik traveled to

11   Yemen for religious schooling, thereafter underwent a dramatic change in behavior

12   and dress, and was unable to enter Saudi Arabia; and (c) believed that Plaintiff

13   AbdelRahim was the charismatic leader of a terrorist cell. (*See* Part IV.B.2, *supra*.)

14   Thus, despite the claim that the investigation targeted Plaintiffs solely because of

15   their religion, the FAC actually alleges that the FBI's concern was investigating

16   potential terrorism. As a result, any burden on the Plaintiffs' religious beliefs was

17   justified by a compelling government interest, because "[i]t is obvious and

18   unarguable that no governmental interest is more compelling than the security of the

19   Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981) (internal citations omitted).

20       Even if Plaintiffs had sufficiently *alleged* discriminatory purpose, the

21   government's assertion of the state secrets privilege could preclude *evidence*

22   supporting that claim. If the Court upholds the government's assertion of the

23   privilege, it will take the question of *why* the government investigated these

24   particular Plaintiffs off the table. (*See* Part IV.B.3, *supra*.) Accordingly, the Free

25   Exercise and RFRA claims should be dismissed.

26       Moreover, Plaintiffs fail to allege that the use of Monteilh as a confidential

27   informant in the alleged investigation was not narrowly tailored, or the least

28   restrictive means, to further the government's interest in preventing terrorism. The

1  Free Exercise Clause requires that government action be narrowly tailored to further

2  a compelling government interest, *Lukumi*, 508 U.S. at 531-32, while RFRA

3  requires that the government employ the least restrictive means to further a

4  compelling government interest. *Navajo Nation*, 535 F.3d at 1068. The Fourth

5  Amendment determines the limits of government investigations, and, as explained in

6  greater detail below, Plaintiffs fail to allege facts demonstrating that the Agent

7  Defendants' use of Monteilh violated the protections of Fourth Amendment.

8  Standing alone, the First Amendment does not "prohibit law enforcement officials

9  from using an indispensable method of criminal investigation appropriate in any

10  other circumstance." *United States v. Aguilar*, 883 F.2d 662, 705 (9th Cir. 1988).

11  Because the use of a confidential informant is permitted by the Fourth Amendment,

12  Plaintiffs have failed to allege that the investigation was not narrowly tailored, nor

13  the least restrictive means, to further the government's interest in investigating

14  potential threats to national security.

15  ### 3.    The Agent Defendants Are Entitled To Qualified Immunity

16  For the foregoing reasons, Plaintiffs have failed to allege a violation of the

17  Free Exercise Clause or RFRA, which ends the qualified immunity analysis. For the

18  same reasons, any violation of Plaintiffs' rights was not "clearly established" at the

19  time of the alleged violation. The authorities cited above reveal that it is at best an

20  open question whether an undercover or covert criminal investigation can burden

21  free exercise rights, especially where the investigation fails to condition any benefit

22  or sanction on the exercise of those rights and where there is no allegation that the

23  investigation was pursued for the purpose of discrimination rather than for "a

24  neutral, investigative reason." *Iqbal*, 129 S. Ct. at 1494.

25  ### D.    Qualified Immunity Bars The Establishment Clause Claims

26  Plaintiffs' First and Second Causes of Action allege a violation of the

27  Establishment Clause of the First Amendment, which prohibits any law "respecting

28  an establishment of religion." U.S. CONST. AMEND I. The FAC does not allege that

1   Defendants Allen or Armstrong had any authority over the broader FBI

2   investigation of Southern California mosques. Therefore, Plaintiffs' Establishment

3   Clause claims against Allen and Armstrong are limited to the handling of Monteilh.

4       The United States Supreme Court has interpreted the Establishment Clause to

5   forbid not only the preference but also the hostility towards any religion. *Nurre v.*

6   *Whitehead*, 580 F.3d 1087, 1095-96 (9th Cir. 2009). The Ninth Circuit applies the

7   traditional test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971) to determine

8   whether the government's actions have offended the Establishment Clause. *Id.* at

9   1095-96. In order to state a claim under the Establishment Clause, Plaintiffs must

10  allege that Government (1) did not have a secular purpose for its conduct, (2) that its

11  principal or primary effect was the advancement or inhibition of religion, and (3)

12  that it fostered an excessive governmental entanglement with religion. *Id.*

13      ### 1.   *Plaintiffs Fail To Allege Improper Purpose*

14      The first prong of the *Lemon* test requires Plaintiffs to allege that "the

15  government's actual purpose is to endorse or disapprove of religion." *Kreisner v.*

16  *City of San Diego*, 1 F.3d 775, 782 (9th Cir. 1993) (*quoting Lynch v. Donnelly*, 465

17  U.S. 668, 673 (1984) (O'Connor, J., concurring).) Government action will survive

18  the purpose prong unless the "government acts with the ostensible and predominant

19  purpose of inhibiting religion." *Nurre*, 580 F.3d at 1096 (internal quotations and

20  citations omitted). "A reviewing court must be reluctant to attribute unconstitutional

21  motives to government actors in the face of a plausible secular purpose." *Kreisner*, 1

22  F.3d at 782 (internal quotations and citations omitted).

23      Plaintiffs fail to allege that the Agent Defendants used Monteilh with the

24  purpose of inhibiting religion or even to discriminate among religions. First, the

25  FAC admits that the investigation was covert, which is utterly inconsistent with an

26  intent to inhibit religion. (*See* Part IV.B.1, *supra*.) Second, the FAC alleges that

27  there were neutral, investigative reasons for the FBI's investigation of these

28  particular Plaintiffs. (*See* Part IV.B.2, *supra*.) Third, even if Plaintiffs adequately

1 *allege* a discriminatory purpose or an intent to inhibit religion, they will be unable to

2 obtain *evidence* on that point if the Court sustains the government's assertion of the

3 state secrets privilege. (*See* Part IV.B.3, *supra*.)

### 2.   Plaintiffs Fail To Allege the Sending of A Message

5      The second prong of the *Lemon* test requires Plaintiffs to plead that

6 government action "could be construed as sending primarily a message of…

7 disapproval of religion." *Vernon*, 27 F.3d at 1398 (*citing County of Allegheny v.

8 ACLU*, 492 U.S. 573, 592-93 (1989)). Government action has the primary effect of

9 disapproving of religion if it is likely to be perceived by nonadherents of the

10 controlling denominations as a disapproval of their religious choices. *Nurre*, 580

11 F.3d at 1096. However, "[t]his is an objective test, asking whether a reasonable

12 observer who is 'informed and familiar with the history of the government practice

13 at issue,' would perceive the action as having a non-secular effect." *Id.* (internal

14 citations and quotations omitted). "[T]he key consideration in this second prong

15 analysis is whether the government action 'primarily' disapproves of religious

16 beliefs." *Vernon,* 27 F.3d at 1398.

17      Just because it is *possible* to infer disapproval of religion from government

18 action does not mean the second prong of the *Lemon* test is satisfied. In *Vernon*, the

19 plaintiff challenged an investigation to determine "whether his religious views were

20 having an impermissible effect on his on-duty police department performance."

21 *Vernon*, 27 F.3d at 1388. The court rejected Vernon's challenge to the investigation,

22 even though Vernon's religious beliefs were the subject of the investigation. The

23 court found that, because the primary purpose of the investigation was "any possible

24 impermissible or illegal" conduct, disapproval of religion could not be "objectively

25 construed as the primary focus or effect of the investigation." *Id.* at 1398-99.

26      Here, Plaintiffs fail to allege that the Agent Defendants' actions could be

27 construed as sending a message of disapproval of Islam. To the contrary, Plaintiffs

28 admit that the investigation was covert and unknown to them while it was ongoing.

1   (*See* Part IV.B.1, *supra*.) Because the government's admitted purpose was to

2   *conceal* the investigation from Plaintiffs – and from any other potential targets of

3   the investigation – disapproval of religion could not be objectively construed as the

4   primary focus or effect of the investigation. Defendants cannot "send a message" of

5   disapproval through action that neither Plaintiffs nor anyone else knew about.

### 3.   Plaintiffs Failed To Plead Excessive Entanglement

7   The third and final prong of the *Lemon* test requires a showing that the

8   government action "foster[s] excessive entanglement with religion." *Lemon*, 403

9   U.S. at 613. Not all entanglements violate the Establishment Clause: only those

10   "that demonstrate that a government program has the impermissible effect of

11   evidencing hostility toward religion" are prohibited. *Nurre*, 580 F.3d at 1097. "The

12   entanglement prong seeks to minimize the interference of religious authorities with

13   secular affairs and secular authorities in religious affairs." *Cammack v. Waihee*, 932

14   F.2d 765, 780 (9th Cir. 1991). Here, Plaintiffs fail to allege any interference with

15   religious affairs, nor can they, when the covert nature of the investigation

16   necessarily precludes any entanglement. (*See* Part IV.B.1, *supra*.)

### 4.   The Agent Defendants Are Entitled To Qualified Immunity

18   For the foregoing reasons, Plaintiffs have failed to allege a violation of the

19   Establishment Clause, which ends the qualified immunity analysis. For the same

20   reasons, any violation of Plaintiffs' rights was not "clearly established" at the time

21   of the alleged violation. This is particularly true here, because when "the existence

22   of a right or the degree of protection it warrants in a particular context is subject to a

23   balancing test, the right can rarely be considered clearly established at least in the

24   absence of closely corresponding factual and legal precedent." *Devereaux v. Perez*,

25   218 F.3d 1045, 1055 (9th Cir. 2000) (internal citations and quotations omitted). The

26   authorities cited above reveal that it is, at best, an open question whether a covert

27   criminal investigation whose admitted purpose is investigating terrorists can send a

28   message of disapproval of religion. Accordingly, Plaintiffs fail to allege that the

1  Agent Defendants knowingly violated Plaintiffs' rights.

2  **E.    Qualified Immunity Bars The Equal Protection Claims**

3  Plaintiffs' Equal Protection claims are subsumed by, and are co-extensive

4  with, Plaintiffs' First Amendment claims, as "[i]t is generally unnecessary to

5  analyze laws which burden the exercise of First Amendment rights by a class of

6  persons under the equal protection guarantee, because the substantive guarantees of

7  the Amendment serve as the strongest protection against the limitation of these

8  rights." *Orin v. Barclay*, 272 F.3d 1207, 1213 (9th Cir. 2001) (*citing* John E. Nowak

9  *et al.*, Handbook on Constitutional Law (1978)).

10  In *Orin*, a protestor was told by a community college official that he could

11  conduct an anti-abortion protest on campus only if he refrained from, among other

12  things, couching his protest in overtly religious terms. *Id.* at 1211. After his

13  subsequent arrest at the protest, Plaintiff sued the college official, a police officer,

14  and others under 42 U.S.C. §§ 1983 and 1985(3) for, *inter alia*, violation of the

15  Equal Protection Clause and his First Amendment free exercise rights. *Id.* The Ninth

16  Circuit, noting that Plaintiff's Equal Protection claim appeared to be "no more than

17  a First Amendment claim dressed in equal protection clothing," held it subsumed by,

18  and co-extensive with, his First Amendment claim, and thus analyzed Plaintiff's free

19  exercise claims directly rather than as a component of his Equal Protection claim.

20  *Id.* Here, Plaintiffs' Equal Protection claims are likewise subsumed by their First

21  Amendment claims. Thus, the Agent Defendants are entitled to qualified immunity

22  on Plaintiffs' Equal Protection claims for the same reasons argued above.

23  **F.    Qualified Immunity Bars The Unlawful Search Claims**

24  Plaintiffs' Ninth Cause of Action asserts that the Agent Defendants violated

25  their rights under the Fourth Amendment in three ways: (i) by recording their

26  communications without a warrant; (ii) by conducting video surveillance; and

27  (iii) by planting listening devices in mosques without a warrant. (FAC ¶ 251.) In

28  order to overcome the Agent Defendants' assertion of qualified immunity, Plaintiffs

1    must show these actions violated established rights under the Fourth Amendment.

2         The Fourth Amendment protects individuals from unreasonable searches and

3    seizures. U.S. CONST. AMEND. IV. "Fourth Amendment rights are personal rights

4    which, like some other constitutional rights, may not be vicariously asserted." *Rakas*

5    *v. Illinois*, 439 U.S. 128, 133-34 (1978) (internal citations omitted). The protections

6    of the Fourth Amendment only apply if an individual can demonstrate that the

7    government action invaded upon his legitimate expectation of privacy. *Smith v.*

8    *Maryland*, 442 U.S. 735, 740-41 (1978); *see also United States v. Taketa*, 923 F.2d

9    665, 670-671 (9th Cir. 1991). Government action will not offend the Fourth

10   Amendment unless: (1) the individual has exhibited a subjective expectation of

11   privacy and (2) the individual's subjective expectation of privacy is one that society

12   is prepared to recognize as reasonable. *Smith*, 442 U.S. at 740-41; *see also United*

13   *States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000). Plaintiffs can establish a

14   subjective expectation of privacy if they allege that they sought to preserve

15   something as private. *Smith*, 442 U.S. at 740-41. Whether or not an expectation of

16   privacy is objectively reasonable is a question of law. *Nerber*, 222 F.3d at 599.

17              *1.    Recording Of Audio Communications*

18        Plaintiffs allege that Monteilh made audio recordings of conversations where

19   none of the participating parties consented. (FAC ¶ 251.) Plaintiffs claim that

20   Monteilh allegedly left his recording devices unattended in the prayer hall while

21   Malik and AbdelRahim were present.[6] (FAC ¶¶ 192, 211.) The FAC does not allege

22   that the FBI obtained any *unattended* recordings of Plaintiff Fazaga with Monteilh's

23   recording devices. As a result, only Malik and AbdelRahim may assert that

_____

25   [6] The Fourth Amendment does not prohibit recordings made by Monteilh when he
     was present because Monteilh necessarily consented to the recording. *United States*
26   *v. White*, 401 U.S. 745, 749 (1971). Consensual recordings are not even considered
     a search, because they do not intrude upon a legitimate expectation of privacy.
27   *United States v. Aguilar,* 883 F.2d 662 (9th Cir. 1988).

28

                                    - 29 -

Montheil's unattended audio recordings violated their Fourth Amendment rights.

Activities that take place within a religious institution are not afforded a greater expectation of privacy than normally provided by the Fourth Amendment. *Aguilar,* 883 F.2d at 696-703; *see also Presbyterian Church v. United States*, 870 F.2d 518, 527 (9th Cir. 1989). Because "the Fourth Amendment protects people, not places," an individual cannot invoke the protections of the Fourth Amendment simply due to his location. *Katz v. United States*, 389 U.S. 347, 351 (1967).

"A subjective expectation of privacy in oral communications may, but does not necessarily, turn on the physical characteristics of the place or property in which the speech takes place." *Kee v. City of Rowlett* Texas, 247 F.3d 206, 213 (5th Cir. 2001). Moreover, the Fourth Amendment does not protect information that an individual "knowingly exposes to the public, even in his own home or office." *Katz*, 389 U.S. at 351. Even the inadvertent disclosure of information is not protected by the Fourth Amendment, as the risk of being overheard by an eavesdropper is a risk we assume whenever we speak. *Hoffa v. United States*, 385 U.S. 293, 303 (1966); *see also Aguilar,* 883 F.2d at 702-03. With regard to oral communications, the dispositive considerations for constitutional protection are whether an individual subjectively expected his conversations to be private and whether the individual "took normal precautions to maintain privacy." *Kee*, 247 F.3d at 213.

In *Kee*, the plaintiffs claimed that the city and several government agents violated the Fourth Amendment and 18 U.S.C. § 2511 (the Federal Wire Tap Act) when the government agents recorded the plaintiffs' conversations at an outdoor grave site memorial service. 247 F.3d at 209-10. The district court granted summary judgment in favor of the defendants on the grounds that the plaintiffs failed to demonstrate a "subjective expectation of privacy in their conversations and prayers at the grave site," and that the defendants were entitled to qualified immunity. *Id.* at 210. On appeal, the Fifth Circuit affirmed, holding that the plaintiffs failed "to demonstrate that an issue of material fact [existed] as to whether their expectation of

1   privacy was violated." *Id.* at 217. The Fifth Circuit noted that the plaintiffs did not
2   offer any evidence that they sought "to protect their conversations from 'uninvited
3   ears,'" nor did they "assert that their oral statements were communicated free from
4   the possibility of eavesdroppers who might have been in close proximity." *Id.* at
5   216. Additionally, the plaintiffs did not provide any evidence that they took
6   affirmative steps to preserve their privacy. *Id.*

7          Plaintiffs have similarly failed to allege a subjective expectation of privacy in
8   their communications in the prayer hall. While Plaintiffs allege that the ICOI barred
9   audio and video recordings without permission, and that signs notified congregants
10  when an outside entity recorded an event (FAC ¶ 193), these facts are irrelevant to
11  the analysis of whether Malik and AbdelRahim sought to preserve their
12  communications in the prayer hall as private by taking steps to prevent disclosure to
13  the other inhabitants of the prayer hall. As noted above, activities held in a religious
14  institution are not afforded a greater expectation of privacy than normally provided
15  by the Fourth Amendment, and that an individual cannot invoke the protections of
16  the Fourth Amendment simply due to his location. *See Aguilar,* 883 F.2d at 696-
17  703; *Katz*, 389 U.S. at 351. Malik and AbdelRahim conducted the alleged
18  conversations in an area seemingly open to the public, and populated by Monteilh
19  and other unidentified third parties. (FAC ¶¶ 192, 211.) They thus bore the risk of
20  being overheard, and therefore lacked a reasonable expectation of privacy.

21              ***2.    Video Surveillance***

22         Plaintiffs allege that, on several occasions, Monteilh carried a covert video
23  recording device with him. (FAC ¶¶ 108, 128-129, 172, 179, 202 and 206.)
24  However, only Fazaga and AbdelRahim can assert a claim with regard to the alleged
25  video surveillance, because Plaintiffs did not allege that Malik was the subject of
26  any of the recordings. (*Id.*)

27         Video surveillance is not *per se* impermissible under the Fourth Amendment.
28  *United States v. Taketa*, 923 F.2d 665 (9th Cir. 1991). For example, individuals do

1  not have a reasonable expectation to be free from video surveillance in public

2  places. *Id.* Similarly, individuals do not have a reasonable expectation to be free

3  from video surveillance while in the presence of a government informant, because

4  the information shared with, or visible to, the government agent is not protected by

5  the Fourth Amendment. *See Nerber*, 222 F.3d at 604 ("defendants bore the risk that

6  their activities with the informants were being surveilled" using a video camera)*;

7  see also United States v. Brathwaite*, 458 F.3d 376, 380-81 (5th Cir. 2006)

8  (defendant "forfeited his privacy interest in those activities that were exposed to the

9  CI".); *United States v. Lee*, 359 F.3d 194, 201-02 (3rd Cir. 2004) ("just as Lee gave

10  up any expectation of privacy in things he allowed [the informant] to hear, Lee also

11  gave up any expectation of privacy in the things he allowed [the informant] to see");

12  *see also United States v. Davis*, 326 F.3d 361, 366 (2nd Cir. 2003) ("Once Davis

13  invited [the informant] into his residence, Davis forfeited his privacy interest in

14  those activities that were exposed to [the informant].").

15      Plaintiffs' Fourth Amendment claim related to the alleged video recordings

16  fails because Plaintiffs have not alleged that they had a legitimate expectation of

17  privacy in any of activities allegedly captured on the recordings. Instead, each of the

18  alleged recordings were taken with a device that Monteilh supposedly had installed

19  in his shirt button, and all video footage was recorded in his presence. (FAC ¶¶ 108,

20  128-129, 172, 179, 202 and 206.) Recordings made when the informant is present,

21  of activities made accessible to him by Plaintiffs, are not protected by the Fourth

22  Amendment. Furthermore, two of the alleged recordings occurred in public places,

23  the mosque and a soccer field, where individuals do not have a reasonable

24  expectation to be free from video surveillance. (*Id.* at ¶¶ 172, 206.) Accordingly,

25  Plaintiffs' Fourth Amendment claim, with respect to the video recordings, fails.

26          ### 3.    *Surveillance Devices In Mosques*

27      Plaintiffs allege that the FBI planted "listening devices" and "surveillance

28  equipment" in mosques, but only allege that these "listening devices" (apart from

1    the device used by Monteilh, discussed above) recorded Plaintiff Fazaga's

2    conversations. (FAC ¶ 95.) Thus, only Fazaga may assert that the purported

3    listening devices violated his Fourth Amendment rights. *See Rakas*, 439 U.S. at 133-

4    34. Regardless, this claim fails to meet the plausibility standard set forth in *Iqbal*.

5    While Plaintiffs allege that "Agents Allen and Armstrong caused such electronic

6    surveillance equipment to be installed in the Mission Viejo Mosque" (FAC ¶ 95),

7    Plaintiffs fail to allege any facts to support this conclusory allegation. For example,

8    Plaintiffs fail to allege how they learned of these supposed devices, when the

9    device(s) were installed, who (if anyone) discovered the devices, or where within

10   the mosque they were installed. Such naked assertions "devoid of further factual

11   enhancement" will not survive a motion to dismiss. *Iqbal, supra,* 129 S. Ct. at 1949.

12        Moreover, if the Court upholds the government's assertion of the state secrets

13   privilege, litigation of this claim should be foreclosed, as the privilege covers

14   evidence regarding the existence, use and justification of listening devices in

15   mosques – apart from those devices allegedly used by Monteilh. (Docket No. 55 at

16   43:3-8 (stating that "previously undisclosed information related to ... sources and

17   methods used in a counterterrorism investigation of a particular person" is protected

18   by the state secrets doctrine).) Without access to this classified information,

19   Plaintiffs cannot prove – and the Agent Defendants cannot refute – the allegation

20   that the government planted "listening devices" in mosques. Accordingly, dismissal

21   is proper. *See Kasza*, 133 F.3d at 1166.[7]

22   _____

23   [7] In its motion to dismiss, the government did not move to dismiss the Fourth
24   Amendment claims, because it concedes that the audio and video recordings
     *collected by Monteilh* were publicly disclosed in a separate criminal proceeding.
25   (Docket No. 55 at 4:20-5:11.) However, Plaintiffs' complaint also asserts that
     government agents *other than Monteilh* planted "listening devices" in mosques.
26   (FAC ¶¶ 95, 251.) Plaintiffs also allege that agents *other than Monteilh* placed
27   electronic listening devices in Plaintiff AbdelRahim's home, car and cell phone and
     video cameras outside his home. (*Id.* at ¶ 209.)  Allegations concerning conduct by
28   (footnote continued)

### G. Qualified Immunity Bars The FISA Claim

Plaintiffs' Tenth Cause of Action alleges that the Agent Defendants violated Section 1810 of the Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1801-71, for warrantless electronic surveillance. (*See* FAC ¶ 253.) Specifically, Plaintiffs allege that the Agent Defendants, acting through Monteilh, used electronic, mechanical, and/or other surveillance devices, without a warrant, to monitor Plaintiffs and their communications and to acquire information under circumstances in which Plaintiffs had a reasonable expectation of privacy and a warrant was required for law enforcement purposes. (*Id.*)

The Agent Defendants did not violate clearly established law of which a reasonable person would have known, and thus are entitled to qualified immunity on this claim. First, FISA provides a private right of action only to an "aggrieved person," someone who was the target of electronic surveillance under circumstances in which he or she had a reasonable expectation of privacy. *See* 50 U.S.C. §§ 1801(f), 1809, 1810. As discussed above, Plaintiffs had no reasonable expectation of privacy in the circumstances alleged. (*See* Part VI.F., *supra*.)

Second, since FISA Section 1810 was enacted more than thirty years ago, only two published decisions have addressed it, both in the same case. *See In re Nat'l Sec. Agency Telecomms. Records Litig.*, 564 F. Supp. 2d 1109 (N.D. Cal. 2008) and 700 F. Supp. 2d 1182 (N.D. Cal. 2010). Neither case established that the type of warrantless surveillance alleged here creates civil liability under Section 1810 for governmental officials sued in their individual capacity, as the Agent Defendants are sued here. Indeed, in one of those decisions the court held that a Section 1810 claim for warrantless electronic surveillance claim may only be alleged against government officials in their *official*, as opposed to personal,

---

agents *other than Monteilh* are necessarily the "sources and methods" that are protected by government's privilege.

1  capacity. *See In re Nat'l Sec. Agency Telecomms. Records Litig.*, 700 F. Supp. 2d

2  1182, 1202-03 (N.D. Cal. 2010). The court there reasoned that the nature of the

3  wrongdoing by governmental actors alleged in FISA cases "is official rather than

4  individual or personal," as it is only "officers and employees acting in their official

5  capacities that would engage in surveillance of the type contemplated by FISA." *Id.*

6  at 1192-93, 1203. Accordingly, because no case has ever established that the Agent

7  Defendants' alleged conduct violated Section 1810 of FISA, they are entitled to

8  qualified immunity on this cause of action.

9  **VII.   CONCLUSION**

10        While Plaintiffs' FAC is replete with broad allegations of a discriminatory

11  investigation by the FBI of Muslims in Southern California, Plaintiffs fail

12  sufficiently to allege that the Agent Defendants violated these particular Plaintiffs'

13  rights. Moreover, even if Plaintiffs had sufficiently alleged a violation of their

14  rights, the Agent Defendants are entitled to qualified immunity as any such violation

15  was not "clearly established" at the time. For this reason, and for the reasons set

16  forth above and in the motions to dismiss filed by the Government Defendants and

17  Defendants Tidwell and Walls, the Agent Defendants' motion to dismiss Plaintiffs'

18  FAC should be granted.

19  DATED: November 11, 2011           Respectfully submitted,

20                                     SCHEPER KIM & HARRIS LLP
21                                     DAVID C. SCHEPER
22                                     ALEXANDER H. COTE
                                       ANGELA M. MACHALA
23

24                                     By:   ___/s/_____
                                             David C. Scheper
25                                           Attorneys for Defendants Pat Rose, Kevin
26                                           Armstrong and Paul Allen

27

28

1

## JOINDER

2     Defendants Rose, Armstrong and Allen hereby join in the motions to dismiss

3 filed by (1) Defendants United States of America, Federal Bureau of Investigation,

4 Robert Mueller and Steven Martinez (Docket No. 55) and (2) Defendants Stephen

5 Tidwell and Barbara Walls, because the arguments raised therein apply with equal

6 force to Agents Rose, Armstrong and Allen.

7 DATED: November 11, 2011          Respectfully submitted,

8                                 SCHEPER KIM & HARRIS LLP

9                                 DAVID C. SCHEPER

10                                ALEXANDER H. COTE
                                  ANGELA M. MACHALA

11

12

13                                By:  ___/s/_____

14                                     David C. Scheper
                                       Attorneys for Defendants Pat Rose, Kevin
15                                     Armstrong and Paul Allen

16

17

18

19

20

21

22

23

24

25

26

27

28