TONY WEST
Assistant Attorney General
ANDRE BIROTTE JR.
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director
ANTHONY J. COPPOLINO
E-mail: tony.coppolino@usdoj.gov
LYNN Y. LEE (SBN #235531)
E-mail: lynn.lee@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C.  20001
Telephone: 202-514-4782
*Attorneys for the Federal Bureau of
Investigation and Defendants Mueller
and Martinez Sued in their Official Capacities*

STEPHEN E. HANDLER
Senior Trial Counsel
E-mail: stephen.handler@usdoj.gov
U.S. Department of Justice, Civil Division, Torts Branch
1331 Pennsylvania Avenue N.W., Rm 8070N
Washington, D.C. 20530
Telephone: (202) 616-4279
*Attorney for the United States*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION

| | |
|---|---|
| YASSIR FAZAGA *et al.*, | CASE:   SA11-CV-00301 CJC (VBKx) |
| Plaintiffs, | **GOVERNMENT DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT AND FOR SUMMARY JUDGMENT**[1] |
| v. | |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | DATE:   February 10, 2012 TIME:    10:00 a.m. JUDGE:  Hon. Cormac J. Carney |
| Defendants. | |

---

[1] Pursuant to the Court's stipulated Order of December 16, 2011 (Dkt. 62), the Defendants have reallocated their reply page limits to permit this reply brief of 27 pages.

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    PLAINTIFFS CANNOT OBTAIN EXPUNGEMENT RELIEF . . . . . . . . . . . . . . . . . . 1

       A.    Plaintiffs Cannot Obtain Expungement Under the Privacy Act . . . . . . . . . . . . 2

       B.    Plaintiffs Are Not Entitled to Expungement Under Any Other Law. . . . . . . . . . 4

II.   THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST
       THE UNITED STATES UNDER THE FEDERAL TORT CLAIMS ACT. . . . . . . . . . 7

       A.    Because California Law Permits Consensual Law Enforcement
              Monitoring, the Alleged Surveillance is Not Actionable. . . . . . . . . . . . . . . . . . 7

       B.    The Amended Complaint Fails to State Claims for Relief
              Under California Civil Code Section 52.1.       . . . . . . . . . . . . . . . . . . . . . . . . . 10

       C.    Plaintiffs' Claims for Intentional Infliction of Emotional
              Distress Should Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       D.    The Statute of Limitations Bars Emotional Distress Claims For
              Conduct that Occurred in Plaintiffs' Presence . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.  THE STATE SECRETS PRIVILEGE PROPERLY APPLIES HERE . . . . . . . . . . . . . 14

       A.    The FISA Does Not Preempt the Privilege in this Case . . . . . . . . . . . . . . . . . . 14

       B.    Litigation of Plaintiffs' Claims Would Risk or Require the
              Disclosure of Privileged Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

       C.    The State Secrets Privilege May Be Applied to Constitutional
              Claims Seeking Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

       D.    The Government's Practice in Habeas Matters Does Not
              Foreclose Dismissal Here Based on State Secrets Privilege. . . . . . . . . . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

i

# TABLE OF AUTHORITIES

**CASES**                                                    **PAGE(S)**

*ACLU Foundation v. Barr,*
   952 F.2d 457 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*ACLU v. Brown,*
   619 F.2d 1170 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*ACLU v. NSA,*
   493 F.3d 644 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Al Adahi v. Obama,*
   613 F.3d 1102 (D.C. Cir. 2010), *cert. denied,* 131 S.Ct. 1001 (2011). . . . . . . . . . . . . . . . 26

*Al-Haramain Islamic Foundation of Oregon v. Bush,*
   451 F. Supp. 2d 1215 (D. Or. 2006), *rev'd,* 507 F.3d 1190
   (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bassiouni v. FBI,*
   436 F.3d 712 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp.,*
   2010 WL 98957 (N.D. Cal. Jan. 5, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Brocato v. Dep't of Corrections,*
   2009 WL 3489367 (C.D. Cal. Oct. 26, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brown v. GSA,*
   425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Burnsworth v. Gunderson,*
   179 F.3d 771 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cell Assocs., Inc. v. NIH,*
   579 F.2d 1155 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*CIA v. Sims,*
   471 U.S. 159, 105 S.Ct. 1881, 85 L.Ed. 2d 173 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
   508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed. 2d 472 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Clarkson v. IRS,*
  678 F.2d 1368 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Davis v. Michigan Dep't of Treasury,*
  489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed. 2d 891 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Doe v. FBI,*
  936 F.2d 1346 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Doe v. Mateo,*
  2010 WL 1541279 (N.D. Cal. Apr. 16, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Doe v. Tenet,*
  329 F.3d 1135 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24, 25

*Ellsberg v. Mitchell,*
  709 F.2d 51 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

*Exner v. FBI,*
  612 F.2d 1202 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Fendler v. United States Bureau of Prisons,*
  846 F.2d 550 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Fletcher v. Western National Life Ins. Co.,*
  10 Cal. App. 3d 376 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Franklin v. Massachusetts,*
  505 U.S. 788, 112 S.Ct. 2767, 120 L.Ed. 2d 636 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Gant v. County of Los Angeles,*
  765 F. Supp. 2d 1238 (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Halkin v. Helms,*
  598 F.2d 1 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24, 27

*Halkin v. Helms,*
  690 F.2d 977 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Hamdi v. Rumsfeld,*
  542 U.S. 507, 124 S.Ct. 2633, 159 L.Ed. 2d 578 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Hamilton v. Prudential Financial,*
  2007 WL 2827792 (E.D. Cal. Sept. 27, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Hughes v. Pair,*
  46 Cal. 4th 1035 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Jabara v. Webster,*
  691 F.2d 272 (6th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

-iii-

*Kasza v. Browner*,
133 F.3d 1159 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 23

*Kizas v. Webster*,
707 F.2d 524 (D.C. Cir 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Larson v. Valente*,
456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed. 2d 33 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lemon v. Kurtzman*,
403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed. 2d 745 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Longval v. Comm. of Correction*,
404 Mass. 325, 535 N.E. 2d 588 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*MacPherson v. IRS*,
803 F.2d 479 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Martin v. County of San Diego*,
650 F. Supp. 2d 1094 (S.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mohammed v. Jeppesen Dataplan, Inc.*,
614 F.3d 1070 (9th Cir. 2010), *cert. denied,* 131 S.Ct.
2442 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Molerio v. FBI*,
749 F.2d 815 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Nagel v. U.S. Dep't of Health, Educ. & Welfare*,
725 F.2d 1438 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re: Nat'l Sec. Agency Telecomm. Records Litig., Al-Haramain Islamic Found. v. Bush*,
564 F. Supp. 2d 1109 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re: Nat'l Sec. Agency Telecomm. Records Litig., Al-Haramain Islamic Found. v. Obama*
700 F. Supp. 2d 1182 (N.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Nolan v. Cleland*,
686 F.2d 806 (9th Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*People v. Arno*,
90 Cal. App. 3d 505 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. Henderson*,
220 Cal. App. 3d 1632 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. Kelley*,
103 Cal. App. 4th 853 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*People v. Murphy*,
8 Cal. 3d 349 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*People v. Windham,*
   145 Cal. App. 4th 881 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Pickard v. Dep't of Justice,*
   653 F.3d 782 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Pittman v. City of Oakland,*
   197 Cal. App. 3d 1037 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Presbyterian Church v. United States,*
   752 F. Supp. 1505 (D. Ariz. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Public Citizen v. Dep't of State,*
   11 F.3d 198 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Rhoden v. United States,*
   55 F.3d 428 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Richardson-Tunnell v. School Ins. Prog. for Employees,*
   157 Cal. App. 4th 1056 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Salisbury v. United States,*
   690 F.2d 966 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Sawhney v. Allstate Ins. Co.,*
   1995 WL 500531 (C.D. Cal. June 23,1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Scruggs v. United States,*
   929 F.2d 305 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sterling v. Tenet,*
   416 F.3d 338 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Struk v. Bush,*
   2011 WL  5827196 (S.D. Cal. Nov. 18, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tekle v. United States,*
   511 F.3d 839 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Tekle v. United States,*
   2009 WL 1303357 (C.D. Cal. May 8, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Tenet v. Doe,*
   544 U.S. 1, 125 S.Ct. 1230, 161 L.Ed. 2d 82 (2005) . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Totten v. United States,*
   92 U.S. 105, 23 L.Ed. 605 (1876) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*United Presbyterian Church in the U.S.A. v. Reagan,*
   738 F.2d 1375 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Abu-Jihaad,*
   531 F. Supp. 2d 299 (D. Conn. 2008)), *aff'd* 630 F.3d 102 (2d Cir. 2010) . . . . . . . . . . . 18

*United States v. Crowell*,
   374 F.3d 790 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Neber*,
   222 F.3d 597 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Nixon*,
   418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed. 2d 1039 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Olson*,
   546 U.S. 43, 126 S.Ct. 510, 163 L.Ed. 2d 306 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United  States v. Ott*,
   827 F.2d 473 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Reynolds*,
   345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*United States v. Sumner*,
   226 F.3d 1005 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Texas*,
   507 U.S. 529, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) . . . . . . . . . . . . . . . . . . . . . . . 5, 16

*Venegas v. County of Los Angeles*,
   32 Cal. 4th 820, 841 (2004)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Vernon v. City of Los Angeles*,
   27 F.3d 1385 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Webster v. Doe*,
   486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed. 2d 632 (1988) . . . . . . . . . . . . . . . . . . . . . . . 25

*Wong v. Tai Jing*,
   189 Cal. App. 4th 1354 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

**STATUTORY LAW**

5 U.S.C.§ 552a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

50 U.S.C. § 1801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

50 U.S.C. § 1801(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

50  U.S.C. § 1806 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

50 U.S.C. § 1810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 1346(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

1

**REGULATION**

28 C.F.R. § 16.96 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cal. Civ. Code § 1708.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**LEGISLATIVE MATERIALS**

S. Rep. No. 95-701, 1978 U.S.C.C.A.N. 4027 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## INTRODUCTION

Plaintiffs' Opposition ("Opp.") to the Government Defendants' Motion to Dismiss and for Summary Judgment ("USG") fails to demonstrate that their claims may proceed against the FBI, the official capacity defendants (Mueller and Martinez), or the United States ("Government Defendants"). In particular, plaintiffs fail to show that they may obtain the destruction of FBI records related to a counter-terrorism investigation, or that they have stated a valid claim under the Federal Tort Claims Act. In addition, plaintiffs' various challenges to the Government's assertion of the state secrets privilege in this case are meritless. The privilege is not "preempted" here by the Foreign Intelligence Surveillance Act; the privileged information at issue is properly subject to exclusion; and there is no impediment to dismissal of plaintiffs' constitutional claims for injunctive relief based on the privilege assertion.

## ARGUMENT

## I.    PLAINTIFFS CANNOT OBTAIN EXPUNGEMENT RELIEF.

Plaintiffs have not established any basis for the Court to grant the relief they seek against the FBI and official capacity defendants—namely, the expungement or return of records allegedly collected by the FBI. The Privacy Act precludes such relief, as it provides that injunctive relief is *only* available for certain specific types of Privacy Act claims that plaintiffs have not raised here, and also authorizes the FBI's exemptions of the relevant systems of records from both access and amendment requirements. Moreover, plaintiffs have not established any right to expungement under the Constitution. The Privacy Act preemptively governs all claims for expungement because it specifically addresses circumstances where records of First Amendment activities are alleged to have been impermissibly collected and provides specific remedies for any such violation. Finally, plaintiffs fail to demonstrate a real, immediate threat of irreparable harm that requires the expungement of records. For these reasons, plaintiffs' claims against the FBI and official capacity defendants, which seek solely the disclosure or destruction of records, must be dismissed.

### A.     Plaintiffs Cannot Obtain Expungement Under the Privacy Act.

Plaintiffs either misrepresent or misconstrue the Government's arguments regarding subsection (e)(7) and the availability of expungement under the Privacy Act. Nowhere in its motion does the Government suggest that the Court "has no authority to remedy violations of . . . Section (e)(7)" or that (e)(7) is unenforceable. *See* Opp. at 4, 5, 6. A plaintiff claiming an (e)(7) violation may seek relief in the form of damages pursuant to subsection (g)(1)(D) of the Privacy Act, which provides a civil remedy for any violation of the Privacy Act that does not involve a request for amendment or access or an alleged inaccuracy of records. But plaintiffs do not seek damages against the FBI, and have not stated a claim under subsection (g)(1)(D).

With respect to expungement as a remedy for a Privacy Act violation, the Government contends that expungement (1) is only available where the plaintiff has brought an amendment action, that is, an action based on the government's refusal of a plaintiff's request to amend or expunge records, and (2) even then is *not* available where the records sought to be expunged are located in a system of records that an agency has exempted from amendment. *See* USG at 15-18. It is undisputed that plaintiffs have not stated an amendment claim in their amended complaint ("FAC"). Even if they had, the FBI has attested that the records at issue, to the extent they exist, cannot be expunged because they are located in systems of records it has exempted from the amendment and access requirements of the Privacy Act. *See* Declaration of Christopher N. Morin ("Morin Decl.") (Dkt. 55-1) ¶ 9; 28 C.F.R. § 16.96(a)(1), (c)(1).

Nothing in plaintiffs' opposition refutes either of these points. *MacPherson v. IRS*, 803 F.2d 479 (9th Cir. 1986), does not support the proposition that expungement is an appropriate remedy for an (e)(7) violation. Although *MacPherson* involved an (e)(7) claim, it did not address what remedy the plaintiff was seeking in that case because—as plaintiffs acknowledge—it determined that the maintenance of records

of MacPherson's activities fell within (e)(7)'s "authorized law enforcement activity" exception. *MacPherson* said nothing about what relief would have been appropriate if the exception were inapplicable and the government had, in fact, violated (e)(7). And it does not affect the Ninth Circuit's previous holding that injunctive relief under the Privacy Act is limited to amendment and access claims brought under (g)(1)(A) and (B). *See Cell Assocs., Inc. v. NIH*, 579 F.2d 1155, 1161 (9th Cir. 1978).[2]

Plaintiffs also cite *Nagel v. U.S. Dep't of Health, Educ. & Welfare*, 725 F.2d 1438, 1441 (D.C. Cir. 1984), and *Clarkson v. IRS*, 678 F.2d 1368, 1376-77 (11th Cir. 1982), for the argument that expungement is available for violations of (e)(7). Opp. at 5. However, neither of these cases contradicts the principle that a plaintiff seeking expungement for *any* Privacy Act violation must do so through the vehicle of an amendment action. Indeed, in *Clarkson,* the Eleventh Circuit noted that the Privacy Act expressly provides for injunctive relief for only two types of agency misconduct: "wrongful withholding of documents under subsection (d)(1) and wrongful refusal to amend an individual's record under subsection (d)(3)." *Id*. at 1376. The court held that "the plain meaning of the language of subsections (d)(2) and (d)(3). . . authorize[s] the amendment or expungement of all records which are maintained in violation of subsection (e)(7)." *Id. Clarkson* thus suggests that expungement may be available for an (e)(7) claim *if* it is brought via an amendment action. But plaintiffs, as noted, have not brought an amendment action.

---

[2] Plaintiffs have pled an access claim pursuant to subsection (g)(1)(B) of the Privacy Act, but have failed to exhaust their administrative remedies for this claim. FBI regulations only authorize administrative appeals of "an adverse determination *denying* [the] request," which has not taken place. *See* 28 C.F.R. § 16.45(a) (emphasis added). Even if exhaustion were not required, the statutory remedy for improperly denied access does *not* include expungement but only disclosure, *see* 5 U.S.C.§ 552a(g)(3)(A), and the FBI has properly exempted the records at issue from disclosure. *See infra*; USG at 16-18.

Even assuming expungement were available for an (e)(7) claim without a claim for amendment, the FBI's exemptions would preclude such a remedy for the records at issue here. The fact that agencies cannot exempt themselves from the requirements of (e)(7) is irrelevant. The FBI has exempted certain systems of records from the access and amendment requirements of the Privacy Act, as the statute permits agencies to do for investigatory material compiled for law enforcement and criminal investigation purposes. *See* USG at 16-18. Therefore, any records so exempted—including those sought by plaintiffs, to the extent they exist—cannot be disclosed or expunged. Plaintiffs cite no law challenging the validity of the FBI's exemptions, which have been upheld by the Ninth Circuit. *See Exner v. FBI*, 612 F.2d 1202, 1205 (9th Cir. 1980). Indeed, courts have upheld the exemptions where (e)(7) claims have been asserted. *See, e.g., Bassiouni v. FBI*, 436 F.3d 712, 723 (7th Cir. 2006); *Doe v. FBI*, 936 F.2d 1346, 1351-61 (D.C. Cir. 1991).

As discussed in the Government's motion, permitting disclosure or expungement of records located in the exempted systems could compromise sensitive national security information and significantly impair the FBI's ability to conduct ongoing or future investigations. *See* USG at 17-19. Accordingly, plaintiffs are not entitled to expungement or disclosure of the records they seek.[3]

**B. Plaintiffs Are Not Entitled to Expungement Under Any Other Law.**

For all plaintiffs' insistence that they are entitled to expungement directly under the Constitution, they fail to address the key points made in the Government's motion.

---

[3] The Court should reject plaintiffs' demand for discovery into whether the Privacy Act exemptions properly apply here. The FBI has attested that the Operation Flex records at issue constitute investigatory material compiled for law enforcement and criminal investigation purposes and have been properly exempted. *See* Morin Decl. (Dkt. 55-1) ¶¶ 8-11. Permitting discovery would risk or require the very disclosures Congress sought to prevent through the Act's exemptions and would also risk disclosure of privileged information.

-4-

First, even for constitutional claims, a court's authority to grant expungement relief must be rooted in some source of jurisdiction, and there has been growing doubt among federal courts, including the Ninth Circuit, that courts' "inherent" powers provide such jurisdiction—particularly to the extent that the exercise of such powers impinge upon the powers of the other branches of government.  *See, e.g., United States v. Sumner*, 226 F.3d 1005, 1014 (9th Cir. 2000) ("[T]he expungement of the record of a valid arrest and conviction usurps the powers that the framers of the Constitution allocated to Congress, the Executive, and the states."); *Scruggs v. United States*, 929 F.2d 305, 306 (7th Cir. 1991) ("[A] court's 'inherent' powers concern the management of *judicial* business.  Judges lack supervisory powers over the behavior of the Executive Branch[.]") (original emphasis); *see also United States v. Crowell*, 374 F.3d 790, 796 (9th Cir. 2004).[4]

Second, assuming *arguendo* that courts do have inherent power to grant expungement to remedy constitutional claims, such power has only been established through federal common law, which must give way when Congress speaks directly to the issue at hand.  *United States v. Texas*, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993).[5]  The Privacy Act clearly addresses the very issue plaintiffs raise

---

[4] The cases cited in plaintiffs' opposition, including *Burnsworth v. Gunderson*, 179 F.3d 771 (9th Cir. 1999), preceded the more recent direction taken by the Ninth Circuit in *Sumner* and *Crowell*.  And, while *Sumner* held that a district court may expunge a criminal record under "the Constitution itself," 226 F.3d at 1012 & n.8, it did not address the role of the Privacy Act.

[5] Plaintiffs' contention that Congress can displace federal common law through legislation, but cannot eliminate an injunctive remedy created by the Constitution, Opp. at 8, is incorrect.  The Supreme Court has recognized that Congress can establish exclusive statutory remedies that may supplant constitutional claims.  *See Brown v. GSA*, 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed. 2d 402 (1976); *see also Nolan v. Cleland*, 686 F.2d 806, 815 (9th Cir.1982)

-5-

as grounds for expungement—the Government's alleged maintenance of records of plaintiffs' First Amendment-protected activities—and provides that expungement is *not* an available remedy under the circumstances presented in this case, for the reasons discussed above.  While plaintiffs cite cases on inherent authority that "post-date the Privacy Act," Opp. at 8, all of those cases dealt with the expungement of arrest or conviction records that did not implicate any of the exemptions at issue here. Congress evinced its intent, in the Privacy Act, to balance the need to prevent unlawful collection of records of First Amendment activity and the need to protect federal law enforcement investigations. Accordingly, the Act definitively establishes the remedies that would be available to redress plaintiffs' claim for injunctive relief.

Finally, plaintiffs still do not establish a "real and immediate threat of irreparable harm" needed for the Court to grant expungement.  *See Fendler v. United States Bureau of Prisons*, 846 F.2d 550, 554 (9th Cir. 1988).  Plaintiffs' opposition misinterprets this as a challenge to their standing, citing cases finding that an action for expungement of criminal records established a cognizable legal injury.  *See* Opp. at 9.  None of these cases contravenes the requirement that courts must find a real, immediate threat to the plaintiff before they can order expungement.  Plaintiffs also allege the FBI's maintenance of the records at issue "has led to their placement on various security lists. . .which result in intensive interrogation, long delays, and concomitant anxiety."  *Id.* at 10.  However, even assuming such allegations are true and establish an immediate threat of injury, the Court must still balance them against the Government's interests weighing against expungement, *see* Morin Decl. (Dkt. 55-1) ¶¶ 12-15, and plaintiffs have failed to justify the destruction of any FBI records.

---

(constitutional due process claim preempted by exclusive statutory remedy); *Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir 1983) (exclusive Title VII remedy precludes actions against federal officials for alleged constitutional violations).

## II.   THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST THE UNITED STATES UNDER THE FEDERAL TORT CLAIMS ACT.

### A.   Because California Law Permits Consensual Law Enforcement Monitoring, the Alleged Surveillance is Not Actionable.

Plaintiffs' opposition recognizes that state law enforcement officers are permitted to overhear or record audio communications in situations where a party to the communication has provided his consent. Opp. at 13. But they question whether the United States is permitted to "obtain the benefit of the privilege law governing state law enforcement officers for the purposes of determining liability under the FTCA." Opp. at 13-14. Plaintiffs argue that the Supreme Court "reverse[d] pre-existing Ninth Circuit authority permitting federal law enforcement officials to benefit from state law enforcement privileges." *Id.*(citing *United States v. Olson*, 546 U.S. 43, 126 S.Ct. 510, 163 L.Ed. 2d 306 (2005)), and *Tekle v. United States*, 511 F.3d 839, 841 (9th Cir. 2007). This argument is incorrect and misstates the law. Upon rehearing, *Tekle* expressly withdrew majority support of "Part II FTCA Claims" of the original opinion on which the Plaintiffs' rely, with two judges concurring in the result only. As Judge Fisher noted in his concurring opinion, the Ninth Circuit has repeatedly applied "the law a state court would apply in analogous circumstances," citing *Rhoden v. United States*, 55 F.3d 428, 431 (9th Cir. 1995), as part of "the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1). *See Tekle*, 511 F.3d at 858. As Judge Fisher further noted, it would be an absurd result if federal officers could comply with all constitutional and statutory requirements to conduct, for example, an arrest and the United States nevertheless would be held liable under the FTCA because they did not meet the requirements a private person would need to fulfill before making the same arrest. *Id.* Moreover, this Court expressly held that "the availability of law enforcement privileges was not abrogated or eliminated" by *Olson*. *Tekle v. United States*, 2009 WL 1303357, at *12 (C.D. Cal. May 8, 2009).

Accordingly, the United States is entitled to assert the California law enforcement privilege in this case.

Plaintiffs further argue that if the California law enforcement privilege applies, it is only "limited to *lawful* recording – so while recording conversations in which an informant participated might be lawful, the privilege does not extend to any recording that might otherwise violate state or federal law." *See* Opp. at 13. Plaintiffs, however, ignore authority holding that when one party consents, statutory and constitutional provisions are not violated and do not preclude the application of the privilege. *See* USG at 29 (citing *Doe v. Mateo*, 2010 WL 1541279, *5 (N.D. Cal. Apr. 16, 2010); *People v. Windham*, 145 Cal. App. 4th 881, 890 (2007)); *see also People v. Murphy*, 8 Cal. 3d 349, 358-62 (1972); *People v. Kelley*, 103 Cal. App. 4th 853, 860 (2002).[6] Plaintiffs' reliance on the *Neber* case is misplaced; indeed, that case supports the United States' position. The court held that video surveillance is permissible if conducted with an informant's consent in places where an informant is present, which substantially diminishes the privacy expectations of the other parties being surveilled. *United States v. Neber*, 222 F.3d 597, 604 n.5 (9th Cir. 2000).

Plaintiffs also erroneously suggest that the privilege is not applicable to video recordings, which are "governed by a separate statute." Opp. at 13, citing Cal. Civ.

---

[6] Contrary to plaintiffs' contention, the United States has not conceded that the FBI compiled and is maintaining records based on the plaintiffs' religion in violation of the California Constitution's privacy protection. *See* Opp. at 11, n. 8. (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1 (1994)). Moreover, based on *Windham* and *Doe*, *see supra*, the *Hill* case does not abrogate California's law permitting consensual monitoring for law enforcement purposes and the maintenance of records.

Code §1708.8.[7]   California courts have held that "a video recorder is a recording device for purposes of the privacy act, which proscribes the use of 'any electronic amplifying or recording device' for the purpose of eavesdropping or recording private communications." *See People v. Henderson*, 220 Cal. App. 3d 1632, 1653 (1990). However, the law enforcement privilege broadly covers "overhearing or recording any communication that [officers] could lawfully overhear or record" prior to the enactment of the Privacy Act, *see Windham*, 145 Cal. App. 4th at 889, which would logically include video surveillance.  As one court stated more than thirty years ago, "[g]iven today's state of technology, it is impossible to conceptualize a legally significant difference between electronically aided aural perception and optically aided visual view." *See Henderson*, 220 Cal. App. 3d at 1645 (citing *People v. Arno*, 90 Cal. App. 3d 505, 511 (1979)).  Furthermore, since the enactment of California's privacy act, video surveillance conducted by law enforcement officers has been found lawful if performed with the consent of one party and in his presence. *See Henderson*, 220 Cal. App. 3d at 1653.  The same is true here.

---

[7]   Plaintiffs argue that law enforcement officers may be "'liable for constructive invasion of privacy when the [officer] attempts to capture' video images" unless it is supported by "articulable suspicion."  Opp. at 13, citing §1708.8(b) and (g).  Reliance on this statute is misplaced.  Section 1708.8 is a "general statute that creates liability against all persons engaged in paparazzi-like activities;" it did not create any new liability for "government investigations that are not supported by 'articulable suspicion.'"  *See Richardson-Tunnell v. School Ins. Prog. For Employees*, 157 Cal. App. 4th 1056,1064-65 (2008).  Furthermore, liability under § 1708.8(b) is limited to persons who use a "visual or auditory enhancing device," *i.e.*, "powerful telephoto lenses and hyperbolic microphones that enable invasion of private areas that would otherwise be impossible without trespassing."  *See* Cal. Civ. Code § 1708.8(b) (citing Section 1 of Stats. 2009, c. 449 (A.B. 524)).  The FAC does not allege that any such devices were used.

**B. The Amended Complaint Fails to State Claims for Relief Under California Civil Code Section 52.1.**

Plaintiffs' assertion that the "most comprehensive authority . . . has squarely rejected the argument that §52.1 imposes liability only where a defendant has acted with violence or a threat of violence" again misstates the law. Opp. at 15. In *Martin v. County of San Diego*, 650 F. Supp.2d 1094 (S.D. Cal. 2009), the court found that "[n]othing in . . . California cases . . . calls into question the proposition that under the plain language of §52.1(j), where a violation is premised solely upon speech, the plaintiff must demonstrate the speech threatened violence." *Id*. at 1109 (discussing *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 841 (2004)). Plaintiffs further argue that because the Section 52.1 claim is not based on "'[s]peech alone,' but an extended course of conduct . . . that involved intrusive surveillance by various methods," plaintiffs are not required to plead violence or a threat of violence. *See* Opp. at 15-16. However, the allegations as to defendants are indeed based on speech alone.[8] Accordingly, because the section 52.1 claim is based on defendants' speech, the FAC fails to allege that defendants acted violently or threatened violence.

Further, it is undisputed that Section 52.1 claims must allege that the interference with their legal rights was accompanied by "threats, intimidation, or coercion." *See* Opp. at 14; USG at 31-32. Yet again, the FAC has not alleged facts sufficient to show that defendants' conduct amounted to threats, intimidation, or coercion."[M]ere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Brocato v. Dep't of Corrections*, 2009 WL 3489367, *3 (C.D. Cal. Oct. 26, 2009). Conclusory allegations that the officers used threats,

---

[8] *See* FAC ¶¶ 86-137, 145,157 (alleging defendants provided verbal instructions to its former source (Mr. Monteilh), information to "people at the highest levels" in 2006-07, and that testimony was provided by a FBI agent in court in 2009).

intimidation and coercion are not sufficient. *See Struk v. Bush*, 2011 WL 5827196, 12 (S.D. Cal. Nov. 18, 2011). Here, the FAC alleges that "[b]y subjecting Plaintiffs to constant surveillance because of their religion, then publicly revealing that surveillance, Defendants have interfered, or attempted to interfere, by threats, intimidation, or coercion . . ." with plaintiffs' constitutional rights. *See* FAC at ¶ 258. These allegations are simply insufficient to state that the defendants alleged conduct amount to threats, coercion, or intimidation. Likewise, allegations pertaining to plaintiffs' <u>current</u> beliefs, *i.e.*, fear of potential surveillance, or airport security stops by individuals who did not conduct the alleged surveillance are also insufficient to state this claim. *See* Opp. at 14 (citing FAC ¶¶ 185, 215).

Furthermore, the alleged covert surveillance which plaintiffs' claim violated their legal rights, standing alone, will not support a section 52.1 claim. This Court's decision in *Gant v. County of Los Angeles*, 765 F. Supp. 2d 1238 (C.D. Cal. 2011), is instructive. In *Gant*, plaintiff's section 52.1 claim alleged that an unlawful arrest violated his federal and state constitutional rights. The court considered "whether section 52.1 required a showing of coercion independent from the coercion inherent in the constitutional violation." *Id.* at 1253. Because section 52.1 was modeled on the Massachusetts Civil Rights Act of 1979, the *Gant* court looked to Massachusetts law noting that the "statute's coercion element is not met merely because the constitutional violation is inherently coercive." *Id.* (citing *Longval v. Comm. of Correction*, 404 Mass. 325, 535 N.E. 2d 588 (1989)).[9] "Because the use of force was intrinsic to the alleged violation itself, it did not also satisfy the additional 'force' or 'coercion'

---

[9] In *Longval*, a prisoner asserted a claim under the state's civil rights law (the counterpart to section 52.1) alleging that his rights were violated when he was unlawfully transferred without a hearing. The court found that "[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act." 535 N.E. 2d at 593.

element of the statute." *Gant*, 765 F. Supp. 2d at 1253. Accordingly, that claim was dismissed in the absence of any use of force, intimidation, or coercion in <u>accomplishing</u> [the] allegedly unlawful arrest." *Id*. (emphasis added). Likewise here, the allegedly unlawful surveillance was intrinsic to the alleged violations and cannot by itself satisfy the threat, intimidation, or coercion element of the section 52.1 claim.

### C.    Plaintiffs' Claims for Intentional Infliction of Emotional Distress Should Be Dismissed.

Plaintiffs argue that allegations of "highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry" are sufficient to support a claim for intentional infliction of emotional distress ("IIED"). Opp. at 17 (citing *Fletcher v. Western National Life Ins. Co.*, 10 Cal. App. 3d 376, 397 (1970)). This again misstates the law. Even the *Fletcher* court recognized that such allegations, without more, are insufficient as a matter of law. *See Fletcher*, 10 Cal. App. 3d at 396-97 (an IIED plaintiff must prove that emotional distress was severe and not trivial or transient); *see also Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1376-77 (2010).

Plaintiffs also err in arguing that they are relieved of their burden to plead and prove that their emotional distress was severe because of the "more egregious" nature of the alleged conduct here. *See* Opp. at 17. But in each of the cases on which plaintiffs rely, allegations of emotional distress were conclusory and, therefore, insufficient as a matter of law. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (allegations of "discomfort, worry, anxiety, upset stomach, concern, and agitation" are insufficient); *Pittman v. City of Oakland*, 197 Cal. App. 3d 1037, 1047 (1988) (allegations of shame, humiliation, and embarrassment are insufficient).[10] Further, the

---

[10] *See also Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp*., 2010 WL 98957, *2 (N.D. Cal. Jan. 5, 2010); Hamilton v. Prudential Financial*, 2007 WL 2827792, *4 (E.D. Cal. Sept. 27, 2007); Sawhney v. Allstate Ins. Co.*, 1995

determination of whether a plaintiff has satisfied the severity element of an IIED claim is made independently and without regard to the nature of the defendants' allegedly extreme and outrageous conduct.  In analyzing the sufficiency of the severity element of an IIED claim, courts employ the same standard, *i.e.*, whether the facts pled "constitute the sort of severe emotional distress of such lasting and enduring quality that no reasonable person should be expected to endure it." *See*, *e.g.*, *Wong*, Cal. App. 4th at 1376.  Because the allegations of "severe and ongoing anxiety and distress" and "constant fear of being under surveillance," *see* Opp. at 16-17 and FAC ¶¶ 185, 198-99, 216-17, are conclusory, they fail to meet the "requirement of specificity" and are insufficient to support an IIED claim.  *See Pittman*, 197 Cal. App. 3d at 1047.

### D.   The Statute of Limitations Bars Emotional Distress Claims For Conduct that Occurred in Plaintiffs' Presence.

Plaintiffs concede that the statute of limitations bars the emotional distress claims that are based upon Mr. Monteilh's "openly outrageous conduct that Plaintiffs' could observe at the time." *See* Opp. at 10.  Accordingly, all of the allegations pertaining to Mr. Monteilh's physical and verbal interactions with plaintiffs in 2006-07 that caused any emotional distress, including discussing *jihad*, are barred.[11]

Finally, plaintiffs argue that their emotional distress claims based on the covert surveillance that allegedly occurred in 2006-07 are not speculative. Opp. at 19.  Yet plaintiffs fail to provide any explanation of how the defendants' allegedly outrageous conduct that was deliberately hidden from view can cause any distress or to refute the United States' position that the Plaintiffs' <u>current</u> beliefs and suspicions regarding

---

WL 500531, *5 (C.D. Cal. June 23,1995).

[11] Plaintiffs asserts that the statute of limitations does not bar the IIED claims based on the "government conduct that Plaintiffs did not know about." *See* Opp. at 18.  However, this issue is not raised by the instant motion and is neither conceded nor waived.

1    potential covert surveillance are not actionable.  *See* USG at 36-37.

2    **III.    THE STATE SECRETS PRIVILEGE PROPERLY APPLIES HERE.**

3          To the extent that plaintiffs' claims are not dismissed on non-privilege grounds,

4    the Attorney General has properly asserted the state secrets privilege as to information

5    that would be at risk of disclosure in litigation of plaintiffs' religious discrimination

6    claims. Plaintiffs' contention that the Government's state secrets privilege assertion

7    constitutes a "remarkable assertion of power" under which "the courthouse doors

8    would be closed," Opp. at 20, is simply wrong.  Well-established judicial authority

9    recognizes that the protection of national security information may require the

10   dismissal of certain claims.  *See Mohammed v. Jeppesen Dataplan, Inc.,* 614 F.3d

11   1070, 1082 (9th Cir. 2010) (privilege does not "'surrender of judicial control over

12   access to the courts"), *cert. denied,* 131 S.Ct. 2442 (2011).  It remains with the Court

13   to examine the assertion and apply the governing law.  And, contrary to plaintiffs'

14   rhetoric, the Government has proceeded in a narrowly tailored fashion by focusing

15   first on non-privilege grounds for dismissal, not seeking to exclude all information

16   collected by the FBI's former confidential source (Mr. Monteilh), and not seeking

17   dismissal of all claims based on the privilege. However, privileged information is

18   clearly at issue in plaintiffs' religious discrimination claims.

19          **A.    The FISA Does Not Preempt the Privilege in this Case**.

20         Plaintiffs' contention that the state secrets privilege assertion in this case is

21   preempted by the Foreign Intelligence Surveillance Act (FISA) fails for several

22   reasons.  *See* Opp. at 26.[12]  As a threshold matter, this argument is inapplicable in the

23   present posture of this case. The Government has not even moved to dismiss

24   _____

25         [12]  Plaintiffs rely on *In re: Nat'l Sec. Agency Telecomm. Records Litig., Al-*
     *Haramain Islamic Found. v. Bush*, 564 F. Supp. 2d 1109 (N.D. Cal. 2008), which

26   is pending on appeal after final judgment.  *See AHIF v. Obama,* 700 F. Supp. 2d

27   1182 (N.D. Cal. 2010).

28                                              -14-

plaintiffs' FISA claim based on the privilege assertion, and plaintiffs cite no authority for the proposition that the FISA operates beyond the confines of that statute to govern litigation of non-FISA claims. Even if plaintiffs' FISA preemption theory was valid, it would apply to information concerning the alleged electronic surveillance as defined by FISA, which is the subject of their FISA claim. *See* 50 U.S.C. § 1810 (creating cause of action for unlawful electronic surveillance);[13] §1801(f) (defining electronic surveillance). The Government has not asserted privilege here over the fact that Mr. Monteilh collected audio and video information—conduct on which plaintiffs' FISA claim is primarily based—nor as yet sought to exclude any of that information based on the privilege. Rather, the Government seeks to protect information concerning whether or not a person was subject to an FBI investigation and, if so, the reasons for that investigation.[14] That information is distinct from the narrower question of whether or not a person was subject to FISA-defined electronic surveillance. In addition, while the Government seeks to protect sources and methods used in Operation Flex, which might include electronic surveillance subject to FISA if any were utilized,[15] the protection of that information cannot serve to preempt application of the state secrets privilege as to non-FISA information and claims.[16]

---

[13] The Government does seek dismissal of this claim on the ground that 50 U.S.C. § 1810 does not waive sovereign immunity. *See* USG at 22-26.

[14] *See* Declaration of Attorney General Eric H. Holder ¶¶ 4-9 (Dkt. 32-3, filed August 1, 2011); Declaration of Mark Giuliano, Assistant Director of the FBI's Counterterrorism Division ¶¶ 15-29 (Dkt. 33, filed August 1, 2011).

[15] *See* Holder Decl. ¶¶ 4(iii), 10; Giuliano Decl. ¶¶ 15 (iii), 30-31.

[16] Thus, the mere fact that, apart from actions allegedly taken by Mr. Monteilh, plaintiffs also allege that the FBI separately wiretapped the home or office of plaintiffs Fazaga and AbdelRahim, *see* Opp. at 30, could not preempt the privilege assertion beyond this one allegation and claim. Before reaching this

Assuming *arguendo* that plaintiffs' FISA preemption theory might apply here, the FISA does not displace the state secrets privilege even in the context of alleged electronic surveillance.  In order to abrogate the common law, a statute must "speak directly" to the question addressed by the common law.  *U.S. v. Texas*, 507 U.S. at 534.[17]  The FISA nowhere mentions the state secrets privilege and cannot be construed to have displaced it implicitly.[18]  Plaintiffs' contention that the FISA displaces the privilege because it is a "comprehensive scheme" governing foreign intelligence surveillance, *see* Opp. at 26, is incorrect.  While the FISA establishes a detailed regime that governs the government's authority to undertake foreign intelligence surveillance, *see, e.g.,* 50 U.S.C. § 1801-1806, that alone cannot supersede litigation privileges.  The statute must "speak directly" to that issue.

Likewise, plaintiffs' contention that a particular provision of the FISA—50

---

narrow claim, the Court should first decide whether FISA Section 1810 waives sovereign immunity.  *See* USG at 22-26.  The Court may also dismiss this narrow FISA allegation for either a failure to state a claim or for lack of standing.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949-50, 173 L.Ed. 2d 868 (2009) ("'naked assertion[s]'"and mere possibility of unlawful conduct insufficient to state a claim); *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1380-81 (D.C. Cir. 1984) (generalized allegation of unlawful surveillance insufficient to establish standing).

[17] Plaintiffs' contention that the "clear statement" principle applies only to the preemption of state common law, Opp. at 26 n.14, is wrong.  *See U.S. v. Texas*, 507 U.S. at 534.  Indeed, this standard has been applied by the Ninth Circuit in deciding whether federal statutory law displaces the state secrets privilege.  *Kasza v. Browner*, 133 F.3d 1159, 1167 (9th Cir. 1998).

[18] A clear expression of congressional intent is also required before Congress may abrogate Executive constitutional authority.  *See Franklin v. Massachusetts*, 505 U.S. 788, 800-01, 112 S.Ct. 2767, 120 L.Ed. 2d 636 (1992); *United States v. Nixon*, 418 U.S. 683, 710-11, 94 S.Ct. 3090, 41 L.Ed. 2d 1039 (1974) (state secrets privilege rooted in President's Article II powers).

-16-

U.S.C. § 1806(f)—"sets forth a clearly defined procedure for the treatment of assertedly-secret evidence[,]" (*see* Opp. at 27)—is also meritless. Section 1806(f) resides within a broader section of the FISA that governs the "[u]se of information" obtained from electronic surveillance conducted pursuant to the FISA. *See* 50 U.S.C. § 1806(a)-(e).[19] In this context, subsection (f) provides a mechanism that the Attorney General may use to protect sensitive intelligence information where the use of surveillance evidence is at issue in three circumstances, none of which speaks directly to waiving the state secrets privilege.[20] The privilege, which permits an agency head to protect information in litigation, serves a "different purpose" and does not "parallel" Section 1806(f). *See Kasza*, 133 F.3d at 1167-68.

Judicial authority applying Section 1806(f) confirms the Government's position. Notably, the D.C. Circuit has held that FISA procedures may not be used to enable a person to discover whether they were in fact subject to surveillance. *ACLU Foundation v. Barr*, 952 F.2d 457, 462 (D.C. Cir. 1991). And courts have

---

[19] "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed. 2d 891 (1989). Section 1806 addresses how information acquired from electronic surveillance conducted pursuant to the FISA may be handled and used in evidence. In particular, subsections (c) and (d) require notice by the United States if it intends to use such information against an aggrieved person, and subsection (e) authorizes a motion to suppress by a person against whom such information is used. *See* 50 U.S.C. § 1806(c)-(e).

[20] Section 1806(f) applies (i) where the Government provides notice that it "intends to enter into evidence or otherwise use or disclose" surveillance-based information against an "aggrieved person" (see 50 U.S.C. §§ 1806(c),(d)); (ii) where an "aggrieved person" moves to suppress evidence or information obtained or derived from such electronic surveillance" (see 50 U.S.C. §§ 1806(e),(f)); or (iii) where the "aggrieved person" moves to discover or obtain electronic surveillance applications, materials, or evidence. 50 U.S.C. § 1806(f).

consistently applied Section 1806(f) to review the lawfulness of FISA surveillance where the Government seeks to use evidence against an aggrieved person.[21]

The legislative history of Section 1806(f) also firmly supports the Government's position. *See* S. Rep. No. 95-701, 1978 U.S.C.C.A.N. 4027 (Report of the Select Committee on Intelligence). The purpose of this provision is to strike a "balance" between the aggrieved person's "ability to defend himself" against the Government's use of surveillance-based evidence, and the need to protect "sensitive foreign intelligence information" from disclosure. *Id.* at 64; *see also id*. at 11-12 ("need to preserve secrecy for sensitive counterintelligence sources and methods" would make "notice to the surveillance target" inappropriate "unless the fruits are to be used against him in legal proceedings."). Of particular note, where a court orders information disclosed to the aggrieved person, Congress intended to give the Government a choice: "either disclose the material or forgo the use of the surveillance-based evidence." *See* S. Rep. No. 95-701 at 65. There simply is no clear or direct statement that Congress intended Section 1806(f) to apply otherwise.

**B.    Litigation of Plaintiffs' Claims Would Risk or Require the Disclosure of Privileged Information.**

Plaintiffs also argue that the information over which the Government has asserted privilege cannot be characterized as state secrets and, even if it can, plaintiffs' claims need not be dismissed at this stage. These arguments also fail.

(1) *Subject Identification*: Plaintiffs first err in arguing that confirmation of whether or not particular persons are or were subject to an FBI investigation is not properly protected. *See* Opp. at 31-35. Plaintiffs reason that because the Government has not asserted privilege over the fact that Mr. Monteilh obtained audio and video

---

[21]    *See, e.g. United States v. Ott*, 827 F.2d 473, 474 (9th Cir. 1987); *United States v. Abu-Jihaad,* 531 F. Supp. 2d 299, 300 (D. Conn. 2008)), *aff'd* 630 F.3d 102 (2d Cir. 2010), *cert. denied*, 131 S.Ct. 2062 (2011).

-18-

information, and because plaintiffs encountered the source, they therefore must know they were targets of investigation. That does not follow. The Government is protecting the specific identities of particular persons as to whom the FBI opened an investigation in accordance with the Attorney General's Guidelines. *See* Giuliano Decl. ¶¶ 17-29. The FBI has not confirmed or denied which individuals were subject to investigation among the fewer than 25 Operation Flex subjects. Whatever plaintiffs may believe to be the case, the Attorney General has properly protected the identity of Operation Flex subjects.[22]

Plaintiffs' reference to other matters where investigative suspects were identified publicly does nothing to undercut the privilege assertion here. The Government is not "estopped" by prior disclosures from concluding in another case that a similar disclosure "may lead to an unacceptable risk" of harm to national security. *CIA v. Sims*, 471 U.S. 159, 180-81, 105 S.Ct. 1881, 85 L.Ed. 2d 173 (1985); *Halkin v. Helms*, 690 F.2d 977, 994 (D.C. Cir. 1982); *cf. Public Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir. 1998) (refusing to fashion a rule that would require an agency to release all related materials any time it elected to give the public information about one matter, because "[t]o do so would give the Government a strong disincentive ever to provide its citizenry with briefings of any kind on sensitive topics."); *Salisbury v. United States*, 690 F.2d 966, 971 (D.C. Cir. 1982).[23]

---

[22] *Pickard v. Dep't of Justice*, 653 F.3d 782 (9th Cir. 2011), is not to the contrary. The court there held only that, once a confidential informant's status had been officially confirmed, the Government was precluded from continuing to "neither admit nor deny" the *informant's status* in response to a FOIA request, but could still protect information related to his work. *Id*. at 784.

[23] Lastly, plaintiffs' comparison between the identities of individuals detained at or released from Guantanamo Bay or Bagram Air Base and that of counter-terrorism investigative subjects, *see* Opp. at 34-35, is fundamentally

(2) *Reasons for Investigation*: Plaintiffs likewise fail to show that the reasons underlying the Operation Flex investigations have not been properly protected by the Government. Indeed, plaintiffs do not seriously challenge the secrecy of this information.[24]  Rather, plaintiffs argue principally that, under their "facial challenge" theory, the use of religion as even a single factor in an investigation would be subject to strict scrutiny and they would not have to show a "substantial burden" to the free exercise of religion. *See* Opp. at 36.  But even if that view of the law is correct,[25] it does nothing to diminish the centrality of properly privileged investigative information in this case.

Before applying the strict scrutiny standard, the Supreme Court in *Church of the Lukumi* first examined whether the object of the particular policy being challenged

misguided.  These detainees were members of an enemy force (al Qaeda or Taliban forces) captured in connection with hostilities and taken off the battlefield, *see Hamdi v. Rumsfeld*, 542 U.S. 507, 516-17, 124 S.Ct. 2633, 159 L.Ed. 2d 578 (2004) (plurality).  Disclosure of their identities has no bearing on, and certainly cannot justify, revealing whom the FBI has secretly investigated for terrorist threats to the homeland.

[24] Plaintiffs' claim that the Government "routinely" discloses the reasons for investigation in "FISA cases," Opp. at 36, is specious.  As shown above, such disclosures occur where the Government seeks to use FISA evidence against someone. *Cf. United States v. Reynolds*, 345 U.S. 1, 12, 73 S.Ct. 528, 97 L.Ed. 727 (1953) (state secrets privilege does not apply where Government seeks to use evidence in criminal proceedings).

[25] Plaintiffs fail to demonstrate that religion may never be considered in an investigation, and their contention that they need not show a substantial burden to religious practices where an investigation is alleged to have been based on religion is inconsistent with Ninth Circuit authority. *See Vernon v. City of Los Angeles*, 27 F.3d 1385, 1393 (9th Cir. 1994).  *Vernon* also applies the traditional analysis of *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), to an Establishment Clause challenge to an investigation, and demonstrates the detailed evidentiary inquiry associated with that claim. *See id*. at 1396-1401.

(an ordinance against animal slaughter) was to target religious conduct for distinctive treatment. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534-41, 113 S.Ct. 2217, 124 L.Ed. 2d 472 (1993). This entailed a close examination of the record in that case to determine the purpose of the action being challenged. *Id*. at 534-41.[26] Thus, even under plaintiffs' view of the law, the first inquiry is whether the government has applied its policies in a neutral fashion or purposefully targeted religion. In this case, that would entail an examination of what the FBI did in Operation Flex—who was investigated, why, and how. Thereafter, if application of the strict scrutiny standard were reached, that would entail probing into the compelling nature of the Government's interest and specific means utilized to protect that interest. *See Presbyterian Church v. United States*, 752 F. Supp. 1505, 1513 (D. Ariz. 1990); USG at 47-48. This inquiry would also risk or require disclosure of the FBI's actions in Operation Flex, including whether the FBI's actions were narrowly tailored to meet the terrorist threat to the U.S. homeland, *see* Giuliano Decl. ¶¶ 7-10. Thus, plaintiffs' invocation of the strict scrutiny standard does not diminish the fact issues in this case, it magnifies them. While plaintiffs argue that it is "hard to imagine" how the Government could show that Operation Flex was narrowly tailored, *see* Opp. at 38, that merely assume the truth of their own allegations. Plaintiffs have no credible answer to the fact that privileged information would be directly at issue in litigating their religious discrimination claims.[27]

---

[26] Similarly, if *Larson v. Valente*, 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed. 2d 33 (1982) were applicable to plaintiffs' Establishment Clause claim, the first issue would remain whether the FBI's actions facially differentiated on the basis of religions, before reaching consideration of whether its actions were "closely fitted" to further a compelling governmental interest. *Id*. at 244-256.

[27] Contrary to plaintiffs' contention (Opp. at 39), the results of investigations would be relevant to showing , for example, that investigations concerned terrorist

(3) *Sources and Methods*: Finally, plaintiffs' challenge to the Government's protection of sources and methods used in Operation Flex is also unavailing. Again, the fact that the Government previously disclosed that Mr. Monteilh had been a source and collected audio and video information, *see* Opp. at 39, has no bearing on whether the Government may protect other sources and methods at issue in the investigation. The privilege assertion encompasses whether court-ordered searches and surveillance were utilized in Operation Flex, as well as other confidential human sources.[28] In a case alleging an indiscriminate "dragnet" investigation based on religion, the *manner* in which the FBI proceeded is directly at issue. For example, whether courts approved searches would be relevant to whether grounds existed to investigate a subject. Similarly, information obtained by the FBI from the intelligence community or other sources that reveals terrorist-related concerns would also be relevant to showing that an investigation was properly focused and not impermissibly based on religion. But such information could not be proffered by the defendants without exposing privileged information concerning the subjects, reasons, and methods of a counter-terrorism investigation.

## C.    The State Secrets Privilege May Be Applied to Constitutional Claims Seeking Injunctive Relief.

Plaintiffs' contention that the state secrets privilege cannot apply to claims seeking injunctive relief for alleged ongoing constitutional violations is both misplaced and meritless. Plaintiffs seek damages against all of the defendants, and the Government's privilege assertion would apply to those claims even if plaintiffs' theory was correct. Also, the injunctive relief sought does not concern an alleged

---

threats, and did not impermissibly focus on religion, or that investigations were closed after concerns had not been substantiated.

[28] *See* Holder Decl. ¶¶ 4(iii), 10; Giuliano Decl. ¶¶ 15 (iii), 30-31.

-22-

"ongoing" constitutional violation.  Plaintiffs are challenging actions allegedly taken by the FBI through a confidential source that ceased in 2007.  The injunctive relief sought concerns the destruction of records allegedly collected about plaintiffs through Mr. Monteilh.  To the extent those records exist, plaintiffs' alleged harm would be "ongoing" only in the sense that records might be presently maintained by the FBI.  But the relief sought—the destruction of any such records—is obviously retrospective in nature.  Moreover, the availability of that relief is governed by the Privacy Act, not the Constitution (*see supra*), and the Government is seeking to litigate whether such relief is available without reliance on the state secrets privilege.

In any event, were it properly before the Court, plaintiffs' theory finds no support in the law.  In the nearly 60 years since *United States v. Reynolds* was decided in 1953, courts have applied the state secrets privilege without regard to the nature of the claim.  The relevant inquiry is whether, "from all the circumstances of the case, . . . there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged." *Reynolds*, 345 U.S. at 10.  "If this standard is met, the evidence is absolutely privileged, irrespective of the plaintiffs' countervailing need for it." *Jeppesen*, 614 F.3d at 1081 (citing *Reynolds*, 345 U.S. at 11).  Courts then consider the impact of removing privileged evidence from the case, *Kasza*, 133 F.3d at 1166, including whether in some cases "application of the privilege may require dismissal of the action" where litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets." *Jeppesen*, 614 F.3d at 1083.

Contrary to plaintiffs' suggestion, the state secrets privilege has been applied in the face of constitutional claims for injunctive relief.  Indeed, the *Al-Haramain* action presented constitutional claims for injunctive relief—including for the expungement of records. *See Al-Haramain Islamic Foundation of Oregon v. Bush*,

451 F. Supp. 2d 1215, 1218 (D. Or. 2006), *rev'd*, 507 F.3d 1190 (9th Cir. 2007).[29]

Plaintiffs also concede that constitutional claims for injunctive relief were dismissed in *Tenet v. Doe*, 544 U.S. 1, 125 S.Ct. 1230, 161 L.Ed. 2d 82 (2005), and their effort to distinguish that case is unavailing. *See* Opp. at 48 n.29. In *Tenet*, the Ninth Circuit had declined to dismiss claims concerning an alleged contractual espionage relationship between plaintiffs and the Government under the *Totten* doctrine in large part because constitutional claims were at issue.[30] Specifically, the Ninth Circuit held that the state secrets doctrine under *Reynolds* must be applied to protect national security interests in that case, and that, "where constitutional issues are raised, the courts must consider the full panoply of alternative litigation methods," including *in camera* proceedings, "before concluding that the only alternative is to dismiss the case and thereby deny the plaintiff's claimed constitutional rights." *See Doe v. Tenet*, 329 F.3d at 1153-54. This is what plaintiffs argue here. But the Supreme Court rejected that view, holding that the *Totten* bar extended beyond espionage contractual claims to include plaintiffs' due process claims, and stressing

---

[29] Similarly, the D.C. Circuit upheld the dismissal of constitutional claims for injunctive relief based on the privilege assertion in *Halkin v. Helms,* 598 F.2d 1 (D.C. Cir. 1979). Likewise, in *ACLU v. NSA,* 493 F.3d 644 (6th Cir. 2007), a case that which also involved constitutional claims for injunctive relief (*id*. at 649, 651), the court held that, where plaintiffs could not produce evidence that they were subject to surveillance due to the state secrets doctrine, their allegations of injury were insufficient to establish standing and dismissal was required. *Id*. at 653-657 (Batchelder, J.); *see also id*. at 688-93 (if state secrets privilege bars evidence of standing, claims must be dismissed) (Gibbons, J.); *see also Molerio v. Federal Bureau of Investigation*, 749 F.2d 815 (D.C. Cir. 1984) (upholding dismissal of constitutional claims for damages and injunctive relief based on state secrets privilege).

[30] *See Doe v. Tenet*, 329 F.3d 1135, 1147 (2003) (discussing *Totten v. United States*, 92 U.S. 105, 23 L.Ed. 605 (1876) (holding that public policy forbade Civil War spy from suing to enforce espionage agreement)).

that "'[p]ublic policy forbids the maintenance of *any suit* in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential.'" *Tenet*, 544 U.S. at 8 (quoting *Totten*, 92 U.S. at 107).[31]

To counter *Tenet*, plaintiffs rely on a rigid distinction between the *Totten* and *Reynolds* doctrines—that is, between dismissal of constitutional claims for injunctive relief on justiciability grounds (which plaintiffs concede is permissible), and dismissal to prevent the disclosure of state secrets under the *Reynolds* doctrine (not permissible in plaintiffs' view). The Ninth Circuit has made clear, however, that there is no rigid dichotomy between a *Totten* and *Reynolds* dismissal.

In *Al-Haramain*, the Ninth Circuit observed that "a bright line does not always separate the subject matter of the lawsuit from the information necessary to establish a prima facie case." 507 F.3d at 1201. The court stated that, in some cases, "there may be no dividing line" while, in other cases, "the suit itself may not be barred because of its subject matter and yet ultimately, the state secrets privilege may nonetheless preclude the case from proceeding to the merits." *Id*. (describing "continuum of analysis"). Again in *Jeppesen,* the Ninth Circuit declined to set a rigid rule of distinction between dismissals on *Totten* (justiciability) and *Reynolds* (evidentiary) grounds, and specifically recognized that "[m]aintaining that distinction . . . does not mean the *Reynolds* privilege can never be raised prospectively or result in dismissal at the pleading stage." 614 F.3d at 1087-88 n.12 and *id*. at 1089 (citing *Al-Haramain*, 507 F.3d at 1201). The court stated that "[a] case may fall outside the *Totten* bar and yet it may become clear during the *Reynolds* analysis that dismissal is required at the outset." *Id*. at 1089. Dismissal is required where "the claims and

---

[31] The Court in *Tenet* also rejected the view that the constitutional claim at issue there must proceed under *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed. 2d 632 (1988), noting that the CIA employment dispute in that case did not involve an issue of secrecy. *See Tenet*, 544 U.S. at 10.

possible defenses are so infused with state secrets that the risk of disclosing them is both apparent and inevitable." *Id*. And, linking the two doctrines, the court stated that "[d]ismissal under these circumstances, like dismissal under the *Totten* bar, reflects the general principle" that public policy forbids the maintenance of any suit that would inevitably lead to the disclosure of national security information. *Id.*

Accordingly, the premise on which plaintiffs base their argument against application of the privilege here is not the law. Moreover, it would make little sense if a constitutional claim for injunctive relief could be dismissed on the pleadings as non-justiciable because litigation would risk or require the disclosure of state secrets, but the same claim could not be dismissed when a showing is made under *Reynolds* at the pleading stage that litigation of the claim would risk precisely the same harm. Thus, even if an alleged ongoing constitutional injury is at issue here, there is no impediment to applying the privilege to dismiss claims for injunctive relief.

### D. The Government's Practice in Habeas Matters Does Not Foreclose Dismissal Here Based on State Secrets Privilege.

Plaintiffs also assert that application of the state secrets privilege to dismiss their claims for injunctive relief would be inconsistent with the Government's practice in other cases, notably habeas litigation involving detainees at Guantanamo Bay, Cuba. The Court need not pause long over this argument. There is no parallel in this case to the substantive issues raised by the Guantanamo habeas litigation—in which the Government asserts authority to detain someone and bears the burden of proof to do so. *Al Adahi v. Obama*, 613 F.3d 1102, 1104 (D.C. Cir. 2010), *cert. denied,* 131 S.Ct. 1001 (2011). The Government consented to a protective order in those circumstances to facilitate disclosures it was willing to make in order to litigate the habeas petitions. Plaintiffs cite no authority holding that a protective order of this type would apply where the state secrets privilege has been asserted, and courts have held to the contrary. *See Ellsberg v. Mitchell*, 709 F.2d 51, 61 (D.C. Cir. 1983);

-26-

1   *Halkin*, 598 F.2d at 7; *accord Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005).[32]

2                              **CONCLUSION**

3          For the foregoing reasons, all of plaintiffs' claims against the Government

4   Defendants should be dismissed.

---

[32] Plaintiffs' assertion that the court in *Jabara v. Webster*, 691 F.2d 272 (6th Cir. 1982), decided constitutional claims for injunctive relief on the merits, through *in camera* review after the state secrets privilege was upheld, *see* Opp. at 50, is incorrect. In *Jabara*, the state secrets privilege was upheld to protect facts concerning the NSA's interception of plaintiff's communications. *See id.* at 274-78. Plaintiff did not contend on appeal that NSA's actions violated his fourth amendment rights. *See id.* Rather, the sole issue on appeal was whether plaintiff's rights were violated when information concerning his communications was turned over to the FBI. *See id.* at 275. That issue was decided against plaintiff on purely legal grounds without regard to the privileged information. *Id.* at 277-279. Likewise, *ACLU v. Brown,* 619 F.2d 1170 (7th Cir. 1980), does not stand for the proposition that state secrets may be reviewed *in camera* to decide the merits. There, the court of appeals remanded for a determination (without any disclosure to plaintiffs) of whether the information was needed in discovery. *See id.* at 1173.

Date:  January 20, 2012

Respectfully submitted,

TONY WEST
Assistant Attorney General

ANDRE BIROTTE, JR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

  /s/ Anthony J. Coppolino
ANTHONY J. COPPOLINO
E-mail: tony.coppolino@usdoj.gov

  /s/ Lynn Y. Lee
LYNN Y. LEE (SBN # 235531)
E-mail: lynn.lee@usdoj.gov

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C.  20001
Telephone: 202-514-4782
Facsimile:   202-616-8460

*Attorneys for the Federal Bureau of Investigation
and Defendants Mueller and Martinez Sued in
their Official Capacities*

  /s/ Stephen E. Handler
STEPHEN E. HANDLER
Senior Trial Counsel
E-mail: stephen.handler@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
1331 Pennsylvania Avenue N.W.  Room 8070N
Washington, D.C. 20530
Telephone: (202) 616-4279

*Attorney for the United States*