**SCHEPER KIM & HARRIS LLP**
DAVID C. SCHEPER (State Bar No. 120174)
dscheper@scheperkim.com
ALEXANDER H. COTE (State Bar No. 211558)
acote@scheperkim.com
ANGELA M. MACHALA (State Bar No. 224496)
amachala@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
Telephone:  (213) 613-4655
Facsimile:   (213) 613-4656

**Attorneys for Defendants**
**Pat Rose, Kevin Armstrong and Paul**
**Allen**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| YASSIR FAZAGA, ALI UDDIN MALIK, YASSER ABDELRAHIM,<br><br>        Plaintiffs,<br><br>       v.<br><br>FEDERAL BUREAU OF INVESTIGATION; ROBERT MUELLER, DIRECTOR OF THE FEDERAL BUREAU OF INVESTIGATION, in his official capacity; STEVEN M. MARTINEZ, ASSISTANT DIRECTOR IN CHARGE, FEDERAL BUREAU OF INVESTIGATION'S LOS ANGELES DIVISION, in his official capacity; J. STEPHEN TIDWELL; BARBARA WALLS; PAT ROSE; KEVIN ARMSTRONG; PAUL ALLEN,<br><br>       Defendants. | CASE: SACV 11-00301-CJC(VBKx)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS PAT ROSE, KEVIN ARMSTRONG AND PAUL ALLEN**<br><br>**Date:**  February 10, 2012<br>**Time:**  10:00 A.M.<br>**Court:** Hon. Cormac J. Carney |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .......................................................................1

II.   PLAINTIFFS' CLAIMS FAIL UNDER QUALIFIED IMMUNITY ..............2

      A.    Qualified Immunity Bars The First Amendment Claims ......................2

            1.    The Lemon and Sherbert Tests Apply Here ..................................2

            2.    Plaintiffs Fail to Allege a Violation of the Lemon Test ..............6

            3.    Plaintiffs Fail to Allege a Violation of the Sherbert Test...........7

            4.    Plaintiffs' Legal Theories Are Not "Beyond Debate".................8

      B.    Qualified Immunity Bars The Fourth Amendment Claims ..................9

            1.    Conversations Conducted in Monteilh's Presence ......................9

            2.    Recording of Audio Communications........................................10

            3.    Video Surveillance..................................................................13

            4.    Surveillance Devices in Mosques and Homes............................14

      C.    Plaintiffs' Equal Protection Claims Fail ...........................................15

III.  PLAINTIFFS ARE NOT ENTITLED TO A BIVENS REMEDY ................16

      A.    Plaintiffs' Claims Present a New Context for Bivens...........................16

      B.    Privacy Act Displaces Plaintiffs' *Bivens* Claim ...................................20

IV.   PLAINTIFFS' SECTION 1985(3) CLAIM FAILS........................................22

V.    PLAINTIFFS' ALLEGATIONS OF SUPERVISORY
      LIABILITY FAIL ...........................................................................23

VI.   CONCLUSION ...........................................................................24

TABLE OF CONTENTS

1

<u>**TABLE OF AUTHORITIES**</u>

2                                                                    **Page**

3                            <u>**Federal Cases**</u>

4  *Access Fund v. United States Dep't of Agric.,*
    499 F.3d 1036 (9th Cir. 2007) ............................................................5
5
  *American Family Association, Inc. v. City and County of San Francisco,*
6      277 F.3d 1114 (9th Cir. 2002)...................................................3, 4, 5

7  *Arar v. Ashcroft,*
    585 F.3d 559 (2d Cir. 2009) ...................................................16, 17
8
  *Ashcroft v. al-Kidd,*
9      131 S. Ct. 2074 (2011) ...........................................................passim

10 *Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009)....................................................14, 18, 22
11
  *Berry v. Hollander,*
12     925 F.2d 311 (9th Cir. 1991) .....................................................18

13 *Bond v. United States,*
    529 U.S. 334 (2000) ..................................................................10
14
  *Card v. City of Everett,*
15     520 F.3d 1009 (9th Cir. 2008) .....................................................5

16 *Church of Lukumi Babalu Aye, Inc. v. Hialeah,*
    508 U.S. 520 (1993) ....................................................................4
17
  *Davis v. Passman,*
18     442 U.S. 228 (1979) ..................................................................17

19 *Devereaux v. Perez,*
    218 F.3d 1045 (9th Cir. 2000).......................................................7
20
  *Downie v. City of Middleburg Heights,*
21     301 F.3d 688 (6th Cir 2002)...................................................19, 21

22 *Fitzgerald v. Penthouse Int'l,*
    776 F.2d 1236 (4th Cir. 1985) ....................................................15
23
  *Girard v. 94th St. & Fifth Ave. Corp.,*
24     530 F.2d 66 (2d Cir. N.Y. 1976) ..............................................22

25 *Intri-Plex Techs., Inc. v. Crest Group, Inc.,*
    499 F.3d 1048 (9th Cir. 2007)....................................................24
26
  *Katz v. United States,*
27     389 U.S. 347 (1967) ..............................................................10, 13

28

*Larson v. Valente,*
    456 U.S. 228 (1982) ...................................................................5

*Libas Ltd. v. Carillo,*
    329 F.3d 1128 (9th Cir. 2003) ...................................................20

*Lumpkin v. Brown,*
    109 F.3d 1498 (9th Cir. 1997) .....................................................3

*Mirmehdi v. United States,*
    662 F.3d 1073 (9th Cir. Nov. 3, 2011) ...............................passim

*Mockaitis v. Harcleroad,*
    104 F.3d 1522 (9th Cir. 1997) ...................................................11

*Moss v. United States Secret Serv.,*
    750 F. Supp. 2d 1197 (D. Or. 2010) ........................................24

*Navajo Nation v. U.S. Forrest Service,*
    535 F.3d 1058 (9th Cir. 2008) .................................................7, 8

*O'Connor v. Ortega,*
    480 U.S. 709 (1987) .................................................................11

*Orin v. Barclay,*
    272 F.3d 1207 (9th Cir. 2001) ...................................................15

*Presbyterian Church v. United States,*
    870 F.2d 518 (9th Cir. 1989) .......................................................6

*Smith v. Maryland,*
    442 U.S. 735 (1979) .................................................................10

*Trujillo v. City of Ontario,*
    428 F. Supp. 2d 1094 (C.D. Cal. 2006) ....................................11

*United States v. Aguilar,*
    883 F.2d 662 (9th Cir. 1989) ....................................................5, 9

*United States v. Brathwaite,*
    458 F.3d 376 (5th Cir. 2006) ......................................................13

*United States v. Davis,*
    326 F.3d 361 (2nd Cir. 2003) .....................................................13

*United States v. Gering,*
    716 F.2d 615 (9th Cir. 1983) ....................................................4, 6

*United States v. Mayer,*
    503 F.3d at 740 (9th Cir. 2007) .................................................10

*United States v. Nerber,*
    222 F.3d 597 (9th Cir. 2000) ................................................10, 12

iii
TABLE OF AUTHORITIES

*United States v. Taketa,*
    923 F.2d at 665 (9th Cir. 1991)............................................11, 12

*United States v. White,*
    401 U.S. 745 (1971) ..................................................................9

*Vasquez v. L.A. County,*
    487 F.3d 1246 (9th Cir. 2007)....................................................3

*Vernon v. City of Los Angeles,*
    27 F.3d 1385 (9th Cir. 1994)...............................................passim

*Whren v. United States,*
    517 U.S. 806 (1996) ........................................................1, 9, 10

*Wilkie v. Robbins,*
    551 U.S. 537 (2007) ....................................................16, 17, 19

*Wilson v. Libby,*
    535 F.3d 697 (D.C. Cir. 2008) ..................................................21

*Yendes v. McCulloch,*
    2010 U.S. Dist. LEXIS 86443 (Aug. 23, 2010) ...........................12

## **Federal Statutes**

5 U.S.C. § 522a(e)(7)....................................................................20

5 U.S.C. § 552a(g)(1)(D)................................................................22

88 Stat. 1896 ...............................................................................20

Fed. R. Civ. Proc. 12(d)................................................................24

Pub. L. No. 93-579, § 2(a)(4) .......................................................20

Pub. L. No. 93-579, § 2(a)(5) .......................................................20

## **Treatises**

John E. Nowak et al., Handbook on Constitutional Law (1978)..............15

TABLE OF AUTHORITIES

# I.    INTRODUCTION

Plaintiffs contend that FBI Agents cannot "use religion as a factor in deciding whom to surveil," even as part of a post-9/11 counterterrorism investigation. (*See, e.g.,* Docket No. 63 ("Opp.") at 2:11-12.) But no case has ever recognized a right to be free from an investigation motivated in any way by religion. Even assuming that religion was "a factor" in their 2006-2007 decision to gather information on Plaintiffs, Agents Pat Rose, Kevin Armstrong and Paul Allen (the "Agent Defendants") had no reason to believe that they had violated Plaintiffs' constitutional rights. Accordingly, the Agent Defendants are immune from Plaintiffs' claims for money damages.

Qualified immunity protects all federal officers except "the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) ("*al-Kidd*"). The Agent Defendants deserve neither label, not the least because the Ninth Circuit held almost twenty years ago that a religiously motivated investigation does *not* necessarily offend the First Amendment. *See Vernon v. City of Los Angeles,* 27 F.3d 1385 (9th Cir. 1994) ("*Vernon*"). Similarly, for decades the Supreme Court has rejected "Fourth Amendment challenges based on the actual motivations of individual officers." *Whren v. United States,* 517 U.S. 806, 813 (1996). These holdings squarely defeat Plaintiffs' First and Fourth Amendment arguments for prohibiting religiously-motivated investigations.

In the face of these authorities, Plaintiffs' quest to enlarge the scope of the First and Fourth Amendments is a nonstarter with respect to the Agent Defendants. That is true even if Plaintiffs convince this Court, in 2012, to prohibit the use of religion as a factor in a counterterrorism investigation, because that right was not "beyond debate" in 2006. *al-Kidd* at 2083. While the Plaintiffs are free to litigate, with the United States government, the question of whether religion can play any factor in an investigation, the Agent Defendants nonetheless "deserve[] qualified immunity even assuming—contrafactually—that [their conduct] violated the"

Constitution. *Id.* at 2085. Accordingly, the Agent Defendants respectfully request that each of Plaintiffs' causes of action against them be dismissed.

## II.    PLAINTIFFS' CLAIMS FAIL UNDER QUALIFIED IMMUNITY

To overcome qualified immunity, Plaintiffs bear the burden of pleading facts showing "that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd* at 2080. Plaintiffs allege they have a right to be free from any investigation that "used religion as a factor in deciding whom to surveil . . . even if they employ religion as only one factor (rather than the sole factor)." (Opp. at 2:10-17; *see also* Docket No. 64 at 21:15-18 ("Plaintiffs' theory does not require that they prove that religion is the 'sole' reason for their having been targeted for intrusive surveillance, but rather only that religion was 'a' reason that they were targeted").)

To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd* at 2083 (internal cites and quotes omitted). "[C]onduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* The Supreme Court has consistently advised courts "not to define clearly established law at a high level of generality." *Id.* at 2084 (general rule that "an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quote omitted).

### A.    Qualified Immunity Bars The First Amendment Claims

#### 1.    *The Lemon and Sherbert Tests Apply Here*

As a threshold matter, Plaintiffs dispute the proper framework to apply to their First Amendment claims. Plaintiffs contend that, "[u]nder long-established precedent, facial discrimination against a given religious group is subject to strict scrutiny under either [the Free Exercise or Establishment] clause." (Opp. at 29:22-

2

24.) However, Plaintiffs disregard controlling Ninth Circuit authority (namely *Vernon*) requiring that a challenge to a religiously motivated investigation satisfy the *Lemon* and *Sherbert* tests typically applied to First Amendment claims.

While *Vernon* was discussed in the Agent Defendants' motion, it is worth reviewing the facts of that case in particular detail here in light of Plaintiffs' arguments in the Opposition.  In *Vernon*, the City of Los Angeles investigated Los Angeles Assistant Chief of Police Robert Vernon after City Council members expressed concern that his religious views could "improperly affect[] the operations of the LAPD." *Vernon* at 1389-90. Members of the City Council leaked a letter to the press regarding the potential investigation and made public statements identifying Vernon's religious beliefs as the impetus for the investigation.[1] *Id.* For his part, Vernon responded publicly "that investigating me because of my beliefs is against the law. It's against my rights as an individual." *Id.* The investigation found no wrongdoing, and no action was taken against Vernon. *Id.* After the investigation concluded, Vernon filed a Section 1983 claim alleging that the investigation violated his "rights under the Free Exercise and Establishment Clauses of the First Amendment, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment." *Id.* Particularly, Vernon objected to "an investigation into the potentially improper impact of his religious beliefs upon his job as Assistant Chief of Police." *Id.* at 1396. The district court granted summary judgment to the investigating officers, and Vernon appealed to the Ninth Circuit. *Id.* at 1390-91.

The Ninth Circuit affirmed the district court's application of the *Lemon* and

---

[1] The Ninth Circuit has repeatedly characterized *Vernon* as a First Amendment challenge to a religiously motivated investigation. *See, e.g., Vasquez v. L.A. County*, 487 F.3d 1246, 1256 (9th Cir. 2007); *American Family Association, Inc. v. City and County of San Francisco*, 277 F.3d 1114, 1121-22 (9th Cir. 2002); *Lumpkin v. Brown*, 109 F.3d 1498, 1502 (9th Cir. 1997).

*Sherbert* tests to Vernon's First Amendment claims. With respect to Vernon's Free Exercise claims, the Ninth Circuit held that "[u]nder *Sherbert*, the plaintiff must first establish that the government has placed a substantial burden on his or her free exercise of religion." *Vernon* at 1393; *see also United States v. Gering*, 716 F.2d 615, 619 (9th Cir. 1983) (holding that a government investigation did not violate the Free Exercise Clause where appellant failed to show a burden on his free exercise rights). With respect to Vernon's Establishment Clause claims, the Ninth Circuit applied *Lemon* and concluded that the City's investigation "clearly had a valid secular purpose," that "the investigation [could not] be construed to send as its *primary* message the disapproval of Vernon's religious beliefs," and that the investigation posed no risk of excessive entanglement, and therefore affirmed summary judgment against Vernon. *Vernon* at 1396-1401.

Plaintiffs' claim is virtually indistinguishable from Vernon's claim. Both cases involve an investigation into wrongdoing by the plaintiff, based at least in part on the targets' religious beliefs. In both cases, nothing ultimately came of the investigation. In both cases, plaintiffs claimed that the investigation infringed the Free Exercise and Establishment clauses of the Constitution. Yet, although the *Vernon* court applied the *Lemon* and *Sherbert* tests to the investigation there, Plaintiffs demand a different test here.

First, with respect to the application of *Sherbert* to their Free Exercise claim, Plaintiffs contend that "the Supreme Court in *Smith* sharply narrowed applicability of the 'substantial burden test'" and that the proper test is found in *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993). (Opp. at 35:15-36:12.) However, the Ninth Circuit has repeatedly rejected these arguments. In *Vernon*, the plaintiff also argued that *Smith,* not *Sherbert,* provided the relevant test, but the Ninth Circuit rejected this argument "because this Circuit has held that the *Smith* analysis is **inapplicable** to Free Exercise claims such as the plaintiff's." *Vernon* at 1393 n. 1 (emphasis added). Similarly, in *American Family*, plaintiffs argued that

4

under *Lukumi* "they are not required to demonstrate a 'substantial burden' on their religion." 277 F.3d at 1124. The Ninth Circuit flatly rejected that argument, stating that "[p]laintiffs overlook a critical distinction, however: in this case, there is no actual 'law' at issue." *Id.* The court added that post-*Smith* the Ninth Circuit continued "to apply the *Sherbert* substantial burden test to government conduct that did not involve an actual regulation or criminal law." *Id.* After citing *Vernon* favorably, the Ninth Circuit concluded that "there does not appear to be ***any case in this circuit*** applying *Smith* or *Lukumi* to some non-regulatory or non-compulsory governmental action – in other words to something other than an actual *law.*" *Id.* (emphasis added). The distinction drawn in *Vernon* and clarified in *American Family* – that allegedly discriminatory *laws* are treated differently than discriminatory *conduct* – applies with equal force here.

Second, with respect to the application of *Lemon* to their Establishment Clause claim, Plaintiffs assert that their claim merits strict scrutiny under *Larson v. Valente,* 456 U.S. 228 (1982). (Opp. at 33:1-34:13.) Yet, *Larson* is distinguishable for the same reason as *Lukumi* and *Smith:* it did not address *government conduct* generally, but rather a statute that imposed burdens on religious contributions. *Larson*, 456 U.S. at 231. More importantly – especially in light of Plaintiffs' burden to identify a constitutional right that is beyond debate in order to overcome qualified immunity – *Vernon* is also consistent with the law in this Circuit that departures from the *Lemon* test are the exception, not the rule. *Access Fund v. United States Dep't of Agric.*, 499 F.3d 1036, 1042 (9th Cir. 2007) (*Lemon* is the general constitutional framework in all but a few narrow exceptions); *see also Card v. City of Everett*, 520 F.3d 1009, 1013, 1015 (9th Cir. 2008) (same).

Finally, *Vernon* post-dates *Larson* (and *Smith* and *Lukumi*), and has never been overruled or called into question. To the contrary, the Ninth Circuit has repeatedly rejected First Amendment challenges to investigative conduct directed at religion. *United States v. Aguilar,* 883 F.2d 662 (9th Cir. 1989) (First Amendment

5

did not prohibit undercover investigation targeting members of a particular religious congregation); *Presbyterian Church v. United States*, 870 F.2d 518, 527 (9th Cir. 1989) (undercover investigation did not violate church's rights under the Free Exercise Clause); *United States v. Gering*, 716 F.2d 615 (9th Cir. 1983) (approving investigative method directed at a minister). In light of these controlling authorities, the Court should decline Plaintiffs' invitation to depart from the standard *Lemon* and *Sherbert* tests applied by the Ninth Circuit in *Vernon*.

### 2. *Plaintiffs Fail to Allege a Violation of the Lemon Test*

As *Vernon* makes clear, Plaintiffs must allege a violation of the three-part *Lemon* test to state an Establishment Clause claim. In just a single sentence, Plaintiffs offer a half-hearted attempt to satisfy *Lemon*. (Opp. at 34:14-35:13.) First, Plaintiffs essentially admit that the government had the secular purpose of investigating terrorism. (Opp. at 34:15-35:4). Although Plaintiffs take exception to the alleged scope of the investigation, its actual purpose is not in dispute.

Second, Plaintiffs claim that investigating Muslims conveys a message of disapproval, which is irreconcilable with *Vernon*'s conclusion that an investigation, even if motivated by religion, does not offend the Constitution if the primary purpose is the investigation of impermissible conduct by the target. *Vernon* at 1398-98. In *Vernon*, the investigation concerned "whether [Vernon's] *religious views* were having an impermissible effect on his on-duty police department performance." *Id.* at 1388 (emphasis added). The Ninth Circuit took note of several documents that explicitly identified Vernon's religious views as the impetus for the challenged investigation. *Id.* at 1389-90, 1397-99. Notably, the court found that, in spite of the public nature of the investigation, its primary message was not the disapproval of Vernon's religious beliefs: "[n]otwithstanding the fact that one may infer possible city disapproval of Vernon's religious beliefs from the direction of the investigation, this cannot objectively be construed as the primary focus or effect of the investigation." *Id.* at 1399. Here, Plaintiffs admit that the investigation had a

1  valid secular purpose – counterterrorism – and therefore the same conclusion

2  applies.

3        Third, Plaintiffs allege there was administrative entanglement based on the

4  duration and type of the investigation conducted. (Opp. at 35:10-13.) However,

5  Plaintiffs make absolutely no effort to discuss any of the three factors of the

6  administrative entanglement inquiry. *See Vernon*, 27 F.3d at 1399. This omission by

7  Plaintiffs weighs heavily in favor of the Agent Defendants because when "the

8  existence of a right or the degree of protection it warrants in a particular context is

9  subject to a balancing test, the right can rarely be considered clearly established at

10 least in the absence of closely corresponding factual and legal precedent."

11 *Devereaux v. Perez*, 218 F.3d 1045, 1055 (9th Cir. 2000). Since the investigation in

12 *Vernon* satisfied the third prong of the *Lemon* test, and Plaintiffs have not cited a

13 single factually similar case to the contrary, Plaintiffs have failed to allege a

14 violation of the *Lemon* test.

15       *3.*     *Plaintiffs Fail to Allege a Violation of the Sherbert Test*

16       With respect to their Free Exercise claim, Plaintiffs purport to satisfy

17 *Sherbert's* "substantial burden" test by alleging that the FBI "'discourage[d]'

18 mosque attendance and religious practice." (Opp. at 56:9-58:4.) However, under

19 *Vernon*, Plaintiffs' alleged burdens are nothing more than subjective chilling effects

20 that are not constitutionally cognizable. *See Vernon*, 27 F.3d at 1395; *see also*

21 *Navajo Nation v. U.S. Forrest Service*, 535 F.3d 1058, 1070 (9th Cir. 2008) (holding

22 that free exercise of religion can only be burdened when "individuals are forced to

23 choose between following the tenets of their religion and receiving a governmental

24 benefit (*Sherbert*)[,] or coerced to act contrary to religious beliefs by the threat of

25 civil or criminal sanctions (*Yoder*)."). Plaintiffs fail to cite any authority in support

26 of their argument that "discrimination itself" constitutes a burden on the free

27

28

exercise of religion.[2] (Opp. at 57:7-21.) Plaintiffs' claim that the FBI "made surveillance a condition of religious practice" is also unsupported by any authority and is inconsistent with *Vernon* and *Navajo Nation*. (*id.* at 56:25-57:6.) Finally, Plaintiffs' alleged decisions to decrease mosque attendance and to alter their dress, grooming and donations, (*id.* at 57:22-58:4), were not brought about by any threat of civil or criminal sanctions, and therefore do not satisfy the test articulated in *Navajo Nation*.[3]

### 4. Plaintiffs' Legal Theories Are Not "Beyond Debate"

Plaintiffs offer no basis to distinguish the instant case from *Vernon*. Instead, they base their legal theories on a patchwork of isolated statements from a wide range of discrimination cases that have nothing to do with religiously motivated investigations.[4] This piecemeal approach could not inform the Agent Defendants of

_____

[2] None of Plaintiffs' proffered authorities even address the First Amendment. (Opp. at 57:7-21 (*citing Saenz* (right to travel), *City of Jacksonville* (race based preferences), *Allen* (IRS tax guidelines).)

[3] Because RFRA protects the same religious freedoms embodied by the Free Exercise Clause, the analysis of both claims is the same. *Navajo Nation,* 535 F.3d at 1070. Accordingly, Plaintiffs' RFRA clams fail for the same reasons as their Free Exercise claims.

[4] Of the approximately 37 cases cited by Plaintiffs in support of their First Amendment claims, not one grapples with these issues as directly and explicitly as *Vernon*. Plaintiffs repeatedly cite to cases involving; 1) race and gender based affirmative action: (*Gratz; Hayden; Adarand*); 2) First Amendment Free Speech: (*Brown v. Ent. Merch. Ass'n; Consol. Edison Co.; Mt. Healthy City School Dist. Bd. Of Educ.*); 3) city ordinances: (*McCreary; Lukumi; Larson; McDaniel; Braunfeld; Fowler; Niemotko; Vision Church; Tenafly Eruv Ass'n, Inc.*); 4) zoning and construction decisions: (*Lyng; Village of Arlington Heights*); 5) state statutes: (*Smith; Bernal; Yoder; Wirzburger*); 6) federal laws and regulations: (*Gillette; Gary S.; Hartmann*); 7) taxes: (*Hernandez; Jimmy Swaggart Ministries; Sklar*); 8) prisoner rights: (*Cooper; Vinning-El; Rouser*); or 9) otherwise having nothing to do with an investigation: (*Safford Unif. Sch. Dist.; Johnson Controls, Inc.; Armstrong; Cnty of Allegheny; Alpha Delta Chi-Delta Chapter*). These cases are of little to no (footnote continued)

"the contours of a right" in a way that is "sufficiently clear," so as to place the constitutional question "beyond debate." *al-Kidd* at 2083. A decision here that Plaintiffs had an absolute right to be free from a religiously motivated investigation would break new ground in First Amendment jurisprudence.[5] Therefore, the Agent Defendants are immune to Plaintiffs' damages claims under the First Amendment.

### B. Qualified Immunity Bars The Fourth Amendment Claims

#### 1. Conversations Conducted in Monteilh's Presence

An audio recording, made with the consent of one of the participants in the conversation, is not a search under the Fourth Amendment. *See, e.g., United States v. White*, 401 U.S. 745, 749 (1971); *Aguilar,* 883 F.2d at 699. Plaintiffs attempt to avoid this "invited informer doctrine" by arguing that the audio recordings were made in "bad faith," *i.e.*, for the purpose of violating their First Amendment rights. (Opp. at 71-72). However, motives are irrelevant to the Fourth Amendment analysis. *al-Kidd* at 2080 ("the Fourth Amendment regulates conduct rather than thoughts."). The Supreme Court has "almost uniformly rejected invitations to probe subjective intent." *al-Kidd* at 2081; *see also Whren v. United States,* 517 U.S. 806, 812 (1996) ("Not only have we never held, outside the context of inventory search or administrative inspection [], that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary.").

Plaintiffs' citations to *Mayer* and *Aguilar* are not to the contrary. The "good faith" requirement articulated in *Aguilar* and *Mayer* is not a Fourth Amendment

---

utility in determining the constitutionality of a law enforcement investigation concerned with national security. (*See* Opp. at 29-47.)

[5] In their opposition, Plaintiffs take the position that religion cannot be any factor in a decision to gather information; even if Plaintiffs had alleged that religion was the *sole* criteria, *Vernon* controls and defeats even that claim.

limitation, but a Fifth Amendment limitation on investigations. *See United States v. Mayer,* 503 F.3d at 740, 751 (9th Cir. 2007) ("Good faith has been an implicit requirement for investigations under the Fifth Amendment."); *Cf.*, *Whren*, 517 U.S. at 813 ("the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment"). Plaintiffs' allegations of "bad faith" are irrelevant to their Fourth Amendment claims.

## 2. *Recording of Audio Communications*

Plaintiffs Malik and AbdelRahim argue that they have a valid Fourth Amendment claim based on alleged audio recordings made by Monteilh, but outside his presence, during *halaqas* and other intimate religious discussion groups in the mosque. (Opp. at 67-68.) However, not one of the numerous cases cited by Plaintiffs comes close to clearly establishing an expectation of privacy in such a setting. The expectation of privacy that one has while in the presence of others in a mosque prayer hall that is open to the public is undoubtedly different than the expectation of privacy one has while alone in a hotel room (*Nerber*) or public phone booth (*Katz*), or the expectation of privacy one has while in one's office (*Taketa* and *O'Connor*) or while undressing in a locker room that is inaccessible to the public (*Trujillo*).

Unlike the cases cited by Plaintiffs, Malik and AbdelRahim do not allege that they took steps to prevent disclosure to other inhabitants of the prayer hall – *i.e.*, they cannot show that by their conduct they "'[sought] to preserve [something] as private.'" *Bond v. United States*, 529 U.S. 334, 338 (2000) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). *Cf. United States v. Nerber*, 222 F.3d 597, 603 (9th Cir. 2000) (finding a subjective expectation of privacy in a hotel room when a person closed the door, drew the blinds, and exercised dominion in the room); *Bond*, 529 U.S. at 338 (placing an object in an opaque bag and placing the bag above one's seat while on a bus was sufficient to establish a subjective expectation of privacy); *Katz v. United States*, 389 U.S. 347, 352 (1967) (one who

occupies a phone booth, shuts the door behind him, and pays the toll is "entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world"); *United States v. Taketa*, 923 F.2d at 665, 677 (9th Cir. 1991) (finding it "noteworthy" that defendant's office was not open to the public and that he was videotaped at a time when other people would not normally be present); *O'Connor v. Ortega*, 480 U.S. 709, 724 (1987) (plaintiff had a reasonable expectation of privacy in his office where undisputed evidence showed that he did not share his desk or file cabinets with any other employees and that he kept personal items in his office); *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1102 (C.D. Cal. 2006) (plaintiffs "took measures that significantly limited the number of people who could observe their private activities" while in a locker room).

Instead of alleging that they took steps to preserve their privacy, Plaintiffs assert that there was a religious "custom" of privacy in the location where they were allegedly recorded. (*See* Opp. at 69.) However, the one case cited in support of this position, *Mockaitis v. Harcleroad*, 104 F.3d 1522, 1533 (9th Cir. 1997), involved the audio recording of a confession by an inmate to a Catholic priest. As discussed at length in that case, the priest in question had a reasonable expectation of privacy given the fact "the history of the nation has shown a uniform respect for the character of sacramental confession as inviolable by government agents interested in securing evidence of crime from the lips of criminal." *Id*. at 1532-33 (describing the "inviolability of religious confession to the clergy" as "the law of the land"). From the point of view of an FBI Agent in 2006, the expectation of privacy during a one-on-one communication between a priest and a confessor is radically different than the expectation held by participants in public conversations held in small groups in an open prayer hall. Plaintiffs also rely heavily on the allegation that there was an "explicit rule" against audio and video recording in the mosque. (Opp. at 69.) However, Plaintiffs do not cite any cases in which such a rule was, on its own, sufficient to establish a reasonable expectation of privacy or that such a rule could

1   bar an otherwise legal recording.

2   In addition, most of the cases relied on by Plaintiffs (*Nerber*, *Taketa*, *Trujillo*,

3   and *Bernhard*) involve the reasonable expectation to be free from hidden *video* – not

4   *audio* – surveillance. However, as Plaintiffs themselves point out later in their brief

5   (*see* Opp. at 70-71), video surveillance is "one of the most intrusive investigative

6   mechanisms available to law enforcement," and is treated quite differently than

7   audio surveillance. *Nerber*, 222 F.3d at 603 (internal citations omitted); *Taketa*, 923

8   F.2d at 677 (recognizing the "exceptional intrusiveness of video surveillance" and

9   stating "Our holding is limited to warrantless video surveillance for law

10  enforcement purposes"). Accordingly, Plaintiffs' reliance on video surveillance

11  cases is misplaced.

12  Plaintiffs cite just one case involving warrantless audio surveillance, *Yendes*

13  *v. McCulloch*, 2010 U.S. Dist. LEXIS 86443 (Aug. 23, 2010), and argue that this

14  case alone shows that the law "clearly establishes" that the Fourth Amendment did

15  not permit warrantless audio surveillance here. (*See* Opp. at 66.) *Yendes* is easily

16  distinguishable, on two grounds. First, if *Yendes* establishes any principle of law, it

17  does so too late to have provided the Agent Defendants with notice, "at the time of

18  the challenged conduct," that their conduct was prohibited. *al-Kidd* at 2083. (*See*

19  FAC ¶ 48 (FBI used Monteilh between July 2006 and October 2007).) Second,

20  *Yendes* concluded that those plaintiffs' expectation of privacy was reasonable

21  because plaintiffs had a "formal arrangement" with a motel for their exclusive use of

22  a conference room. *Yendes*, 2010 U.S. Dist. LEXIS 86443 at *19. Here, Plaintiffs

23  can claim no similar arrangement in the open prayer hall of the mosque. Moreover,

24  the court in *Yendes* held as a matter of law that the plaintiffs had no legitimate

25  expectation of privacy when audio surveillance took place *while the conference*

26  *room was open to the public*. *Id*. at *21-22. Plaintiffs do not allege that the prayer

27

28

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS BY
DEFENDANTS PAT ROSE, KEVIN ARMSTRONG AND PAUL ALLEN

hall was closed to the public during the religious discussion groups.[6] Accordingly, if the alleged recording in the prayer hall of the mosque by unattended devices violated the Fourth Amendment, that violation was not "beyond debate" at the time.[7]

### 3. *Video Surveillance*

Plaintiffs contend that the invited informer doctrine is inapplicable to video surveillance conducted by Monteilh in AbdelRahim's home. (Opp. at 70.) In support of this proposition, Plaintiffs point to *dicta* in *Nerber*, where the court expressed "*suspicion*" that an "informant's presence and consent is insufficient to justify the warrantless *installation* of a hidden video camera in a suspect's home." (Opp. at 70:19-21 (quoting *Nerber* 222 F.3d at 604 n.5) (emphasis added).) However, the Ninth Circuit's "suspicion" in *dicta* about how the law might develop in the future does not place the Constitutional question "beyond debate." *al-Kidd* at 2083. Moreover, Plaintiffs do not allege that anyone *installed* video equipment in AbdelRahim's home. Rather, Plaintiffs allege that Monteilh had the video camera hidden "in a shirt button." (*See, e.g.,* FAC ¶¶ 108 128-129, 174, 202.)

Plaintiffs also argue that private homes are "subject to the most stringent Fourth Amendment protection." (Opp. at 70.) However, homes are not treated differently under the invited informer doctrine. *See United States v. Brathwaite*, 458 F.3d 376, 380-81 (5th Cir. 2006) (no expectation to be free from video surveillance once defendant invited the informant into his home); *United States v. Davis*, 326 F.3d 361, 366 (2nd Cir. 2003) (same); *Cf.*, *Katz*, 389 U.S. at 351. Here, AbdelRahim consented to Monteilh's presence when he invited Monteilh into his home, and his misplaced confidence in Monteilh precludes a Fourth Amendment claim for such

---

[6] Even if *Yendes* supported Plaintiffs' contention here, a single district court case cannot place a constitutional question "beyond debate." *al-Kidd* at 2083.

[7] Because Plaintiffs did not have a reasonable expectation of privacy in the circumstances alleged, Plaintiffs' FISA claim also fails. *See* Motion at 34-35.

video surveillance. But in any event, Plaintiffs' theory that the Fourth Amendment prohibits video recording in the home by an invited informer was not beyond debate at the time it allegedly occurred.

### 4. Surveillance Devices in Mosques and Homes

As noted in the Motion, Plaintiffs' allegation that Agents Allen and Armstrong "caused" electronic surveillance equipment to be installed at mosques, including the Mission Viejo mosque, and used it to monitor conversations held in "parts of the mosque not open to the public, including Sheikh Fazaga's office," is just the sort of conclusory allegation that should not survive a motion to dismiss under *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("*Iqbal*"). (FAC ¶ 95.) The utter lack of any details – how many devices were planted? in which mosques? who discovered them? where were they installed? how long were they operative? – is telling, and renders these assertions implausible. Moreover, the authorities cited by Plaintiffs on this point are inapposite. (Opp. at 66-67.)[8]

Plaintiffs' allegation that Agents Armstrong and Allen told Monteilh that the FBI had electronic listening devices in AbdelRahim's home, car, and phone is similarly lacking in specificity and plausibility. Moreover, Plaintiffs fail to allege any specific personal involvement by Agents Armstrong, Allen and Rose in installing such alleged devices. These conclusory statements therefore fail to allege any facts from which the Court could "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 1949.

Finally, as noted in the Motion, litigation of Plaintiffs' vague allegations of listening devices installed in unnamed mosques and in Abdelrahim's home, car and

---

[8] *See* Opp. at 66-67 (*citing Moss* (denying 12(b)(6) where plaintiffs' complaint included detailed factual allegations that "provide[d] context" for the events and alleged direct personal conduct by defendants) and *Mora* (summary judgment on Fourth Amendment claim involving an unreasonable vehicle stop and arrest).

phone will be foreclosed if the Court upholds the state secrets privilege. *See* Motion at 33. As the government has made plain, all "sources and methods" of the investigation (except for conduct by Monteilh) are privileged. (Docket No. 55 at 43:3-8.) If the Court agrees, Plaintiffs will necessarily be precluded from litigating the allegation that unidentified officers installed unidentified devices in unidentified places. Although Plaintiffs argue that the individual defendants may not assert the privilege for themselves (Opp. at 67), Defendants *are* entitled to identify claims that cannot be litigated as a result of the privilege. *See Fitzgerald v. Penthouse Int'l*, 776 F.2d 1236, 1239 n.4 (4th Cir. 1985) (rejecting the argument that private parties cannot argue the effect of the government's assertion of the state secrets privilege). Because Plaintiffs' claims could not be litigated if these methods are privileged, the claim must be dismissed.[9]

### C. <u>Plaintiffs' Equal Protection Claims Fail</u>

Defendants moved to dismiss Plaintiffs' Seventh Cause of Action for violation of the Fifth Amendment's Equal Protection Clause because "[i]t is generally unnecessary to analyze laws which burden the exercise of First Amendment rights by a class of persons under the equal protection guarantee, because the substantive guarantees of the Amendment serve as the strongest protection against the limitation of these rights." *Orin v. Barclay*, 272 F.3d 1207, 1213 (9th Cir. 2001) (*citing* John E. Nowak et al., Handbook on Constitutional Law (1978)). Plaintiffs do not dispute this fundamental point, and instead concede that the viability of their Equal Protection claim stands or falls with the First

---

[9] In an effort to avoid the dismissal of their claims, Plaintiffs argue in opposition to the government's motion that their case "likely will not require information about whether or how any particular sources and methods – other than Monteilh himself and the surveillance he assisted in conducting – were employed." (Docket No. 64 at 40.) This is flatly inconsistent with Plaintiffs' efforts to recover money damages from the Agent Defendants for the conduct unrelated to Monteilh described above.

Amendment claims. (Opp. at 64:14-16 ("Because Plaintiffs have stated a claim for religious discrimination under the First Amendment . . they have also stated an Equal Protection claim"). Accordingly, to the extent the Court dismisses Plaintiffs' First Amendment claims against the Agent Defendants, the Seventh Cause of Action should also be dismissed.

## III. PLAINTIFFS ARE NOT ENTITLED TO A BIVENS REMEDY

In opposition to Defendants' motion to dismiss their *Bivens* claims, Plaintiffs argue (1) that their complaint does not invoke *Bivens* in a "new context" and (2) that the Privacy Act does not provide them with an adequate alternative remedy to *Bivens*. (Opp. at 8-17.) For the reasons that follow, both arguments fail.

### A. Plaintiffs' Claims Present a New Context for Bivens

In arguing that their claims do not present a "new context," Plaintiffs overlook *Mirmehdi v. United States*, 662 F.3d 1073 (9th Cir. Nov. 3, 2011) (decision attached hereto), a controlling authority directly on point, issued after Defendants moved to dismiss but before Plaintiffs opposed. *Mirmehdi* considered whether a suit brought by "illegal immigrants to recover for unlawful detention during deportation proceedings" presented a "new context" for *Bivens*. *Mirmehdi* at 7. The court cautioned that this question could not be answered "at a high level of generality [because that] would invite claims in every sphere of legitimate governmental action touching, however tangentially, on a constitutionally protected interest." *Id.* (*citing Wilkie v. Robbins*, 551 U.S. 537, 561 (2007)("*Wilkie*")). Accordingly, the court adopted the following definition of "context": "a potentially recurring scenario that has similar legal and factual components." *Id.* (*citing Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009)("*Arar*")).

With this definition in mind, the Ninth Circuit found that "deportation proceedings" are "unique from other situations where an unlawful detention may arise," in part because an alien's rights are not coextensive with those offered to citizens. *Id.* Thus, the Ninth Circuit took into account not just the constitutional

claim (*i.e.*, unlawful detention), but also the reason for the detention (a pending immigration proceeding) and the legal status of the Plaintiffs (illegal aliens) in defining the relevant context. This level of specificity followed *Arar*, an *en banc* decision of the Second Circuit. There, the court faced a *Bivens* challenge to the government's "extraordinary rendition" program. *Arar* at 569. *Arar* found extraordinary rendition to be a new context for *Bivens*, because it is a "distinct phenomenon in international law," particularly in light of the allegation of "complicity or cooperation of United States government officials in the delivery of a non-citizen to a foreign country for torture." *Arar* at 572. In finding a "new context," the Second Circuit took into account not just the constitutional right allegedly violated, but also the specific actions of the defendant officers and the international ramifications of the claim. *Id.* Neither case defined the relevant context solely by reference to the alleged constitutional violation or similar "high level of generality."

Here, Plaintiffs seek monetary relief from federal officers who "targeted them for investigation because of their religion." (Opp. at 8:23-25.) Plaintiffs contend that this is not a "new context" in light of *Davis v. Passman,* 442 U.S. 228 (1979)*,* which purportedly applied *Bivens* to all types of "unconstitutional discrimination by federal officials." (Opp. at 9:1.) But "unconstitutional discrimination" is too "high [a] level of generality" to define a "context" for purposes of *Bivens* – it describes no "potentially recurring scenario that has similar legal and factual components." *Mirmehdi* at 7. Instead, the context in *Davis* was gender based "employment discrimination in violation of the Due Process Clause," not discrimination generally, as courts have repeatedly recognized. *Mirmehdi* at 6 (*citing Arar* at 559); *see also Wilkie* at 549-550 (describing *Davis* in same terms).

Indeed, Plaintiffs' reading of *Davis* cannot be squared with *Iqbal,* where the Supreme Court cast serious doubt on a "religious discrimination" *Bivens* claim. In *Iqbal*, the plaintiff alleged that he had been detained "on account of his race,

17

religion, or national origin, in contravention of the First and Fifth Amendments to the Constitution," but the Court noted its reluctance to extend *Bivens* to "any new context," and concluded:

> That reluctance might well have disposed of respondent's First Amendment claim of ***religious discrimination***. For while we have allowed a *Bivens* action to redress a violation of the equal protection component of the Due Process Clause of the Fifth Amendment, ***see Davis v. Passman***, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979), ***we have not found an implied damages remedy under the Free Exercise Clause.*** Indeed, we have declined to extend Bivens to a claim sounding in the First Amendment.

129 S. Ct. at 1948 (emphasis added). *Iqbal* clearly regarded a "religious discrimination" claim as a new context, squarely rejecting Plaintiffs' theory that religious discrimination claims arise "directly under *Davis*." (Opp. at 9:4-5.)

Plaintiffs attempt to rescue their *Bivens* claim by arguing that prior cases extended *Bivens* to "religious discrimination" unrelated to investigations[10] or to

---

[10] Contrary to Plaintiffs' contention, ***none*** of their proffered authorities extended *Bivens* to religious discrimination after conducting the "new context" analysis required by the Supreme Court. Accordingly, these cases are of no utility whatsoever. *See, e.g., Berry v. Hollander*, 925 F.2d 311, 314 n.3, 316 (9th Cir. 1991), *see also Mirmehdi* at 5 n. 2 (same). *See* Opp. at 9:7-10:12 (*citing Koelzer* (predated *Bush v. Lucas* and did not engage in the required analysis), *Ibrahim* (reversed dismissal of the *Bivens* claim on personal jurisdiction grounds but never opined on the merits of the *Bivens* claim), *Mayfield* and *Resnick* (ruled on the merits of the constitutional claim without considering whether *Bivens* should be extended), *Wong* (did not "review the district court's decision to infer a *Bivens* remedy" because the court lacked jurisdiction), *Scott* (assumed "*without deciding*, that a private cause of action may be implied directly under the Constitution for violations of the First Amendment" (emphasis added)) and *Padilla* (concerned a denial of access to religious items and the Koran, not allegations of religious discrimination).)

(footnote continued)

"misconduct by law enforcement officers" unrelated to religious discrimination. (*See* Opp. at 9:10-10:20.) But this patchwork approach is entirely inconsistent with the controlling law. The context that matters here is a religiously motivated investigation – that is the only "potentially recurring scenario that has similar legal and factual components" for which Plaintiffs seek damages. *Mirmehdi* at 7. Religious discrimination that has nothing to do with an investigation raises different factual and legal components than the claim asserted here, and the mere fact that two cases assert a violation of the same amendment does not mean they present the same context. *See e.g. Wilkie,* 551 U.S. at 550 (finding a claim for unlawful search and due process violations raised a new context, notwithstanding *Bivens* itself – an unlawful search case – and *Davis* – a due process case). The Court must look to the facts, not just Plaintiffs' legal theory, when evaluating context. *Mirmehdi* at 7.

Likewise, "misconduct by law enforcement" is an amorphous generalization, not a "recurring scenario" with "similar legal and factual components." *Id.* The broad range of cases cited by Plaintiffs – covering "misconduct" as varied as unwarranted searches, searches accompanied by media, wrongful arrest and excessive force – share no "similar legal and factual components" at all with the instant case, apart from the fact that the defendants in each were law enforcement agents. (*See* Opp. at 10:13-20, n. 7.) If every assertion of "misconduct by law enforcement" stated a claim under *Bivens*, the landscape of *Bivens* jurisprudence would look quite different today: *Iqbal*, *Mirmehdi*, *Arar, Downie v. City of Middleburg Heights*, 301 F.3d 688 (6th Cir 2002) (Free Speech retaliation by

_____

Plaintiffs' claim that courts have recognized *Bivens* claims in the context of racial or national origin discrimination is likewise unsupported. *See* Opp. at 9 n. 6 (*citing Nurse* (Court did not consider the viability of the *Bivens* action because the *Bivens* defendants had not yet been served or moved to dismiss); *Castaneda* (plaintiff alleged he "was invidiously denied medical care due to his immigration status" – placing the case squarely within the prisoner abuse context of *Carlson*).)

1  customs agents) and *Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir. 2003)

2  (arbitrary action by customs agents), to name but a few cases, all involve

3  "misconduct by law enforcement," but in each case, the claim raised a new context.

4          **B.**      <u>**Privacy Act Displaces Plaintiffs' *Bivens* Claim**</u>

5        Because Plaintiffs' complaint raises a new context, "we now must apply the

6  Supreme Court's test from *Wilkie* . . . whether there is any alternative, existing

7  process for protecting the plaintiffs interests." *Mirmehdi* at 8 (quotes omitted)). "If

8  there is such an alternative remedy, our inquiry stops." *Id.*[11]

9        Plaintiffs dispute that the Privacy Act (the "Act"), 5 U.S.C. § 522a(e)(7),

10  provides them with an alternative remedy here, for three reasons. First, Plaintiffs

11  assert that their claim involves the collection of information *because of* religion, not

12  the collection of information *about* religious practices. (Opp. at 15:15-16:3.) This is

13  mere semantics. Congress enacted the Privacy Act in part to recognize that the

14  "right to privacy is a personal and fundamental right protected by the Constitution"

15  and that regulating the federal government's "collection, maintenance, use, and

16  dissemination of information" regarding individuals was necessary and proper "to

17  protect the privacy of [such] individuals." Privacy Act of 1974, Pub. L. No. 93-579,

18  § 2(a)(4) and (5), 88 Stat. 1896. Congress fashioned the Act to remedy precisely the

19  injury alleged here: that a federal agency would collect information about religious

20  practices. According to Plaintiffs, Monteilh's surveillance was objectionable

21  *because* it collected information about Plaintiffs' practice of religion. Therefore, the

22  government's alleged collection of such information clearly falls within the Act's

23  prohibitions.

24        Second, Plaintiffs claim that the Act "does not purport to provide remedies for

25  ─────────────────

26  [11] As they did in their motion to dismiss, the Agent Defendants join Defendants
   Tidwell and Walls' argument that (1) RFRA and FISA provide Plaintiffs with an

27  alternative remedy and that (2) "special factors" preclude *Bivens* relief here.

28

law enforcement who act for constitutionally forbidden reasons [because] if it did, it would preclude *Bivens* remedies for law enforcement actions in retaliation for protected speech." (Opp. at 16:2-5.) Plaintiffs are incorrect: the Act clearly *does* bar *Bivens* claims for Free Speech retaliation, *if* the alleged retaliation consists of activities proscribed by the Act. In *Downie*, 301 F.3d at 690-91, a former informant sued federal officers who allegedly retaliated against the informant for criticizing an ongoing investigation, and in *Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008), the Wilsons sued federal officers who retaliated against plaintiffs for criticizing the Bush Administration. Both cases asserted First Amendment claims under *Bivens*, and in both cases the court found plaintiffs had an adequate remedy under the Act.

Third and finally, Plaintiffs complain that the Act does not provide for damages against the individual agents. The same argument was raised – and rejected – in both *Mirmehdi* and *Wilson*. In *Mirmehdi,* the Ninth Circuit was "unpersuaded by the Mirmehdis' assertions they are nonetheless entitled to a *Bivens* remedy because neither the immigration system nor habeas provides monetary compensation for unlawful detention." *Mirmehdi* at 9. "Even where Congress has given plaintiffs no damages remedy for a constitutional violation, the Court has declined to create a right of action under *Bivens* when doing so would be plainly inconsistent with Congress' authority in th[e] field." *Id.* Likewise, in *Wilson*, plaintiffs complained that they were denied an adequate remedy because they could not recover damages from three of the federal officers responsible for their injury. *Wilson*, 535 F.3d at 707. The Court of Appeals flatly rejected this argument, noting that "[t]he failure of the Act to provide complete relief to the Wilsons, however, does not undermine its status as a 'comprehensive scheme' that stops us from providing additional remedies under *Bivens* [because] the availability of *Bivens* remedies does not turn on the completeness of the available statutory relief." *Id.*

Plaintiffs' complaint that the Act's "remedies do not serve *Bivens*' twin purposes of deterring individual officers and providing a meaningful remedy" is

21

entirely beside the point. (Opp. at 16:7-9.) These "twin purposes" do not automatically entitle Plaintiffs to a *Bivens* suit in the face of Congressional action. *Mirmehdi* at 6 ("Such a cause of action 'is not an automatic entitlement no matter what other means there may be to vindicate a protected interest'"). But more to the point, Plaintiffs' reading of the Act is incorrect: the Act authorizes damages suits against agencies who violate § 522a(e)(7), including a minimum $1000 award plus attorneys' fees if the conduct was willful or intentional. *See* 5 U.S.C. § 552a(g)(1)(D). Although Plaintiffs plainly *are* entitled to monetary relief for some violations of the Act, Congress need not grant a remedy for *every* constitutional wrong in order to supplant the *Bivens* remedy. That Congress has acted is enough to defeat an implied right of action for damages under *Bivens*. Accordingly, Plaintiffs' motion to dismiss the *Bivens* claims should be granted.[12]

## IV.    PLAINTIFFS' SECTION 1985(3) CLAIM FAILS

Relying largely on a handful of district court decisions,  Plaintiffs argue that this Court should rule that the intracorporate conspiracy doctrine does not extend to civil rights claims under § 1985. (Opp. at 59-60.) However, it is irrefutable that the overwhelming majority of courts – including the Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits, as well as numerous district courts within the Ninth Circuit – to consider this issue have held that the doctrine bars § 1985(3) actions when the purported conspiracy consists of employees of the same government or corporate body, acting in the course and scope of their employment. *See* cases cited in Motion at 7-8; *see also Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 71 (2d Cir. N.Y. 1976) (doctrine barred § 1985(3) claim where "plaintiff's allegations of multiple acts by the [defendants] are not alleged to be other than the

---

[12] As noted in the Agent Defendants' Motion, *Bivens* also requires an allegation of unlawful purpose. (Motion at Part V.B (*citing Iqbal* at 1948-49).) Plaintiffs offer no response to this argument, which alone is grounds for dismissing the *Bivens* claims.

1  implementation of a single policy by a single policymaking body"). Because the

2  FAC alleges concerted action by employees of a single entity (the FBI), Plaintiffs'

3  claims fail under this doctrine.

4       Second, Plaintiffs argue that because the FAC alleges that the Agent

5  Defendants targeted them for surveillance because of their religion, they satisfy §

6  1985(3)'s requirement that Plaintiffs allege purposeful violation of their rights.

7  (Opp. at 61-63.) Plaintiffs miss the point, however: they allege that the Agent

8  Defendants intended to deprive Plaintiffs of their "right" to be free from religiously

9  motivated investigations, but Plaintiffs cite no authorities recognizing such a right in

10 the context of § 1985(3).[13] Because Plaintiffs fail to allege a purposeful violation of

11 their rights that is cognizable under section 1985(3), these claims fail. Moreover, the

12 lack of any case law on point shows that Plaintiffs' legal theory was not "beyond

13 debate" at the time that the Agent Defendants' alleged conduct violated Plaintiffs'

14 rights under section 1985(3). Qualified immunity therefore bars these claims.

15 **V.    PLAINTIFFS' ALLEGATIONS OF SUPERVISORY LIABILITY FAIL**

16      Plaintiffs argue that the FAC's allegations about Agent Rose's individual

17 actions – that she was the "direct supervisor" to Allen and Armstrong, she "actively

18 monitored, directed, and authorized" their actions, and she "maintained extremely

19 close oversight and supervision of Monteilh" – are sufficient to render her

20 personally liable for violating Plaintiffs' constitutional rights. (Opp. at 50-55.)

21

22     

[13] *See* Opp. at 62 (*citing Griffin* (right to interstate travel); *Fobbs* (racial

23 discrimination); *Thomas* (racial discrimination); *Bowen* (Americans with

Disabilities Act and Rehabilitation Act); *Word of Faith Fellowship* (conspiracy by

24 social workers to threaten and harass plaintiffs and their children in order to

discourage them from practicing their religion constituted cognizable injuries under

25 § 1985(3)); *Maynard* (retaliation for plaintiff's disclosure of irregularities in hiring

26 process); *Johnson* (racially segregated inmates); *Scott* (conspiracy to violate civil

27 rights by attempts to involuntarily "deprogram" plaintiff).

28

1 However, the court should disregard such conclusory allegations as insufficient

2 under *Iqbal. See, e.g., Moss v. United States Secret Serv.*, 750 F. Supp. 2d 1197,

3 1229-30 (D. Or. 2010) (dismissing First Amendment discrimination claim against

4 supervisory police officers where plaintiffs alleged such officers "personally

5 directed and approved of" activities that resulted in the alleged discrimination but

6 did not allege "any factual content regarding when, how, or from where" the

7 defendants acted).[14] While Plaintiffs emphasize their allegation that Agent Rose

8 sought to create a Muslim gym that the FBI could use to gather information, they

9 fail to allege that the gym was ever opened or how that effort violated their

10 constitutional rights. Plaintiffs also repeatedly point to their allegation that Rose

11 read Monteilh's daily notes. However, Plaintiffs fail to identify any case law

12 suggesting that such an activity by a supervisor is sufficient on its own to establish

13 personal liability for constitutional violations. Finally, Plaintiffs assert that their

14 allegations are not conclusory, as proved by the various Monteilh declarations filed

15 concurrently with their Opposition. (Opp. at 50.) Declarations are beyond the scope

16 of a Rule 12(b)(6) motion and should not be considered. *See Intri-Plex Techs., Inc.*

17 *v. Crest Group, Inc*., 499 F.3d 1048, 1052 (9th Cir. 2007); *see also* Fed. R. Civ.

18 Proc. 12(d).

19 **VI.    CONCLUSION**

20      The Agent Defendants do not dispute that Plaintiffs raise an important legal

21

22 [14] While the court in *Moss* denied the supervisory officers' motion to dismiss the

23 plaintiffs' Fourth Amendment claims for excessive force, the allegations in that case
   – that the supervisory officers improperly trained their underlings and that the

24 underlings' use of excessive force occurred under the supervisory officers' personal
   direction, *see Moss*, 750 F.Supp.2d at 1237-40 – go farther than the allegations here,

25 as Plaintiffs do not allege that Rose personally directed anyone to engage in

26 activities that could plausibly constitute an unlawful search. In any event, Agent
   Rose is entitled to qualified immunity on the Fourth Amendment claims for the

27 reasons set forth in Part II.B.

28

1  question, *i.e.* the degree to which religion may be a factor in motivating a law

2  enforcement investigation. Nor do the Agent Defendants seek to deny Plaintiffs an

3  opportunity to litigate that question against the government. And ultimately,

4  Plaintiffs may convince this Court or a reviewing court of their view that religion

5  may never be a factor in an investigation. But such a ruling in this case would be the

6  first ever issued in the nation. Accordingly, Plaintiffs' constitutional theory is not

7  well established and is an extension of *Bivens* to a new context, and therefore they

8  cannot recover damages from the Agent Defendants. Accordingly, the motion

9  should be granted, and all causes of action against the Agent Defendants dismissed.

10  DATED: January 20, 2012          Respectfully submitted,

11                                   SCHEPER KIM & HARRIS LLP
12                                   DAVID C. SCHEPER
                                     ALEXANDER H. COTE
13                                   ANGELA M. MACHALA

14                                   By:  /s/
15                                   _____
                                          David C. Scheper
16                                        Attorneys for Defendants Pat Rose, Kevin
                                          Armstrong and Paul Allen