1  WILMER CUTLER PICKERING
      HALE AND DORR LLP
2  Brian R. Michael (SBN: 240560)
   brian.michael@wilmerhale.com
3  P. Patty Li (SBN: 266937)
   patty.li@wilmerhale.com
4  Katie Moran (SBN: 272041)
   katie.moran@wilmerhale.com
5  350 South Grand Avenue
   Los Angeles, California 90071
6  Telephone: (213) 443-5300
   Facsimile: (213) 443-5400
7
8  WILMER CUTLER PICKERING
      HALE AND DORR LLP
9  Howard M. Shapiro (admitted *pro hac vice*)
   howard.shapiro@wilmerhale.com
10 Carl J. Nichols (admitted *pro hac vice*)
   carl.nichols@wilmerhale.com
11 Annie L. Owens (admitted *pro hac vice*)
   annie.owens@wilmerhale.com
12 1875 Pennsylvania Avenue, N.W.
   Washington, D.C. 20006
13 Telephone: (202) 663-6000
   Facsimile: (202) 663-6363
14
   Attorneys for Defendants J. Stephen Tidwell
15 and Barbara Walls

16           UNITED STATES DISTRICT COURT

17          CENTRAL DISTRICT OF CALIFORNIA

18                 SANTA ANA DIVISION

19
   YASSIR FAZAGA *et al.*,           )   No. SA CV 11-00301-CJC (VBKx)
20                                    )
             Plaintiffs,              )   **REPLY MEMORANDUM OF**
21                                    )   **LAW OF INDIVIDUAL-**
         v.                           )   **CAPACITY DEFENDANTS J.**
22                                    )   **STEPHEN TIDWELL AND**
   FEDERAL BUREAU OF                  )   **BARBARA WALLS IN SUPPORT**
23 INVESTIGATION *et al.*,            )   **OF MOTION TO DISMISS FIRST**
                                      )   **AMENDED COMPLAINT**
24           Defendants.             )
                                      )
25                                    )   Date:  February 10, 2012
                                      )   Time:  10:00 a.m.
26 _____      )   Judge: Hon. Cormac J. Carney
                                      )   Crtrm: Courtroom 9B
27
28

REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
Case No. SA CV 11-00301-CJC (VBKx)

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 3

I.      THE GOVERNMENT'S ASSERTION OF THE STATE-SECRETS
        PRIVILEGE RENDERS DEFENDANTS UNABLE FULLY TO
        LITIGATE THEIR DEFENSES ............................................................. 3

II.     THE COURT SHOULD DECLINE TO RECOGNIZE A *BIVENS*
        ACTION ................................................................................................ 6

III.    PLAINTIFFS HAVE NOT ALLEGED A CONSPIRACY UNDER
        SECTION 1985(3)................................................................................ 13

IV.     DEFENDANTS TIDWELL AND WALLS ARE ENTITLED TO
        QUALIFIED IMMUNITY ON ALL OF PLAINTIFFS' CLAIMS ................. 14

        A.      Qualified Immunity Bars Plaintiffs' Religious Discrimination
                Claims............................................................................................ 14

        B.      Qualified Immunity Bars Plaintiffs' Fourth Amendment Claim ............. 18

        C.      Qualified Immunity Bars Plaintiffs' RFRA Claim ................................. 20

        D.      Qualified Immunity Bars Plaintiffs' FISA Claim ................................... 21

CONCLUSION ................................................................................................ 21

**Wilmer Cutler Pickering Hale and Dorr LLP**
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

1

**TABLE OF AUTHORITIES**

2

**CASES**

Page(s)

3

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) ............................... 21

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)....7, 16, 17, 18

5

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) ....................................... 6, 8, 9, 10

6

*Beattie v. Boeing Co.*, 43 F.3d 559 (10th Cir. 1994) ..................................... 8

7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 929
    (2007)........................................................................... 13

8

9

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.
    388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) ............................... *passim*

10

*Bond v. United States*, 529 U.S. 334, 120 S. Ct. 1462, 146 L. Ed. 2d 365 (2000)....... 20

11

*Brown v. City of Oneonta*, 221 F.3d 329 (2d Cir. 2000) ............................... 15

12

*Bush v. Lucas*, 462 U.S. 367, 103 S. Ct. 2404, 76 L. Ed. 2d 648 (1983) .............. 11, 12

13

*Carlson v. Green*, 446 U.S.14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980).....7, 11, 12, 13

14

*Chappell v. Wallace*, 462 U.S. 296, S. Ct. 2362, 76 L. Ed. 2d 586 (1983)............. 8, 11

15

*Correctional Services Corp. v. Malesko*, 534 U.S. 61, 122 S. Ct. 515, 151 L. Ed.
    2d 456 (2001)............................................................7, 8, 9, 12

16

17

*Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979)............. 7, 11

18

*Downie v. Middleburg Heights*, 301 F.3d 688 (6th Cir. 2002) ...................... 12

19

*Employment Division v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d
    876 (1990).......................................................................... 13

20

*Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986) ............................ 13

21

*Gratz v. Bollinger*, 539 U.S. 244, 123 S. Ct. 2411, 156 L. Ed. 2d 257 (2003) ...... 15, 16

22

*In re John Doe Trader Number One*, 894 F.2d 240 (7th Cir. 1990) .......................... 20

23

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998)...................................... 3

24

*Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 576 (1967).................. 20

25

*Lyall v. City of Los Angeles*, 2011 WL 61626 (C.D. Cal. Jan. 6, 2011) ..................... 20

26

*Minneci v. Pollard*, 2012 WL 43511 (U.S. Jan. 10, 2012)............................. 7

27

*Mirmehdi v. United States*, 662 F.3d 1073 (9th Cir. 2011) ........................ 2, 6, 8,10, 11

28

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

*Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).........9, 13

*Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070 (9th Cir. 2010) ....................2, 3

*Monroe v. City of Charlottesville*, 579 F.3d 380 (4th Cir. 2009) ...............................15

*Moss v. United States Secret Service*, 572 F.3d 962 (9th Cir. 2009) .........................17

*Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97
    S. Ct. 568, 50 L. Ed. 2d 471 (1977) ....................................................................16

*Navajo Nation v. United States Forest Service*, 535 F.3d 1058 (9th Cir. 2008)..........20

*O'Connor v. Ortega*, 480 U.S. 709, 107 S. Ct. 1492, 94 L. Ed. 2d 714 (1987)...........20

*Presbyterian Church v. United States*, 870 F.2d 518 (9th Cir. 1989) ....................3, 14

*Schweiker v. Chilicky*, 487 U.S. 412, 108 S. Ct. 2460, 2468, 101 L. Ed. 2d 370
    (1988) ............................................................................................................11, 12

*Totten v. United States*, 92 U.S. 105, 23 L. Ed. 605 (1876) .......................................10

*Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094 (C.D. Cal. 2006) ..........................20

*United States v. Aguilar*, 883 F.2d 662 (9th Cir. 1989).........................................3, 14

*United States v. Gonzalez*, 328 F.3d 543 (9th Cir. 2003) ..........................................20

*United States v. Little*, 753 F.2d 1420 (9th Cir. 1984) ..............................................20

*United States v. Nerber*, 222 F.3d 597 (9th Cir. 2000)........................................19, 20

*United States v. Stanley*, 483 U.S. 669, 107 S. Ct. 3054, 97 L. Ed. 2d 550
    (1987) ..............................................................................................................8, 11

*United States v. Taketa*, 923 F.2d 665 (9th Cir. 1991) ..............................................20

*United States v. Turner*, 104 F.3d 1180 (9th Cir. 1997)............................................15

*Vernon v. City of Los Angeles*, 27 F.3d 1385 (9th Cir. 1994) ............................1, 2, 14

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429
    U.S. 252, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977) ...............................................16

*Western Radio Services Co. v. United States Forest Service*, 578 F.3d 1116 (9th
    Cir. 2009)...............................................................................................................6

*Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)... 16, 19

*Wilkie v. Robbins*, 551 U.S. 537, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007) .........7, 11

*Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008)................................................8, 10, 12

*Yendes v. McCulloch*, 2010 WL 3339505 (S.D. Cal. Aug. 23, 2010).........................20

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

1

# STATUTES

2  50 U.S.C. § 1810......................................................................................21

3  42 U.S.C. § 1985.............................................................................2, 13, 14

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Defendants J. Stephen Tidwell and Barbara Walls respectfully submit this Reply Memorandum in support of their Motion to Dismiss Plaintiffs' First Amended Complaint.

## INTRODUCTION

Plaintiffs seek to use this case to litigate whether, following the terrorist attacks of September 11, 2001, the United States can ever consider religion as a factor in a counterterrorism investigation. Plaintiffs' extraordinary contention that the government can *never* do so presents novel constitutional and statutory questions, and is inconsistent with decisions rejecting precisely that position. *See, e.g., Vernon v. City of Los Angeles*, 27 F.3d 1385, 1396, 1401 (9th Cir. 1994) (investigation of impact of police officer's religious beliefs on his official duties did not violate Free Exercise or Establishment Clauses). More fundamentally, Plaintiffs' challenge is nothing more than a broadside attack on Executive Branch policies, which cannot and should not be resolved through damages claims against individual government employees. Instead, as Defendants Tidwell and Walls demonstrated in their Motion to Dismiss, Plaintiffs' claims against them must be dismissed for at least four separate reasons.

*First*, the Attorney General's assertion of the state-secrets privilege requires dismissal of Counts 1-7 against Defendants Tidwell and Walls. Those Counts are predicated entirely on Plaintiffs' untested allegation that they were investigated because of their religion. But Tidwell and Walls have a right to contest that claim by showing that, for example, Plaintiffs were *not* investigated because of their religion; that Defendants had non-discriminatory, national-security-related reasons for investigating Plaintiffs; that the investigative methods used were properly tailored to achieve specific, legitimate counterterrorism goals; or even that Plaintiffs were not the subjects of the investigation. Tidwell and Walls also are entitled to contest the First Amended Complaint's non-specific allegations about their personal involvement in, and purposes and intentions for, the alleged investigative activities. But the government's invocation of the state-secrets privilege absolutely disables Tidwell and

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Walls from seeking discovery and presenting evidence regarding precisely these issues in order to fully defend themselves. Dismissal of Counts 1-7 is therefore warranted. *See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1083 (9th Cir. 2010) (dismissal is warranted where assertion of state-secrets privilege prevents a defendant from adequately raising and supporting available defenses).

*Second*, this Court should not countenance Plaintiffs' effort to extend *Bivens* liability to the unique circumstances of this case. Plaintiffs have pointed to no case, and Defendants Tidwell and Walls are aware of none, in which a court has inferred a *Bivens* damages remedy for alleged religious discrimination or allegedly unlawful searches arising from surveillance conducted by an informant during a counterterrorism investigation. Plaintiffs are therefore simply wrong to contend that this case would not extend *Bivens* to a new context. It does, and their arguments to the contrary—which rest on the general proposition that *Bivens* remedies have been recognized for alleged violations of certain constitutional rights—entirely ignore courts' repeated admonitions that a case presents a new context if it does not have "similar legal *and factual* components" to prior cases inferring a *Bivens* remedy. *Mirmehdi v. United States*, 662 F.3d 1073, 1078-79 (9th Cir. 2011). In addition, existing statutory remedial schemes and the national security implications of this case strongly counsel hesitation in creating a *Bivens* remedy in this new context.

*Third*, Plaintiffs have failed to allege specific facts plausibly suggesting that Defendants Tidwell and Walls reached a meeting of the minds to target and discriminate against Plaintiffs on the basis of religion, as required to state a conspiracy claim under 42 U.S.C. § 1985.

*Fourth*, Defendants Tidwell and Walls are entitled to qualified immunity on all of Plaintiffs' claims. No court has held that the United States is precluded entirely from using religion as a factor in a counterterrorism investigation, and indeed several Ninth Circuit cases have rejected Plaintiffs' argument that religion can *never* be a factor in a law enforcement investigation. *See Vernon*, 27 F.3d at 1396; *see also*

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

United States v. Aguilar, 883 F.2d 662, 705 (9th Cir. 1989); *Presbyterian Church v. United States*, 870 F.2d 518, 527 (9th Cir. 1989).  In these circumstances, it was not (and could not have been) clearly established at the time that the alleged investigation was unconstitutional.  And because Plaintiffs have failed plausibly to allege that, as supervisors, Tidwell and Walls acted with discriminatory purpose or intent, or that they took specific actions that violated Plaintiffs' constitutional or statutory rights, qualified immunity is particularly warranted here.

<b>ARGUMENT</b>

**I.    THE GOVERNMENT'S ASSERTION OF THE STATE-SECRETS PRIVILEGE RENDERS DEFENDANTS UNABLE FULLY TO LITIGATE THEIR DEFENSES**

In their opening briefs Tidwell and Walls (Br. at 9-12)[1] and the United States (at 37-52) established that the Attorney General's assertion of the state-secrets privilege mandates the dismissal of Counts 1-7 of the First Amended Complaint because it will render Defendants unable fully to litigate their defenses against Plaintiffs' claims of religious discrimination.  In particular, the government has invoked the state-secrets privilege over (1) evidence tending to confirm or deny that a particular person was (or was not) the subject of the counterterrorism investigation; (2) the reasons for the counterterrorism investigation and its results; and (3) the methods employed by the counterterrorism investigation.  As a result of the government's invocation of the privilege, Defendants Tidwell and Walls are precluded entirely from divulging any information they may have concerning these subjects; from presenting evidence concerning these issues; from seeking discovery concerning them; or from otherwise litigating the facts and circumstances concerning Plaintiffs' claims.  Accordingly, as Tidwell and Walls established, they are precluded from mounting a complete defense to Plaintiffs' allegations, and Counts 1-7 of the First Amended Complaint must therefore be dismissed.  *See Jeppesen Dataplan*, 614 F.3d at 1083; *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998).

---

[1] "Br." refers to Tidwell and Walls's brief filed in support of their motion to dismiss.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Plaintiffs concede, as they must, that dismissal is appropriate when a state-secrets assertion precludes a defendant from presenting a full defense. Opp. to Gov't at 22-23.[2] Plaintiffs argue instead that specific details of the alleged investigation are irrelevant to Defendants' potential defenses because Plaintiffs have alleged they were targeted on the basis of their religion and that "*any* use of religion as part of the basis for an investigation constitutes a facially discriminatory classification." *Id.* at 36.

This argument fundamentally misunderstands the nature of litigation and fails to recognize that Defendants have a right to fully defend themselves against Plaintiffs' claims. At present, Plaintiffs have made untested allegations about the reasons for the investigation that are nothing more than that—mere allegations. Here, as in any case, Defendants are permitted to test those allegations by seeking to demonstrate that, for example, Plaintiffs were investigated for reasons unrelated to their religion; that Defendants had non-discriminatory, national-security-related reasons for investigating certain individuals; that the investigative methods involved were properly tailored to achieve specific and legitimate counterterrorism goals; or even that some or all of the Plaintiffs actually were not the subjects of the investigation. Defendants Tidwell and Walls also are entitled to contest Plaintiffs' non-specific allegations about their personal involvement in, and intentions regarding, the alleged investigative activities. But the invocation of the state-secrets privilege precludes Tidwell and Walls from seeking discovery and presenting evidence regarding precisely these issues in order to defend themselves.

Indeed, Plaintiffs' position, if adopted, would effect a remarkable and unfair asymmetry between the parties. On the one hand, they contend that "the only reason [for the alleged investigation] the Court need inquire into" is whether "*being Muslim* was a reason to trigger an investigation by the FBI." Opp. to Gov't at 36. On the

---

[2] "Opp. to Gov't" refers to Plaintiffs' brief filed in opposition to the government's motion to dismiss; "Opp." refers to Plaintiffs' brief filed in opposition to the Individual-Capacity Defendants' motion to dismiss.

other hand, Plaintiffs argue that this case can proceed even though the state-secrets privilege precludes Defendants from contesting their assertion that "*being Muslim*" motivated the alleged investigations and that national security considerations predominated.  Plaintiffs' position is all the more dubious in light of their argument (Opp. at 32, 42-47) that Defendants' actions fail to satisfy strict scrutiny because of insufficient factual support justifying the investigation when it is precisely the facts covered by the state-secrets privilege that are relevant to that inquiry.

There is likewise no merit to Plaintiffs' assertion that because some facts concerning the investigation have already been disclosed in limited fashion, Defendants will not need to rely on privileged information in their defense.  Opp. to Gov't at 32, 39-40.  Plaintiffs do not, and could not, argue that the information in the public domain constitutes all relevant evidence concerning the investigation.  But the non-public evidence is precisely what, absent the assertion of the state-secrets privilege, Defendants would be entitled to seek through discovery and present at trial, in order to show that the investigation was justified and sufficiently tailored to address legitimate counterterrorism and law enforcement interests.

Simply put, Plaintiffs cannot have it both ways, claiming that there is insufficient evidence to justify the investigation, while also claiming that Tidwell and Walls do not require access to the very evidence that is necessary for them to defend themselves.  Because Defendants Tidwell and Walls cannot defend themselves in light of the government's invocation of the state-secrets privilege, Counts 1-7 of the First Amended Complaint must be dismissed.[3]

---

[3] Indeed, Plaintiffs contend (Opp. at 65) that the reasons for the alleged investigation are relevant to their Fourth Amendment claim (Count 9), on the theory that "the FBI … cannot engage in a fishing expedition targeting an entire religious group without a proper law enforcement purpose."  To the extent that theory is correct, the government's invocation of the state-secrets privilege would also require dismissal of Count 9, since it prevents Tidwell and Walls from litigating whether they "engage[d] in a fishing expedition targeting an entire religious group" or whether they acted "without a proper law enforcement purpose."

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

## II.   THE COURT SHOULD DECLINE TO RECOGNIZE A *BIVENS* ACTION

Even if the government's assertion of the state-secrets privilege did not warrant dismissal, Tidwell and Walls demonstrated in their opening brief (Br. at 12-20) that Plaintiffs' constitutional claims should be dismissed for a separate and independent reason:  No court has ever held that a *Bivens* remedy is available for alleged religious discrimination or allegedly unlawful searches conducted by an informant during a counterterrorism investigation, and this Court should not extend *Bivens* to this context in light of existing statutory remedial schemes and special factors counseling hesitation.  Plaintiffs' arguments to the contrary are not persuasive.

*First*, contrary to Plaintiffs' suggestions (Opp. at 8-13, 20-21), no court has extended *Bivens* to the context presented by this action.  Although Plaintiffs claim (*id.* at 8) that this case falls within "the heartland of *Bivens*," they fail to cite a single First, Fourth, or Fifth Amendment case—and Tidwell and Walls are unaware of any—in which a court has inferred a *Bivens* remedy for alleged religious discrimination or an allegedly unlawful search arising from an informant's surveillance conducted during a counterterrorism investigation.

Instead, Plaintiffs attempt to rely (Opp. at 8-11) on cases in which *Bivens* actions have been permitted for alleged violations of the First, Fourth, and Fifth Amendments.  But courts have roundly rejected the position that once a *Bivens* remedy has been recognized for one kind of constitutional claim, *Bivens* is therefore available for any other violation of the same constitutional provision.  Rather, as the Ninth Circuit has explained, the term "context" "reflect[s] a potentially recurring scenario that has similar legal *and factual* components."  *Mirmehdi*, 662 F.3d at 1079 (emphasis added) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009) (en banc)); *see W. Radio Servs. Co. v. United States Forest Serv.*, 578 F.3d 1116, 1119 (9th Cir. 2009).  Accordingly, even though the Supreme Court recognized *Bivens* remedies more than three decades ago for alleged Fifth and Eighth Amendment

violations in two cases, *see Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979); *Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980), it has since repeatedly rejected *Bivens* remedies for alleged violations *of the very same amendments* in other cases involving different factual scenarios, *see Minneci v. Pollard*, 2012 WL 43511 (Jan. 10, 2012), *Wilkie v. Robbins*, 551 U.S. 537, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007), *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001).  Indeed, in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), where the plaintiff alleged that he had been detained "on account of his race, religion, or national origin, in contravention of the First and Fifth Amendments to the Constitution," the Supreme Court acknowledged that creating a *Bivens* remedy for religious discrimination would extend *Bivens* to a new context, explaining that although it had "allowed a *Bivens* action to redress a violation of the equal protection component of the Due Process Clause of the Fifth Amendment" in *Davis*, it has "*not* found an implied damages remedy under the Free Exercise Clause." *Id.* at 1948 (emphasis added).

Plaintiffs' argument also ignores the indisputable fact that, in the last three decades, courts have been increasingly reluctant to extend *Bivens* to new contexts. Indeed, just last week, the Supreme Court rejected another attempt to extend *Bivens*, again noting that the creation of remedies for alleged constitutional violations is an area in which courts should tread with extreme caution:

> Since *Carlson*, the Court has had to decide in several different instances whether to imply a *Bivens* action.  *And in each instance it has decided against the existence of such an action.*

*Minneci*, 2012 WL 43511 at *5 (emphasis added); *see also Malesko*, 534 U.S. at 68 (same).  Plaintiffs are thus wrong to suggest (Opp. at 20) that courts should not hesitate before inferring causes of action for alleged constitutional (as opposed to statutory) injuries.  *See Wilkie*, 551 U.S. at 550 (*Bivens* remedy "is not an automatic

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

1   entitlement …, and in most instances we have found a *Bivens* remedy unjustified");

2   *Mirmehdi*, 662 F.3d at 1079 ("[T]he Court has instructed the federal courts to

3   'respond [] cautiously to suggestions that *Bivens* remedies be extended to new

4   contexts.").

5        In sum, there can be no question that it would be an extension of *Bivens* to

6   permit Plaintiffs to pursue damages claims for constitutional violations in this case.

7        *Second*, as Tidwell and Walls previously established (Br. at 14-16), special

8   factors strongly counsel against recognizing a *Bivens* remedy here.  Plaintiffs seek to

9   test whether and under what circumstances the government may consider religion in

10  conducting a counterterrorism investigation, but that claim plainly raises important

11  and novel constitutional and national security questions.  Contrary to Plaintiffs'

12  contentions (Opp. at 21-25), "[a]mong the 'special factors' that have 'counsel[ed]

13  hesitation' and thereby foreclosed a *Bivens* remedy are … national security concerns,"

14  *Arar*, 585 F.3d at 573 (citing *Beattie v. Boeing Co.*, 43 F.3d 559, 563 (10th Cir.

15  1994)).  It is well established that determinations relating "to national security … fall

16  within 'an area of [exclusive] executive action in which courts have long been hesitant

17  to intrude' absent congressional authorization."  *Arar*, 585 F.3d at 575 (citation

18  omitted).  And because of the separation-of-powers concerns in the national security

19  area, courts have declined to recognize a *Bivens* remedy in a variety of different

20  national security contexts.  *See, e.g.*, *United States v. Stanley*, 483 U.S. 669, 681-82,

21  107 S. Ct. 3054, 3063, 97 L. Ed. 2d 550, 565-66 (1987) (military affairs); *Chappell v.

22  Wallace*, 462 U.S. 296, 300-01, S. Ct. 2362, 2367, 76 L. Ed. 2d 586, 593 (1983)

23  (military affairs); *Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008) (disclosure of

24  identity of CIA operatives); *Arar*, 585 F.3d 559 (terrorism); *Beattie*, 43 F.3d at 564-65

25  (security clearances).  The same separation-of-powers concerns are at play here,

26  where Plaintiffs seek to use a judicially created cause of action to second guess the

27  national security policy judgments of the Executive Branch.[4]  (Plaintiffs ignore

28  ──────────────────────────
    [4] A *Bivens* action—which seeks monetary damages from *individuals* operating under

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

1    entirely Defendants' argument on this score.)

2         Plaintiffs also accuse Defendants (Opp. at 11-12, 21-22) of ignoring *Mitchell v.*

3    *Forsyth*, 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985), but their reliance on

4    that case is wholly misplaced.  *Mitchell* involved an executive official's assertion of

5    absolute immunity and included absolutely no discussion or consideration of whether

6    creating a *Bivens* remedy was appropriate.  *See id.* at 513 ("Th[is] case presents three

7    issues:  whether the Attorney General is absolutely immune from suit for actions

8    undertaken in the interest of national security; if not, whether the District Court's

9    finding that petitioner is not immune from suit … under the qualified immunity

10   standard … is appealable; and, if so, whether the District Court's ruling on qualified

11   immunity was correct.").  The fact that the Court did not *sua sponte* address the

12   availability of a *Bivens* remedy when it was not at issue lends no support to Plaintiffs'

13   argument that the Supreme Court has therefore endorsed the creation of *Bivens*

14   remedies in all cases implicating national security issues.[5]  Indeed, Plaintiffs'

15   supposition runs flatly counter to more than three decades of jurisprudence evincing a

16   clear intent to limit *Bivens* claims in such cases.

17        The government's assertion of the state-secrets privilege only underscores the

18   _____

19   that policy—is an inappropriate vehicle to vindicate such claims.  As Plaintiffs
     acknowledge, a primary purpose of the *Bivens* remedy is "the deterrence of individual
20   officers who commit unconstitutional acts," Opp. at 13 (quoting *Malesko*, 534 U.S. at
     71), while "deterring the conduct of a policy-making entity" is *not* a rationale behind
21   *Bivens*, *Malesko*, 534 U.S. at 71.  Accordingly, the Supreme Court has made clear
     that, because such an action seeks damages from individuals rather than the
22   government, "'the purpose of *Bivens* is to deter *the officer*,' not the agency."  *Id.* at 69.
     Therefore, allowing Plaintiffs to seek damages against government employees
23   adhering to FBI policy would play no deterrent role for the agency, and would stretch
     *Bivens* far beyond its intended purpose.  *See Arar*, 585 F.3d at 574 ("Our federal
24   system of checks and balances provides means to consider allegedly unconstitutional
     executive policy, but a private action for money damages against individual
25   policymakers is not one of them.").

26   [5] To the extent Plaintiffs suggest that a finding that national security issues present a
     special factor in this case is the equivalent of granting officials absolute immunity
27   from all *Bivens* claims implicating national security issues, that suggestion is
     obviously incorrect given that the analysis regarding whether to extend *Bivens* in a
28   particular case is highly contextual.  *See supra* at 6-7.  Tidwell and Walls do not take
     the position that a *Bivens* remedy can never be available in national security cases.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

delicate national security and separation-of-powers issues present in this case, and further counsels hesitation given the risk of disclosure of sensitive national security information that the Executive Branch has determined should remain classified. Plaintiffs' argument (Opp. at 26) that invocation of state secrets actually weighs *in favor* of a *Bivens* remedy is incoherent at best, and Plaintiffs cite no case law to support their position that the assertion of the state-secrets privilege is irrelevant to the special-factors inquiry. Indeed, in *Wilson*, the D.C. Circuit declined to create a *Bivens* remedy in part because "the litigation of the allegations … would inevitably require judicial intrusion into matters of national security and sensitive intelligence information," making clear that state-secrets concerns are pertinent to a *Bivens* analysis even when those concerns do not bar the suit. *Wilson*, 535 F.3d at 710 ("[A]lthough *Totten*[*v. United States*, 92 U.S. 105, 23 L. Ed. 605 (1876)] does not bar the suit, the concerns justifying the *Totten* doctrine provide further support for our decision that a *Bivens* cause of action is not warranted."). And in *Arar*, 585 F.3d at 576, 579, the Second Circuit cited the risk that classified information could be disclosed as a special factor precluding a *Bivens* suit, notwithstanding the government's invocation of the state-secrets privilege.

*Third*, against the backdrop of these national security and separation-of-powers issues that weigh heavily against creating a *constitutional* damages remedy, existing *statutory* remedial schemes provide alternative processes and recourse to Plaintiffs, and further counsel hesitation. As Tidwell and Walls demonstrated in their opening brief (Br. at 16-20), Plaintiffs are pursuing claims under the Privacy Act, RFRA, and FISA, and these causes of action constitute "'alternative, existing process for protecting' the [P]laintiffs' interests." *Mirmehdi*, 662 F.3d at 1079. Although Plaintiffs respond (Opp. at 13-14) that none of these statutes provides a complete remedy for the injuries they allege, that argument is certainly not dispositive. In *Mirmehdi*, the Ninth Circuit recently refused to create a *Bivens* remedy on the ground that existing process for protecting plaintiffs' rights was available, even though neither

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

1    "provide[d] monetary compensation for" the injuries alleged.  662 F.3d at 1080.

2    Moreover, courts have made clear that existing remedies should be considered

3    together, not one by one, to determine whether a plaintiff has adequate recourse for his

4    injuries.  *See Wilkie*, 551 U.S. at 550-54 (considering available causes of action

5    cumulatively); *Mirmehdi*, 662 F.3d at 1079-80 (no *Bivens* action available where

6    statutory causes of action under "two different remedial systems" existed).

7        Together, the Privacy Act, RFRA, and FISA provide Plaintiffs with substantial

8    process for protecting their interests, even if they ultimately do not give rise to viable

9    causes of action against Tidwell and Walls in their individual capacities.  *See* Br. 16-

10    20.  Plaintiffs are thus unlike the plaintiffs in *Davis*, 442 U.S. at 245; *Carlson*, 446

11    U.S. at 23; and *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403

12    U.S. 388, 410, 91 S. Ct. 1999, 2012, 29 L. Ed. 2d 619 (1971), where the only recourse

13    was a *Bivens* remedy "or nothing," *Davis*, 442 U.S. at 245.  They are also unlike the

14    plaintiff in *Wilkie*, 551 U.S. at 555—a case in which, contrary to Plaintiffs'

15    suggestions (Opp. at 15 & n.12), the Supreme Court ultimately *denied* a *Bivens*

16    remedy—where the available statutory remedies ultimately were inadequate because

17    the government's particular pattern of behavior in that case led to "death by a

18    thousand cuts." [6]

19

20    [6] As Plaintiffs concede (Opp. at 14), the existence of alternative statutory remedies
     can be a special factor counseling hesitation, even if it is not dispositive at "step one"
21    of the *Bivens* inquiry.  The Supreme Court has made clear that the existence of such
     remedies should be treated as a special factor if it suggests that Congress, rather than
22    the courts, "should decide whether such a remedy should be provided." *Bush v.
     Lucas*, 462 U.S. 367, 380, 103 S. Ct. 2404, 2413, 76 L. Ed. 2d 648, 659 (1983).  And,
23    contrary to Plaintiffs' suggestion (Opp. at 14-15), this is so even if Congress has
     provided less than a complete remedy; it is well established that "it is irrelevant to a
24    'special factors' analysis whether the laws currently on the books [provide a plaintiff]
     an 'adequate' federal remedy for his injuries." *Stanley*, 483 U.S. at 683; *see
25    Schweiker v. Chilicky*, 487 U.S. 412, 425, 108 S. Ct. 2460, 2468, 101 L. Ed. 2d 370,
     382 (1988) (statutory remedy a special factor even where "Congress has failed to
26    provide for 'complete relief'"); *Bush*, 462 U.S. at 373, 388 (assuming "a federal right
     has been violated and Congress has provided a less than complete remedy for the
27    wrong," but holding that existing statutory remedial scheme was special factor);
     *Chappell*, 462 U.S. 296 (citing as special factor that Congress "has not provided a
28    damages remedy").

1    Here, as Tidwell and Walls demonstrated in their opening brief (Br. at 16-20),

2    the availability of remedies under the Privacy Act, RFRA, and FISA evinces a

3    determination that Congress, rather than the courts, should decide whether a cause of

4    action to remedy Plaintiffs' alleged injuries is appropriate.  In light of the well-

5    established principle that an existing statutory scheme need not provide complete

6    relief to constitute a special factor counseling hesitation, Plaintiffs' assertion (Opp. at

7    14-19) that none of these statutory schemes fully addresses their alleged injuries is

8    beside the point.  *See Malesko*, 534 U.S. at 69 ("So long as the plaintiff ha[s] an

9    avenue for *some* redress, bedrock principles of separation of powers foreclose[]

10   judicial imposition of a new substantive liability.") (emphasis added).  Moreover,

11   Plaintiffs have brought additional claims under each of these statutes; they cannot now

12   claim that Congress has failed to provide any remedy for their alleged injuries.

13       Plaintiffs' remaining arguments (Opp. at 15-19) likewise fall flat.  With respect

14   to the Privacy Act, Plaintiffs argue that this Court should follow the reasoning in

15   *Carlson*, 446 U.S. at 21, in which the Supreme Court held that the FTCA was not a

16   special factor precluding the creation of a *Bivens* remedy in part because the FTCA

17   provides an action against the government but not individuals.  That argument is

18   meritless not only because the law has evolved since *Carlson*, *see supra* at 7, but also

19   because *Carlson* relied heavily on legislative history that "made it crystal clear that

20   Congress views FTCA and *Bivens* as parallel, complementary causes of action."  446

21   U.S. at 20.  No such legislative history exists here, and indeed, at least two courts of

22   appeals have held that the Privacy Act *is* a special factor counseling hesitation,

23   expressly rejecting the argument Plaintiffs advance here.  *See Wilson*, 535 F.3d at 709

24   ("The special factors analysis does not turn on whether the statute provides a remedy

25   to the particular plaintiff for the particular claim he or she wishes to pursue."); *Downie

26   v. Middleburg Heights*, 301 F.3d 688, 697 (6th Cir. 2002) ("the *Bush* and *Schweiker*

27   test for 'special factors'" does not require statutory scheme "be an exclusive

28   remedy").

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

1    Plaintiffs' arguments (Opp. at 17-18) concerning RFRA are also unpersuasive.

2  Although Plaintiffs cite legislative history indicating that Congress enacted RFRA to

3  abrogate the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S.

4  872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990), nothing in that legislative history

5  suggests that by establishing a statutory remedy, Congress also intended to leave

6  courts free to create additional remedies under *Bivens* for Establishment Clause

7  violations.  Moreover, in the FTCA context, Congress has shown that when it wants to

8  preserve a *Bivens* remedy, it is capable of doing so.  *See Carlson*, 446 U.S. at 20-21.

9    Finally, with respect to FISA, Plaintiffs cite *Mitchell*, 472 U.S. at 513, and

10  *Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir. 1986), for the proposition that

11  "courts have addressed *Bivens* claims for electronic surveillance regularly in the past

12  thirty years."  Opp. at 19.  But neither case involved a special factors analysis—

13  indeed, *Mitchell* did not even involve the question of whether a *Bivens* remedy was

14  appropriate, *see supra* at 9—much less a discussion of FISA.  The mere pendency of a

15  *Bivens* claim, of course, is not equivalent to a holding that a *Bivens* remedy is

16  appropriate.

17  **III.  PLAINTIFFS HAVE NOT ALLEGED A CONSPIRACY UNDER
18        SECTION 1985(3)**

19    As Tidwell and Walls established in their opening brief (Br. at 20-22), bare

20  allegations of a conspiracy are insufficient to state a claim under Section 1985(3);

21  rather, Plaintiffs must allege facts plausibly suggesting a "further circumstance

22  pointing toward a meeting of the minds."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

23  557, 127 S. Ct. 1955, 1966, 167 L. Ed. 929, 941 (2007).  But the First Amended

24  Complaint lacks any factual allegation that anyone—let alone Tidwell or Walls in

25  their supervisory roles—came to a meeting of the minds to target and discriminate

26  against Plaintiffs on the basis of their religion, and Plaintiffs' submission only

27  reaffirms that such allegations are nonexistent.  Beyond the conclusory statement

28  (Opp. at 60) that they "have pled detailed, nonconclusory facts about the nature and

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

importance of the investigation, these supervisors' specific roles and actions, and the climate at the FBI," Plaintiffs make no effort to respond to this argument or to point to any specific allegations in their First Amended Complaint, because there are none. Mere repetition of the same deficient allegations simply does not suffice. Accordingly, Counts 2, 4, and 7 must be dismissed.[7]

## IV.   DEFENDANTS TIDWELL AND WALLS ARE ENTITLED TO QUALIFIED IMMUNITY ON ALL OF PLAINTIFFS' CLAIMS

### A.   Qualified Immunity Bars Plaintiffs' Religious Discrimination Claims

As Defendants Tidwell and Walls demonstrated in their opening brief (Br. at 23-26), they are entitled to qualified immunity on Plaintiffs' religious discrimination claims because Plaintiffs fail plausibly to allege that Tidwell and Walls acted with the required discriminatory purpose, and because it was not clearly established that they could be held liable on a *respondeat superior* theory.  Plaintiffs' efforts to resuscitate those claims only underscore that qualified immunity is appropriate here.

*First*, Plaintiffs contend (Opp. at 30, 42-47) that religion can *never* be a legitimate basis for a government classification, even if it is one of several considerations, and thus their allegations of religious discrimination are sufficient. But Plaintiffs point to no case—let alone a case decided before the investigation here—holding that the government is precluded entirely from using religion as a factor in counterterrorism investigations.  Indeed, the case law is to the contrary.

In *Vernon*, 27 F.3d 1385, discussed in more detail in the reply brief of Defendants Rose, Armstrong, and Allen, the Ninth Circuit rejected the claim that an investigation into the impact of an individual's religious beliefs on the performance of his official duties violated the Free Exercise and Establishment Clauses of the First Amendment.  *See also Aguilar*, 883 F.2d at 705 (undercover investigation of religious community complied with relevant First Amendment limitations); *Presbyterian*

---

[7] As established in their opening brief (Br. at 23 n.12), Tidwell and Walls are also entitled to qualified immunity on Plaintiffs' claims under Section 1985(3).

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

1   *Church*, 870 F.2d at 527 (surveillance of church services did not violate clearly

2   established Free Exercise Clause rights).  Courts have reached the same conclusion in

3   connection with investigations that were alleged to take into account other

4   constitutionally protected classifications.  *See Monroe v. City of Charlottesville,* 579

5   F.3d 380, 389 (4th Cir. 2009) (no classification in violation of equal protection when

6   African-American suspect was approached based on a match with rape victims'

7   physical description); *Brown v. City of Oneonta*, 221 F.3d 329, 337-38 (2d Cir. 2000)

8   ("In acting on the description provided by the victim of the assault—a description that

9   included race as one of several elements—defendants did not engage in a suspect

10  racial classification that would draw strict scrutiny."); *see also United States v.*

11  *Turner*, 104 F.3d 1180, 1185 (9th Cir. 1997) (rejecting "thesis of the appellees … that

12  selection of a particular community for a particular enforcement operation constitutes

13  racial discrimination if it is foreseeable that because of the ethnic composition of the

14  community one race will necessarily provide most of the government's targets").

15  Accordingly it surely was not clearly established in 2006 and 2007, when Tidwell and

16  Walls allegedly engaged in the conduct that Plaintiffs challenge here, that the

17  Constitution forbids all consideration of religion in a counterterrorism investigation.

18      The *only* support Plaintiffs offer for the novel view that protected classifications

19  can never be considered in a counterterrorism investigation is *Gratz v. Bollinger*, 539

20  U.S. 244, 123 S. Ct. 2411, 156 L. Ed. 2d 257 (2003), which Plaintiffs mistakenly

21  claim (Opp. at 30) establishes the broad principle that "*any* use of religion as a facial

22  classification is subject to strict scrutiny."  Plaintiffs' reliance on *Gratz* is misplaced

23  for several reasons.  *Gratz* involved race-based college admissions policies, 539 U.S.

24  at 255, not a law enforcement counterterrorism investigation allegedly conducted

25  within a Muslim community, and thus did not address (let alone overturn) cases

26  holding that law enforcement officials may use a protected classification during an

27  investigation,[8] and that investigations may seek information within a religious

28  ─────────────
[8] Nor is it the case, as Plaintiffs maintain (Opp. at 43), that Defendants must

1   community or about religious beliefs.  More fundamentally, *Gratz* simply did not

2   clearly establish, for qualified immunity purposes, that religion can never be

3   considered in a counterterrorism investigation.  Whatever merit Plaintiffs' position

4   may have, it is not properly adjudicated through damages claims against individual

5   government employees.

6       *Second*, Plaintiffs contend that Tidwell and Walls are liable for constitutional

7   violations arising from the case agents' and informant's alleged conduct simply

8   because Tidwell and Walls supervised the investigation, during which they allegedly

9   read the informant's notes (the specific contents of which Plaintiffs have failed to

10  describe).  But Plaintiffs' vague and conclusory allegations are insufficient to plead

11  plausibly that Tidwell or Walls personally engaged in specific conduct with respect to

12  any of the challenged conduct.  Because "a plaintiff must plead that each Government-

13  official defendant, through *the official's own individual actions*, has violated the

14  Constitution," *Iqbal*, 129 S. Ct. at 1948 (emphasis added), Plaintiffs' theory of

15  *respondeat superior* liability is insufficient as to Tidwell and Walls.

16      Indeed, the First Amended Complaint contains no specific factual averments

17  connecting any actual conduct by Tidwell or Walls to any activity that purportedly

18  violated Plaintiffs' constitutional rights.  Plaintiffs are instead left to contend (Opp. at

19  66-67) that the allegations against Tidwell and Walls are "plausible in light of other,

20

21  "demonstrate that Plaintiffs would have been targeted even without consideration of
    religion."  The cases cited by Plaintiffs apply this analysis in the context of decisions
22  by legislative or administrative bodies, and predate the cases addressing law
    enforcement investigations by several decades.  *See Mt. Healthy City School Dist. Bd.*
23  *of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 576, 50 L. Ed. 2d 471, 483-84
    (1977) (hiring decision by school board); *Village of Arlington Heights v. Metropolitan*
24  *Hous. Dev. Corp.*, 429 U.S. 252, 271, 97 S. Ct. 555, 566, 50 L. Ed. 2d 450, 468 (1977)
    (zoning decision by village).  *United States v. Montero-Camargo* is similarly
25  inapposite, as its fact-specific discussion of the appropriateness of considering "ethnic
    appearance" when determining the existence of "particularized or individualized
26  suspicion" for an investigatory stop under the Fourth Amendment is not relevant to
    claims for unconstitutional discrimination.  *See Wren v. United States*, 517 U.S. 806,
27  813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89, 98 (1996) ("[T]he constitutional basis
    for objecting to intentionally discriminatory application of laws is the Equal
28  Protection Clause, not the Fourth Amendment.").

detailed allegations" regarding the case agents' purported efforts to target Plaintiffs, and that the allegations that case agents had instructed the informant to gather information about Plaintiff AbdelRahim and had knowledge about the surveillance could "easily render plausible the claim that Defendants were responsible." Such conclusory arguments and claims are plainly insufficient under *Iqbal* and other decisions. *See* 129 S. Ct. at 1951 (rejecting "bare assertions" as "nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim"); *Moss v. United States Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) ("bald allegation of impermissible motive … standing alone, is conclusory and is therefore not entitled to an assumption of truth"). Moreover, Plaintiffs' view (Opp. at 31, 50-51, 54) that Tidwell and Walls must have known of the discriminatory nature of the investigation because of their supervisory roles and because they purportedly read the informant's notes are the very types of allegations that were rejected in *Iqbal*, and that should be rejected here. *See* 129 S. Ct. at 1949 (rejecting claim that "supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution").

Plaintiffs attempt (Opp. at 32) to distinguish *Iqbal*—and assert that they need not plead that Defendants Tidwell and Walls acted with discriminatory intent in this case—because the plaintiffs there alleged "that a facially neutral policy was motivated by discrimination and had a discriminatory effect," whereas Plaintiffs here claim to allege direct discrimination. Plaintiffs, however, cite no language that supports their reading of *Iqbal*, which conflicts with the Court's actual description of the challenged policy: "The complaint contends that petitioners designated respondent a person of high interest *on account of* his race, religion, or national origin," *Iqbal*, 129 S. Ct. at 1944 (emphasis added). And even to the extent Plaintiffs' distinction is valid, it has no bearing on the well-established principle, as discussed above and in Tidwell and Walls's opening brief, that supervisors cannot be held liable for constitutional torts on a *respondeat superior* theory. At a minimum, because no case has held that

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

1   supervisors of a counterterrorism investigation can be held liable in the circumstances

2   alleged here, Tidwell and Walls are entitled to qualified immunity.

3        Finally, the actual allegations in the First Amended Complaint belie Plaintiffs'

4   claim that Tidwell or Walls acted with discriminatory purpose or intent in supervising

5   the investigation.  As Tidwell and Walls demonstrated (Br. at 6-8), the First Amended

6   Complaint contains numerous allegations regarding the legitimate law enforcement

7   and counterterrorism reasons for the investigation.  These allegations present an

8   "obvious alternative explanation" to outright discrimination, *Iqbal*, 129 S. Ct. at 1951,

9   and support qualified immunity.[9]

10       **B.    Qualified Immunity Bars Plaintiffs' Fourth Amendment Claim**

11       Defendants are also entitled to qualified immunity on Plaintiffs' Fourth

12  Amendment claim because, as discussed above, Plaintiffs fail to identify any specific

13  factual allegations in the First Amended Complaint plausibly suggesting that Tidwell

14  or Walls was personally involved in the purportedly unlawful searches.  Further, as

15  established in Tidwell and Walls's opening brief (Br. at 29-30), Plaintiffs have failed

16  plausibly to allege that Plaintiffs had a reasonable expectation of privacy in each of

17  the circumstances described in the First Amended Complaint, and their efforts to

18  address those deficiencies in their opposition brief fall short.

19       For example, Plaintiffs improperly seek to further amend and bolster their

---

[9] Plaintiffs' shifting characterization of their allegations depending on the argument to
which they are responding further demonstrates that they have not plausibly alleged
facts supporting a claim for religious discrimination.  Plaintiffs' briefs primarily argue
that religion was merely "a" factor in the mix of considerations behind the
investigation, *see, e.g.*, Opp. to Gov't at 21, 36; Opp. at 2, 30, while at other times,
they appear to contend that Defendants targeted Plaintiffs "solely" because of their
religion, *see, e.g.*, Compl. ¶ 86 ("Plaintiffs and numerous other people were surveilled
*solely* due to their religion") (emphasis added); ¶ 167 (the informant "conducted
surveillance and other information-gathering on a wide variety of individuals and
organizations in the Muslim community, *solely* because they were Muslim")
(emphasis added).  Plaintiffs' claims fail under *either* of these theories.  As discussed
above, consideration of religion as a factor in a counterterrorism investigation is not a
clearly established violation of constitutional rights.  And as shown by their own
contradictory allegations, Plaintiffs have also failed plausibly to allege that religion
was the sole factor behind the investigation.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

allegations by asserting for the first time in their brief (Opp. at 67) that "the informant left recording devices in the mosque so as to record communications during *halaqas*, or intimate religious discussion groups, while he went elsewhere." But the First Amended Complaint makes no mention of recordings being conducted of "*halaqas*" or "intimate religious discussion groups" when discussing unattended recordings allegedly made in public mosque areas. *Compare* Compl. ¶¶ 127, 137, 192, 211 (describing alleged recording activity), *with id.* ¶ 193 (describing *halaqas*). This new spin on Plaintiffs' allegations does not alter the public nature of the spaces at issue, and more importantly, no court has held (such that it would have been clearly established for Tidwell and Walls) that it would violate the Fourth Amendment to supervise an investigation in which recordings were made in publicly accessible mosque spaces.

Plaintiffs also do not seriously challenge that the informant was entitled to conduct recordings at places where he was invited,[10] but instead claim (Opp. at 71-72) that the invited informant doctrine does not apply to recordings of conversations to which the informant was a party because the investigation was allegedly conducted in "bad faith" with the purpose of abridging Plaintiffs' rights. As discussed more fully in the reply brief of Defendants Rose, Armstrong, and Allen, however, subjective intent is not relevant to the analysis of Fourth Amendment claims, *Whren*, 517 U.S. at 813, and it certainly was not clearly established that Fourth Amendment liability could be based on subjective intent at the time of the alleged conduct.

Plaintiffs similarly seek (Opp. at 69) to distinguish the cases relied on by

---

[10] Plaintiffs unsuccessfully argue that the informant was not entitled to videotape after being invited into Plaintiff AbdelRahim's home by relying on a footnote in *United States v. Nerber*, in which the court reflected on, without deciding, the legality of warrantless *installation* of a hidden video camera in a suspect's home. 222 F.3d 597, 604 n.5 (9th Cir. 2000). That is not the conduct alleged here, nor is dicta regarding the limits of what "an informant's presence and consent" can justify sufficient to clearly establish that the conduct alleged here would violate constitutional rights. *See id. Nerber* demonstrates at a minimum that the law was *not* clearly established at the time of the investigation, and, in any event, the court held that video taken by the informant was justified under the invited informer doctrine. *Id.* at 604.

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Defendants by noting "the purely commercial nature of the locations involved" in those cases; but none of the courts' decisions relied on the "commercial nature" of the location as the determinative factor in finding that there was no reasonable expectation of privacy in publicly accessible spaces. *See Lyall v. City of Los Angeles*, 2011 WL 61626, at *4-7 (C.D. Cal. Jan. 6, 2011); *United States v. Gonzalez*, 328 F.3d 543, 547 (9th Cir. 2003); *United States v. Little*, 753 F.2d 1420, 1436 (9th Cir. 1984); *In re John Doe Trader Number One*, 894 F.2d 240, 243-45 (7th Cir. 2003). Indeed, it is the cases on which Plaintiffs rely that are inapposite because they addressed restrictive spaces with limited public access. *See, e.g.*, *Bond v. United States*, 529 U.S. 334, 120 S. Ct. 1462, 146 L. Ed. 2d 365 (2000) (closed bag in overhead bin of bus); *O'Connor v. Ortega*, 480 U.S. 709, 107 S. Ct. 1492, 94 L. Ed. 2d 714 (1987) (desk and file cabinets in private office); *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 576 (1967) (phone booth); *United States v. Nerber*, 222 F.3d 597 (9th Cir. 2000) (hotel room); *United States v. Taketa*, 923 F.2d 665 (9th Cir. 1991) (government employee's office); *Yendes v. McCulloch*, 2010 WL 3339505 (S.D. Cal. Aug. 23, 2010) (hotel conference room); *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094 (C.D. Cal. 2006) (single-sex locker room).

### C.   Qualified Immunity Bars Plaintiffs' RFRA Claim

Defendants are also entitled to qualified immunity on Plaintiffs RFRA claim. Plaintiffs' opposition is notably devoid of any case holding clearly that it would violate RFRA to conduct a counterterrorism investigation of the kind alleged here. Plaintiffs' brief also fails to show how, as required by *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1070 (9th Cir. 2008), the investigation somehow coerced Plaintiffs or conditioned the receipt of government benefits on some conduct.[11]

Plaintiffs also do not contest (Opp. at 55-56) that RFRA's plain language does

---

[11] Tidwell and Walls adopt the arguments of the government and Defendants Rose, Armstrong, and Allen with respect to the appropriate analysis for Plaintiffs' Free Exercise Claim (Count Three), insofar as the Court determines that claim to be distinct from Plaintiffs' claims of discrimination on the basis of religion.

not provide for a cause of action against a defendant in his or her individual capacity, and the inconsistent jurisprudence on this issue demonstrates that it was not clearly established that individual government officials can be held liable for money damages under RFRA.  *See* Br. at 32.

> ### D.    Qualified Immunity Bars Plaintiffs' FISA Claim

Finally, the lack of decisions addressing a claim under 50 U.S.C. § 1810 makes clear that Defendants are entitled to qualified immunity on Plaintiffs' FISA claim, as well.  The law regarding Plaintiffs' FISA claim is wholly undeveloped, as established in Tidwell and Walls's opening brief (Br. at 35) and by Plaintiffs' acknowledgement (Opp. at 73) that there is no case law regarding the intent required for a FISA violation.  A statutory right cannot be clearly established unless "existing precedent" has "placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149, 1159 (2011), and that is plainly not the case here.

> ## CONCLUSION

For the foregoing reasons, Defendants Tidwell and Walls's Motion to Dismiss should be granted in its entirety.

Dated:  January 20, 2012

Respectfully submitted,

WILMER CUTLER PICKERING
 HALE AND DORR LLP

By:    /s/ Brian R. Michael

Brian R. Michael
P. Patty Li
Katie Moran
350 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
Telephone:  (213) 443-5300

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071

Facsimile:  (213) 443-5400

Howard M. Shapiro
Carl J. Nichols
Annie L. Owens
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

*Attorneys for Defendants*
*J. Stephen Tidwell and*
*Barbara Walls*