UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| YASSIR FAZAGA, ALI UDDIN MALIK, YASSER ABDELRAHIM, | ) Case No.: 8:11-cv-00301-CJC(VBKx) ) ) ) |
| **Plaintiffs,** | ) ) |
| **vs.** | ) **ORDER GRANTING IN PART** ) **DEFENDANTS' MOTIONS TO** ) **DISMISS PLAINTIFFS' FISA CLAIM** |
| FEDERAL BUREAU OF INVESTIGATION, ET AL., | ) ) |
| **Defendants.** | ) ) |

## I.  INTRODUCTION & BACKGROUND

On February 22, 2011, Plaintiffs, three Muslim residents in Southern California, filed a putative class action suit against the Federal Bureau of Investigation ("FBI"), the United States of America, and seven FBI officers and agents (collectively, "Defendants") for claims arising from a group of counterterrorism investigations, known as "Operation Flex," conducted in Plaintiffs' community with the help of a civilian informant, Craig

Monteilh, from 2006 to 2007.[1]  Plaintiffs allege that, as part of Operation Flex, the FBI employed Monteilh to gather information in various Islamic community centers in Orange County by presenting himself as a Muslim convert.  Plaintiffs allege that Monteilh was paid by the FBI to collect information on Muslims under an assumed identity and "infiltrate[] several mainstream mosques in Southern California."  (First Amended Complaint ("FAC") ¶ 1.)  They further allege that the FBI conducted a "dragnet investigation" using Monteilh to "indiscriminately collect personal information on hundreds and perhaps thousands of innocent Muslim Americans in Southern California" over a fourteen-month period.  (*Id.* ¶ 2.)  Through these actions, Plaintiffs assert that the FBI gathered hundreds of hours of video and thousands of hours of audio recordings from "the inside of mosques, homes, businesses, and associations of hundreds of Muslims," including at times where Monteilh was not present with the recording device.  (*Id.*)  Plaintiffs also assert that Defendants collected hundreds of phone numbers and thousands of email addresses.  (*Id.*)  Based on these factual allegations, Plaintiffs assert claims for violations of the First Amendment's Establishment and Free Exercise Clauses, the Religious Freedom Restoration Act, the Fifth Amendment's Equal Protection Clause, the Privacy Act, the Fourth Amendment, the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1810, and the Federal Tort Claims Act.

        The FBI denies any wrongdoing, asserting that it did not engage in unconstitutional and unlawful practices.  Instead, the FBI asserts that it undertook reasonably-measured investigatory actions in response to credible evidence of potential terrorist activity. Defendants now move to dismiss Plaintiffs' claims.  This Order addresses Defendants'

---

[1]  Plaintiffs are Yassir Fazaga, Ali Uddin Malik, and Yasser AbdelRahim.  The FBI officers are Robert Mueller, Director of the FBI, and Steven M. Martinez, Assistant Director in Charge of the FBI Los Angeles Division, sued in their official capacities.  FBI agents are J. Stephen Tidwell, Barbara Walls, Pat Rose, Kevin Armstrong, and Paul Allen, sued in their individual capacities.  The Court will hereinafter refer to the FBI, the United States, Director Mueller, and Assistant Director Martinez as the "Government."  The Court will hereinafter refer to Agents Tidwell, Walls, Rose, Armstrong, and Allen as the "Agent Defendants."

motions as to Plaintiffs' FISA claim only.[2]  As to that claim, Defendants' motions are GRANTED with respect to the Government, but DENIED as to the Agent Defendants.

## II. ANALYSIS

### A. FISA

Plaintiffs bring their FISA claim pursuant to Section 1810 of Title 50 of the United States Code.  Section 1810 provides:

> An aggrieved person, other than a foreign power or an agent of a foreign power, as defined in section 1801(a) or (b)(1)(A) of this title, respectively, who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of section 1809 of this title shall have a cause of action against any person who committed such violation and shall be entitled to recover —
>
> (a) actual damages, but not less than liquidated damages of $1,000 or $100 per day for each day of violation, whichever is greater;
>
> (b) punitive damages; and
>
> (c) reasonable attorney's fees and other investigation and litigation costs reasonably incurred.

50 U.S.C. § 1810.  An aggrieved person means "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance."  *Id.* § 1801(k).  A person is defined as "any individual, including any officer or employee of the Federal Government, or any group, entity,

---

[2]  Defendants' motions to dismiss Plaintiffs' other claims based on the state secrets privilege are addressed in the Court's separate, concurrently-issued Order.  The factual background and procedural history of this case are discussed in greater detail in that Order.

association, corporation, or foreign power." *Id.* § 1801(m).  FISA defines electronic surveillance as:

> (1) the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire or radio communication sent by or intended to be received by a particular, known United States person who is in the United States, if the contents are acquired by intentionally targeting that United States person, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes;
>
> (2) the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire communication to or from a person in the United States, without the consent of any party thereto, if such acquisition occurs in the United States, but does not include the acquisition of those communications of computer trespassers that would be permissible under section 2511(2)(i) of Title 18;
>
> (3) the intentional acquisition by an electronic, mechanical, or other surveillance device of the contents of any radio communication, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes, and if both the sender and all intended recipients are located within the United States; or
>
> (4) the installation or use of an electronic, mechanical, or other surveillance device in the United States for monitoring to acquire information, other than from a wire or radio communication, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes.

*Id.* § 1801(f).  Section 1809 criminalizes two types of conduct:

> A person is guilty of an offense if he intentionally—
>
> > (1) engages in electronic surveillance under color of law except as authorized by this chapter, chapter 119, 121, or 206 of Title 18 or any express statutory authorization that is an additional exclusive means for conducting electronic surveillance under section 1812 of this title; or

(2) discloses or uses information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized by this chapter, chapter 119, 121, or 206 of Title 18, or any express statutory authorization that is an additional exclusive means for conducting electronic surveillance under section 1812 of this title.

*Id.* § 1809(a).  A person may assert, as a defense to prosecution under this section, that he "was a law enforcement or investigative officer engaged in the course of his official duties and the electronic surveillance was authorized by and conducted pursuant to a search warrant or court order of a court of competent jurisdiction." *Id.* § 1809(b).

## B.  Sovereign Immunity

The Government moves to dismiss Plaintiffs' FISA claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) on the ground that the claim is barred by sovereign immunity.  "The United States, including its agencies and employees, can be sued only to the extent that it has expressly waived its sovereign immunity." *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1117 (9th Cir. 2003) (citing *United States v. Testan*, 424 U.S. 392, 399 (1976)).  "[A]ny lawsuit against an agency of the United States or against an officer of the United States in his or her official capacity is considered an action against the United States." *Balser v. Dep't of Justice, Office of the U.S. Tr.*, 327 F.3d 903, 907 (9th Cir. 2003) (citing *Sierra Club v. Whitman*, 268 F.3d 898, 901 (9th Cir. 2001)).  "[S]uits against officials of the United States . . . in their official capacity are barred if there has been no waiver" of sovereign immunity. *Sierra Club*, 268 F.3d at 901.  Absent a waiver of sovereign immunity, courts have no subject matter jurisdiction over cases against the government. *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996).  Waiver of

sovereign immunity is to be strictly construed in favor of the sovereign.  *Id.*; *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992).

On August 7, 2012, the Ninth Circuit held that Congress "deliberately did not waive [sovereign] immunity with respect to § 1810" and thus a plaintiff may not bring a suit for damages against the government under that provision.  *Al-Haramain Islamic Found., Inc. v. Obama*, __F.3d__, 2012 WL 3186088, at *8 (9th Cir. 2012).  The Ninth Circuit reversed the district court's decision that Congress implicitly waived sovereign immunity for Section 1810.  *Id.* at *3–*8.  The Ninth Circuit held that the district court's finding was erroneous for three reasons.

First, the Ninth Circuit concluded that the district court erred in finding an implicit waiver because the Supreme Court has held that sovereign immunity cannot be waived by implication.  *Id.* at *3 (quoting *Mitchell*, 445 U.S. at 538).  The waiver must be " 'unequivocally expressed.' "  *Id.* (quoting *Mitchell*, 445 U.S. at 538).

Second, the Ninth Circuit found that a conclusion that Congress intended to implicitly waive sovereign immunity was unwarranted given that Congress had expressly waived sovereign immunity, and permitted civil actions for damages against the United States, for other sections of FISA.  *Id.* at *4–*6 (citing 18 U.S.C. § 2712).  Section 2712 of Title 18 of the United States Code, enacted as part of the Patriot Act, permits actions against the United States to recover money damages for violations of Sections 1806(a), 1825(a), and 1845(a) of FISA.  A person may, therefore, bring a suit against the government if the government (1) uses or discloses information obtained from electronic surveillance conducted pursuant to the FISA subchapter on electronic surveillance without consent and without following FISA's minimization procedures or without a lawful purpose, 50 U.S.C. § 1806(a); (2) uses or discloses information from a physical search conducted pursuant to the FISA subchapter on physical searches without consent

and without following the minimization procedures or without a lawful purpose, *id.* § 1825(a); or (3) uses or discloses information obtained from a pen register or trap and trace device installed pursuant to the FISA subchapter on such devices without following the requirements of Section 1845, *id.* § 1845(a).  Congress clearly knew how to waive sovereign immunity for certain violations of FISA.  It decided, in its wisdom, not to do so for violations of Section 1810.

Third, the Ninth Circuit explained that "the relationship between [Section] 1809 and [Section] 1810" further demonstrates that Congress did not intend to permit an action against the government for violations of Section 1810.  Specifically, the Ninth Circuit explained that because of this relationship, to impose official capacity liability under Section 1810, it "must also suppose that a criminal prosecution may be maintained against an office, rather than an individual, under [Section] 1809." *Id.* at *7.  The Ninth Circuit found that imposing such "unprecedented" official capacity liability for criminal violations, in essence "imposing criminal penalties against an office for the actions of the officeholder," would be " 'patently absurd.' " *Id.* at *7 (citing *United States v. Singelton*, 165 F.3d 1297, 1299–3000 (10th Cir. 1999)).

The Ninth Circuit's decision in *Al-Haramain* is dispositive here.  Sovereign immunity is not waived for violations of Section 1810.  Consequently, Plaintiffs' Section 1810 claim against the Government is DISMISSED WITH PREJUDICE.

## C.  Qualified Immunity

The Agent Defendants move under Federal Rule of Civil Procedure 12(b)(6) for dismissal of Plaintiffs' FISA claim arguing that they are entitled to qualified immunity.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not

whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The district court may address the two prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The doctrine of qualified immunity was established to protect government officials "from liability for civil damages insofar as their conduct does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson*, 555 U.S. at 236–37. Law may be clearly established "notwithstanding the absence of direct

precedent. . . .   Otherwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional [or unlawful] conduct." *Deorle v. Rutherford*, 272 F.3d 1272, 1285–86 (9th Cir. 2001).   "Rather, what is required is that government officials have 'fair and clear warning' that their conduct is unlawful." *Deveraux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)).

The Agent Defendants are not entitled to dismissal of Plaintiffs' FISA claim based on qualified immunity.  Plaintiffs have pleaded sufficient facts to demonstrate that, taken in the light most favorable to them, they are "aggrieved persons" and that the Agent Defendants violated a clearly established statutory right created by FISA.  FISA constitutes clearly established law governing electronic surveillance, including that of the kind engaged in by the Agent Defendants.  Sections 1809 and 1810 clearly prohibit "the installation or use of an electronic, mechanical, or other surveillance device in the United States for monitoring to acquire information, other than from a wire or radio communication, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes," 50 U.S.C. § 1801(f), "under color of law except as authorized by [FISA], chapter 119, 121, or 206 of Title 18 or any express statutory authorization that is an additional exclusive means for conducting electronic surveillance under section 1812 [of FISA]."  50 U.S.C. § 1809(a)(1).

The Agent Defendants argue that they are entitled to qualified immunity because it was not clearly established that Plaintiffs were "aggrieved persons."  Specifically, the Agent Defendants argue that Plaintiffs did not have a clearly established reasonable expectation of privacy with respect to the situations in which they were electronically surveilled.  The Court disagrees.  FISA's "aggrieved person" status is coextensive with

standing under the Fourth Amendment for claims involving electronic surveillance.  *See
ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 658 n.16 (6th Cir. 2007) (citing H.R. Rep. No.
95-1283, at 66 (1978)).  Thus, the law regarding the reasonable expectation of privacy in
the Fourth Amendment context governs here and is clearly established.  A person has a
reasonable expectation of privacy where he "has shown that 'he seeks to preserve
[something] as private' " and his "subjective expectation of privacy is 'one that society is
prepared to recognize as 'reasonable.' "  *Smith v. Maryland*, 442 U.S. 735, 740 (1979)
(citing *Katz v. United States*, 389 U.S. 347, 351, 361 (1967)).  Notably, "[p]rivacy does
not require solitude," *United States v. Taketa*, 923 F.2d 665, 673 (9th Cir. 1991), and
even open areas may be private places so long as they are not "so open to [others] or the
public that no expectation of privacy is reasonable," *O'Connor v. Ortega*, 480 U.S. 709,
718 (1987).

As noted by Plaintiffs in their opposition:

The complaint sets forth detailed allegations that Defendants planted
electronic listening devices in one Plaintiff's home and another's office, that
their informant left recording devices to capture intimate religious discussion
at the mosque, that the informant routinely took video in mosques and in
private homes, and that the informant acted pursuant to broad instructions to
gather as much information on Muslims as possible.

(Pls. Combined Opp'n, at 64; *see also* FAC ¶¶ 95, 209, 127, 137, 192, 193, 202, 211.)
The FAC alleges that this surveillance often took place outside the presence of the
informant and was all conducted without a warrant.  (FAC ¶¶ 86–137.)  A reasonable
officer knows that there is a reasonable expectation of privacy in one's home, office, and
in certain discrete areas of a mosque as described in the FAC, (*id.*).  *See Kyllo v. United
States*, 533 U.S. 27 (2001) (finding a reasonable expectation of privacy exists in one's
home); *O'Connor v. Ortega*, 480 U.S. 709 (finding that a reasonable expectation of
privacy can exist in a person's work place and office); *Mockaitis v. Harcleroad*, 104 F.3d

-10-

1522 (9th Cir. 1997) (finding a reasonable expectation of privacy arising out of religious customs of confidentiality such as confession), *overruled on other grounds by United States v. Antoine*, 318 F.3d 919 (9th Cir. 2003).[3]

Agent Rose argues that she is entitled to qualified immunity because Plaintiffs have failed to plausibly allege that she violated FISA based on *Ashcroft v. Iqbal*. Again, the Court disagrees. In *Iqbal*, the Supreme Court held that a supervisor may not be held liable for a constitutional violation on the basis of *respondeat superior* or vicarious liability, but instead, a plaintiff must allege sufficient facts to plausibly allege liability based upon the supervisor's individual conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 675–76 (2009). Contrary to Agent Rose's assertion, Plaintiffs do allege intentional and wrongful conduct on her part. The FAC alleges:

> Upon information and belief, Defendant Pat Rose was, at all times relevant to this action, employed by the FBI and acting in the scope of her employment as a Special Agent. Upon information and belief, Agent Rose was assigned to the FBI's Santa Ana branch office, where she supervised the FBI's Orange County national security investigations and was one of the direct supervisors of Agents Allen and Armstrong. Upon information and belief, Defendant Rose was regularly apprised of the information Agents Armstrong and Allen collected through Monteilh; directed the action of the FBI agents on various occasions based on that information; and actively monitored, directed, and authorized the actions of Agents Armstrong and Allen and other agents at all times relevant in this action, for the purpose of surveilling Plaintiffs and other putative class members because they were Muslim. Agent Rose also sought additional authorization to expand the scope of the surveillance program described [in the FAC], in an effort to create a Muslim gym that the FBI would use to gather yet more information about the class.

---

[3]  Agent Defendants also argue that they are entitled to qualified immunity because it was not clearly established that they could be liable under Section 1810 in their individual capacity, based upon the Northern District's ruling that Section 1810 imposed only official capacity liability that was reversed by *Al-Haramain*. The Court disagrees. Regardless of the nature of the remedy permitted by Section 1810, both that section and Section 1809 clearly establish that the conduct allegedly engaged in by the individual defendants was unlawful. The qualified immunity analysis focuses on the legality of the conduct, not the remedy available to a plaintiff or the procedure for seeking that remedy.

(FAC ¶ 22.)  The FAC further alleges that all of the Agent Defendants, including Agent Rose, "maintained extremely close oversight and supervision of Monteilh" and "because they made extensive use of the results of his surveillance, they knew in great detail the nature and scope of the operation, including the methods of surveillance Monteilh used and the criteria used to decide his targets, and continually authorized their ongoing use." (*Id.* ¶ 138.)  These allegations amount to intentional, individual conduct on the part of Agent Rose that, taken in the light most favorable to Plaintiffs, demonstrates a violation of Section 1810 that satisfies the pleading requirements of *Iqbal*.

Finally, Agents Tidwell and Walls assert that Plaintiffs' FISA claim should be dismissed because it fails to allege that they engaged in the alleged surveillance activity with the intent to violate the law.  Dismissal on this basis is unsupported by the plain language of FISA or judicial precedent interpreting Section 1809.  Section 1809 imposes liability for those who "intentionally engage in electronic surveillance under color of law except as authorized."  50 U.S.C. § 1809.  The statute requires that Agents Tidwell and Walls intended to conduct unauthorized electronic surveillance.  The FAC makes clear that the Agents did intentionally engage in such surveillance without authorization.  More is not required.[4]

///

///

---

[4]  The Court, however, declines at this time to rule on the issue of whether Plaintiffs' FISA claim should be dismissed under the state secrets privilege, as that issue was not before the Court.

**III.  CONCLUSION**

For the foregoing reasons, with respect to Plaintiffs' FISA Section 1810 claim, the Government's motion to dismiss is GRANTED and the Agent Defendants' motions to dismiss are DENIED.

DATED:      August 14, 2012

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE