Peter Bibring (SBN 223981)
  *pbibring@aclu-sc.org*
Ahilan T. Arulanantham (SBN 237841)
  *aarulanantham@aclu-sc.org*
Jennifer L. Pasquarella (SBN 263241)
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

Attorneys for Plaintiffs

(Additional Counsel listed on next page)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YASSIR FAZAGA, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>FEDERAL BUREAU OF INVESTIGATION *et al.*,<br><br>    Defendants. | CASE NO.: SA CV 11-00301 CJC (VBKx)<br><br>REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PARTIAL FINAL JUDGMENT PURSUANT TO F.R.C.P. 54(b)<br><br>Hearing Date: December 11, 2012<br>Time: 4:30 p.m.<br>Courtroom: 9-D |

Additional Plaintiffs' Attorneys:

Ameena Mirza Qazi (SBN 250404)
 *aqazi@cair.com*
COUNCIL ON AMERICAN-ISLAMIC RELATIONS, CALIFORNIA
2180 W. Crescent Avenue, Suite F
Anaheim, California  92801
Telephone: (714) 776-1847
Facsimile: (714) 776-8340

Dan Stormer (SBN 101967)
 *dstormer@hadsellstormer.com*
Joshua Piovia-Scott (SBN 222364)
 *jps@hadsellstormer.com*
Reem Salahi (SBN 259711)
 *reem@hadsellstormer.com*
HADSELL STORMER RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue, Suite 204
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079

# TABLE OF CONTENTS

**Page(s)**

Introduction ................................................................................................................ 1

I.  The Court Must Engage in a Pragmatic Assessment of the Equities in Determining Whether to Permit Certification Under Rule 54(b) ........................ 2

II. Judicial Efficiency and the Balance of Equities Strongly Favor Certification ......................................................................................................... 6

III. Alternatively, the Court May Certify the State Secrets Rulings for Interlocutory Appeal under 28 U.S.C. 1292(b) .................................................. 10

Conclusion ............................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Al-Haramain Islamic Foundation, Inc. v. Bush*,
  507 F.3d 1190 (9th Cir. 2007) .............................................................................. 10

*AmerisourceBergen Corp. v. Dialysis West, Inc.*,
  465 F.3d 946 (9th Cir. 2006) ............................................................................. 3, 5

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
  819 F.2d 1519 (9th Cir. 1987) ........................................................................ 3, 5, 6

*Gregorian v. Izvestia*,
  871 F.2d 1515 (9th Cir. 1989) ............................................................................... 5

*In re Cement Antitrust Litigation*,
  673 F.2d 1020 (9th Cir. 1981) ............................................................................. 10

*In re First T.D. & Inv., Inc.*,
  253 F.3d 520 (9th Cir. 2001) ................................................................................. 5

*James v. Price Stern Sloan, Inc.*,
  283 F.3d 1064 (9th Cir. 2002) ............................................................................... 5

*Mohammed v. Jeppesen Dataplan, Inc.*,
  614 F.3d 1070 (9th Cir. 2010) (en banc) ............................................................. 10

*Noel v. Hall*,
  568 F.3d 743 (9th Cir. 2009) .............................................................................. 5, 6

*Texaco, Inc. v. Ponsoldt*,
  939 F.2d 794 (9th Cir. 1991) ................................................................................. 5

*Wood v. GCC Bend, LLC*,
  422 F.3d 873 (9th Cir. Or. 2005) ................................................................... 3, 4, 5

**STATUTES**

8 U.S.C. 1292(b) ........................................................................................................ 2, 10

**OTHER AUTHORITIES**

Rule 54(b) ................................................................................................................ passim

# Introduction

The Government asks this Court to chart a course that can only *increase* the number of appellate proceedings that will ultimately occur, while simultaneously decreasing the amount of appellate guidance available to this Court and guaranteeing years of additional delay before ultimate resolution of claims that are of critical importance to Plaintiffs' lives. The Government's reasons for asking the Court to take that inefficient approach are unclear. The Government concedes that the Court's state secrets rulings qualify for certification under Rule 54(b), and that it would not constitute an abuse of discretion to grant Plaintiffs' motion. *See* Dkt. 124 at 4 n.1 (conceding that the state secrets rulings are final); *id*. at 1 (conceding that court would not abuse its discretion by certifying). The Government also does not dispute that the Plaintiffs will have to wait years for resolution of their claims against the federal government — including those seeking expungement of the files obtained on them in this case — even though this Court has finally resolved those claims in the Government's favor (under both the Privacy Act and the Constitution). Nor can the Government claim to be acting in the interests of the individual Defendants, who have not opposed this motion.

Nevertheless, the Government asks this Court *not* to adopt a pragmatic approach that would conserve appellate resources, and instead to adopt a formalistic model that would protect "the historic federal policy against piecemeal appeals." Dkt. 124 at 1. But, aside from the fact that the caselaw requires this Court to take a pragmatic approach that balances *all* of the equities, the Government's approach makes multiple appeals *more likely*, not less. It virtually guarantees that there will be two successive appeals in this case, whereas Plaintiffs' approach could well avoid that result by allowing guidance from the Ninth Circuit concerning the application of the state secrets privilege to the claims remaining in this case.

The only affirmative argument the Government advances for denying

certification is that this Court will still have to consider state secrets issues with respect to the FISA claims (assuming Plaintiffs prevail against the Individual Defendants' appeal) and that the presence of "overlapping factual and legal issues" between the remaining FISA claims and the claims that this Court dismissed counsels against certification under Rule 54(b). Dkt. 124 at 8-9. But this argument misapplies the law governing Rule 54(b): the question is not whether *this Court* will have to consider overlapping issues when considering the remaining claims — that will almost always be the case when parties seek certification given the advent of liberal joinder rules — but rather whether certification will "streamline" the litigation and decrease the likelihood of *appeals* that present overlapping issues. On that question, there can be no serious dispute that certifying the state secrets rulings now will decrease the likelihood of an appeal involving the state secrets privilege later, and will also ensure greater appellate guidance to this Court as it considers the secret evidence that may arise in the FISA litigation.

Because the Government's approach runs counter to the purpose of Rule 54(b), this Court should reject it, and instead should certify its state secrets ruling as a partial final judgment. Alternatively, it should permit interlocutory appeal of its ruling under 8 U.S.C. 1292(b).

### I. The Court Must Engage in a Pragmatic Assessment of the Equities in Determining Whether to Permit Certification under Rule 54(b)

The law governing the standard for Rule 54(b) motions is not complicated — the statute requires the Court to find expressly "that there is no just reason for delay," and the Ninth Circuit has repeatedly, and recently, read that language to require a pragmatic consideration of all of the equities, including but not limited to minimizing overlapping appeals. Dkt. 121-1 at 5-6. The Government asserts that Plaintiffs have mis-stated the standard governing Rule 54(b), Dkt. 124 at 6-7, but Plaintiffs' description of the standard comes directly from recent Ninth Circuit

1  authority that remains good law.  See Dkt 121-1 at 6 (citing *S.E.C. v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1084 (9th Cir. 2010)); *see also AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 955 (9th Cir. 2006) (Rule 54(b) gives district court "[t]he task of weighing and balancing the contending equities") (internal citations omitted).  In any event, whether or not the Ninth Circuit correctly described the governing standard in the cases Plaintiffs cite, the Government ultimately concedes both that this Court's state secrets ruling constitutes a final judgment, thus permitting certification if there is "no just reason for delay," and that the Court would not abuse its discretion by granting the motion to certify.  *Id*. at 4 n.1 (conceding that state secrets ruling constitutes final judgment); *id*. at 1 ("the Government does not contend that the Court would abuse its discretion in [entering partial final judgment]").

Nonetheless, the Government implies that Plaintiffs have failed to identify the "key" issue, Dkt. 124 at 5, which it claims is whether there are "overlapping factual and legal issues" between the claims that remain (here, the FISA claims), and the claims for which certification is sought (all of the other claims, which this Court dismissed under the state secrets privilege).  The Government also disputes Plaintiffs' assertion that the Ninth Circuit has adopted a more permissive interpretation of the rule in recent years.  Dkt. 124 at 5-6 (discussing *Morrison-Knudsen*).  In support, the Government focuses heavily on the Ninth Circuit's decision in *Wood v. GCC Bend, LLC*, 422 F.3d 873, 879 (9th Cir. Or. 2005), which allegedly eschews a pragmatic test in favor of a focus on the presence of overlapping issues.  There are two fatal defects in the Government's argument.

*First*, *Wood* itself cites the very test that the Government criticizes, stating unambiguously that the Ninth Circuit "has previously embraced 'a more pragmatic approach focusing on severability and efficient judicial administration.'"  *Wood*, 422 F.3d at 880 (citing *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,

3

819 F.2d 1519, 1525 (9th Cir. 1987)).[1] *Wood* also cited with approval the prior Ninth Circuit authority that limited *Morrison-Knudsen* as adopting an "outdated and overly restrictive approach." *Wood*, 422 F.3d at 881 n.5, which is exactly what the Government claims *Wood* did not do. See Dkt. 124 at 7 (claiming that "*Morrison-Knudsen* was cited approvingly by the Ninth Circuit in *Wood*," without any mention of the passage quoted above). Thus, the Government is simply wrong insofar as it perceives some retreat in the Ninth Circuit from the standards that Plaintiff identified.

While *Wood* did reverse the district court's order certifying its judgment for appeal, nothing in that opinion justifies the same result here. *Wood* was "a routine employment discrimination action" that was "not a complicated case," *Wood*, 819 F.2d at 879, and the equities favored allowing the case to conclude in the district court given the obvious inefficiency associated with permitting interlocutory appeal of the district court's decision concerning one theory in a discrimination case while the other theory remained unresolved. *See id.* *Wood* recognized that certification would be warranted if "the case is complex and there is an important or controlling legal issue that cuts across (and cuts out or at least curtails) a number of claims." *Id*. at 881. It is hard to imagine a more accurate description of *this* case, which is obviously complex, and in which the state secrets issue plays an important role that cuts across, cuts out, and curtails a number of claims.[2]

---

[1] This language is identical to that cited by Plaintiffs, which the Government asserted was not the correct standard. *Compare* Dkt. 121-1 at 5 (citing language identical to that quoted in *Wood*) *with* Dkt. 124 at 6 (criticizing Plaintiffs for "cast[ing]" the question using that exact same language, but then relying on *Wood*).

[2] Although the dispute over the governing standard is not particularly important in light of the Government's concession that this case qualifies for certification, it is worth noting that the Government's real disagreement appears to be with the Ninth Circuit's published cases and with Moore's Federal Practice treatise, rather than with Plaintiffs. Dkt. 124 at 6 n.3.

*Second*, the Government's analysis conflates the need to avoid overlapping litigation *in this Court* with the need to prevent overlap *on appeal*. Contrary to the Government's claim, the question whether there will be overlapping issues "between the claims to be certified for appeal and any remaining claim in the case" is *not* the critical inquiry, *see* Dkt. 124 at 5. There will almost always be such overlap given permissive joinder rules, and the Ninth Circuit has repeatedly approved of decisions certifying claims for appeal under Rule 54(b) even though there was overlap between the issues certified on appeal and other issues remaining in the district court. *See, e.g.*, *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009) (affirming certification because "we have held that claims certified for appeal do not need to be separate and independent from the remaining claims, so long as resolving the claims would 'streamline the ensuing litigation.'"); *AmerisourceBergen Corp.*, 465 F.3d at 954 (affirming certification in large case involving multiple defendants despite substantial overlap); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991) (affirming certification because "[a]lthough the claims disposed of on appeal and the remaining counterclaims require proof of the same facts, the legal issues now appealed will streamline the ensuing litigation."); *Continental Airlines, Inc.*, 819 F.2d at 1525 (affirming certification despite substantial overlap of issues "given the size and complexity of this case," and the fact that the order would "streamline further litigation"); *Gregorian v. Izvestia*, 871 F.2d 1515, 1520 (9th Cir. 1989) (affirming certification despite some overlap). Indeed, "issuance of a Rule 54(b) order is a fairly routine act that is reversed only in the rarest instances." *James v. Price Stern Sloan*, *Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). As such, *Wood* appears to be one of only two published Ninth Circuit cases reversing a grant of certification under Rule 54(b) in the last twenty years. The other, like *Wood*, turned on the peculiarities of its factual and legal context, and in no way undermines Plaintiffs' argument here. See *In re First T.D. & Inv., Inc.,* 253 F.3d 520 (9th Cir. 2001) (bankruptcy court

abused its discretion when it entered partial final judgment as to defaulting defendants, when earlier, it had relieved the answering defendants of liability, and case law required the liability of defaulting defendants to be contingent on answering defendants' liability).[3]

As the numerous cases affirming district court orders permitting Rule 54(b) certification make clear, the relevant inquiry with respect to the overlapping litigation factor concerns whether there will be piecemeal *appeals* — that is, whether the Ninth Circuit will have to address the same state secrets questions at issue in this appeal in a subsequent appeal. As explained below, such overlapping appeals are unlikely to occur if this Court grants this Motion, because an appeal of the issues decided in this Court's state secrets ruling may well prevent any future appeal, and even if not will serve to greatly streamline all future proceedings in this case.

## II. Judicial Efficiency and the Balance of Equities Strongly Favor Certification.

A pragmatic consideration of the relevant factors makes clear that "there is no just reason" to delay certification of this Court's state secrets rulings, as doing so would greatly advance judicial efficiency and permit speedy resolution of important claims in this case.

As a threshold matter, the Government has no answer to the fact that Plaintiffs' claims against the federal government are ripe for review — including

---

[3] Contrary to the Government's suggestion, Dkt. 124 at 5 n.2, the Ninth Circuit has affirmed certification of partial final judgments involving overlapping claims even when there were no counterclaims at issue. In *Continental Airlines* there were no counterclaims at all, and in *Noel* the district court certified claims for final judgment because they disposed of all claims against one Defendant (just as in this case), even though "similar claims remain pending against other Defendants." *Noel*, 568 F.3d at 747.

the claims for expungement of records, which is the only injunctive relief sought in this case — as are all of the other claims that this Court dismissed; but they will be stayed for approximately two years if the Court denies this Motion. Whether their claims are correct or not, Plaintiffs deserve the opportunity to have those claims (as well as all of the other claims that this Court dismissed) resolved by the Ninth Circuit. There is absolutely no just reason for resolution of those claims to be delayed for several years, but that is precisely what will happen if this Court denies this Motion.[4]

An appeal on the state secrets issues will also give the Court an opportunity to obtain substantial guidance with respect to how to treat state secrets issues that may arise with respect to the FISA claims, thus serving to "streamline" the litigation of those issues in the future. The Government chose not to assert the state secrets privilege over the FISA claims, and presumably will have no opportunity to do so until discovery commences on those claims, which will happen only after the Ninth Circuit resolves the Individual Defendants' qualified immunity appeal (and only if it is resolved in Plaintiffs' favor). There can be no serious dispute that a ruling from the Ninth Circuit on the state secrets issues that this Court has already decided would greatly assist this Court in handling any state secrets issues that arise in the future. For example, if the Ninth Circuit agrees with Plaintiffs' arguments that the Government's assertion of the privilege presents serious constitutional problems in this case, *see* Dkt. 64 at 40-51, or if it agrees with Plaintiffs' claim that this Court has common law authority to use FISA's

---

[4] The Government suggests that Plaintiffs could avoid being stranded for two years by simply agreeing to dismiss with prejudice their FISA claims — the claims on which they *succeeded* before this Court. Dkt. 124 at 13 n.10. While that avenue would no doubt be of great tactical benefit to the Defendants in this case, Rule 54(b) does not require Plaintiffs to dismiss claims on which they have succeeded. Instead it permits this Court to consider the fairness of that result and permit certification if the alternative would be unjust.

7

procedures in dealing with the non-FISA claims in this case, *id*. at 26-31, those rulings will greatly assist this Court in dealing with state secrets issues that may arise in litigation concerning the FISA claim. If on the other hand the Ninth Circuit agrees with this Court in all respects on the state secrets issues, that too will give this Court and the parties substantial guidance concerning how to apply the state secrets doctrine with respect to the remaining claims, thereby streamlining the resolution of those issues.[5]

The Government also argues that it is somehow inappropriate for Plaintiffs to appeal issues concerning the relationship between FISA and state secrets doctrine, Dkt. 124 at 12, but this reflects confusion concerning the nature of the argument that Plaintiffs intend to make. While the Government is correct that this Court has not yet considered how state secrets doctrine should affect the treatment of secret evidence at issue in the FISA claim, Dkt. 124 at 12, Plaintiffs do not intend to address that question on their appeal. Rather, Plaintiffs intend to argue, just as they did to this Court, that the secret evidence issues arising in litigation of

---

[5] The Government appears far more convinced at the present time that the FISA claims will implicate state secrets than it was prior to this Court's rulings on the motions to dismiss. *Compare* Dkt. 55 at 3-4 ("the Attorney General's privilege assertion is limited in nature…. [S]ufficient non-privileged evidence may be available to litigate [the FISA claims] should they otherwise survive motions to dismiss on non-privilege grounds."), *with* Dkt. 124 at 11 ("the likelihood exists that the Court would have to revisit the state secrets privilege and apply it during litigation of the FISA claim"). Of course, the operative complaint has not changed since the Government made the former statement, and therefore the "likelihood" that litigation of the FISA claims will implicate the state secrets privilege is the same now as it was when the Government filed its original motion. Similarly, the Government asks us to assume *arguendo* that "the non-FISA claims are in some sense distinguishable" for purposes of state secrets analysis, Dkt. 124 at 11, but the Government itself made that very assumption, presumably after having reviewed all of the relevant evidence. Dkt. 55 at 3 ("The Government's motion then seeks to distinguish between claims for which privileged evidence would be required and claims that may not require such evidence.") (explaining why it did not seek dismissal of the FISA claims based on the state secrets privilege at the outset).

the non-FISA claims should be dealt with using FISA's procedures, precisely because of the fact that the FISA claims remain in this case. *See* Dkt. 64 at 26 (arguing that "Congress has preempted the common law governing the treatment of secret evidence in cases involving electronic surveillance undertaken in the name of national security"); *id.* at 30 ("[T]he Court would have ample authority to employ the same procedures set forth in FISA for any residual non-FISA evidence at issue."). This Court considered and rejected that exact argument, *see* Dkt. 101 at 17, and there is nothing improper in Plaintiffs presenting it for resolution on appeal. On the contrary, doing so will undoubtedly give this Court helpful guidance in resolving any state secrets issues that may arise in litigation of the FISA claims, thus streamlining the course of litigation.

Finally, the Government's analysis of the judicial efficiency issues ignores the various possible scenarios that could arise from the different appeals forthcoming in this case. As Plaintiffs argued previously, if this Court declines to certify the state secrets rulings for appeal and then has its qualified immunity ruling on the FISA claim affirmed, the case will return to this Court for litigation of the FISA claims. At that time, this Court may have to address state secrets issues arising in the FISA litigation, but will do so without the benefit of a Ninth Circuit ruling. In contrast, if this Court's qualified immunity ruling is reversed, then Plaintiffs will immediately appeal all of the remaining claims to the Ninth Circuit, producing two serial appeals in this case — which is the exact harm that Rule 54(b) is designed to avoid. In contrast, if the Court certifies its state secrets rulings for appeal at this time, there is a strong possibility that the Ninth Circuit's disposition of the state secrets issues as to the non-FISA claims will obviate the need for any further appeal involving state secrets. Even if it does not do so, the Ninth Circuit's ruling will undoubtedly resolve many of the issues currently in

dispute, thus streamlining the litigation of the state secrets issues.[6]

### III. Alternatively, the Court May Certify the State Secrets Rulings for Interlocutory Appeal under 28 U.S.C. 1292(b).

The Government's concession that this case qualifies for certification under Rule 54(b) likely makes it unnecessary for this Court to consider whether to adopt Plaintiffs' alternative avenue for obtaining an appeal, via Section 1292(b). Both alternatives rest within the district court's discretionary authority. Nonetheless, two points concerning the Government's argument on this issue bear mention.

*First*, this Court's ruling concerning how the state secrets privilege applies to this case is undoubtedly a "controlling question of law" as to which there are "substantial grounds for difference of opinion." *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1981). The Government claims that *Mohammed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070 (9th Cir. 2010) (en banc), constitutes the controlling law, but *Jeppesen* did not involve FISA claims, and the Ninth Circuit has explicitly declined to decide how the state secrets privilege applies in a case that includes FISA claims. *See Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1205-6 (9th Cir. 2007). In addition, as Plaintiffs argued at great length in their opposition to the motion to dismiss, *Jeppesen* did not involve a claim for injunctive relief to stop on-going constitutional violations against U.S. citizens on U.S. soil, and the implications of the Court's decision to apply *Jeppesen* in this context are undoubtedly significant. Dkt. 64 at 47-51.

---

[6] The efficiency gain would be most pronounced if Plaintiffs prevailed on any of their challenges to the Government's invocation of the state secrets privilege. If they do so on appeal now, then this Court can apply the Ninth Circuit's view of state secrets to all of the claims in this case at once. If, in contrast, Plaintiffs are only permitted to appeal the state secrets ruling later, then this Court would have to reconsider its resolution of every claim after the case had returned to the district court for the *third* time.

*Second*, for the reasons explained *supra*, allowing the Ninth Circuit to rule on how the state secrets privilege applies to any of the claims in this case will "materially advance the termination of the case." As this Court has recognized, the Government's decision to invoke the state secrets privilege has become the central issue in this case, as it cuts across virtually all of the claims raised by Plaintiffs. There is simply no good reason to wait for two years before allowing the Ninth Circuit to weigh in on how state secrets privilege should apply to this lawsuit. Permitting such a decision will greatly aid this Court in resolving the FISA claims that remain, and will speed ultimate resolution of the other claims, whether or not the Ninth Circuit reverses any portion of this Court's decisions.

## Conclusion

For the foregoing reasons, this Court should grant Plaintiffs' motion and certify its rulings dismissing all of the non-FISA claims as partial final judgments under Rule 54(b).

Respectfully submitted,

Dated: November 27, 2012

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

COUNCIL ON AMERICAN-ISLAMIC RELATIONS, CALIFORNIA

HADSELL STORMER KEENY RICHARDSON & RENICK, LLP

By: s/ Ahilan Arulanantham
    Ahilan Arulanantham
    Attorneys for Plaintiffs