Peter Bibring (SBN 223981)
  *pbibring@aclusocal.org*
Ahilan T. Arulanantham (SBN 237841)
  *aarulanantham@aclusocal.org*
Mohammad Tajsar (SBN 280152)
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297


Attorneys for Plaintiffs

(Additional Counsel listed on next page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YASSIR FAZAGA, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION *et al.*,<br><br>        Defendants. | CASE NO.: 8:11-cv-00301-CJC-VBK<br><br>**JOINT STATUS REPORT** |

1

1  Additional Plaintiffs' Attorneys:

2

3  Dan Stormer (SBN 101967)
     *dstormer@hadsellstormer.com*
4  HADSELL STORMER RENICK & DAI, LLP

5  128 N. Fair Oaks Avenue, Suite 204
   Pasadena, California 91103
6  Telephone: (626) 585-9600

7  Facsimile: (626) 577-7079

8  Counsel for the Government Defendants

9

10 ETHAN P. DAVIS
   Acting Assistant Attorney General
11 ANTHONY J. COPPOLINO
   Deputy Branch Director
12 E-mail: tony.coppolino@usdoj.gov

13 JOSEPH J. DEMOTT
   Trial Attorney
14 joseph.demott@usdoj.gov

15 Telephone: 202-514-4782
   *Attorneys for the Federal Bureau of*
16 *Investigation and Official Capacity Defendants*

17

18 STEPHEN E. HANDLER
   Senior Trial Counsel
19 E-mail: stephen.handler@usdoj.gov

20 U.S. Department of Justice
   Civil Division, Torts Branch
21 1331 Pennsylvania Avenue N.W. Room 8070N
   Washington, D.C. 20530
22 Telephone: (202) 616-4279

23 *Attorney for the United States*

24

25

26

27

28

2

1    Pursuant to this Court's order issued at the status conference held on August

2    18, 2020, the Parties submit the following joint status report describing their

3    proposals for how to proceed.

4    **I.    PLAINTIFFS' STATEMENT**

5    The Ninth Circuit's amended opinion and order affirmed the dismissal of

6    four of Plaintiffs' eleven claims, remanded the other seven claims for further

7    proceedings, and denied Defendants' petition for rehearing *en banc*. *See Fazaga v.*

8    *Fed. Bureau of Investigation*, 965 F.3d 1015 (9th Cir. 2020). The Defendants have

9    represented that they have not decided whether or not to file a petition for writ of

10   *certiorari* to the Supreme Court.

11   Because significant portions of this case would be unaffected by any

12   proceedings in the Supreme Court, and because the delay during the pendency of

13   those proceedings could be substantial, Plaintiffs propose that some aspects of this

14   litigation continue while Defendants decide whether to seek *certiorari*, and if they

15   do so, during the time the parties will be briefing the petition for *certiorari* before

16   the Supreme Court.[1]

17   Further proceedings should include, at a minimum, discovery for

18   information over which the Government has *not* asserted the state secrets privilege.

19   In particular, the Ninth Circuit's decision reinstates Plaintiffs' claims arising from

20   two categories of information over which the Government has not asserted the

21   privilege: the informant Craig Monteilh's recordings of conversations to which he

22   was not a party, and his video recordings of certain private spaces. *See Fazaga*,

23   965 F.3d at 1032, 1034–38, 1053–55 (describing three categories of information,

24   one of which is "recordings made by Monteilh of conversations to which he was

25   not a party" and holding that Plaintiffs have stated claim against the Government

26

27

28   [1] Nothing in this motion discusses how Plaintiffs may wish to proceed after any
petition for *certiorari* is either granted or denied.

as to those recordings); *id*. at 1038, 1035 n.16 (describing allegation that agents "instructed Monteilh to use a video camera hidden in a shirt button to record the interior of OCIF" as among allegations stating a claim under Fourth Amendment). The Government has not asserted state secrets over these categories of information, and there is no other remaining basis for dismissing the claims arising from them.

Defendants propose staying litigation on these and other issues while the process for *certiorari* goes forward, but that will involve substantial additional delay. The deadline to file the petition for *certiorari* is December 17, 2020. *See infra* at 17. Given the effect of the holidays on Plaintiffs' response time, the Supreme Court would likely decide the petition no sooner than the spring of 2021. If the Court grants the petition, argument would presumably be set no earlier than October of 2021, meaning a decision would be unlikely before December of 2021, and could come as late as June 2022.

Therefore, in order to efficiently use what could easily be more than six months before anyone knows whether or not the Supreme Court will grant *certiorari*, and to prevent further suspension in an already long-delayed case, Plaintiffs request the Court allow the parties to brief the remaining pleading disputes, begin discovery of information not covered by the Government's existing state secrets assertion, and allow further motion practice on those claims which the Government did move to dismiss under the *Reynolds* state secrets privilege.

To be clear, Plaintiffs do *not* propose that the Court consider any evidence over which the Government has asserted that privilege, even through the FISA process that governs under the Ninth Circuit's decision.

### A.    Status of Plaintiffs' claims

Plaintiffs pled eleven claims. They can be broadly divided between those alleging unlawful religious discrimination, those alleging unlawful search and seizure, and the hybrid claims under the Federal Tort Claims Act (FTCA).  The Government sought dismissal under the *Reynolds* state secrets privilege of the

discrimination claims but not the search claims. Under the Ninth Circuit's decision, seven of Plaintiffs' original eleven claims survive, as follows:

| Claim | Harm | Defendants | Status | Panel Opinion Result |
|---|---|---|---|---|
| 1st COA (1st A – Establishment; *Bivens*) | Religious Discrimination | All individual capacity Defendants. | Survives in part. | Assess *Bivens* on remand under *Ziglar v. Abassi*; consider qualified immunity |
| 1st COA (1st A – Establishment; Injunctive) | Religious Discrimination | All official capacity Defendants. | Survives. | *Reynolds* privilege displaced by FISA, 50 U.S.C. § 1806(f); expungement remedy available. |
| 2nd COA (§ 1985 – Establishment) | Religious Discrimination | All individual capacity Defendants. | Dismissed. | Held QI re: intra-corporate conspiracy rule applies against Agent Defendants. |
| 3rd COA (1st A – Free Exercise; *Bivens*) | Religious Discrimination | All individual capacity Defendants. | Survives in part. | Assess *Bivens* on remand under *Ziglar v. Abassi*; consider qualified immunity |
| 3rd COA (1st A – Free Exercise) | Religious Discrimination | All official capacity Defendants. | Survives. | *Reynolds* privilege displaced by FISA, 50 U.S.C. § 1806(f); expungement remedy available. |
| 4th COA (§ 1985 – Establishment) | Religious Discrimination | All individual capacity Defendants. | Dismissed. | Held QI re: intra-corporate conspiracy rule applies against Agent Defendants. |
| 5th COA: RFRA | Religious Discrimination | All Defendants. | Survives in part. | Dismissed on QI as to Agent Defendants; Survives as to Government Defendants |
| 6th COA: EP (*Bivens*) | Religious Discrimination | All individual capacity Defendants. | Survives in part. | Assess *Bivens* on remand under *Ziglar v. Abassi*; consider qualified immunity |
| 6th COA: EP (Injunctive) | Religious Discrimination | All official capacity Defendants. | Survives. | *Reynolds* privilege displaced by FISA, 50 U.S.C. § 1806(f); expungement remedy available. |
| 7th COA: § 1985 (EP) | Religious Discrimination | All individual capacity Defendants. | Dismissed. | Held QI re: intra-corporate conspiracy rule applies against Agent Defendants. |
| 8th COA: Privacy Act | Religious Discrimination | Federal Bureau of Investigation. | Dismissed. | Dismissed. |
| 9th COA: 4th A (*Bivens*) | Unlawful Search | All individual capacity Defendants. | Survives in part. | Dismissed on QI and *Iqbal* grounds, except against Allen & Armstrong as to portions of Fazaga's and AbdelRahim's claims. |

| Claim | Harm | Defendants | Status | Panel Opinion Result |
|---|---|---|---|---|
| 9th COA: 4th A (Inj.) | Unlawful Search | All official capacity Defendants. | Survives. | *Reynolds* privilege displaced by FISA, 50 U.S.C. § 1806(f); expungement remedy available. |
| 10th COA: FISA | Unlawful Search | As Filed - All Defendants | Survives in Part. | Dismissed on QI and *Iqbal* grounds, and sovereign immunity grounds, except against Allen & Armstrong as to portions of Fazaga's and AbdelRahim's claims. |
| 11th COA: FTCA | Unlawful Search and Religious Discrimination | United States | Survives. | Remanded for application of discretionary function exception after merits determination. |

**B.    Plaintiffs' Proposal for How to Proceed**

Plaintiffs request the Court allow certain limited litigation to continue during the pendency of any Supreme Court briefing on *certiorari*, as follows:

**1.    *Search Claims***

The Court should permit the parties to proceed with some litigation on the search claims (the Ninth, Tenth, and part of the Eleventh Cause of Action). Any petition for writ of *certiorari* is likely to focus on the Ninth Circuit's holding that FISA preempts the *Reynolds* state secrets privilege. *See Fazaga*, 965 F.3d 1015, 1073 (9th Cir. 2020) (Bumatay, J., dissenting). Significant aspects of the surviving unlawful search claims will not be affected by resolution of that question. The Government did not assert the *Reynolds* state secrets privilege as to the search claims, and has never argued—including to the Ninth Circuit—that those claims should be dismissed. *Id.* at 1041 ("[T]he Government Defendants requested dismissal of Plaintiffs' religion claims in toto—but not the Fourth Amendment and FISA claims—at the pleading stage"). On the contrary, the Government stated "[t]he FBI expects that the majority of the audio and video [collected by their informant Craig Monteilh] will be available in connection with further

1    proceedings." *See* Dkt. 55 at 22.[2]

2           That audio and video will bear on at least two aspects of the Fourth

3    Amendment claims that will go forward against the Government (and possibly also

4    against some Individual Defendants) regardless of what happens at the Supreme

5    Court: *first*, Monteilh's audio and visual recordings of conversations to which he

6    was not a party, including, but not limited to, audio recordings of prayer hall

7    conversations. *Fazaga*, 965 F.3d at 1034–38. *See* Dkt. 66 at 14, ¶ 30; *id.* at 26,

8    ¶ 65; *id.* at 45, ¶ 17; *id.* at 51, ¶ 17 (declarations of Craig Monteilh describing

9    leaving audio recording devices in prayer halls)[3]; *id.* at 26, ¶ 66 (leaving audio

10   recording device in mosque offices); *id.* at 26, ¶ 65 (leaving audio recording

11   devices in restaurants and cafes); and *second*, Monteilh's *video* recording of certain

12   sensitive locations, including the interiors of mosques and houses. *See id.* at 8,

13   ¶ 11; *id.* at 13, ¶ 23; *id.* at 37, ¶¶ 7–8 (the internal layout of mosques and homes);

14   *id.* at 15–16, ¶ 33; *id.* at 37, ¶ 5 (speeches and sermons at mosques and fundraising

15   events); *id.* at 15, ¶ 32; *id.* at 39, ¶ 16 (mosque fundraising booths and events).[4]

16

17   _____

18   [2] Although the Government asserts that Supreme Court review could result in this Court's prior order "being affirmed," *see infra* at 20, the Government did not

19   defend this Court's decision to dismiss the search claims under the state secrets privilege before the Ninth Circuit. *See* Reply Br. of Pls.-Appellants, at 42–43, *Fed.*

20   *Bureau of Investigation*, No. 12-56867 (9th Cir. July 7, 2015), ECF 73.

21
     [3] In support of their Oppositions to the various Defendants' Motions to Dismiss,

22   Plaintiffs filed four declarations of Craig Monteilh, one supporting Plaintiffs'

23   general allegations in the Complaint, and three detailing the Government's targeting of each named Plaintiff. *See* Dkt. 66. As these declarations were joined

24   together in one filing, Plaintiffs refer to them here by their ECF page number and

25   the relevant paragraph number contained therein.

26   [4] The Ninth Circuit dismissed claims against the Individual Defendants as to

27   recordings inside mosques, but allowed all of them to proceed against the Government. *Fazaga*, 965 F.3d at 1053-55.

28

Because claims arising from these categories of evidence are no longer subject to any pleading challenge or dismissal based on the Government's state secrets assertion, discovery on them should proceed.

### a.    *The Government's Objections*

The Government objects to proceeding on the search claims because *other* information at issue—concerning "planted devices" that Monteilh learned about through Defendants Allen and Armstrong, *see Fazaga*, 965 F.3d at 1038—could implicate their state secrets assertion. *See infra* at 25. But even if this is true, Plaintiffs have stated they will not proceed as to any portion of their claims that implicates information covered by the Government's privilege assertion before Supreme Court *certiorari* litigation is resolved. As both sides agree that *some* portions of the search claim are not governed by the existing state secrets assertion, there is no reason to stay discovery and subsequent litigation on those portions.[5]

The Government raises an independent argument against allowing Plaintiffs to proceed with discovery, asserting that no discovery should occur until "plaintiffs can establish as a factual matter, with non-privileged evidence, their standing as 'aggrieved' persons, . . ." But Plaintiffs' proposal renders this added procedural

---

[5] The Government appears to assert that the information pertaining to the "planted devices" aspect of the search claims is covered by its *existing* state secrets assertion, a claim it has not made previously. It argues this claim is not new, claiming that this "category of alleged electronic surveillance that is at the very heart of the [Ninth Circuit's] FISA displacement theory." *See infra* at 25. This dispute is irrelevant at this juncture because Plaintiffs have stated they do not intend to litigate over any information that comes within the Government's existing privilege assertion. But in any event, the Government is incorrect. The Ninth Circuit concluded, in keeping with the D.C. Circuit's view, that FISA procedures should be applied as to any privileged information arising in Plaintiffs' challenges to the legality of electronic surveillance. *Fazaga*, 965 F.3d at 1052 ("We are not the first to hold that § 1806(f)'s procedures may be used to adjudicate claims beyond those arising under § 1810. The D.C. Circuit expressly so held in *ACLU Foundation of Southern California v. Barr*, 952 F.2d 457 (D.C. Cir. 1991)").

1    hurdle irrelevant. While the Government decides whether to seek *certiorari* review

2    of the Ninth Circuit's decision, Plaintiffs propose litigating only those claims that

3    can proceed without evidence the Government sought to withhold as state secrets -

4    a process that need not utilize FISA procedures at all. As explained above, the

5    Government previously represented that it "expects that the majority of the audio

6    and video" Monteilh collected for the FBI "will be available in connection with

7    further proceedings" in this case. *Fazaga*, 965 F.3d at 1043. There is no need to

8    use FISA's *ex parte* procedures to begin discovery as to those recordings.

9    Therefore, no predicate showing of "aggrieved person" status is required.

10        Although the Court need not address it now given Plaintiffs' stipulation to

11    limit discovery to non-privileged information, the Government errs in arguing

12    Plaintiffs must do more to establish their "aggrieved status" under FISA.

13    Monteilh's declarations constitute admissible evidence on that point, and the Ninth

14    Circuit's decision holds that his surveillance gives rise to the search claims that this

15    Court should resolve using FISA's procedures if necessary. *Fazaga*, 965 F.3d at

16    1053 ("Plaintiffs are properly considered aggrieved persons as to those categories

17    of surveillance"); *id.* at 1065 ("the district court should, using § 1806(f)'s *ex parte*

18    and *in camera* procedures, review any materials relating to the surveillance as may

19    be necessary . . . to determine whether the electronic surveillance was lawfully

20    authorized and conducted"). Thus, Plaintiffs have made any separate standing

21    showing FISA requires to trigger the procedures under Section 1806(f). Monteilh's

22    declarations offer the "specifics based on non-classified evidence to establish

23    [Plaintiffs'] 'aggrieved person' status under FISA." *In re Nat'l Sec. Agency*

24    *Telecommunications Records Litig.*, 564 F. Supp. 2d 1109, 1135 (N.D. Cal. 2008).

25    This case is therefore different from those on which the Government relies, as none

26    of the plaintiffs in them had admissible evidence that they had actually been

27    surveilled. Compare *Jewel v. NSA*, Civ. 08-4373 (N.D. Cal. April 25, 2019) (Dkt.

28    462) (Plaintiffs had no non-privileged evidence that they had been surveilled);

1  *Wikimedia v. Nat'l Sec. Agency,* 427 F. Supp. 3d 582 (D. Md. 2019) (same);

2  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 n.4 (2013) (same, in non-FISA

3  case).

4       The Government also raises the possibility it could invoke a *new* state

5  secrets claim addressing some of the evidence arising from Monteilh's recordings.

6  *See infra* at 26. This hypothetical cannot justify staying litigation over information

7  that no one has argued is covered by the privilege. On the contrary, if the

8  Government actually intends to assert the privilege more broadly than it has before,

9  it would be far better for all sides to know that *now*, as that assertion would be

10  highly pertinent to any Supreme Court litigation as well as future proceedings in

11  this Court.

12            **b.    *Individual Defendants' Objections***

13       Defendants Tidwell, Walls, and Rose raise a separate argument against

14  Plaintiffs' request to proceed. They claim that any discovery propounded on the

15  Government while they litigate their pleading challenges impermissibly burdens

16  *them*, even if they are "not yet themselves subject to discovery orders." *See infra* at

17  40 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 685–86 (2009)). They therefore request

18  *all* proceedings be halted—including those solely between Plaintiffs and the

19  Government—until *they* exhaust their pleading challenges. The Court should reject

20  this argument for three reasons.

21       *First*, *Iqbal* concerned the protection of two very high-ranking defendants

22  from the burdens of litigation, then-Director of the FBI Robert Mueller, and former

23  Attorney General John Ashcroft. *Iqbal*, 556 U.S. at 666. The "burdens of

24  discovery" that Mueller and Ashcroft faced were unique to their status as "high-

25  level officials who must be neither deterred nor detracted from the vigorous

26  performance of their duties," *id.* at 686, a concern wholly absent where, as here,

27  the defendants are comparatively low-ranking officials whom Plaintiffs allege

28  personally participated in the challenged conduct. Unlike Mueller and Ashcroft,

Tidwell, Walls, and Rose cannot explain why *they* would be burdened by Plaintiffs propounded discovery upon the Government over matters already in the public record and for which the Government has not asserted the state secrets privilege.

*Second*, *Iqbal* does not apply for an entirely different reason: because any burden the Individual Defendants will bear due to discovery targeting the Government will continue to exist whether or not they win their motion to dismiss. The Government itself was not a defendant in *Iqbal*. Success on their motion to dismiss rendered Attorney General Ashcroft and FBI Director Mueller entirely free from the litigation, as they faced only "conclusory" and "implausible" allegations of misconduct. *Iqbal*, 556 U.S. at 681–82. Here, in contrast, Tidwell, Walls, and Rose are percipient witnesses to at least some of the conduct at issue in the claims against the Government, and can expect to be deposed or subpoenaed on any of Plaintiffs' surviving claims—as third parties if not as defendants. Thus, halting discovery pending the *Bivens* motions will merely *postpone* their personal involvement, it cannot stop it. Nothing in *Iqbal* suggests that rationale would suffice to disturb the ordinary presumption against staying discovery while a pending Rule 12 motion is decided. *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600–01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation").

*Third*, even if this objection might have merit as to some discovery requests, it surely does not as to much of the discovery Plaintiffs contemplate, which will not burden these Defendants in any way. Agents Tidwell, Walls, and Rose were not party to the conversations Monteilh surreptitiously recorded in mosques and elsewhere, and were not present when he videotaped without others' knowledge. They presumably would not be personally involved in reviewing recordings for discovery production in this case. While the same may not be true for other

1    discovery requests (including of course these Defendants' depositions), Plaintiffs

2    can defer any such burdensome requests until after the pleading litigation has

3    concluded. Should Defendants believe any given request too burdensome before

4    that time, they could of course seek this Court's intervention.

5         Plaintiffs therefore respectfully request the Court permit the Parties to

6    initiate motion practice and discovery on the search claims as described above.

7              **2.    *Religion Claims***

8         Plaintiffs also request the Court restart proceedings on the surviving

9    religious discrimination claims for two limited purposes. *First*, as to those claims

10   brought against the Agent Defendants under *Bivens* (the First, Third, and Sixth

11   Causes of Action as against the Agent Defendants), this Court should consider the

12   Individual Defendants' motion to dismiss under *Ziglar v. Abbasi*, 137 S.Ct. 1843

13   (2017) and perhaps other grounds.[6]

14        *Second*, as to the surviving religious discrimination claims against the

15   Government (the First, Third, Fifth, Sixth and portions of the Eleventh Causes of

16   Action as against the Government), while Plaintiffs would not seek discovery

17   during the pendency of any potential Supreme Court litigation, Plaintiffs

18   nonetheless request the Court permit them to move for summary judgment.

19   Plaintiffs maintain they can litigate these claims without the use of any evidence

20   designated as a state secret, and therefore that any assertion of the privilege is

21   premature until Plaintiffs have been permitted to move for summary judgment. *See*

22   Br. of Pls.-Appellants, at 25–26, *Fed. Bureau of Investigation*, No. 13-55017 (9th

23   Cir. Nov. 17, 2014), ECF 32-2.[7] During the meet and confer process, the

24

25   _____

26   [6] The Individual Defendants have indicated their intention to move to dismiss on grounds beyond *Abbasi*. To the extent such claims are preserved, Plaintiffs agree that the Court should consider them at this juncture.

27   [7] The Ninth Circuit did not consider this argument because it adopted Plaintiffs' alternative argument that FISA displaces the privilege. *Fazaga*, 965 F.3d at 1039.

28

1    Government reiterated its position that even if Plaintiffs can file a summary

2    judgment motion, "responding to the motion for summary judgment" would

3    require invocation of the privilege because "all the responsive evidence"

4    Defendants would offer is subject to the privilege assertion. *See also* Superseding

5    Br. of Federal Appellees, at 18, 23, *Fed. Bureau of Investigation*, No. 13-55017

6    (9th Cir. June 25, 2015), ECF 73 (endorsing this Court's conclusion that

7    Defendants needed to use the privileged information "to defend" against religious

8    discrimination claims). As Plaintiffs argued previously, Defendants' prediction

9    may prove correct, but one cannot know "with certainty," *Jeppesen*, 614 F.3d at

10   1081, until Plaintiffs file their summary judgment motion on the religion claims. If

11   Defendants then invoke the privilege, further litigation could cease pending the

12   Supreme Court *certiorari* process.

13        The Government suggests that Plaintiffs' position concerning the use of

14   FISA procedures—that it should govern all information over which Defendants

15   have asserted the state secrets privilege, including that not otherwise covered by

16   FISA—somehow conflicts with Plaintiffs' request to move for summary judgment

17   on the religion claims, but this is wrong. Plaintiffs' position throughout has been

18   that they need not rely on any privileged information to prevail on their religious

19   discrimination claims. Mr. Monteilh's declarations establish crystal-clear

20   violations of the Constitution's prohibition on religious discrimination. *See, e.g.*,

21   Dkt. 66 at 10, ¶ 17 (Allen and Armstrong "did not give me any specific targets, but

22   instead told me to gather as much information on as many people in the Muslim

23   community as possible"), *id.* at 20, ¶ 46 (they told him to focus on Muslims who

24   appeared more devout because they were more suspicious).

25        If Defendants choose to respond using information over which they

26   simultaneously assert the state secrets privilege, only then would FISA come into

27   play. Thus, any request for a stay out of concern for the use of FISA would be

28

premature until Defendants have responded to the summary judgment motion.[8]

### 3. *FTCA Claims*

As to Plaintiffs' Federal Tort Claims Act ("FTCA") claims, Plaintiffs agree that the Government may seek to dismiss the various FTCA claims on grounds other than the discretionary function exception while *certiorari* proceedings are pending before the Supreme Court. Although the application of the discretionary function exception turns on the merits of Plaintiffs' other claims against the Government, *Fazaga*, 965 F.3d at 1065, the Ninth Circuit did not have occasion to entertain other grounds for dismissal raised by the Government in its original motion to dismiss. If *certiorari* proceedings remain on-going after that litigation concludes, Plaintiffs request the Court allow discovery on the same terms described above – *i.e.*, permit it where relevant to the FTCA claim and not covered by any state secrets privilege.

### C. The Government's Requested Stay

Plaintiffs will respond to the Government's request for a stay in due course. At this stage, only a few points bear mention. *First*, Plaintiffs agree that no litigation should go forward if it requires the disclosure of information over which the Government has asserted state secrets privilege, *even through FISA*. Thus, no one advocates proceeding "under a statutory framework that should not [in the government's view] apply." *See infra* at 21.

*Second*, the Government has not disputed that its requested stay would, if granted, stop litigation over information as to which the Government has *not*

---

[8] The Government suggests an alternative approach where Plaintiffs could file their summary judgment motion but the Court would then stay further proceedings, before the Government has responded. *See infra* at 29. But this would not give the Court "certainty" that the Government's response would require disclosure of privileged information, as *Jeppesen* requires. The only way to obtain that certainty is for the Government to review the evidence it would actually need to respond to Plaintiffs' motion, and then to invoke the privilege if it deems it necessary.

asserted the privilege. As to that information, the only issue is whether it will be litigated now, or instead after months or years of further delay. The stay at issue will at a minimum run through December 17, 2020, and (if the Government seeks *certiorari*) could easily run into the spring of 2021.

*Finally*, the Government inappropriately minimizes the harm that Plaintiffs suffer by knowing that it continues to maintain vast amounts of information about their entirely lawful activities and associations. If that information was obtained in violation of the Fourth Amendment, its maintenance "impair[s] fundamental rights" and constitutes "irreparable injury." *Fazaga*, 965 F.3d at1055. This Court should not countenance unnecessary delay when it could instead, finally, give Plaintiffs their day in court on at least some of the harm Monteilh caused at Defendants' behest.

**D.    Plaintiffs' proposed timeline**

Consistent with the request above, Plaintiffs propose the following schedule for reinstituting proceedings in this Court:

| Deadline | Date |
|---|---|
| Last date to hear Government motion to stay proceedings pending writ proceedings. | September 25, 2020 |
| Last date for the parties to conduct Rule 26(f) conference on all claims. | September 25, 2020 |
| Last date to hear Agent Defendants' motions to dismiss surviving *Bivens* claims.[9] | November 13, 2020 |

---

[9] Plaintiffs may move to amend the complaint after the Court's disposition of these motions.

| Non-expert discovery cut-off. | August 27, 2021[10] |
| Expert discovery cut-off. | September 24, 2021 |
| Deadline for filing dispositive motions. | October 11, 2021 |
| Pre-trial conference. | November 22, 2021 |
| Trial (Plaintiffs estimate a 10-day trial). | December 6, 2021 |

## II.    GOVERNMENT DEFENDANTS' STATEMENTS

### A.    Government Defendants Sued in their Official Capacity

Plaintiffs have raised claims against the Federal Bureau of Investigation and the Director of the FBI, Christopher Wray, sued solely in his official capacity, and John F. Bennett, Acting Assistant Director in Charge, FBI Los Angeles Field office, sued solely in his official capacity.  Plaintiffs also seek damages against the United States pursuant to the Federal Tort Claims Act.  As set forth further below, the Government proposes the following next steps for further proceedings in this case.

First, the Court should stay further proceedings in this case pending: (1) a decision by the United States on whether to petition the Supreme Court for a writ of *certiorari*; (2) a decision by the Supreme Court on the writ of *certiorari*, if a petition is filed; and (3) resolution of proceedings in the Supreme Court, if a writ of *certiorari* is granted.  The Government's request for a stay does not extend to briefing in connection with the individual capacity defendants' renewed motions to dismiss *Bivens* claims against them, including in light of the Supreme Court's intervening decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), or on other grounds those defendants may raise.

---

[10] This and all subsequent dates are subject to change pending the Supreme Court's disposition of any petition for writ of *certiorari*.

16

Plaintiffs oppose a stay of any length – not even to determine if the Government will seek certiorari, which would be known by no later than December 17, if not earlier, or until the Supreme Court decides whether to grant any petition for certiorari, which plaintiffs recognize could occur by early 2021. They profess they would not seek to pursue matters that implicate whether the state secrets privilege has been displaced by FISA procedures, but propose to proceed on what they assert are "significant portions" of the case that could steer clear of state secrets issues. While the Government appreciates plaintiffs' apparent concession that state secrets issues should be avoided until any further review is resolved, significant portions of this case are still impacted by state-secrets-privilege and FISA-displacement issues, and plaintiffs' proposal for piecemeal adjudication of purportedly non-privileged matters still would put the state secrets privilege at issue. As an initial matter, if certiorari were sought and granted, and this Court's 2012 decision upholding the state secrets privilege was affirmed, that would at least provide important guidance on how any remaining claims should proceed. While awaiting the possibility of Supreme Court review would entail further delay, this remains an avenue properly available to the Government. At the very least, the Court should wait until a decision is reached on seeking certiorari – and, if so, whether certiorari is granted – which will be only a matter of months. In the meantime the parties could proceed to fill that time with motions to dismiss the remaining *Bivens* claims.

If certiorari is not sought by the Government or if any petition for certiorari is not granted by the Supreme Court, the Government believes that further steps in this Court should proceed incrementally, starting with (i) motions practice concerning whether Plaintiffs' *Bivens* claims against the individual capacity defendants may proceed and thereafter (ii) motions practice concerning whether Plaintiffs can establish as a factual matter, with non-privileged evidence, their standing as "aggrieved" persons for purposes of any Section 1806(f) proceedings.

1    This issue should be resolved before any proceedings under Section 1806(f).  If the

2    FISA displacement issue were to drop out of the case, then further proceedings on

3    the search and religion claims would be resolved in accordance with the state

4    secrets privilege.  Accordingly, while some aspects of the Fourth Amendment and

5    FISA search claims implicate non-privileged evidence of the audio or video

6    allegedly collected by the informant, piecemeal litigation of this limited aspect of

7    the search claims would still risk or require the disclosure of privileged

8    information and should not proceed until after the question of seeking certiorari on

9    FISA displacement of the state secrets privilege is resolved.  The Government's

10   positions are described in more detail below.

11

12       1. *Stay of Proceedings*

13       The Government is preparing a separate motion to stay proceedings.  For the

14   Court's convenience, the pertinent arguments in support of a stay are summarized

15   herein.

16       As this Court has previously recognized, a court may stay proceedings as

17   part of its inherent power "'to control the disposition of the causes on its docket

18   with economy of time and effort for itself, for counsel, and for litigants.'" *Billon,*

19   *Inc. v Slatin*, No. SACV 16-00788-CJC, 2017 WL 2719980 (C.D. Cal. Jan. 26,

20   2017) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also Clinton*

21   *v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to

22   stay proceedings as an incident to its power to control its own docket.") (citing

23   *Landis*).  This inherent power includes the authority to order a stay "'pending

24   resolution of independent proceedings which bear upon the case.'" *Billon*, 2017

25   WL 2719980, at *1 (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d

26   857, 863 (9th Cir. 1979)).  Where a stay is considered pending the resolution of

27   another action, "the court need not find that two cases possess identical issues; a

28   finding that the issues are substantially similar is sufficient to support a stay." *Id.*

1   (citing *Landis*, 299 U.S. at 254).

2          In determining whether to stay a case, "the competing interests which will be

3   affected . . . must be weighed." *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1110 (9th

4   Cir. 2005) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). These

5   interests include: "(1) the possible damage which may result from the granting of a

6   stay, (2) the hardship or inequity which a party may suffer in being required to go

7   forward, and (3) the orderly course of justice measured in terms of the simplifying

8   or complicating of issues, proof, and questions of law which could be expected to

9   result from a stay." *Id*.; *see also Chen v. St. Jude Med., LLC*, No. SACV 17-

10  00143-CJC, 2017 WL 8220441 (C.D. Cal. June 5, 2017); *Freeman Expositions,*

11  *Inc. v. Global Experience Specialists, Inc*., No. SACV 17-00364-CJC, 2017 WL

12  6940557 (C.D. Cal. June 27, 2017); *Grivas v. Metagenics, Inc.*, No. SACV 15-

13  01838-CJC, 2016 WL 11266835 (C.D. Cal. Mar. 31, 2016).

14         Courts routinely stay proceedings pending resolution of related cases in an

15  appellate court, including pending a decision by the Supreme Court.  *See, e.g.*,

16  *Sensibaugh v. EF Education First, Inc*., No. CV 20-1068-MWF, 2020 WL

17  3455641 (C.D. Cal. May 7, 2020) (granting stay of proceedings pending resolution

18  of an issue before the Supreme Court); *Rossano v. Fashion Mktg. & Merch. Grp.*

19  *Inc.*, No. CV 19-10523-MWF, 2020 WL 4288059 (C.D. Cal. May 4, 2020)

20  (granting stay of proceedings pending ruling by Supreme Court in a case raising a

21  related issue). The grant of a stay pending a decision by the Supreme Court on a

22  petition for a writ of certiorari is also appropriate.  *Walker v. Monsanto Co.*

23  *Pension Plan*, 472 F. Supp. 2d 1053, 1054-55 (S.D. Ill. 2006) (staying certain

24  counts pending a writ of certiorari to the Supreme Court in another case concerning

25  claims "substantially identical" to the claims before the district court, and

26  observing that "[s]uch stays are entered quite routinely").

27         The Government seeks a stay of proceedings in this action for the

28  straightforward reason that it is presently considering whether to seek review of the

Ninth Circuit panel decision in the Supreme Court. This avenue of further review remains available to the Government and could result in this Court's prior decision on the state secrets privilege being affirmed, or some other outcome that would significantly impact further proceedings in this Court. Accordingly, the Government seeks an opportunity to complete deliberations on whether to seek certiorari before further relevant proceedings commence, and a further stay of proceedings if certiorari is sought and then if granted by the Supreme Court.

The balance of interests supports a stay of proceedings in these circumstances. On the one hand, it is not apparent what damage may result to plaintiffs from the granting of a stay. This case admittedly has been pending for a long time, but the challenged investigative activities occurred well over a decade ago, and Plaintiffs seek only retrospective relief in the form of the expungement of records or damages. Also, any harm caused by the delay in this case resulted from the nearly eight years in which this case was pending on appeal. By comparison, the time it would take for the Government to decide on whether to seek certiorari, and for the Supreme Court to rule on that petition, would be a matter of months at the longest. *See Leyva*, 593 F.2d at 864 (recognizing that a stay is appropriate where it "appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court").

On the other hand, further proceedings in accord with the Ninth Circuit panel decision would risk significant harm to the Government's interests. At issue in this case is how litigation that implicates the disclosure of national security information should proceed. The Government contends that the Ninth Circuit panel has imposed a process that does not apply as a matter of law to review of information subject to the state secrets privilege in this case, or to resolution of the claims on that basis. Proceeding, before any further review, under a statutory framework that should not apply would not only perpetuate that error of law but could itself risk the disclosure of the very information that the state secrets

1   privilege seeks to protect in this case.  Notably, the privilege was asserted here to

2   protect information that has not previously been disclosed, including the subjects

3   of Operation Flex, the reasons for the investigations, and the sources and methods

4   that were used, including alleged electronic surveillance.  As the Supreme Court

5   has pointed out, where the very question of whether the Government has

6   undertaken investigative actions involving particular persons is protected,

7   attempting to address the merits of any claims would inherently risk or require

8   disclosure of that very evidence.  *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 412

9   n.4 (2013) (condemning *in camera* proceedings that would reveal subjects of

10  Government surveillance as contrary to national security interests).  While

11  Plaintiffs assert that they seek to avoid issues that implicate the state secrets

12  privilege and FISA displacement issues, in fact their proposal for proceeding

13  would still put directly at issue information subject to the state secrets privilege.

14  *See infra* (section titled "*Plaintiffs' Proposal for Proceeding*").

15          The remaining factors also weigh in favor of staying the proceedings here.

16  Certainly, "the orderly course of justice" supports a stay, as any Supreme Court

17  review would address questions of law that have a direct bearing on further

18  proceedings, particularly if the Supreme Court agrees with this Court's prior

19  decision.  And even if the Supreme Court were to affirm the Ninth Circuit, it would

20  very likely clarify the remaining issues of law and proof in this litigation.  For

21  these reasons, the "economy of time and effort for [the Court], for counsel, and for

22  litigants," *Landis*, 694 F.3d at 1054, also counsels in favor of a stay.

23          Finally, there is little concern that a stay would be "indefinite in nature."

24  *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066

25  (9th Cir. 2007).  Supreme Court Rule 13, as modified by the Supreme Court's

26  Miscellaneous Order of March 19, 2020, prescribes a finite time in which a party

27  may seek review.  If the Government petitions for certiorari, it will do so no later

28  than that date, if not before.  If a petition is filed and certiorari is granted, there is

also a prescribed time in which the parties may brief the merits, and the Supreme Court would presumably resolve the matter in regular order.  While Plaintiffs assert that, if certiorari is sought and *granted*, the Supreme Court may not decide the matter until the 2021-22 term, that is both speculative and, in any event, not a justification for proceeding now.  Plaintiffs chose to appeal this Court's prior decision.  And further review by the Supreme Court remains an available avenue that, if sought and granted, could result in rejection of the FISA displacement theory, affirmance of this Court's decision upholding the state secrets privilege, and the issuance of binding guidance that would impact litigation of the remaining claims.  At the very least, waiting for an initial decision on whether certiorari is sought and granted would cause little prejudice, particularly where there are *Bivens* matters that could be litigated in the meantime.

2. *Government Defendants' Response to Plaintiffs' Proposal for Proceeding*

Plaintiffs appear to acknowledge that further proceedings that implicate the state secrets privilege and FISA displacement theories would not be appropriate while the question of certiorari is pending.  They propose to proceed while a decision on certiorari is pending on two fronts that they assert will not implicate the state secrets/FISA displacement issues.  First, with respect to "search" claims arising under the Fourth Amendment and the FISA Section 1810, Plaintiffs seek to proceed on limited aspect of those claims, pertaining to the alleged collection of audio and visual recordings of conversations to which the informant (Mr. Monteilh) was not a party, and they contend that this would not be affected by any petition for certiorari concerning the state secrets/FISA displacement issues because the Government Defendants did not assert the *Reynolds* state secrets privilege as to the search claims.  As set forth below, the Government disagrees with that assessment.  Second, plaintiffs propose to file for summary judgment on their religious discrimination claims, apparently based on declarations previously

submitted by Mr. Monteilh concerning his activities.  But there is no credible
argument that such summary judgment proceedings on the religion claims would
not implicate the state secrets privilege and FISA displacement issues that would
be at issue in any cert petition.

*Search Claims*:  With respect to the search claims, Plaintiffs seek to litigate
in piecemeal fashion one aspect of the claims that puts at issue one category of
evidence.  By way of background, there are several distinct categories of alleged
conduct at issue in these search claims, including: (1) the collection of audio or
video by Monteilh while he was consensually in the presence of others; (2) the
alleged non-consensual collection of (a) audio or (b) video by Monteilh, either by
leaving devices unattended or otherwise collecting video in locations without
consent; and (3) the alleged planting of audio listening devices by the FBI in the
office of one Plaintiff (Fazaga) and in the home of another (AbdelRahim), and in
several other mosques in Southern California.  *Fazaga*, 965 F.3d at 1027, 1032-33
(describing the categories of alleged surveillance).  The third category of alleged
surveillance, referred to by the Ninth Circuit panel as recordings made by "planted
devices," did not involve Mr. Monteilh; rather, he alleges that he was told by the
individual capacity defendants, FBI Agents Allen and Armstrong, that this
collection occurred.  *Id*. at 1038, 1043.  The plaintiffs claim that all three
categories of alleged surveillance were undertaken in violation of the FISA and
Fourth Amendment.

In proposing to proceed, plaintiffs focus solely on the second category – the
alleged non-consensual collection of audio and video by Monteilh  – and argue that
this is among the information as to which the Government's privilege assertion did
not apply.  As the Government has explained, the FBI had previously disclosed in
a separate criminal proceeding that the informant at issue in this case (Mr.
Monteilh) collected audio and video information for the FBI, and that it was
reviewing that material for possible use in connection with further proceedings.

1  *See* Public Declaration of Mark. F. Giuliano ("Pub. Giuliano Decl.") ¶ 12 (Dkt.

2  33).  But the fact that some evidence relevant to one aspect of the search claims is

3  not privileged does not mean that litigation of the search claims will not implicate

4  the state secrets privilege and the Ninth Circuit's FISA displacement theory.

5        In the first place, plaintiffs err in suggesting the Government did not assert

6  the *Reynolds* privilege over the search claims at all.  Rather, the Government did

7  not initially seek *dismissal* of the search claims on state secrets grounds.  But the

8  Government was careful to note that "it remains possible that the need to protect

9  properly privileged national security information might still foreclose litigation of

10  these claims."  *See* Government's Motion to Dismiss or for Summary Judgment at

11  4 (Dkt. 32).  In short, given the potential availability of some non-privileged

12  evidence as to the informant's collection of audio, the Government proposed to put

13  off the issue of how the state secrets privilege would impact the litigation of the

14  search claims.  One aspect of the search claim that plaintiffs concede would

15  implicate the state secrets privilege and FISA displacement theory is the third

16  category – the alleged planting of devices in the home and office of two plaintiffs.

17  Plaintiffs now propose to take that issue off the table for further proceedings in

18  seeking to avoid any issue raised on certiorari.  But that still would not justify

19  proceeding on one small aspect of the search claims, as Plaintiffs propose.

20        First, if certiorari were sought and granted, and the FISA displacement

21  theory was rejected and this Court's 2012 decision upholding the state secrets

22  privilege was affirmed, that would at least provide important guidance on how any

23  remaining claims should proceed.  For example, such a ruling could underscore

24  that FISA Section 1806(f) proceedings would not apply, and that further litigation

25  of the remaining claims may not risk the disclosure of state secrets.  In any event,

26  the playing field for further proceedings could substantially change from that

27  presented by the panel's decision.

28

Second, even under Plaintiffs' proposal, the Fourth Amendment and FISA search claims could not be litigated to conclusion. That is, if just one aspect of the claims concerning one category of evidence (Monteilh's alleged non-consensual recordings) proceeds, the remaining portion of the claims pertaining to alleged unlawful electronic surveillance through planted devices (category 3) still plainly implicate the state secrets privilege and FISA displacement and would remain. This aspect of the search claims is at the very heart of plaintiffs' theory that FISA displaces the state secrets privilege; indeed, absent as assertion of privilege over alleged electronic surveillance there could be no FISA displacement theory.[11] Accordingly, complete resolution of the claims would still have to await any Supreme Court review.

Third, even if the search claims proceeded solely with respect to the audio/video allegedly collected by Monteilh without consent, the Government has not taken the position that the state secrets privilege would have no impact on this aspect of the claim; as noted, in 2012, the Government specifically noted that possibility. In fact, it is quite foreseeable that information subject to the state secrets privilege, including the scope of Operation Flex, its subjects, the reasons for any investigations, and its sources and methods, could be at risk of disclosure even if this one aspect of the claim were to proceed. For example, at the least,

---

[11] In a footnote, plaintiffs appear to suggest that FISA Section 1806(f) procedures would govern the search claims *regardless* of whether the Government had asserted the state secrets privilege over alleged electronic surveillance. But that makes no sense, and is clearly not what the Ninth Circuit panel or the D.C. Circuit have held. The panel held simply that FISA Section 1806(f) displaced the state secrets privilege asserted in this case *beyond* the Section 1810 claim. And the D.C. Circuit has made quite clear that plaintiffs who merely alleged they were subject to surveillance under the FISA were *not* entitled to use FISA procedures to discover whether they were in fact subject to surveillance. *ACLU Found. of S. Cal.*, 952 F.2d at 462. This basic disagreement as to how Section 1806(f) works thus counsels in favor of a stay pending any Supreme Court review.

1   inquiry into the background of Monteilh's actions could put at issue the basis for,

2   or underlying facts related to, Operation Flex.  Indeed, plaintiffs have consistently

3   argued that the good faith basis for the investigation would be at issue in litigating

4   any claim.  Moreover, this Court has recognized that "'even if the claims and

5   defenses might theoretically be established without relying on privileged evidence,

6   it may be impossible to proceed with the litigation because—privileged evidence

7   being inseparable from nonprivileged information that will be necessary to the

8   claims or defenses—litigating the case to a judgment on the merits would present

9   an unacceptable risk of disclosing state secrets.'" *Fazaga*, 884 F. Supp. 2d at 1045

10  (quoting *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1081 (9th Cir.

11  2010)).  Thus, the fact that some aspect of the search claim implicates some non-

12  privileged evidence does not compel the conclusion that no state secrets issues

13  would arise if this aspect of the claim were litigated in piecemeal fashion.

14         Moreover, there is an important difference between circumstances in 2012

15  and today: whether the search claims could proceed in 2012 based solely on non-

16  privileged evidence was unresolved at the time, but the Government's motion to

17  dismiss argued that the privileged evidence should be off the table for any such

18  litigation.  That is, if any aspect of the search claims were to proceed on non-

19  privileged evidence, the privilege assertion still would have been applicable to

20  further proceedings, and information bearing on the subjects, predicates, and

21  sources and methods of the investigation would remain excluded.  But the Ninth

22  Circuit panel decision has thrown that into uncertainty, having held the privilege

23  assertion is displaced in favor of FISA procedures.  For this reason, if Plaintiffs

24  were allowed to proceed on one purportedly non-privileged aspect of their search

25  claims, and issues were to arise concerning the protection of information under the

26  prior state secrets privilege, as the Government believes is likely, the Ninth

27  Circuit's FISA displacement theory would remain in play even as to the narrow

28  aspect of the claim on which plaintiffs seek to proceed.  Thus, aside from the

1    inherently piecemeal nature of plaintiffs' proposal for proceeding on the search

2    claims, the parties and Court have no clarity as to how future issues of privilege

3    would be resolved in litigation over that claim.

4        *Religion Claims:*  Plaintiffs' proposal for proceeding on their religion

5    discrimination claims, without waiting for resolution of any petition for certiorari,

6    underscores that the state secrets privilege and FISA displacement theory would

7    remain at issue.  Plaintiffs again assert that they have adequate non-privileged

8    evidence, in the form of declarations from Monteilh, to present their summary

9    judgment motion on religious discrimination claims.  They further assert that the

10   Government could respond if necessary with a state secrets assertion, and only then

11   would the question of FISA displacement come into play.  But this suggested

12   approach essentially seeks to replicate proceedings that have led to where the case

13   is today.  Even if plaintiffs believe they could make a prima facie case on summary

14   judgment with non-privileged evidence, the evidence needed to respond to the

15   religious discrimination is at the heart of the state secrets privilege assertion the

16   Government *already asserted* in 2012, as this Court recognized.[12]  And in

17   reversing this Court, the Ninth Circuit panel decision indicated that review of the

18   religion claims, and the *non*-FISA privileged evidence associated with them, also

19   would be subject to Section 1806(f) procedures.  *Fazaga*, 965 F.3d at 1066.

20   _____

21   [12] *See Fazaga,* 884 F. Supp. 2d at 1047 ("[T]he Court is persuaded that privileged
     information provides essential evidence for Defendants' full and effective defense
22   against Plaintiffs' claims—namely, showing that Defendants' purported "dragnet"
     investigations were not indiscriminate schemes to target Muslims, but were
23   properly predicated and focused. Doing so would require Defendants to summon
     privileged evidence related to Operation Flex, including the subjects who may or
24   may not have been under investigation, the reasons and results of those
     investigations, and their methods and sources. Additionally, even if Plaintiffs can
25   successfully show that Defendants' actions substantially burdened their exercise of
     religion with nonprivileged information, defense against Plaintiffs' First
26   Amendment claims entails analysis of whether the Government had a "compelling
     state interest" and its actions were "narrowly tailored" to achieve that interest.").
27

28

Plaintiffs' proposal to proceed with summary judgment on the religion claims now thus would be an exercise in déjà vu – bringing the case back to where it was in 2012. Under Plaintiffs' proposed path forward, the state secrets privilege assertion would squarely be at issue in any summary judgment proceeding – that is apparent now, and there is no point in waiting for the Government to assert it again. Moreover, the Ninth Circuit already has held that FISA procedures would displace that privilege even as to non-FISA information and the religion claim. In these circumstances, it should be apparent that proceeding now on remand with summary judgment on the religion claims would squarely put at issue precisely what could be at issue in any petition for certiorari – whether the state secrets evidence at issue in litigating those claims has been displaced by the FISA procedures.

It is also worth noting that, even assuming the FISA Section 1806(f) procedures did displace the state secrets privilege in this case, Plaintiffs' proposal of moving for summary judgment on the religion claims is in tension with the panel decision as to how those claims would play out. The panel noted that, under the FISA procedures, "Plaintiffs' religion claims will not go forward under the open and transparent processes to which litigants are normally entitled." 965 F.3d at 1040. The panel added: "As it is Plaintiffs who have invoked the FISA procedures, we proceed on the understanding that they are willing to accept those restrictions to the degree they are applicable as an alternative to dismissal, and so may not later seek to contest them." *Id.* Even if this admonition could be read to allow plaintiffs to seek summary judgment on claims that they demanded be litigated *ex parte* under FISA Section 1806(f), it should be apparent that any further adjudication of such a motion would implicate the state secrets privilege and the purported applicability of FISA procedures to non-FISA information and claims. Once again, whether FISA displaces the state secrets privilege in this case would be a central issue if certiorari is sought and granted.

One alternative approach would be for Plaintiffs to *file* their motion for summary judgment, and then for the Court to stay proceedings without requiring a response. That approach would provide additional information as to why adjudication of Plaintiffs' claims that Operation Flex was an indiscriminate dragnet based solely on religion calls for evidence subject to the privilege assertion, including information as to who was being investigated, for what reasons, and through what sources and methods. In this way, Plaintiffs' summary judgment motion should help demonstrate why this Court's prior state secrets dismissal of these claims was correct, but in the meantime further litigation of that motion should not proceed pending a decision on certiorari.

### 3. *Government Defendants' Position on Further Proceedings.*

The Government maintains its position that proceedings should be stayed pending resolution of any petition for certiorari. If certiorari is not sought by the Government, or if any petition for certiorari is not granted by the Supreme Court, the Government believes that further steps in this Court should proceed incrementally, starting with (i) motions practice concerning whether the plaintiffs *Bivens* claims against the individual capacity defendants proceed; and thereafter (ii) motions practice concerning whether the plaintiffs can establish as a factual matter, with non-privileged evidence, their standing as "aggrieved" persons, before any proceedings under Section 1806(f) proceed and before any discovery. If plaintiffs fail to establish their aggrieved status, then the FISA displacement theory would drop out of the case, and any litigation of the remaining claims would proceed in accordance with the exclusion of evidence based on the state secrets privilege. This threshold question should be resolved first before the case proceeds on remand, because it will impact how all other claims are litigated.

Notwithstanding its theory that FISA displaces the state secrets privilege in this case as to all information subject to the privilege assertion and all claims,

1    including the religion claims, the panel's decision leaves open a door for the

2    Government to renew an assertion of the state secrets privilege "should [the

3    panel's] prediction of the overlap between the information to be reviewed under

4    the FISA procedures to determine the validity of FISA-covered electronic

5    surveillance and the information pertinent to other aspects of the religion claims

6    prove inaccurate, or should the FISA-covered electronic surveillance drop out of

7    consideration" ("*if, for instance, Plaintiffs are unable to substantiate their factual

8    allegations as to the occurrence of the surveillance*").  965 F.3d at 1066-67 & n.51

9    (emphasis added).  In that case, "the Government is free to interpose a specifically

10   tailored, properly raised state secrets privilege defense."  *Id*. at 1067.

11       FISA Section 1806(f) applies, by its terms, only in certain circumstances to

12   determine the "legality" of electronic surveillance.  It does not apply to determine

13   the predicate question whether alleged electronic surveillance occurred.  *Compare*

14   18 U.S.C. § 3504 (requiring the government to "affirm or deny" surveillance).

15   Section 1806(f) proceedings apply solely to persons who first establish as a factual

16   matter that they are "aggrieved persons" within the meaning of FISA.  FISA

17   defines "aggrieved" to mean a person who is the target of or subject to electronic

18   surveillance.  *See* 50 U.S.C. §1801(k).  Citing allegations that listening devices

19   purportedly had been planted in the office of Plaintiff Fazaga and home of Plaintiff

20   AbdelRahim, the panel concluded that "Plaintiffs are properly considered

21   aggrieved persons as to those categories of surveillance."  *Fazaga*, 965 F.3d at

22   1053 (citing pages 1038–39 of the panel opinion).  But that observation rested on

23   mere allegations of alleged unlawful electronic surveillance.  *See id*. at 1025–26

24   (emphasizing that "the truth or falsity of [Plaintiffs'] allegations . . . is entirely

25   unproven"); *id*. at 1038 (citing *allegations* of electronic surveillance through the

26   planting of devices in plaintiffs home and office, and other mosques in the area).

27   Mere allegations are not sufficient to proceed under Section 1806(f), however.

28

1   *See Amnesty Int'l*, 568 U.S. at 412 n.4 (rejecting an *in camera* proceeding to

2   determine standing to challenge alleged surveillance because such a procedure

3   "would allow a terrorist (or his attorney) to determine whether he is currently

4   under U.S. surveillance simply by filing a lawsuit challenging the Government's

5   surveillance program"); *ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 468-69 &

6   n.13 (D.C. Cir. 1991) ("[I]f the government is forced to admit or deny such

7   allegations, in an answer to the complaint or otherwise, it will have disclosed

8   sensitive information that may compromise critical foreign intelligence

9   activities.").  The very authority on which the panel relied indicates that Plaintiffs

10  must first establish their aggrieved status as a factual matter before Section 1806(f)

11  proceedings can be triggered.  *See In re Nat'l Sec. Agency Telecomms. Records*

12  *Litig.*, 564 F. Supp. 2d 1109, 1137 (N.D. Cal. 2008) (a litigant must first establish

13  himself as an "aggrieved person" before seeking to make a "motion or request * *

14  * to discover or obtain applications or orders or other materials relating to

15  electronic surveillance  . . . .); *see also* Order Granting Defs.' Mot. for Summ. J.,

16  *Jewel v. NSA*, Civ. 08-4373 (N.D. Cal. April 25, 2019) (Dkt. 462), *appeal*

17  *docketed*, No. 19-16066 (9th Cir. May 21, 2019).

18       Moreover, at least two courts have recognized that the state secrets privilege

19  may be interposed to protect facts concerning *whether* a person is aggrieved *before*

20  Section 1806(f) proceedings are utilized to determine the lawfulness of any such

21  surveillance.  *See Jewel v. NSA*, Civ. 08-4373 (N.D. Cal. April 25, 2019) (Dkt.

22  462); *Wikimedia v. Nat'l Sec. Agency,* 427 F. Supp. 3d 582 (D. Md. 2019).  As

23  noted, the Government's prior privilege assertion protected such information.

24  Unless plaintiffs can establish they are aggrieved persons subjected to the alleged

25  electronic surveillance through non-privileged evidence, the matter should not

26  proceed under Section 1806(f).  In that circumstance, under the panel decision, the

27  question of FISA displacement would drop out, *see Fazaga*, 965 F.3d at 1028 &

28

1  n.5, and the case would revert to application of the state secrets privilege as to the
2  remaining non-FISA information and claims.

3      In sum, to the extent Section 1806(f) may be applicable (which the
4  Government disputes), it cannot be invoked based on mere allegations.  Thus, the
5  first issue to be litigated on any remand – before any attempt to litigate any claims
6  utilizing the FISA Section 1806(f) process – is whether Plaintiffs can establish
7  factually their "aggrieved" status without privileged information.  Mere allegations
8  will no longer suffice when this litigation moves beyond the pleading stage.
9  *Amnesty Int'l, USA*, 568 U.S. at 412 n.4 (rejecting suggestion that the Government
10 could help resolve the standing inquiry by disclosing to a court through an in
11 camera proceeding whether a party is subject to surveillance, noting that it is a
12 plaintiffs' burden to prove their standing by pointing to specific facts, *Lujan v.*
13 *Defs. of Wildlife*, 504 U.S. 555, 561 (1992), "not the Government's burden to
14 disprove standing by revealing details of its surveillance" and because such a
15 process would inherently risk disclosure of national security information);  *see also*
16 *ACLU Found. of S. Cal.* 952 F.2d at 469 ("the government would need only assert
17 that plaintiffs do not have sufficient evidence to carry their burden of proving
18 ongoing surveillance . . . .").

19     Plaintiffs' first response to this approach is to argue that the question of
20 aggrieved status need not be addressed because they do not seek to put the state
21 secrets privilege/FISA displacement at issue for now.  But, as explained, plaintiffs'
22 proposal for proceeding on both the search and religion claims would put the state
23 secrets privilege and FISA displacement theory at issue.  Plaintiffs also contend
24 that the Ninth Circuit has already found they are aggrieved for purposes of Section
25 1806(f), and that Monteilh's declarations would constitute admissible evidence on
26 that point.  Both contentions are wrong.

27     As explained, the Ninth Circuit was addressing solely plaintiffs' *allegations*
28 of being subject to unlawful electronic surveillance, and specifically left open the

1   possibility that plaintiffs may be "unable to substantiate their factual allegations as

2   to the occurrence of the surveillance." *Fazaga*, 965 F.3d at 1066-67 & n.51. Also,

3   the fact that allegations may be set forth in sworn declarations would not establish

4   plaintiffs' alleged aggrieved status as a factual matter, at the summary judgment

5   stage, as subject to electronic surveillance required under Section 1806(f).

6   Notably, for example, Plaintiffs' allegation that the FBI planted devices in Plaintiff

7   Fazaga's office and/or Plaintiff AbdelRahim's home – alleged unlawful electronic

8   surveillance – is based solely on what Monteilh claims to have been told by the

9   FBI. But the fact that Monteilh has attested to something does not establish the

10  matter factually, and a response to his averments would also put at issue

11  information subject to the state secrets privilege—including information that bears

12  on his credibility. Moreover, the mere fact that Monteilh claims he was told

13  something about alleged planted devices in a Plaintiff's home or office would

14  clearly be insufficient at the summary judgment stage to show that Plaintiffs are

15  aggrieved persons for purposes of Section 1806(f). Absent proof of aggrieved

16  status, and in the face of a state secrets assertion over the very issue of whether

17  Plaintiffs are aggrieved, the FISA displacement theory would drop out of the case,

18  and any litigation of the remaining claims would proceed in accordance with the

19  state secrets privilege. Thus, the outcome of motions practice on plaintiffs' alleged

20  aggrieved status would impact all other proceedings on whether FISA procedures

21  or the state secrets privilege would apply. That is why this issue of aggrieved

22  status should be addressed first if the case proceeds, absent a stay pending a

23  petition for certiorari.

24      **B.    Claims Against the United States under the Federal Tort Claims**
25          **Act**

26      The plaintiffs are advocating that the parties proceed to litigate the surviving

27  claims, particularly the search claims (i.e., "the Ninth, Tenth, and part of the

28  Eleventh Causes of Action"), arguing that the "surviving search claims should not

33

be affected by resolution of [the] question [whether FISA preempts the *Reynolds* state secrets privilege], as the Government Defendants did not assert the Reynolds state secrets privilege as to those claims." They further assert that "the surviving search claims [are not] subject to further attack on the pleadings . . . [and that] the Court [should] permit the Parties to initiate discovery on those claims. . . ."

The 11th cause of action arises under the Federal Tort Claims Act (FTCA). Contrary to Plaintiffs' assertion, the FTCA claims are subject to further attack on the pleadings and, if these claims are litigated, information protected by the state secrets privilege is highly likely to be at issue along with the FISA displacement theory for which certiorari is under consideration.

The chart prepared by Plaintiffs describes the FTCA claims as "unlawful search and religious discrimination" claims, but they are described differently in the First Amended Complaint. In paragraphs 254-260, Plaintiffs assert the following FTCA claims based upon the audio and video surveillance:

(1)    Invasion of Privacy under California law;
(2)    Violation of the California constitutional right of privacy;
(3)    Violation of California Civil Code 52.1; and
(4)    Intentional infliction of emotional distress (IIED).

The District Court dismissed the FTCA claims because the discretionary function exception to the FTCA could not be litigated without evidence protected by the state secret privilege. The District Court did not address the United States' other grounds for dismissal, which included:

(1)    Because California law permits law enforcement officers to conduct consensual monitoring, the alleged claims surveillance is not actionable.

(2)    The Amended Complaint fails to state a claim for relief under the California Civil Code Section §52.1 because it does not allege requisite elements that the defendants acted violently or threatened plaintiffs with violence.

1

2

3

(3)  Plaintiffs' claims for IIED, which are based on covert surveillance they claim is ongoing and making their lives difficult, should be dismissed because they fail to allege facts showing that they suffered severe emotional distress.

4

5

6

(4)  Plaintiffs' claims for IIED, which are based upon the informant's conduct that occurred in 2006 and 2007, are barred by the applicable statute of limitations.  28 U.S.C. § 2401(b).

7

8

9

10

11

12

(5)  Plaintiffs' claims for IIED, which are based on audio and video surveillance, are speculative because the surveillance was covert and plaintiffs admit that they did not know about it until February 2009, which was several years after the informant disappeared from the Muslim community.  The covert surveillance, by definition, could not by itself have caused the plaintiffs to suffer emotional distress, and to the extent that the claims are based on the plaintiffs' current beliefs and suspicion they are still under surveillance, such claims are speculative at best.

13

14

(6)  The invasion of privacy and IIED claims must be dismissed because litigating these claims would likely reveal information protected by the state secrets privilege.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Separate and apart from litigating the discretionary function exception argument, if Plaintiffs succeed in defeating a motion to dismiss the FTCA claims, information at issue in litigating these claims will implicate the state secrets privilege and thus the FISA displacement issue, which would be at issue if certiorari is sought and granted.  For example, litigating the key issues for the invasion of privacy and intentional infliction of emotional distress claims would risk or require the disclosure of privileged information.  Litigation of these claims entails an inquiry into whether the alleged intrusions were highly offensive and/or constituted serious invasions of privacy, which may depend upon the degree and setting of each intrusion and the explanation, justification, motive, and objective. *See generally Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 286-87, 211 P. 2d 1063 (Cal. 2009); *Sheehan v. San Francisco 49ers*, 45 Cal. 4th 992, 998, 201 P. 2d 472 (Cal. 2009).  An essential element the plaintiffs must prove to establish intentional

infliction of emotional distress claims is whether the conduct was extreme and
outrageous with the intention of causing, or reckless disregard of the probability of
causing, their emotional distress. The resolution of this element may depend on the
explanation and justification for the alleged conduct.  *See generally Potter v.
Firestone Tire & Rubber Co.,* 6 Cal. 4th 965, 1001, 25 Cal. Rptr. 2d 550 (1993).
Here again, to litigate these issues, evidence concerning what occurred under
Operation Flex—who was subject to investigation, why, and how—would be at
issue or at risk of disclosure.

### **Government Defendants' Proposed Timeline**

| Deadline | Date |
|----------|------|
| Government motion to stay proceedings pending writ proceedings.  If Government seeks certiorari, proceedings stayed until Supreme Court disposes of writ and, if certiorari granted, until Supreme Court rules. | Motion to be filed on September 1, 2020 and noticed for hearing under local rules. |
| Briefing on *Bivens* claims, including in light of the Supreme Court's intervening decision in *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017), or on other grounds those defendants may raise. | TBD by those parties and Court. |
| Motions briefing on whether the plaintiffs can establish their standing factually as "aggrieved" persons before Section 1806(f) proceedings. <br><br> Plaintiffs' Opening Motion | January 22, 2020 if Government does not seek certiorari; or 45 days after SCT denies any petition for writ of certiorari. |
| Government' Response in Opposition and/or Cross Motion | 45 days after Plaintiffs' filing |
| Plaintiffs' Reply Brief and Opposition to any Cross Motion | 45 days after USG filing |
| Government's Reply in Support of any Cross Motion | 30 days after Plaintiffs' filing |

### III.    AGENT DEFENDANTS' STATEMENT

Defendants Tidwell, Walls, Rose, Armstrong, and Allen (the "Agent Defendants") respectfully propose that the Court should proceed with briefing and resolution of renewed motions to dismiss the *Bivens* religious discrimination claims against the Agent Defendants, which could be case-dispositive as to Tidwell, Walls, and Rose and dramatically narrow the claims against Allen and Armstrong.  The Agent Defendants otherwise agree with the Government Defendants that all other proceedings should be stayed pending the Government's potential petition for certiorari.  To the extent the Court disagrees and allows any other matters to proceed, the Agent Defendants request that those proceedings be sequenced so that the Agent Defendants' renewed motions to dismiss can be resolved first, before other proceedings move forward.

Defendants Tidwell, Walls, and Rose are somewhat differently situated from the other Agent Defendants, in that all claims against them have now been dismissed except for the *Bivens* claims alleging unconstitutional religious discrimination (the first, third, and sixth causes of action).  The court of appeals held that qualified immunity bars all other claims against Tidwell, Walls, and Rose entirely, including the Fourth Amendment and FISA claims.  Amended Op. 46-47, 82.  Moreover, the religious discrimination claims survive only to the extent that they assert *intentional* religious discrimination.  *See* Amended Op. 85-89.

Given the narrow scope of the few claims remaining against them, Defendants Tidwell, Walls, and Rose agree with Plaintiffs that the Court should permit the Agent Defendants to renew their motions to dismiss the religious discrimination claims on the ground that no *Bivens* remedy is available, and that the briefing and hearing of that motion should proceed while the government considers whether to seek further review in the Supreme Court of its assertion of the state secrets privilege.  In addition, Defendants Tidwell, Walls, and Rose also moved to dismiss the religious discrimination claims on qualified immunity

grounds, and neither this Court nor the court of appeals has addressed that defense. *See* Amended Op. 96 n.44. The Agent Defendants should accordingly be permitted to renew their qualified immunity defenses along with the *Bivens* issue.

The Agent Defendants disagree with the Plaintiffs that any other litigation should move forward before the *Bivens* and qualified immunity issues have been decided. As the court of appeals emphasized, "there are likely to be few, if any, remaining *Bivens* claims against the Agent Defendants" given the "narrow availability of *Bivens* remedies under current law." Amended Op. 75 n.31; *see also id.* at 81-82 (noting that recent precedent has "severely restricted the availability of *Bivens* actions for new claims and contexts"). If this Court were to conclude that the "severely restricted" availability of any *Bivens* remedy (or qualified immunity) requires dismissal of the religious discrimination claims, *id.* at 81, then no claims would remain against Defendants Tidwell, Walls, and Rose at all, and the claims against Defendants Allen and Armstrong would be quite limited. Accordingly, even if the Court were to deny the stay requested by the Government Defendants, the Agent Defendants respectfully request that resolution of the *Bivens* and qualified immunity issues should proceed first.

That sequencing is appropriate to avoid further delay in the resolution of the Agent Defendants' long-standing motions to dismiss the *Bivens* claims. Under Plaintiffs' proposed schedule, the first order of business would be a Rule 26(f) conference, with nearly two more months passing before the motions to dismiss would be heard. But the Agent Defendants are prepared to renew their motions to dismiss expeditiously, and given how long those motions have been pending, the schedule should ensure that those motions can be briefed, heard, and decided

1    without further delay caused by the pendency of simultaneous discovery and

2    motions practice.[13]

3          Apart from the prospect of further delay, the Agent Defendants should not

4    be subjected to the burdens of discovery while their motions to dismiss remain

5    unresolved—especially because, for Defendants Tidwell, Walls, and Rose, those

6    motions could end this case.  Certainly Defendants Tidwell, Walls, and Rose

7    should not be required to respond to discovery requests or other motions while the

8    *Bivens* and qualified immunity issues remain unresolved. "Qualified immunity is

9    an entitlement not to stand trial or face the other burdens of litigation."

10   *Micenheimer v. Finander*, 2018 WL 5098851, at *8 (C.D. Cal. Aug. 29, 2018)

11   (internal quotation mark omitted), *report and recommendation adopted*, No. CV

12   16-4314-CJC, 2018 WL 5099701 (C.D. Cal. Oct. 16, 2018).  And even if

13   discovery were limited to the other Defendants, those burdens would nonetheless

14   fall on Defendants Tidwell, Walls, and Rose because, as the Supreme Court has

15   recognized, "[i]t is quite likely that, when discovery as to the other parties

16   proceeds, it would prove necessary for [defendants] and their counsel to participate

17   in the process to ensure the case does not develop in a misleading or slanted way

18   that causes prejudice to their position."  *Ashcroft v. Iqbal*, 556 U.S. 662, 685

19   (2009).

20         Plaintiffs attempt to distinguish *Iqbal* on the ground that it involved high-

21   level officials who faced burdens "unique to their status."  *Supra* at 10.  But

22   nothing in *Iqbal* suggests that the Supreme Court's analysis turned on the rank of

23   the defendants.  The Court noted that discovery burdens would be "magnified" for

24   high-level officials, but it nowhere denied the common-sense proposition that any

25   _____

26   [13] Moreover, if this Court were to reject the Agent Defendants' remaining qualified immunity defenses to the *Bivens* claims, that decision would be immediately

27   appealable, *e.g.*, *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 587 (9th Cir. 2008),

28   offering a further reason why discovery should not be permitted to proceed.

individual-capacity defendant (no matter his or her rank) who remains a party facing potential personal liability cannot ignore ongoing discovery against official-capacity defendants, lest that discovery develop in a prejudicial manner.  Nor did the Court qualify its plain statement that "[t]he basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery."  *Iqbal*, 556 U.S. at 685; *see also Herrick v. Strong*, 745 F. App'x 287, 289 (9th Cir. 2018) ("[A] stay of discovery was appropriate here because qualified immunity's determinative impact constitutes more than just a defense to liability—it is immunity from suit altogether"); *Packnett v. Patrakis*, 441 F. App'x 462, 463 (9th Cir. 2011) ("[T]he district court did not err in staying discovery pending resolution of defendants' qualified immunity claim.").  Neither *Iqbal* nor any other case holds that qualified immunity shields *only* high-level officials from the burdens of litigation.

Plaintiffs also argue that the Government-focused discovery they contemplate will impose only minimal burdens on Tidwell, Walls, and Rose and that any such burdens can be disregarded because they would continue to exist even if these Defendants are dismissed from the litigation.  That is incorrect.  The discovery burdens faced by non-parties are materially less substantial than those faced by parties facing the prospect of personal liability.  *See, e.g.*, *Loumiet v. United States*, 315 F. Supp. 3d 349, 354 (D.D.C. 2018) (dismissing argument that discovery should proceed because "Individual Defendants would be involved in discovery anyway even if they are found immune from liability" on grounds that their "role in this case conceivably would differ if … non-party witnesses.").  So long as Tidwell, Walls, and Rose remain defendants, they and their counsel must fully participate in discovery to safeguard their interests.  If those Defendants are

1    found immune and dismissed from the case, their participation in discovery would
2    be far more limited.[14]

3         As to Defendants Allen and Armstrong, Plaintiffs' search claims survive
4    only to the extent they allege violations of FISA and/or the Fourth Amendment for
5    the placement of listening devices in Plaintiff Fazaga's office and/or Plaintiff
6    AbdelRahim's home.  Amended Op. 44-47.  Plaintiffs ask to begin discovery on
7    these claims, because the Government did not move to dismiss them under the
8    state secrets privilege.

9         Discovery on these claims cannot go forward without intruding on matters
10   protected by the state secrets doctrine, because the Government has asserted that
11   the alleged placement of these listening devices is a state secret.  Amended Op. 26
12   (recognizing Government assertion that "whether a particular individual" was an
13   investigatory target and the "particular sources and methods … used in a
14   counterterrorism investigation" were state secrets).  In addition, Plaintiffs have
15   previously argued that the Agent Defendants violated the Fourth Amendment
16   and/or FISA because they placed the listening devices with a discriminatory
17   motive – another area covered by the Government's assertion of state secrets.  *Id.*
18   (recognizing Government assertion that "the initial reasons (*i.e.*, predicate) for an
19   FBI counterterrorism investigation of a particular person" is a state secret).

20        Under the Ninth Circuit's decision, the only way these claims can proceed is
21   by way of the *in camera* and *ex parte* procedures set forth in FISA.  But the
22   application of those procedures is precisely the issue that would be heard by the
23   Supreme Court, assuming the Government seeks certiorari and the high court

24   
_____

25   [14] Plaintiffs suggest that the Agent Defendants could simply "seek this Court's
26   intervention" should they find any particular discovery request to be too
     burdensome.  But having to do so would itself be burdensome.  And by suggesting
27   it, Plaintiffs implicitly acknowledge that if any discovery goes forward, the Agent
     Defendants and their counsel will have to monitor and evaluate the potential
28   consequences of every discovery request Plaintiffs propound.

1   grants it.  Accordingly, Defendants Allen and Armstrong join the Government in

2   requesting that no "discovery" or other litigation of the search claims (except for

3   pleading challenges) be permitted until the certiorari process is concluded.

4          For all these reasons and those offered by the Government Defendants, all

5   discovery should be stayed pending the Government's consideration and potential

6   pursuit of further review in the Supreme Court.  But if the Court disagrees and

7   concludes that some discovery may proceed, the Court should adopt a schedule

8   under which the renewed motions to dismiss the *Bivens* claims are addressed

9   first—with a hearing on those motions no later than November 13, 2020—and

10  defer any Rule 26(f) conference and any other permissible discovery activities until

11  after those motions have been resolved.

12

13  **FOR PLAINTIFFS**

14  Peter Bibring (SBN 223981)
15   *pbibring@aclusocal.org*
    Ahilan T. Arulanantham (SBN 237841)
16   *aarulanantham@aclusocal.org*
    Mohammad Tajsar (SBN 280152)
17  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
18  1313 West Eighth Street
19  Los Angeles, California 90017
    Telephone: (213) 977-9500
20  Facsimile: (213) 977-5297
    Dan Stormer (SBN 101967)
21   *dstormer@hadsellstormer.com*
22  HADSELL STORMER RENICK & DAI, LLP
23  128 N. Fair Oaks Avenue, Suite 204
    Pasadena, California 91103
24  Telephone: (626) 585-9600
25  Facsimile: (626) 577-7079

26

27

28

1

**FOR THE GOVERNMENT DEFENDANTS**

2

ETHAN P. DAVIS

3

Acting Assistant Attorney General

4

*/s/ Anthony J. Coppolino*

5

ANTHONY J. COPPOLINO

Deputy Branch Director

6

E-mail: tony.coppolino@usdoj.gov

7

*/s/ Joseph J. DeMott*

8

JOSEPH J. DEMOTT

9

Trial Attorney

joseph.demott@usdoj.gov

10

Telephone: 202-514-4782

11

*Attorneys for the Federal Bureau of*

*Investigation and Official Capacity Defendants*

12

13

*/s/ Stephen E. Handler*

STEPHEN E. HANDLER

14

Senior Trial Counsel

15

E-mail: stephen.handler@usdoj.gov

U.S. Department of Justice

16

Civil Division, Torts Branch

17

1331 Pennsylvania Avenue N.W. Room 8070N

Washington, D.C. 20530

18

Telephone: (202) 616-4279

19

*Attorney for the United States*

20

21

**FOR DEFENDANTS TIDWELL AND WALLS**

22

23

WILMER CUTLER PICKERING

    HALE AND DORR LLP

24

Katie Moran (SBN 272041)

katie.moran@wilmerhale.com

25

350 South Grand Avenue, Suite 2100

26

Los Angeles, CA  90071

Telephone: (213) 443-5300

27

28

1    WILMER CUTLER PICKERING
       HALE AND DORR LLP
2    Howard M. Shapiro (admitted pro hac vice)
3    howard.shapiro@wilmerhale.com
     Catherine M.A. Carroll (admitted pro hac vice)
4    catherine.carroll@wilmerhale.com
5    1875 Pennsylvania Avenue, NW
     Washington, DC  20006
6    Telephone: (202) 663-6000

7

8    **<u>FOR DEFENDANTS ROSE, ARMSTRONG AND ALLEN</u>**

9
     */s/ Alexander H. Cote*
10   DAVID C. SCHEPER (State Bar No. 120174)
11    *dscheper@scheperkim.com*
     ALEXANDER H. COTE (State Bar No. 211558)
12    *acote@scheperkim.com*
13   JEFFREY L. STEINFELD (State Bar No. 294848)
      *jsteinfeld@scheperkim.com*
14   SCHEPER KIM & HARRIS LLP
15   800 West Sixth Street, 18th Floor
     Los Angeles, California 90017-2701
16   Telephone:   (213) 613-4655
17   Facsimile:   (213) 613-4656

18

19

20

21

22

23

24

25

26

27

28