JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
ANTHONY J. COPPOLINO
Deputy Branch Director
E-mail: tony.coppolino@usdoj.gov
JOSEPH J. DEMOTT
Trial Attorney
E-mail: joseph.demott@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: 202-514-3367
*Attorneys for the Federal Bureau of Investigation and Official Capacity Defendants*

(Additional counsel listed on next page)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YASSIR FAZAGA, et al. | No. 8:11-cv-00301-CJC-VBK |
| Plaintiffs, | **GOVERNMENT DEFENDANTS' REPLY IN SUPPORT OF A STAY OF PROCEEDINGS PENDING PETITION FOR WRIT OF *CERTIORARI*** |
| v. | |
| FEDERAL BUREAU OF INVESTIGATION, et al., | |
| Defendants. | DATE: October 5, 2020<br>TIME: 1:30 PM<br>JUDGE: Hon. Cormac J. Carney<br>CRTRM: 9B |

STEPHEN E. HANDLER
Senior Trial Counsel
E-mail: stephen.handler@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
175 N Street, N.E. Room 11.139
Washington, D.C. 20002
Telephone: (202) 616-4279
*Attorney for the United States*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .........................................................................................................3

    I.    Plaintiffs Misstate the Applicable Standard ................................................3

    II.   The Government Has Established Good Cause for a Stay
         Pending a Decision on *Certiorari*..............................................................5

        A.   Summary Judgment Proceedings on the Religion Claims
             Would Again Put the State Secrets Privilege Directly at Issue. ...........5

        B.   Piecemeal Litigation of One Aspect of the Search Claims
             Would Also Implicate the State Secrets Privilege and Should
             Be Stayed.............................................................................................6

        C.   Further Proceedings on the FTCA Claims Should Also Be
             Stayed. ..............................................................................................10

    III.  The Remaining Interests Weigh in Favor of a Stay. .................................12

CONCLUSION....................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Barnes v. E–Systems, Inc. Grp. Hosp. Med. & Surgical Ins. Plan*,
    501 U.S. 1301 (1991) ................................................................................... 4

*Barr v. East Bay Sanctuary Covenant*,
    140 S. Ct. 3 (Mem.) (2019) ........................................................................... 4

*Billon, Inc. v. Slatin*,
    No. SACV 16-00788-CJC, 2017 WL 2719980 (C.D. Cal. Jan. 26, 2017) ............. 3

*Chen v. St. Jude Med., LLC*,
    No. SACV 17-00143-CJC, 2017 WL 8220441 (C.D. Cal. June 5, 2017) ............. 3

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962) ........................................................................ 3

*Edwards v. Hope Med. Grp. for Women*,
    512 U.S. 1301 (1994) ................................................................................... 4

*Fazaga v. FBI*,
    884 F. Supp. 2d 1022 (C.D. Cal. 2012) ............................................. 1, 5, 8, 11

*Fazaga v. FBI*,
    965 F.3d 1015 (9th Cir. 2020) .................................................................. 1, 5

*Freeman Expositions, Inc. v. Glob. Experience Specialists, Inc.*,
    No. SACV 17-00364-CJC, 2017 WL 6940557 (C.D. Cal. June 27, 2017) ........... 3

*Grivas v. Metagenics, Inc.*,
    No. SACV 15-01838-CJC, 2016 WL 11266835 (C.D. Cal. Mar. 31, 2016) ......... 3

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (Cal. 2009) ......................................................................... 12

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ................................................................................ 3, 12

*Little v. Reclaim Idaho*,
    --- S. Ct. ---, 2020 WL 4360897 (July 30, 2020) ........................................... 4

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) ........................................................................... 3, 12

*Packwood v. Senate Select Comm. on Ethics*
  510 U.S. 1319 (1994) ................................................................................................ 4

*Potter v. Firestone Tire & Rubber Co.,*
  6 Cal. 4th 965 (Cal. 1993) ...................................................................................... 12

*Sheehan v. San Francisco 49ers*,
  45 Cal. 4th 992 (Cal. 2009) .................................................................................... 12

*Snyder & Assoc. Acquisitions LLC v. United States*,
  No. SACV 14-01350-CJC, 2017 WL 10543645 (C.D. Cal. Sept. 20, 2017) ......... 3

# INTRODUCTION

Plaintiffs' Opposition to the Government Defendants' motion for a stay of proceedings rests on the contention that aspects of their remaining "search" and "religion" claims (as well as potentially their Federal Tort Claims Act ("FTCA") claims) could proceed without implicating the state secrets privilege questions that would be at issue if the Supreme Court reviews the Ninth Circuit panel decision in this case. Indeed, Plaintiffs "agree that no litigation should occur as to evidence over which [the Government has] already asserted the *Reynolds* state secrets privilege." Pls.' Opp. to Gov't Defs.' Mot. for Stay ("Opp."), ECF No. 165, at 1. But their arguments that litigation of the search and religion claims could proceed without implicating such evidence are meritless – indeed, Plaintiffs contradict these arguments elsewhere in their own Opposition by acknowledging that the need may arise to assert privilege as to these claims.

Plaintiffs' assertion that their religion claims could proceed to summary judgment without implicating the state secrets privilege can easily be rejected. If *certiorari* is sought and obtained, this Court's prior decision upholding the privilege and dismissing the religion claims as a result would be squarely at issue, *see Fazaga v. FBI*, 884 F. Supp. 2d 1022, 1047 (C.D. Cal. 2012), because the Ninth Circuit panel held that the privilege is displaced even as to those non-FISA claims and non-FISA privileged information at issue, *see Fazaga v. FBI*, 965 F.3d 1015, 1066 (9th Cir. 2020). This is not a close question: Plaintiffs' proposal to proceed to summary judgment on the religion claims would constitute, in their own words, litigation "as to evidence over which [the Government has] already asserted the *Reynolds* state secrets privilege," Opp. at 1, precisely as this Court previously held. Their proposal to effectively replicate a process that occurred in 2012, and which led to the very Ninth Circuit decision for which *certiorari* is being considered, makes no sense.

A closer question is whether Plaintiffs' "search" claims should proceed as

they pertain to one limited factual issue – the alleged collection of audio and video by the informant, Mr. Monteilh – but, here again, a stay pending *certiorari* remains warranted. Plaintiffs misrepresent the Government's prior position as to the search claims; the Government's decision not to seek *dismissal* of these claims in 2012 did not imply that the claims can be litigated without state secrets. Although some non-privileged information exists as to one aspect of the search claims, piecemeal litigation of the matter would still implicate the state secrets issues in this case. Notably, Plaintiffs have previously argued that the basis for the underlying Operation Flex investigations would remain at issue in litigating the search claims, and they carefully do not limit the discovery they would seek to non-privileged issues, nor foreclose the possibility of discovery that would implicate classified information. Indeed, Plaintiffs' Opposition acknowledges that they may seek a review of classified information while the state secrets privilege issue is pending in the Supreme Court. *See* Opp. at 15. Also, any decision by the Supreme Court – including possible affirmance of this Court's decision upholding the state secrets privilege generally – would establish the legal framework on which remaining claims would proceed. If the Ninth Circuit is reversed and this Court's prior decision upholding the privilege assertion is upheld, Plaintiffs could *only* seek and rely upon non-privileged discovery.

In these circumstances, the Court should stay proceedings (except on the *Bivens* claims against individual-capacity Defendants and related issues) until: (1) a decision by the United States on whether to petition the Supreme Court for a writ of *certiorari*; (2) a decision by the Supreme Court on the writ of *certiorari*, if a petition is filed; and (3) resolution of proceedings in the Supreme Court, if a writ of *certiorari* is granted. At the least, the Court should grant a stay pending the first two circumstances, which are only months away, if it prefers not to resolve at this time whether some limited aspect of the search claims may proceed even if the Supreme Court grants *certiorari*.

# ARGUMENT

## I. PLAINTIFFS MISSTATE THE APPLICABLE STANDARD.

The Government's memorandum set forth the standard applicable to whether proceedings may be stayed pending the disposition of related judicial proceedings, including where the question of *certiorari* is at issue. Mem. in Supp. of Gov't Defs.' Mot. to Stay Proceedings ("Mem."), ECF No. 164-1, at 5-6 (discussing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In sum, in deciding whether to stay proceedings pending disposition of another proceeding, courts weigh "(1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

This Court has applied this standard on several occasions. *See, e.g., Billon, Inc. v. Slatin*, No. SACV 16-00788-CJC, 2017 WL 2719980 (C.D. Cal. Jan. 26, 2017) (granting stay pending related state court proceedings); *see also Chen v. St. Jude Med., LLC*, No. SACV 17-00143-CJC, 2017 WL 8220441 (C.D. Cal. June 5, 2017) (same); *Freeman Expositions, Inc. v. Glob. Experience Specialists, Inc.*, No. SACV 17-00364-CJC, 2017 WL 6940557 (C.D. Cal. June 27, 2017) (granting stay pending resolution of interlocutory appeal to Ninth Circuit); *Grivas v. Metagenics, Inc.*, No. SACV 15-01838-CJC, 2016 WL 11266835 (C.D. Cal. Mar. 31, 2016) (granting stay pending resolution of three Ninth Circuit related appeals); *Snyder & Assoc. Acquisitions LLC v. United States*, No. SACV 14-01350-CJC, 2017 WL 10543645 (C.D. Cal. Sept. 20, 2017) (denying stay pending resolution of claims by same plaintiff in the Federal Court of Claims).

Plaintiffs incorrectly seek to engraft additional requirements where a party seeks a stay in connection with a *certiorari* petition, *see* Opp. at 5, based on a

misreading of *Packwood v. Senate Select Comm. on Ethics*, 510 U.S. 1319 (1994) (Rehnquist, J., in chambers). The *Packwood* standard applies when a party seeks to stay an injunction (or affirmatively seeks injunctive relief) pending a petition for *certiorari* – specifically, in those circumstances the applicant must show: (1) a reasonable probability that four Justices would vote to grant *certiorari*; (2) a significant possibility that the Court would reverse the judgment below; and (3) a likelihood of irreparable harm, assuming the correctness of the applicant's position, if the judgment is not stayed. 510 U.S. at 1319-20 (citing *Barnes v. E–Systems, Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1302 (1991) (Scalia, J., in chambers); *see also Edwards v. Hope Med. Grp. for Women,* 512 U.S. 1301 (1994) (Scalia, J., in chambers).[1] The Supreme Court has recently applied *Packwood* to grant a stay of an injunction pending *certiorari*, *see Little v. Reclaim Idaho*, --- S. Ct. ---, 2020 WL 4360897 (July 30, 2020); *see also Barr v. East Bay Sanctuary Covenant*, 140 S. Ct. 3 (Mem.) (2019) (Sotomayor, J., dissenting from grant of stay of a preliminary injunction under the *Packwood* standard). In each of these cases, the applicant for a stay pending *certiorari* sought to stay a prior injunctive order.

      Here, of course, the Government is not seeking to stay injunctive relief pending *certiorari*, and thus does not have to satisfy the requirements for obtaining such relief. The standard applicable here, as this Court has noted in similar circumstances, is whether the balance of interests supports a stay pending resolution of related appellate proceedings that could impact future proceedings in this case. As set forth below, that balance favors the Government here.

---

[1] In *Packwood,* the applicant for a stay sought to halt enforcement of a subpoena *duces tecum*. 510 U.S. at 1319. In *Barnes*, the applicant sought to stay an injunction on state tax collections. 501 U.S. at 1301. And in *Edwards*, Justice Scalia applied the *Packwood* standards to deny a stay of a district court decision enjoining enforcement of a statute that prohibited public funding of abortions.

**Gov't Reply in Supp. of Stay of Proceedings**
**Pending Petition for Writ of *Certiorari***      **Page 4**

## II. THE GOVERNMENT HAS ESTABLISHED GOOD CAUSE FOR A STAY PENDING A DECISION ON *CERTIORARI*.

The principal basis for granting a stay here, pending a decision on *certiorari*, falls under the third *Lockyer* factor – that further review of the Ninth Circuit's decision concerning whether the state secrets privilege is displaced in this case could resolve or simplify issues of proof and questions of law. Plaintiffs contend that litigation may proceed on certain aspects of their search, religion, and FTCA claims. As set forth below, Plaintiffs are wrong to suggest that these matters would not be affected by potential Supreme Court proceedings.

### A. Summary Judgment Proceedings on the Religion Claims Would Again Put the State Secrets Privilege Directly at Issue.

Plaintiffs' assertion that their religion claims can proceed to summary judgment without implicating the state secrets privilege can be dispensed with quickly. As set forth in the Government's memorandum, the core issue in this case is whether Operation Flex constituted an indiscriminate "dragnet" based solely on religion, as Plaintiffs allege, or an appropriately focused group of counter-terrorism investigations. Mem. at 1-3. This Court held that the evidence the Government would need to defend against this allegation – including the subjects, predicates, and sources and methods used in Operation Flex – is properly subject to the state secrets privilege, and dismissed the religion claims on that basis. *Fazaga*, 884 F. Supp. 2d at 1047. That decision was reversed on appeal based on Plaintiffs' theory, accepted by the Ninth Circuit panel, that the state secrets privilege has been displaced by Section 1806(f) of the Foreign Intelligence Surveillance Act ("FISA"), specifically as to the religion claims and non-FISA evidence subject to the state secrets privilege. *Fazaga*, 965 F.3d at 1066.

Plaintiffs' arguments as to why they believe the religion claims can be litigated on summary judgment now, without using "evidence over which [the Government has] already asserted the *Reynolds* state secrets privilege," Opp. at 1,

**Gov't Reply in Supp. of Stay of Proceedings**
**Pending Petition for Writ of *Certiorari*** Page 5

are plainly meritless. Plaintiffs contend that *they* can submit affidavits from the informant, Mr. Monteilh, in support of their summary judgment motion on the religion claims – indeed, they note they already have. Opp. at 9, 16-17. But while Plaintiffs believe they can establish a *prima facie* case with evidence available to them, the obvious problem that has existed in this case from the outset is that the Government cannot fully and effectively respond to allegations that counter-terrorism investigations were an indiscriminate dragnet based on religion without information that is properly protected by the state secrets privilege, as this Court previously held. Indeed, the Ninth Circuit did not reach or disturb this Court's finding that state secrets are needed to resolve the religion claim, but held that FISA procedures would apply to address this question – the key issue for any Supreme Court review. Thus, Plaintiffs' proposal that the Government assert the state secrets privilege *again* in response to its summary judgment motion on the religion claims would kick-start precisely the same process that led to the Ninth Circuit's decision and the present question of whether to seek *certiorari*. That would not be an exercise in efficiency, while the issue of *certiorari* is pending, but one of running in circles. The religion claims are unquestionably bound up with the state secrets privilege, and the Court should await any decision on *certiorari* before venturing down that road again. If the Court's prior decision with respect to the religion claims is upheld, those claims would be dismissed.

### B. Piecemeal Litigation of One Aspect of the Search Claims Would Also Implicate the State Secrets Privilege and Should Be Stayed.

Plaintiffs also contend that one aspect of their "search" claims, which puts at issue whether audio or video collected by the informant violated the Fourth Amendment and FISA, can immediately proceed because the Government did not assert privilege over this particular evidence. The Court should await resolution of any petition for *certiorari* before proceeding on this issue as well, because

proceeding in the manner Plaintiffs' propose would also implicate the state secrets privilege and, thus, issues that a petition for *certiorari* is likely to address.

As the Government has previously explained, Plaintiffs' search claims under the Fourth Amendment and FISA implicate distinct categories of alleged unlawful surveillance – including collections of audio and video by the informant himself, and alleged surveillance in other locations (including Plaintiff Fazaga's office and Plaintiff AbdelRahim's home) that did not involve the informant but purportedly was carried out through listening devices planted by the FBI. *See* Joint Status Report ("JSR"), ECF No. 163, at 23. Plaintiffs do not presently seek to litigate, as part of their search claims, the latter category of alleged unlawful electronic surveillance ("planted devices"), which implicates the state secrets privilege and their FISA displacement theory. *See* Opp. at 6. They seek to proceed with what they contend would be solely non-privileged aspects of the search claims.

Aside from the fact that such piecemeal litigation could not result in complete resolution of the search claims, which unquestionably require resolution of Plaintiffs' FISA displacement theory, there are several concerns with proceeding in even the limited manner that Plaintiffs propose. First, it is highly likely that the commencement of discovery on this claim, even as to purportedly non-privileged evidence, would soon encounter underlying privileged information about Operation Flex, including its subjects and the reasons for investigation. This only stands to reason: no discovery occurs in complete isolation from the underlying allegations and background of the case, and efforts to probe into the investigations would be subject to the prior privilege assertion. Plaintiffs concede as much. They do not contend that the *only* evidence they would seek to litigate the lawfulness of even this limited aspect of their search claims would be the audio and video collected by the informant, but acknowledge the Government's concern that discovery may spill over into classified areas. *See* Opp. at 15 ("Depending on how discovery proceeds, this Court appropriately could order the Government to consider other documents

for release after declassification review."). This is not surprising since, from the outset of this case, Plaintiffs have argued that resolution of their search claims, like the religion claims, puts at issue the basis for Operation Flex. *See* Pls.' Opp. to Gov't Defs.' Mot. to Dismiss ("MTD/SJ Opp."), ECF No. 64, at 13 (arguing in opposing dismissal of FTCA claims that the informant's recordings violated the Fourth Amendment even when he was present because the investigations lacked a good-faith basis). Thus, Plaintiffs do not propose to limit discovery solely to purportedly non-privileged evidence the informant collected; rather, they seek to use that evidence as a jumping-off point for discovery into whether the informant's actions had a lawful basis, and they acknowledge that this could include discovery for which they would seek a classification review of privileged information about the investigations.

This Court has recognized that privileged evidence may be inseparable from non-privileged information. *Fazaga*, 884 F. Supp. 2d at 1045. Thus, the fact that some aspect of Plaintiffs' search claims implicates non-privileged evidence does not mean that piecemeal litigation of this aspect of the search claims would avoid state secrets issues. At most, this issue is unresolved for the search claims, and Plaintiffs have now acknowledged that classified evidence could arise in litigating even a purportedly non-privileged aspect of the claim.

     Plaintiffs assert that in raising these concerns the Government is now taking a position "*directly contrary* to what it represented to the Court [in 2012], where it said litigation on the search claims could proceed because 'the majority' of recordings would be available." Opp. at 16. But that is not accurate, and Plaintiffs are eliding distinct issues. Again as previously explained by the Government, *see* JSR at 24, while the Government did not seek *dismissal* of the search claims in 2012, it carefully noted that "it remains possible that the need to protect properly privileged national security information might still foreclose litigation of these claims." *See* Gov't Defs.' Mot. to Dismiss or for Summ. J., ECF No. 32, at 4.

**Gov't Reply in Supp. of Stay of Proceedings**
**Pending Petition for Writ of *Certiorari***                                                            Page 8

1  Thus, the Government did *not* assert in 2012 that no issue concerning privileged
2  information would arise in litigating the search claims.
3       Moreover, as should be apparent, there is an important difference in the
4  circumstances of the litigation as they existed in 2012 and today: the Government's
5  motion in 2012 argued that the privileged evidence should be excluded from any
6  further litigation, which would have included further proceedings on the search
7  claims based on non-privileged evidence.  This Court upheld that privilege
8  assertion, and thus further proceedings on the search claims, had they occurred
9  thereafter, would have taken the privileged information off the table.  That is, if any
10 aspect of the search claims proceeded based on non-privileged evidence, the
11 privilege assertion still would have governed to protect underlying state secrets
12 concerning the subjects, predicates, and sources and methods of the investigation
13 from any discovery or disclosure.
14      But the Ninth Circuit panel decision has thrown that into uncertainty, having
15 held the privilege assertion is displaced in favor of FISA procedures.  Thus, if
16 Plaintiffs were allowed to proceed on one purportedly non-privileged aspect of their
17 search claims, and issues were to arise concerning the protection of classified
18 information under the state secrets privilege, as the Government believes is likely
19 and Plaintiffs themselves appear to acknowledge, Opp. at 15, the Ninth Circuit's
20 FISA displacement theory would remain in play even as the parties attempt to
21 litigate a purportedly non-privileged aspect of the claims.  In other words, in
22 proceeding now, the state secrets privilege that would have served as a backstop on
23 discovery would be displaced in favor of FISA procedures – a process that
24 Government believes does not apply as a matter of law and would risk harm to
25 national security in the circumstances of this case.  *See* JSR at 20-21.  Indeed,
26 Plaintiffs' proposal for proceeding with respect to both the religion and search
27 claims would very likely force the Government into renewed efforts to protect
28

**Gov't Reply in Supp. of Stay of Proceedings**
**Pending Petition for Writ of *Certiorari*** Page 9

privileged information, directly implicating the Ninth Circuit's ruling while the issue of *certiorari* is unresolved.

For these reasons, a stay pending a decision on *certiorari* is warranted even as to Plaintiffs' proposal for piecemeal litigation of one aspect of the Fourth Amendment and FISA claims. If *certiorari* is sought and granted, the FISA displacement theory is rejected, and this Court's 2012 decision upholding the state secrets privilege is affirmed, that would provide critical guidance on how any remaining claims should proceed. Such a ruling would make clear that the FISA Section 1806(f) procedures do not apply, and that further litigation of remaining claims may not risk or require the disclosure of state secrets. The law of the case applicable to further proceedings, even as to non-privileged evidence, could substantially change from that presented by the Ninth Circuit panel decision.[2]

**C. Further Proceedings on the FTCA Claims Should Also Be Stayed**.

Plaintiffs also argue that the parties could proceed with litigation on their search and religion claims as "part of the Eleventh Cause of Action." Opp. at 7, 9. This cause of action raises tort claims against the United States under the FTCA. *See* First Am. Compl., ECF No. 49, ¶ 256 (invasion of privacy under California law); ¶ 257 (violation of the right of privacy under the California constitution); ¶ 258 (violation of California Civil Code section 52.1); ¶ 259 (intentional infliction of emotional distress). Plaintiffs suggest that the Government may first seek to

---

[2] Plaintiffs mischaracterize the Government's argument as suggesting that "the Supreme Court could affirm this Court's *original ruling*" but "neglect[ing] to mention that it never defended this Court's dismissal of the search claims on state secrets grounds." Opp. at 2 (emphasis added). But Plaintiffs cite nothing here, and the Government has not so argued. Rather in response to a similar observation by Plaintiffs in the Joint Status Report, *see* JSR at 7, n.2, the Government's portion of the JSR (and the memorandum in support of the Government's stay motion) states that the Supreme Court may affirm this Court's decision "*on the state secrets privilege*," including its decision to reject the FISA displacement theory. *See* JSR at 17, 20, 22, 24; Mem. at 8, 11.

**Gov't Reply in Supp. of Stay of Proceedings**
**Pending Petition for Writ of *Certiorari*** Page 10

dismiss the various FTCA claims on grounds other than the discretionary function exception, while *certiorari* proceedings are pending. If *certiorari* proceedings remain on-going after that litigation concludes, Plaintiffs "would seek discovery on the same terms described above—i.e., permit it where relevant to the FTCA claim and not covered by any state secrets privilege," Opp. at 10, but they do not specify which FTCA claims they believe can proceed to discovery.

The Court previously dismissed the FTCA claims on the ground that the discretionary function exception to the FTCA could not be litigated without evidence protected by the state secret privilege. *Fazaga*, 884 F. Supp. 2d at 1047. And if *certiorari* is sought and granted, and this Court's prior decision upholding the state secrets privilege is affirmed, the FTCA claims would be dismissed – thus obviating the need to renew a motion to dismiss the FTCA claims or to consider any discovery with respect to them. It is also unclear what discovery Plaintiffs contemplate and for which FTCA claims, if any renewed motion to dismiss did not resolve the matter. Insofar as discovery would probe the basis for Operation Flex, that plainly would implicate state secrets issues raised by any petition for *certiorari*. And if that discovery were limited to the purportedly non-privileged aspects of the search claims based on the informant's collection of audio and video, the same concerns with that approach described above would apply.

Separate and apart from litigating the discretionary function exception, if Plaintiffs succeed in defeating any renewed motion to dismiss the FTCA claims, information at issue in litigating these claims will implicate the state secrets privilege and thus the FISA displacement issue. As noted, Plaintiffs contend that the resolution of whether the informant's own actions in collecting audio or video were lawful under the FTCA turns in part on the good-faith basis for the investigations. *See* MTD/SJ Opp. at 11. Plaintiffs' claim under California Code Section 52.1 seeks to put at issue the Government's course of conduct in the investigations. *Id.* at 14-16. Litigating the key issues raised by the invasion of

privacy and emotional distress claims also would risk or require the disclosure of privileged information. For example, litigating those claims would require an inquiry into whether the alleged intrusions were highly offensive and/or constituted serious invasions of privacy, which may depend upon the degree and setting of each intrusion and the explanation, justification, motive, and objective. *See generally Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286-87 (Cal. 2009); *Sheehan v. San Francisco 49ers*, 45 Cal. 4th 992, 998 (Cal. 2009). An essential element Plaintiffs must prove to establish intentional infliction of emotional distress is whether the conduct was extreme and outrageous with the intention of causing, or reckless disregard of the probability of causing, their emotional distress. The resolution of this element may depend on the explanation and justification for the alleged conduct. *See generally Potter v. Firestone Tire & Rubber Co.,* 6 Cal. 4th 965, 1001 (Cal. 1993). Thus, even if some discovery could be conducted in connection with any FTCA claim surviving a motion to dismiss, Plaintiffs do not state how these claims could be fairly *resolved* without information regarding the nature and scope of Operation Flex, including who was subject to investigation, why, and how.

### III.   THE REMAINING INTERESTS WEIGH IN FAVOR OF A STAY.

For the reasons described above, proceeding as Plaintiffs propose – with a summary judgment motion on the religion claims, piecemeal adjudication of the search claims, and reopening of the FTCA claims – would not be consistent with "the orderly course of justice." *Lockyer*, 398 F.3d at 1110. Any Supreme Court review of this Court's decision and the Ninth Circuit panel decision displacing the state secrets privilege with FISA procedures would directly bear on further proceedings. And even if the Supreme Court were to affirm the Ninth Circuit, it would very likely clarify the remaining issues of law and proof in this litigation. For these reasons, the "economy of time and effort for [the Court], for counsel, and for litigants," *Landis*, 299 U.S. at 254, also counsels in favor of a stay.

Other factors weigh in favor of a stay pending any Supreme Court review in this case. While this case has been pending a long time, nearly all of that resulted from review of this Court's dismissal in August 2012 – which has taken eight years to date. The Government has the right to consider petitioning the Supreme Court for further review of the Ninth Circuit panel decision, and if that is sought and obtained, the appellate process would remain ongoing. Plaintiffs concede that further proceedings should not intrude on issues that would be before the Supreme Court. Thus, if *certiorari* is sought and granted, the limited additional proceedings they propose would not in any event lead to a resolution of this case.

Also, in alleging that harm would result from further delay, Plaintiffs largely assume the truth of their own allegations that Operation Flex proceeded unlawfully. *See* Opp. at 12. But they do not set forth any evidence that the maintenance of records of investigations that occurred 14 years ago is causing them any present, ongoing harm. They allude to alleged questioning and delays in travel, but cite only the First Amended Complaint filed in 2012 as evidence of such alleged injuries, and make no showing that they are related to Operation Flex or that they are still occurring. Moreover, Plaintiffs in fact seek only retrospective relief in the form of the expungement of records and damages, which would remain available if they prevail. But they do not otherwise allege any ongoing Governmental action that would harm them if a stay were in place for any Supreme Court review, nor explain why a stay would impose a new or different harm than that which resulted from the delay while the Ninth Circuit appeal was pending.

In contrast, aside from the burden of proceeding with limited, piecemeal litigation while the core of this case may be before the Supreme Court, the Government has explained that litigation of the religion claims on summary judgment, aspects of the search claims, and the FTCA claims would risk or require the disclosure of privileged information, which could cause harm to the national security and law enforcement interests of the United States. At the least, Plaintiffs'

proposed course would risk or require a repeat of the kind of state secrets litigation that has brought the case to this point – before resolution of key issues on how this case should proceed. In these circumstances, a limited delay for the Government to determine if it will seek *certiorari*, if the Supreme Court will grant that petition, and then for any final disposition of that review, is appropriate.

The Court at least should wait until the first two steps occur – a decision on whether to seek *certiorari* and, if so, whether any such petition is granted – which Plaintiffs concede would be resolved in the Supreme Court's 2021 term. Depending on when a petition is filed, and the time Plaintiffs seek for any response, it remains possible the matter could be resolved in the Court's 2021 term. But even if not resolved until the 2021-22 term, this Court should await further guidance from the Supreme Court on the central framework for how this case will proceed, before attempting to re-litigate core state secrets issues implicated by the religion claims on summary judgment or nibbling at the margins of other claims where details concerning the underlying counter-terrorism investigations will be at issue.

## **CONCLUSION**

For the foregoing reasons, the Government Defendants respectfully request that the Court grant their motion for a stay of proceedings pending a determination and resolution of a petition for a writ of *certiorari* to the United States Supreme Court.

Dated:  September 21, 2020          Respectfully Submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

/s/ *Anthony. J. Coppolino*
ANTHONY J. COPPOLINO
Deputy Branch Director

/s/ *Joseph J. DeMott*

JOSEPH DEMOTT
Trial Attorney
E-mail: joseph.demott@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC  20530
Telephone: 202-514-3367
*Attorneys for the Federal Bureau of Investigation and Official Capacity Defendants*

STEPHEN E. HANDLER
Senior Trial Counsel
E-mail: stephen.handler@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
175 N Street, N.E., Room 11.139
Washington, D.C. 20002
Telephone: (202) 616-4279
*Attorney for the United States*