No.

# In the Supreme Court of the United States

———————

FEDERAL BUREAU OF INVESTIGATION, ET AL.,
PETITIONERS

*v.*

YASSIR FAZAGA, ET AL.

———————

*ON PETITION FOR A WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE NINTH CIRCUIT*

———————

**PETITION FOR A WRIT OF CERTIORARI**

———————

JEFFREY B. WALL
  *Acting Solicitor General*
    *Counsel of Record*
JEFFREY BOSSERT CLARK
  *Acting Assistant Attorney*
  *General*
EDWIN S. KNEEDLER
  *Deputy Solicitor General*
SOPAN JOSHI
  *Senior Counsel to the*
    *Assistant Attorney General*
JONATHAN Y. ELLIS
  *Assistant to the Solicitor*
  *General*
SHARON SWINGLE
JOSEPH F. BUSA
  *Attorneys*

  *Department of Justice*
  *Washington, D.C. 20530-0001*
  *SupremeCtBriefs@usdoj.gov*
  *(202) 514-2217*

## QUESTION PRESENTED

Section 1806 of the Foreign Intelligence Surveillance Act of 1978 (FISA), 50 U.S.C. 1801 *et seq.*, governs the "[u]se of information" obtained or derived from electronic surveillance for foreign-intelligence purposes under FISA. 50 U.S.C. 1806. Section 1806(c) and (d) require the federal or a state government to provide notice to an aggrieved person whenever it intends to introduce such information as evidence in any proceedings against that person. Section 1806(e) affords the aggrieved person the opportunity to move to suppress any such information that was not obtained in compliance with FISA. And Section 1806(f) establishes special *in camera* and *ex parte* procedures to determine the admissibility of such evidence, if the Attorney General attests that a typical adversarial hearing would harm the national security of the United States. The question presented is as follows:

Whether Section 1806(f) displaces the state-secrets privilege and authorizes a district court to resolve, *in camera* and *ex parte*, the merits of a lawsuit challenging the lawfulness of government surveillance by considering the privileged evidence.

(I)

## PARTIES TO THE PROCEEDING

Petitioners are the United States of America, the Federal Bureau of Investigation (FBI); Christopher A. Wray, in his official capacity as the Director of the FBI; and Kristi K. Johnson, in her official capacity as the Assistant Director of the FBI's Los Angeles Division, each of whom is a defendant in the district court.

Respondents are Yassir Fazaga, Ali Uddin Malik, and Yasser Abdelrahim, each of whom is a plaintiff in the district court; as well as Paul Allen, Kevin Armstrong, Pat Rose, J. Stephen Tidwell, and Barbara Walls, each of whom is a defendant in the district court sued in his or her individual capacity.

## RELATED PROCEEDINGS

United States District Court (C.D. Cal.):

*Fazaga* v. *FBI*, No. 11-cv-301 (Aug. 14, 2012)

United States Court of Appeals (9th Cir.):

*Fazaga* v. *FBI*, No. 12-56867 (July 20, 2020)

(II)

## TABLE OF CONTENTS

Page

Opinions below .................................................................. 1
Jurisdiction ....................................................................... 2
Statutory provisions involved ........................................ 2
Statement ......................................................................... 2
    A.  Legal background ................................................ 2
    B.  The present controversy .................................... 7
Reasons for granting the petition ............................... 14
    A.  The court of appeals' decision is incorrect ................... 16
    B.  The court of appeals' decision warrants further review ............................................................ 30
Conclusion ..................................................................... 34
Appendix A — Court of appeals order and amended opinion (Feb. 28, 2019) .............................. 1a
Appendix B — District court order granting defendants' motion to dismiss based on the state secrets privilege (Aug. 14, 2012) ........... 136a
Appendix C — District court order granting in part defendants' motion to dismiss plaintiffs' FISA claim (Aug. 14, 2012) ................... 181a
Appendix D — Statutory provisions.................................. 196a

## TABLE OF AUTHORITIES

Cases:

*Bivens* v. *Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) .......................... 9

*Burwell* v. *Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) ................................................................. 32

*Chicago & S. Air Lines, Inc.* v. *Waterman S.S. Corp.*, 333 U.S. 103 (1948) .................................... 28

*Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398 (2013) .... 32, 33

*Department of the Navy* v. *Egan*, 484 U.S. 518 (1988) ............................................................. 28, 29

(III)

IV

Cases—Continued:                                               Page

*FNU Tanzin* v. *Tanvir*, 140 S. Ct. 550 (2019) ................... 32

*Fitzgerald* v. *Penthouse Int'l, Ltd.*, 776 F.2d 1236
   (4th Cir. 1985)................................................................. 23

*Franchise Tax Bd.* v. *Hyatt*, 139 S. Ct. 1485 (2019) .......... 28

*General Dynamics Corp.* v. *United States*,
   563 U.S. 478 (2011)................................................. 2, 3, 4, 31

*Gustafson* v. *Alloyd Co.*, 513 U.S. 561 (1995)..................... 21

*Halkin* v. *Helms*, 598 F.2d 1 (D.C. Cir. 1978) ................... 28

*Mohamed* v. *Jeppesen Dataplan, Inc.*, 614 F.3d 1070
   (9th Cir. 2010), cert. denied, 563 U.S. 1002 (2011)....... 4, 19

*Nielsen* v. *Preap*, 138 S. Ct. 1279 (2018) ........................... 32

*Public Citizen* v. *United States Dep't of Justice*,
   491 U.S. 440 (1989)............................................................. 29

*Sterling* v. *Tenet*, 416 F.3d 338 (4th Cir. 2005),
   cert. denied, 546 U.S. 1093 (2006) .................................... 32

*Tenet* v. *Doe*, 544 U.S. 1 (2005)........................................... 30

*Totten* v. *United States*, 92 U.S. 105 (1876) ................... 2, 28

*Trump* v. *Hawaii*, 138 S. Ct. 2392 (2018)........................... 32

*United States* v. *Belfield*, 692 F.2d 141
   (D.C. Cir. 1982) ................................................................. 24

*United States* v. *Burr*, 25 F. Cas. 187 (C.C.D. Va.
   1807) ..................................................................................... 2

*United States* v. *Nixon*, 418 U.S. 683 (1974).................. 3, 28

*United States* v. *Reynolds*, 345 U.S. 1 (1953) ..... 3, 15, 24, 28

*United States* v. *Texas*, 507 U.S. 529 (1993) ...................... 28

*Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338 (2011) ........ 32

Constitution, statutes, and regulation:

  U.S. Const.:
     Art. II ............................................................................. 13

V

Constitution, statutes, and regulation—Continued:     Page

Amend I:

Establishment Clause ................................................ 8

Free Exercise Clause ................................................. 8

Amend. IV ........................................................................ 8

Amend. V (Due Process Clause) ..................................... 8

Federal Tort Claims Act, 28 U.S.C. 1346(b), 2671
*et seq.* ........................................................................ 8

Foreign Intelligence Surveillance Act of 1978,
50 U.S.C. 1801 *et seq.* ............................................. 4, 196a

50 U.S.C. 1801(f)(4) ................................................ 4, 201a

50 U.S.C. 1801(g) ................................................... 23, 201a

50 U.S.C. 1801(h) .................................................... 5, 201a

50 U.S.C. 1803(a) ............................................................ 4

50 U.S.C. 1804(a) ............................................................ 4

50 U.S.C. 1805 ................................................................. 4

50 U.S.C. 1805(a)(2) ...................................................... 5

50 U.S.C. 1805(a)(3) ...................................................... 5

50 U.S.C. 1805(c)(2)(A) ................................................. 5

50 U.S.C. 1806 ............................... 5, 16, 17, 20, 22, 204a

50 U.S.C. 1806(a)-(e) ............................................ 17, 204a

50 U.S.C. 1806(c) ........................... 5, 6, 10, 18, 20, 205a

50 U.S.C. 1806(d) ..............................6, 10, 20, 206a

50 U.S.C. 1806(e) .................................... 6, 20, 206a

50 U.S.C. 1806(f) ................................... *passim*, 207a

50 U.S.C. 1806(g) .................................7, 17, 21, 207a

50 U.S.C. 1809(a) ..................................... 5, 210a

50 U.S.C. 1809(a)(1) ............................... 4, 210a

50 U.S.C. 1810 ...........................5, 8, 9, 10, 21, 26, 212a

50 U.S.C. 1812(a) ......................................... 26

Privacy Act, 5 U.S.C. 552a ................................... 8

VI

Statute and regulations—Continued:                              Page

    Religious Freedom Restoration Act of 1993,
        42 U.S.C. 2000bb *et seq.* ....................................................8
    Exec. Order No. 13,526, 3 C.F.R. 298 (2009 Comp.):
        § 1.1(d), 3 C.F.R. 298.....................................................33
        § 6.1(s), 3 C.F.R. 323.....................................................33

Miscellaneous:

    H.R. Rep. No. 1283, 95th Cong., 2d Sess. Pt. 1 (1978).......21
    *Intelligence Activities and the Rights of Americans:*
        *Book II*, S. Rep. No. 755, 94th Cong., 2d Sess.
        (1976)................................................................................26
    Stephen M. Shapiro et al., *Supreme Court Practice*
        (10th ed. 2013) ...............................................................32
    S. Rep. No. 604, 95th Cong., 1st Sess. (1977).....................21
    S. Rep. No. 701, 95th Cong., 2d Sess. (1978)...........20, 25, 26

# In the Supreme Court of the United States

————

No.

FEDERAL BUREAU OF INVESTIGATION, ET AL.,
PETITIONERS

*v.*

YASSIR FAZAGA, ET AL.

————

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

————

**PETITION FOR A WRIT OF CERTIORARI**

————

The Acting Solicitor General, on behalf of the federal parties, respectfully petitions for a writ of certiorari to review the judgment of the United States Court of Appeals for the Ninth Circuit in this case.[1]

### OPINIONS BELOW

The amended panel opinion of the court of appeals (App., *infra*, 5a-98a), the order denying rehearing en banc (App., *infra*, 3a), and opinions regarding the denial of rehearing en banc (App., *infra*, 98a-135a) are reported at 965 F.3d 1015. The opinion of the district court (App., *infra*, 136a-180a) is reported at 884 F. Supp. 2d 1022. A related opinion of the district court (App., *infra*, 181a-195a) is reported at 885 F. Supp. 2d 978.

————

[1]  This petition is filed on behalf of the official-capacity and agency defendants.  The individual-capacity defendants are separately represented by private counsel at governmental expense.

(1)

2

## JURISDICTION

The judgment of the court of appeals was entered on February 28, 2019. A petition for rehearing was denied and an amended panel opinion was issued on July 20, 2020 (App., *infra*, 1a-135a). On March 19, 2020, this Court extended the time within which to file all petitions for a writ of certiorari due on or after that date to 150 days from the date of the lower court judgment, which, in this case, is December 17, 2020. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

## STATUTORY PROVISIONS INVOLVED

The pertinent statutory provisions are set forth in the appendix to the petition. App., *infra*, 196a-212a.

## STATEMENT

### A. Legal Background

1. The Executive's power and responsibility to safeguard the national security and to protect state secrets from exposure in litigation have been recognized since the earliest years of the Republic. In the 1807 treason trial of Aaron Burr, Chief Justice Marshall recognized that a court must afford "all proper respect" to the President's judgment that, in response to a trial subpoena, the public interest required certain documents "be kept secret." *United States* v. *Burr*, 25 F. Cas. 187, 192 (C.C.D. Va. 1807) (No. 14,694). In *Totten* v. *United States*, 92 U.S. 105 (1876), this Court held that, "as a general principle," "public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential," including state and military secrets. *Id.* at 107. Most recently, in *General Dynamics Corp.* v. *United States*, 563 U.S. 478 (2011), the Court observed that it had long "recognized

3

the sometimes-compelling necessity of governmental se-
crecy by acknowledging a Government privilege against
court-ordered disclosure of state and military secrets."
*Id.* at 484.

The state-secrets privilege is deeply rooted in both
"the law of evidence," *United States* v. *Reynolds*, 345
U.S. 1, 6-7 (1953), and the Executive's "Art[icle] II du-
ties" to protect "military or diplomatic secrets," *United
States* v. *Nixon*, 418 U.S. 683, 710 (1974). Even if a liti-
gant makes a "strong showing of necessity" for discov-
ery or use of information, the privilege applies whenever
"there is a reasonable danger that compulsion of the
evidence will expose military [or other] matters which,
in the interest of national security, should not be di-
vulged." *Reynolds*, 345 U.S. at 10-11. And where it ap-
plies, the privilege is absolute: "[E]ven the most com-
pelling necessity cannot overcome the claim of privilege
if the court is ultimately satisfied that [state] secrets are
at stake." *Id.* at 11.

To invoke the state-secrets privilege, "[t]here must
be a formal claim of privilege, lodged by the head of the
department which has control over the matter, after ac-
tual personal consideration by that officer." *Reynolds*,
345 U.S. at 7-8 (citation omitted). Following a formal
claim, "[t]he court itself must determine whether the
circumstances are appropriate for the claim of privilege
* * * without forcing a disclosure of the very thing the
privilege is designed to protect." *Id.* at 8. As with any
other evidentiary privilege, if the court upholds the gov-
ernment's claim of state-secrets privilege, the privi-
leged information is entirely removed from the case.
See *id.* at 10-11; *General Dynamics*, 563 U.S. at 485
("The privileged information is excluded.").

4

Sometimes, when the privilege is invoked, the case may proceed without the state secrets. See *General Dynamics*, 563 U.S. at 485. "[T]he assertion of the privilege will require dismissal," however, where "litigating the case to a judgment on the merits" even without introducing the privileged evidence "would present an unacceptable risk of disclosing state secrets." *Mohamed* v. *Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1079 (9th Cir. 2010) (en banc), cert. denied, 563 U.S. 1002 (2011). In such a case, where the privilege precludes adjudication of the merits, this Court has recognized that "neither party can obtain judicial relief." *General Dynamics*, 563 U.S. at 486.

2. The Foreign Intelligence Surveillance Act of 1978 (FISA or the Act), 50 U.S.C. 1801 *et seq.*, regulates the government's collection of electronic surveillance for foreign-intelligence purposes.

a. FISA defines "[e]lectronic surveillance" as the acquisition of wire, radio, or other communications within the United States in various contexts. As relevant here, when electronic surveillance is conducted through the "installation or use of an electronic, mechanical, or other surveillance device in the United States" for the purpose of "acquir[ing] information, other than from a wire or radio communication," where "a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes," 50 U.S.C. 1801(f)(4), the Act typically requires that, before the government conducts the surveillance, it must obtain an order from the Foreign Intelligence Surveillance Court. 50 U.S.C. 1805, 1809(a)(1); see 50 U.S.C. 1803(a), 1804(a).

To obtain such an order, the government must establish, *inter alia*, probable cause to believe that the "target of the electronic surveillance" is a foreign power or

5

an agent thereof and that "each of the facilities or places" at which the surveillance is directed is being used, or is about to be used, by a foreign power or its agent. 50 U.S.C. 1805(a)(2). The government must also establish that the "minimization procedures" it will employ are reasonably designed to minimize the acquisition, retention, and dissemination of nonpublic information concerning "United States persons." 50 U.S.C. 1801(h), 1805(a)(3), and (c)(2)(A).

FISA imposes criminal penalties on any person who intentionally engages in unauthorized electronic surveillance "under color of law" or intentionally "discloses or uses information obtained under color of law" by unauthorized electronic surveillance, "knowing or having reason to know that the information was obtained through" unauthorized electronic surveillance. 50 U.S.C. 1809(a). FISA also provides a private claim for damages to any "aggrieved person, other than a foreign power or [its] agent," who has been subjected to electronic surveillance, or about whom information obtained by electronic surveillance has been disclosed or used, in violation of the criminal prohibition. 50 U.S.C. 1810.

b. Section 1806 of FISA regulates the government's "[u]se of information" obtained or derived from electronic surveillance conducted under the Act. 50 U.S.C. 1806. As most relevant here, any person subject to surveillance pursuant to FISA must be afforded notice and an opportunity to be heard before information obtained or derived from that surveillance may be used in any court or agency proceeding against that person.

Section 1806(c) provides that, "[w]henever the Government intends to enter into evidence or otherwise use or disclose in any * * * proceeding * * * , against an aggrieved person, any information obtained or derived

6

from an electronic surveillance of that aggrieved person pursuant to [FISA]," the government must "notify the aggrieved person and the court * * * that the Government intends to so disclose or so use such information." 50 U.S.C. 1806(c); see 50 U.S.C. 1806(d) (imposing the same notice requirement on States and their political subdivisions). Section 1806(e) authorizes an aggrieved person "against whom [such] evidence * * * is to be, or has been, introduced or otherwise used or disclosed" to "move to suppress the evidence" on the ground that (1) "the information was unlawfully acquired" or (2) "the surveillance was not made in conformity with an order of authorization or approval." 50 U.S.C. 1806(e). Section 1806(f) provides, in turn, a mechanism for *in camera* and *ex parte* resolution of the admissibility of such evidence if "the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States." 50 U.S.C. 1806(f).

Specifically, Section 1806(f) authorizes the Attorney General to invoke the *in camera* and *ex parte* procedures

> [w]henever a court or other authority is notified pursuant to subsection (c) or (d), or whenever a motion is made pursuant to subsection (e), or whenever any motion or request is made by an aggrieved person pursuant to any other statute or rule of the United States or any State before any court or other authority of the United States or any State to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under [FISA].

50 U.S.C. 1806(f).

7

When the Attorney General invokes Section 1806(f), the district court in which the aggrieved person's motion was filed—or, "where the motion is made before another authority," the district court "in the same district as the authority"—"shall, notwithstanding any other law, * * * review in camera and ex parte the [FISA] application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. 1806(f). Review under Section 1806(f) proceeds *ex parte* unless disclosure to the aggrieved person "is necessary to make an accurate determination of the legality of the surveillance," in which case the court "may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance." *Ibid.*

If the district court determines "pursuant to subsection (f)" that "the surveillance was not lawfully authorized or conducted," it "shall, in accordance with the requirements of law, suppress the evidence which was unlawfully obtained or derived from electronic surveillance of the aggrieved person or otherwise grant the motion of the aggrieved person." 50 U.S.C. 1806(g). Conversely, "[i]f the court determines that the surveillance was lawfully authorized and conducted, it shall deny the motion * * * except to the extent that due process requires discovery or disclosure." *Ibid.*

**B. The Present Controversy**

1. Respondents are three members of Muslim communities in Southern California. App., *infra*, 140a. They brought this putative class action in 2011 against the United States, the Federal Bureau of Investigation (FBI), former FBI Director Robert Mueller and former

8

Assistant Director of the FBI Los Angeles Field Office Steven Martinez in their official capacities, and five FBI agents in their individual capacities. *Id.* at 141a, 146a. Respondents allege that, from 2006 to 2007, the FBI used a confidential informant, Craig Monteilh, to covertly gather information about Muslims in their communities based solely on their religion. *Id.* at 139a, 142a, 145a.

Respondents allege that the FBI directed Monteilh to engage in various forms of investigation, including non-electronic and electronic surveillance. For example, they allege that Monteilh was directed to "seiz[e] every opportunity to meet people" by "attend[ing] lectures by Muslim scholars," "attend[ing] classes and dawn prayers at mosques," and "work[ing] out with Muslims he met at [the] gym." App., *infra*, 10a, 144a. They allege that Monteilh gathered personal information, like phone numbers and email addresses, through face-to-face encounters at such gatherings. *Id.* at 11a-12a, 144a-145a. They also allege that he collected video recordings capturing the interiors of mosques, homes, and businesses, and audio recordings of conversations, lectures, classes, and other events. *Ibid.* And, finally, respondents allege that FBI agents separately planted audio-listening devices in one respondent's office and another's home. *Id.* at 12a, 34a.

Based on these allegations, respondents assert claims under the Establishment Clause, the Free Exercise Clause, the Fourth Amendment, the equal protection component of the Due Process Clause, the Federal Tort Claims Act (FTCA), Section 1810 of FISA, the Religious Freedom Restoration Act of 1993, the Privacy Act, and California law. App., *infra*, 147a-148a. They seek dam-

9

ages from the FBI agents sued in their individual capacities under *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and Section 1810 of FISA; damages from the government under the FTCA and California law; and an injunction ordering the government "to destroy or return any information gathered" through or derived from unlawful surveillance. App., *infra*, 58a (citation omitted); see *id.* at 148a & n.6.

2. Before the district court, the government formally invoked the state-secrets privilege, through a declaration of the Attorney General, over information concerning whether any particular individual, including each of the respondents, was the subject of an FBI counterterrorism investigation, the reasons for any such investigation, and the particular sources and methods used (including any undisclosed electronic surveillance). App., *infra*, 163a. The government submitted classified declarations explaining in detail why disclosure of that information could reasonably be expected to harm the national security. *Id.* at 163a-164a.

On August 14, 2012, the district court upheld the privilege and dismissed the claims against the government and the official-capacity federal defendants. App., *infra*, 136a-180a. The court determined that disclosure of the privileged evidence "would significantly compromise national security." *Id.* at 165a. And it concluded that "litigation of this action would certainly require or, at the very least, greatly risk disclosure of secret information, such that dismissal at this stage of the proceeding is required." *Id.* at 165a-166a.[2]

---

[2] The district court also dismissed the claims against the individual-capacity defendants on state-secrets grounds with the exception of

10

3. The court of appeals reversed. App., *infra*, 1a-98a. As relevant here, the court held that "the procedures established under FISA for adjudicating the legality of challenged electronic surveillance replace the common law state secrets privilege with respect to such surveillance to the extent that privilege allows the categorical dismissal of causes of action." *Id.* at 37a-38a. Without addressing the district court's determination that further litigation would require the disclosure of state secrets, the court of appeals held that the district court erred in dismissing respondents' claims, instead of relying on Section 1806(f) of FISA as the means to adjudicate respondents' claims on the merits based on the privileged evidence. See *id.* at 37a-67a.

The court of appeals determined that Section 1806(f) was triggered in two ways. First, it construed the Attorney General's declaration invoking the state-secrets privilege to *exclude* certain information—including whether there was any undisclosed electronic surveillance—as constituting notice under Section 1806(c) of the government's intent to *use or disclose* information obtained or derived from electronic surveillance against respondents' claims. App., *infra*, 57a-58a; see 50 U.S.C. 1806(d), (f) (providing for *in camera* and *ex parte* review "[w]henever a court or other authority is notified pursuant to subsection (c) or (d)" of the government's intent to "enter into evidence or otherwise use or disclose" the information in a legal proceeding). Second, the court concluded that a prayer for relief in respondents' complaint—for an order requiring the destruction or return of information gathered in the alleged investigations—constituted a "motion or request * * * to

---

respondents' claims for damages under FISA Section 1810. App., *infra*, 178a-180a, 195a.

11

discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance" under FISA. App., *infra*, 57a (quoting 50 U.S.C. 1806(f)); see *id.* at 58a.

The court of appeals further held that, when the Section 1806(f) procedure applies, it "displace[s] the common law dismissal remedy created by the *Reynolds* state secrets privilege as applied to electronic surveillance within FISA's purview." App., *infra*, 47a; see *id.* at 46a-55a. The court reasoned that "[t]he state secrets privilege may have a constitutional core or constitutional overtones, but, at bottom, it is an evidentiary rule rooted in common law" that can be abrogated by any statute that "speak[s] directly to the question addressed by the common law." *Id.* at 47a, 48a-49a (citations and internal quotation marks omitted). The court concluded that the text of FISA and its legislative history indicated that Congress intended to make Section 1806(f)'s *in camera* and *ex parte* procedure "the exclusive procedure for evaluating evidence that threatens national security in the context of electronic surveillance-related determinations." *Id.* at 50a; see *id.* at 49a-55a.

The court of appeals accordingly reversed the district court's dismissal based on the Attorney General's assertion of the state-secrets privilege and remanded for further proceedings. App., *infra*, 92a-98a. The court instructed that, on remand, to the extent plaintiffs are "aggrieved persons" within the meaning of FISA, the district court "should, using § 1806(f)'s *ex parte* and *in camera* procedures, review any 'materials relating to the surveillance as may be necessary,' including the evidence over which the Attorney General asserted the state secrets privilege, to determine whether the elec-

12

tronic surveillance was lawfully authorized and conducted." *Id.* at 92a-93a (citation omitted). "As permitted by Congress," the court continued, "'[i]n making this determination, the court may disclose to [respondents] * * * portions of the application, order or other materials relating to the surveillance'" if "'necessary to make an accurate determination.'" *Id.* at 93a (quoting 50 U.S.C. 1806(f)) (first set of brackets in original).

The court of appeals further held that, once the district court used the Section 1806(f) procedures to determine the lawfulness of the electronic surveillance in resolving the merits of respondents' claims, "it c[an] rely on its assessment of the same evidence * * * to determine the lawfulness of the surveillance falling outside FISA's purview." App., *infra*, 95a. The court reasoned that "[i]t would stretch the privilege beyond its purpose to require the district court to consider the state secrets evidence *in camera* and *ex parte* for one claim, but then, when considering another claim, ignore the evidence and dismiss the claim." *Ibid.* The court of appeals stated that, if its "prediction of the overlap between the information to be reviewed * * * to determine the validity of FISA-covered electronic surveillance and the information pertinent to other aspects" of the claims turned out to be inaccurate, the government would be "free to interpose a specifically tailored, properly raised state secrets privilege defense." *Ibid.*

4. The court of appeals denied rehearing en banc by a deeply divided vote. App., *infra*, 3a.

a. Judges Gould and Berzon, both members of the original panel, concurred in the denial of rehearing en banc, joined by three other judges. App., *infra*, 98a-108a. In their joint concurrence, Judges Gould and Berzon reiterated the reasoning of the panel opinion, and

13

stated that, in their view, the panel decision deprives the government "only" of the dismissal remedy "that sometimes follows the successful invocation of the state-secrets evidentiary privilege," not the state-secrets privilege itself. *Id.* at 102a. In a footnote, they stated that if a district court, in following the Section 1806(f) procedures, were to order the disclosure of state secrets to opposing counsel under that provision to facilitate the court's adjudication of the merits of respondents' claims, "nothing in the panel opinion prevents the government from invoking the state secrets privilege's dismissal remedy as a backstop at that juncture." *Id.* at 100a n.1.

Senior District Judge Steeh, the third member of the panel, filed a brief statement respecting the denial of rehearing en banc, "agree[ing] with the views expressed by Judges Berzon and Gould in their concurrence." App., *infra*, 108a.

b. Judge Bumatay, joined by nine other judges, dissented from the denial of rehearing en banc. App., *infra*, 109a-135a. Judge Bumatay observed that the Executive's authority "to prevent the disclosure of information that would jeopardize national security" has been recognized "[f]rom the earliest days of our Nation's history." *Id.* at 108a. He explained that this authority "lies at the core of the executive power" vested in the President by Article II and in the "President's authority as Commander in Chief." *Ibid.* And he noted that, when this Court "confronts a legislative enactment implicating [such] constitutional concerns," "it has commonly required a clear statement from Congress before plowing ahead * * * out of a due respect for those constitutional concerns." *Id.* at 110a. In his view, Section 1806(f) "fall[s] pitifully short of th[at] standard." *Id.* at 121a.

14

Judge Bumatay explained that, on its face, Section 1806(f) does not apply in these circumstances and does not displace the state-secrets privilege. Instead, Section 1806(f) provides procedures to determine the limited issue of the admissibility of electronic-surveillance evidence when the government seeks to use such evidence against an aggrieved person in litigation. App., *infra*, 108a, 127a-134a. He explained that, contrary to the panel's opinion, the government's invocation of the state-secrets privilege to *remove* evidence from the case did not trigger Section 1806(f)'s procedures because it did not provide notice of an intent to *use* that evidence against respondents. *Id.* at 128a-130a. He likewise concluded that respondents' prayer for relief to destroy or return any information obtained or derived from government surveillance did not qualify as a motion or request "'to discover, obtain, or suppress evidence or information'" that would trigger Section 1806(f), reasoning that that language applies only to motions to suppress or other similar procedural requests, not "substantive requests for relief." *Id.* at 132a (citation omitted); see *id.* at 131a-134a.

### REASONS FOR GRANTING THE PETITION

This case raises exceptionally important questions concerning the Executive Branch's responsibility under the Constitution to protect the national security of the United States. The court of appeals' decision has the startling consequence of transforming a limited provision of FISA that was designed to *safeguard* national-security information into a mechanism for overriding the Executive's invocation of the state-secrets privilege and for adjudicating the merits of private-party claims for substantive relief on the basis of state secrets. The court of appeals' decision conflicts with this Court's

15

clear admonition that courts should not endanger national security by allowing state secrets to be used in litigation, "even by the judge alone, in chambers." *United States* v. *Reynolds*, 345 U.S. 1, 10 (1953). It is deeply misguided and warrants this Court's review.

As the ten judges who dissented from the denial of rehearing en banc correctly recognized, Section 1806(f) of FISA creates a limited, government-protective procedure for resolving questions of admissibility or suppression when the government affirmatively seeks in litigation to use electronic-surveillance evidence against a person who was subject to the surveillance. It does not create a freestanding *in camera* and *ex parte* mechanism for resolving the merits of a case brought against the government or its officers on the basis of evidence that the government seeks, on state-secrets grounds, to exclude—much less for resolution of the lawfulness of *non*-electronic surveillance. Nor, even more fundamentally, does Section 1806(f) silently displace the longstanding and constitutionally rooted state-secrets privilege, which enables the Executive to fulfill its constitutional duty to protect national-security information.

The Ninth Circuit's decision to the contrary poses a substantial risk that state secrets will be disclosed on remand in this case. And it has already formed the basis for requests by inventive litigants in other pending cases brought against the government to "dodge the state secrets privilege" by invoking Section 1806(f). App., *infra*, 111a (Bumatay, J., dissenting from denial of rehearing en banc). If left undisturbed, the panel's opinion threatens to leave the government "powerless to prevent the disclosure of state secrets" in defending itself against such claims. *Ibid.* And "[m]ost alarming[ly]," it could "lead to the disclosure of state secrets

16

to the very subjects of the foreign-intelligence surveillance." *Id.* at 110a. Before such results are permitted, this Court's review is warranted.

### A. The Court Of Appeals' Decision Is Incorrect

The court of appeals held that the *in camera*, *ex parte* procedures under Section 1806(f) may be triggered whenever the government invokes the state-secrets privilege to *exclude* evidence that was allegedly obtained by or derived from electronic surveillance or whenever a plaintiff files suit challenging the legality of alleged electronic surveillance and requests an order to destroy or return information gathered through such surveillance. App., *infra*, 57a-58a. The court further held that, where Section 1806(f) applies, it permits the district court to adjudicate the merits of substantive claims for relief by considering the very evidence over which the government asserted the privilege. *Id.* at 47a. Both holdings are incorrect and warrant this Court's review.

1. a. Section 1806, titled "Use of information," regulates how the government may use or disclose evidence obtained or derived from electronic surveillance conducted under FISA. 50 U.S.C. 1806. Subsection (a) requires that such information "may be used" only in compliance with privacy-protective minimization procedures; subsection (b) provides that such information "may only be used" with the advance authorization of the Attorney General; subsections (c) and (d) require that, if a government entity seeks to "use or disclose" such information "against an aggrieved person" in a legal proceeding, the government must "notify the aggrieved person"; and subsection (e) provides that an aggrieved person against whom the electronic-surveillance information is to be "used or disclosed" may "move to

17

suppress" the information "on the ground[ ] that" it was "unlawfully acquired." 50 U.S.C. 1806(a)-(e). The provision at issue here is subsection (f).

In keeping with the rest of Section 1806, subsection (f) creates a procedure for determining whether the government can introduce evidence obtained or derived from electronic surveillance against an aggrieved person, or whether such evidence must be suppressed, in circumstances when a typical adversarial hearing on the question of such use by the government would "harm the national security." 50 U.S.C. 1806(f). When the Attorney General attests to such harm, a district court reviews the underlying FISA application, order, and related materials *in camera* and *ex parte* to determine "the legality of the surveillance," and may disclose the relevant materials to the aggrieved person only where "necessary to make an accurate determination." *Ibid.* If the court "determines that the surveillance was not lawfully authorized or conducted, it shall * * * suppress the evidence [that] was unlawfully obtained or derived from electronic surveillance of the aggrieved person or otherwise grant the motion." 50 U.S.C. 1806(g). Conversely, "[i]f the court determines that the surveillance was lawfully authorized and conducted, it shall deny the motion * * * except to the extent that due process requires discovery or disclosure." *Ibid.*

By its terms, Section 1806(f)'s procedures are available only in three circumstances: first, when the government provides notice under subsections (c) and (d) of its intent to "use or disclose" electronic-surveillance evidence against an aggrieved person in a legal proceeding; second, when an aggrieved person against whom electronic-surveillance evidence has been, or is to be, used or disclosed files a motion to suppress under

18

subsection (e); or, third, "whenever any motion or request is made by an aggrieved person pursuant to any other statute or rule of the "United States" to "discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under [FISA]." 50 U.S.C. 1806(f). Because the government has no intention of using or disclosing any FISA-obtained or FISA-derived evidence in this case and respondents have not filed any motion to suppress or similar procedural motion in an effort to preclude such (non-existent) use or disclosure of any FISA-obtained or FISA-derived evidence, Section 1806(f) does not apply.

b. The court of appeals concluded that Section 1806(f) provides the exclusive procedure for resolving respondents' claims on the merits and permits the court to rely on such evidence, notwithstanding the Attorney General's invocation of the state-secrets privilege. The court reasoned that the first and third grounds for invoking those procedures are satisfied here. Both conclusions are incorrect.

i. As to the first ground, the court of appeals concluded that the government's assertion of the state-secrets privilege with respect to certain categories of information in this case constituted notice under Section 1806(c) of the government's intent "to enter into evidence or otherwise use or disclose" FISA-obtained or FISA-derived information against respondents in this lawsuit, 50 U.S.C. 1806(c). See App., *infra*, 57a-58a. The court reasoned that it was "because the Government would like to use this information to defend itself that it * * * asserted the state secrets privilege." *Id.* at 57a. That reasoning is misguided.

19

The government invoked the state-secrets privilege for the same reason that any party asserts any evidentiary privilege: to *prevent* the introduction or disclosure of the privileged information. As the declaration of the Attorney General explained, disclosure of the privileged information—including whether or not there was any electronic surveillance—"could reasonably be expected to cause significant harm to the national security." Holder Declaration, D. Ct. Doc. 32-3, at 2 (Aug. 1, 2011). The government sought to avoid that result by precluding its use. By the panel's reasoning, a litigant who asserts the attorney-client privilege signals his intent to use or disclose private communications with counsel, or a husband who asserts the marital-communications privilege signals his intent to use or disclose private conversations with his spouse. But, of course, they do nothing of the sort. "Such upside-down logic should not stand." App., *infra*, 128a (Bumatay, J., dissenting from denial of rehearing en banc).

To be sure, invoking the state-secrets privilege to *remove* evidence from a case may in some circumstances result in dismissal of the plaintiff's claims, see *Mohamed* v. *Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1083 (9th Cir. 2010) (en banc), cert. denied, 563 U.S. 1002 (2011), but that potential outcome does not convert the invocation of the privilege into an attempt to *introduce* the privileged evidence that would trigger FISA's *in camera* procedures.

ii. As to the third ground for invoking Section 1806(f), the court of appeals concluded that respondents' substantive prayer for relief in their complaint for an injunction requiring the government to "destroy or return any information gathered through the [allegedly] unlawful surveillance program" constituted a "motion

20

or request * * * made by an aggrieved person * * * to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance" under FISA. App., *infra*, 58a; 50 U.S.C. 1806(f). But in the context of Section 1806 and the Act as a whole, that conclusion too is implausible.

The rest of Section 1806 and its title make clear that Section 1806 concerns the government's use or disclosure of FISA-obtained and FISA-derived evidence. The immediately preceding subsections demonstrate that subsection (f), in particular, concerns the government's attempt to use or disclose such evidence against an aggrieved person in a legal proceeding. And the three grounds for invoking Section 1806(f) each fit comfortably within that framework. The first ground applies whenever the government provides notice under Section 1806(c) or (d) of its intent to "use or disclose" FISA-obtained or FISA-derived material against the aggrieved person. 50 U.S.C. 1806(c) and (d); see 50 U.S.C. 1806(f). The second ground applies when the aggrieved person invokes Section 1806(e) to "suppress" such material. 50 U.S.C. 1806(e); see 50 U.S.C. 1806(f). And the third ground serves as a backstop to the first two, ensuring that an aggrieved person cannot prevent the Attorney General from invoking Section 1806(f)'s *in camera*, *ex parte* procedures by seeking to suppress evidence or obtain discovery of FISA materials by invoking "any *other* statute or rule of the United States or any State." 50 U.S.C. 1806(f) (emphasis added). As the Senate Report explains, the third ground prevents the "carefully drawn" procedures of Section 1806(f) "from being bypassed by the inventive litigant using a new statute, rule or judicial construction." S. Rep. No. 701, 95th Cong., 2d Sess. 63 (1978) (1978 Senate Report); see

21

H.R. Rep. No. 1283, 95th Cong., 2d. Sess. Pt. 1, at 91 (1978); S. Rep. No. 604, 95th Cong., 1st Sess. 40 (1977).

Against that backdrop, respondents' prayer for relief on the merits cannot be understood as a "request" to "discover, obtain, or suppress" FISA-obtained or FISA-derived information that would trigger the Section 1806(f) process. 50 U.S.C. 1806(f); see App., *infra*, 58a. A word or phrase in a statute "is known by the company it keeps." *Gustafson* v. *Alloyd Co.*, 513 U.S. 561, 575 (1995). Even if a civil complaint's prayer for final judgment and substantive relief might be colloquially described as a "request," it is nothing like the sort of procedural motion to which Section 1806(f) is directed. Nor would awarding such relief on final judgment plausibly be described as granting the "[s]uppression of evidence" or other "motion of the aggrieved person"—the only relief that a district-court proceeding under Section 1806(f) can afford. 50 U.S.C. 1806(g).

Contrary to the court of appeals' assertion, the existence in Section 1810 of a private cause of action for specified violations of FISA does not suggest a broader reading. The court reasoned that "[i]t would make no sense" to provide procedures for reviewing national-security evidence "but not intend for those very procedures to be used" under Section 1810. App., *infra*, 61a. Section 1806(f) may well apply to a covered procedural motion in such a case. But for the reasons described above, Section 1806(f) can no more be read to authorize *in camera* and *ex parte* resolution of the *merits* of a Section 1810 claim, than it can be read to authorize resolving any other substantive claim. The court provided no basis for its contrary conclusion, other than its bare assertion.

22

In short, by holding that Section 1806(f) provides a vehicle for *in camera*, *ex parte* resolution not simply of the admissibility of FISA-obtained or FISA-derived evidence, but of the *merits* of respondents' civil claims challenging electronic and non-electronic surveillance, the decision below "jam[s] a square peg into a round hole." App., *infra*, 134a (Bumatay, J., dissenting from denial of rehearing en banc).

2. The court of appeals significantly compounded its error by further holding that Section 1806(f)'s procedures preclude the government from invoking the state-secrets privilege to remove any sensitive national-security information from a case in which Section 1806(f) applies. The court reasoned that, in enacting Section 1806(f), Congress "'"sp[oke] directly" to the question addressed by the [privilege]'" and that, because the privilege "is an evidentiary rule rooted in common law, *not* constitutional law," that was sufficient to displace "the common law dismissal remedy created by the *Reynolds* state secrets privilege as applied to electronic surveillance within FISA's purview." App., *infra*, 47a, 48a-49a (citation omitted). Once again, the court was wrong on both counts.

a. Nothing in Section 1806(f) speaks—directly or indirectly—to displacing the state-secrets privilege or the government's ability to protect the national security by removing state secrets from a case. The privilege is not mentioned in the text of that provision or anywhere in Section 1806. Nor have the court of appeals or plaintiffs identified anything in FISA's legislative history suggesting that Congress intended to displace the privilege. And nothing in the operation of Section 1806(f) is incompatible with the continued vitality of the privilege.

23

The court of appeals observed that Section 1806(f) and the state-secrets privilege are both "animated by * * * threats to national security," and it described Section 1806(f) as, "'in effect, a "codification of the state secrets privilege for purposes of relevant cases under the FISA."'" App., *infra*, 51a (citation omitted). But the two measures have different scopes; they apply in different circumstances; they are invoked by different officials; and they address national-security concerns in diametrically opposite ways.

Section 1806(f) applies when the government seeks to "use or disclose" electronic-surveillance information against an aggrieved person in legal proceedings, typically a criminal case. It provides a mechanism for adjudicating whether that information may be introduced into evidence or must be suppressed. In keeping with the focus on the government's position in litigation, the Attorney General (or his delegee)—the official primarily responsible for government litigation—triggers those statutory procedures. 50 U.S.C. 1801(g), 1806(f). If the government prevails under Section 1806(f)'s procedures, the government may introduce the evidence into the proceeding.

By invoking the state-secrets privilege, by contrast, the government seeks to *remove* information from a case to protect the national security from harms that could result from its use or disclosure. The privilege is invoked most often where the government is a defendant, but also may apply in a case in which the government is not even a party. See, *e.g.*, *Fitzgerald* v. *Penthouse Int'l, Ltd.*, 776 F.2d 1236 (4th Cir. 1985). In keeping with that broader focus, the state-secrets privilege is invoked by the "head of the department" responsible for the national-security information (*not* necessarily

24

the Attorney General), who must "personal[ly]" (*not* through a delegee) make a privilege claim. See *Reynolds*, 345 U.S. at 7-8. It generally forecloses even *in camera* consideration. See *id.* at 10 ("[T]he court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers."). And if the privilege is upheld, the privileged information may *not* be introduced or relied upon in the case by anyone.

In light of those differences, there is no reasonable basis to conclude that, by providing a means for the government to *introduce* FISA-obtained or FISA-derived evidence in a legal proceeding, Congress implicitly intended to prevent the government from *excluding* privileged evidence for national-security purposes. Indeed, even before FISA was enacted, courts used *in camera* procedures to determine the legality of foreign-intelligence surveillance in appropriate circumstances for purposes of determining whether evidence resulting from such surveillance could be used by the government. See *United States* v. *Belfield*, 692 F.2d 141, 149 (D.C. Cir. 1982) ("In this circuit and in others, it has constantly been held [pre-FISA] that the legality of electronic, foreign intelligence surveillance may, even should, be determined on an *in camera*, *ex parte* basis."). If Congress effectively codified anything in Section 1806(f), it was that pre-FISA practice. "Given that ex parte, in camera review procedures coexisted with the state secrets privilege before FISA, there's no reason to construe Congress's codification of such procedures as an intent to eliminate the privilege." App., *infra*, 124a (Bumatay, J., dissenting from denial of rehearing en banc).

25

The court of appeals emphasized that Section 1806(f)
provides that, "'whenever'" one of the triggering condi-
tions is met, the *in camera*, *ex parte* procedures "'shall'"
be used "'notwithstanding any other law.'" App., *infra*,
50a (quoting 50 U.S.C. 1806(f)) (emphasis omitted).  But
that mandatory language is expressly conditioned on
the Attorney General's invocation of the Section 1806(f)
procedures by sworn affidavit.  See 50 U.S.C. 1806(f)
(requiring a district court to conduct *in camera* review,
"notwithstanding any other law, *if* the Attorney General
files an affidavit under oath that disclosure or an adver-
sary hearing would harm the national security") (em-
phasis added).  It speaks only to the *type* of review the
court must undertake in those circumstances—"in cam-
era and ex parte," rather than adversarial adjudication
in open court.  *Ibid.*  Thus, Congress's use of such lan-
guage is designed to protect the *government's* ability to
channel certain motions through Section 1806(f), re-
gardless of what procedure the aggrieved person at-
tempts to invoke.  See pp. 20-21, *supra*.  It was not in-
tended to preclude the government from protecting na-
tional security by invoking the state-secrets privilege to
prevent the use of the evidence in the case altogether.

The 1978 Senate Report makes that point clear.  As
that report explains, Congress's use of broad, manda-
tory language, like "'notwithstanding any other law,'"
was intended to "make very clear that the procedures
set out in [Section 1806(f)] apply whatever the underly-
ing rule or statute referred to in the [aggrieved per-
son's] motion" to suppress, discover, or obtain FISA-
obtained or FISA-derived evidence.  1978 Senate Re-
port 63.  At the same time, however, the report explains
that, even when Section 1806(f) would otherwise apply,

26

the government may always "prevent[]" a court's "adjudication of legality" by simply "choos[ing]" to "forgo the use of the surveillance-based evidence" and thereby avoid the risk that even Section 1806(f)'s protective procedures "would damage the national security." *Id.* at 65.

The court of appeals found support for its contrary reading in unrelated and general statements in FISA's legislative history about the need to enact "fundamental reform," in order to provide the "exclusive legal authority for domestic security activities" and a civil remedy to "afford effective redress to people who are injured by improper federal intelligence activity." App., *infra*, 53a-54a (quoting *Intelligence Activities and the Rights of Americans: Book II*, S. Rep. No. 755, 94th Cong., 2d Sess. 289, 297, 336 (1976)). But those statements describe nascent proposals for reform several years before FISA was enacted, not actual statutory provisions—much less the provision at issue here. To the extent they are relevant to interpreting the final legislation, they are reflected in FISA's provisions (1) making the FISA warrant procedures the "exclusive" authority for domestic electronic surveillance for foreign-intelligence purposes, 50 U.S.C. 1812(a); see 1978 Senate Report 71 ("This statement puts to rest the notion that Congress recognizes an inherent Presidential power to conduct such surveillances."); and (2) providing a private cause of action for damages based on criminal violations of FISA's procedures, see 50 U.S.C. 1810. They have no bearing on the question presented here.

In the end, not even the panel itself appears to have had confidence in any purported congressional intent to displace the state-secrets privilege. In response to the concern that the panel's opinion might require a district court to disclose sensitive national-security information

27

to the subjects of the government's surveillance, see App., *infra*, 125a (Bumatay, J., dissenting from denial of rehearing en banc), two members of the panel announced in their concurrence in denial of rehearing en banc that, if the district court ordered such disclosure pursuant to Section 1806(f), "nothing in the panel opinion prevents the government from invoking the state secrets privilege's dismissal remedy as a backstop at that juncture," *id.* at 100a n.1 (Gould & Berzon, JJ., concurring in denial of rehearing en banc). The third member of the panel "agree[d]." *Id.* at 108a (Steeh, J., statement regarding denial of rehearing en banc). But neither opinion explains how Section 1806(f) could be read to displace the state-secrets privilege, but only so far as disclosure to the aggrieved party is not ordered during the Section 1806(f) proceedings. Nothing in the text, structure, nor history of FISA supports such a line, and subjecting the national security to such procedures is incompatible with the privilege's vesting of the responsibility and authority to protect state secrets in the Executive.

b. Finally, if there were any doubt that Congress did not displace the state-secrets privilege, any ambiguity in Section 1806(f) should be construed in favor of retaining the privilege.

The state-secrets privilege is a longstanding feature of our legal system, deeply rooted in early Anglo-American law. As Judge Bumatay explained, "[f]rom the earliest days of our Nation's history, all three branches of government have recognized that the Executive has authority to prevent the disclosure of information that would jeopardize national security." App., *infra*, 108a (dissenting from denial of rehearing en banc); see *id.* at 113a-119a (canvassing historical sources).

28

This Court's 1953 opinion in *Reynolds* traced the history of the privilege in the United States to, among other notable roots, the treason trial of Aaron Burr. 345 U.S. at 6-9 & n.18. By 1978, when FISA was enacted, "it [wa]s quite clear that the privilege to protect state secrets must head the list" of "the various privileges recognized in our courts." *Halkin* v. *Helms*, 598 F.2d 1, 7 (D.C. Cir. 1978). Insofar as the privilege has been recognized as an element—indeed, an essential element—of the common law, this Court has long employed a "presumption favoring retention" of such federal common law. *United States* v. *Texas*, 507 U.S. 529, 534 (1993).

The privilege, moreover, is firmly rooted in the Constitution and is critical to the Executive Branch's ability to fulfill its constitutional duties. "The authority to protect [national-security] information falls on the President as head of the Executive Branch and as Commander in Chief." *Department of the Navy* v. *Egan*, 484 U.S. 518, 527 (1988) (citing *Totten* v. *United States*, 92 U.S. 105, 106 (1876)). "The President, both as Commander-in-Chief and as the Nation's organ for foreign affairs, has available intelligence services whose reports are not and ought not to be published to the world." *Chicago & S. Air Lines, Inc.* v. *Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948). Executive privileges, including the state-secrets privilege, that "relate[] to the effective discharge of a President's powers" are thus "constitutionally based." *United States* v. *Nixon*, 418 U.S. 683, 710-711 (1974); cf. *Franchise Tax Bd.* v. *Hyatt*, 139 S. Ct. 1485, 1498-1499 (2019) (noting that the "executive privilege" is one of the "constitutional doctrines" "implicit in [the Constitution's] structure and supported by historical practice").

29

At the very least, the Court should require a much clearer statement from Congress than Section 1806(f) expresses before it construes a statute to displace the longstanding and constitutionally based state-secrets privilege. See *Public Citizen* v. *United States Dep't of Justice*, 491 U.S. 440, 466 (1989). As this Court has explained, "unless Congress *specifically* has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs." *Egan*, 484 U.S. at 530 (emphasis added). Similarly, as Judge Bumatay observed, "[w]hen [this] Court confronts a legislative enactment implicating constitutional concerns—federalism or separation of powers—it has commonly required a clear statement from Congress before plowing ahead * * * out of a due respect for those constitutional concerns." App., *infra*, 110a (dissenting from denial of rehearing en banc). The state-secrets privilege "deserves the same respect." *Ibid.*

For the reasons described above, the best reading of Section 1806(f) is that it has no application to this case and does not displace the government's ability to invoke the state-secrets privilege to protect the national security. At a minimum, there exists no clear statement in Section 1806(f), or anywhere else in FISA, that Congress intended to bring about such a startling change in the Executive's authority to protect national-security information from compelled disclosure in litigation. The court of appeals thus erred in "discovering abrogation of the state secrets privilege more than 40 years after FISA's enactment" and "disrupt[ing] the balance of powers among Congress, the Executive, and the Judiciary." App., *infra*, 110a (Bumatay, J., dissenting from denial of rehearing en banc).

30

### B. The Court Of Appeals' Decision Warrants Further Review

1. The court of appeals' holding that Section 1806(f) displaces the state-secrets privilege, and its transformation of Section 1806(f)'s protections for the government's use of electronic surveillance into an avenue for facilitating claims *against* the government, raise exceptionally important questions for this Court's review. As the ten judges dissenting from denial of rehearing en banc recognized, the panel's holding "seriously degrades the Executive's ability to protect our Nation's secrets" in this and future cases. App., *infra*, 134a (Bumatay, J., dissenting from denial of rehearing en banc). It creates the dangerous prospect that, "[m]oving forward, litigants can dodge the state secrets privilege simply by invoking 'electronic surveillance' somewhere within the Ninth Circuit." *Id.* at 111a. It accordingly presents a serious risk of depriving the government of a vital tool "to prevent the disclosure of state secrets." *Ibid.*; see *Tenet* v. *Doe*, 544 U.S. 1, 11 (2005) ("Forcing the Government to litigate these claims would also make it vulnerable to 'graymail,' *i.e.*, individual lawsuits brought to induce the CIA to settle a case * * * out of fear that any effort to litigate the action would reveal classified information that may undermine ongoing covert operations."). And, in so doing, it "not only upset[s] the balance of power among co-equal branches of government, but * * * do[es] damage to a right inherent in the constitutional design and acknowledged since our Nation's founding." App., *infra*, 134a (Bumatay, J., dissenting from denial of rehearing en banc).

Litigants have already seized on the panel's opinion in an attempt to prevent the government from invoking the state-secrets privilege over sensitive national-

31

security information.   See, *e.g.*, Appellants' Opening Br., *Jewel* v. *National Sec. Agency*, No. 19-16066 (9th Cir.) (filed Oct. 7, 2019).   Under the panel's opinion, such litigants need not establish that the government failed to satisfy the procedural requirements for assertion of the state-secrets privilege, nor challenge the government's assertion that further litigation would present a serious risk of harm to the national security.   Rather, it is, perversely, the government's assertion of the state-secrets privilege to *exclude* such evidence from further litigation against an aggrieved person that simultaneously serves to displace the privilege.   That situation is untenable.

In their concurrence in denial of rehearing en banc, two members of the panel attempted to downplay the significance of their decision, describing it as overriding "only the *dismissal remedy* that sometimes follows the successful invocation of the state secrets evidentiary privilege."   See App., *infra*, 101a (Gould & Berzon, JJ., concurring in denial of rehearing en banc).   But the court of appeals' alternative to dismissal was for a district court to resolve the merits of a case like this one *on the basis of the privileged evidence*.   See *id.* 92a-93a (panel opinion) (instructing that, to the extent plaintiffs are "aggrieved persons," the district court must "review any 'materials relating to the surveillance as may be necessary,' including the evidence over which the Attorney General asserted the state secrets privilege") (citation omitted).   That is not how the state-secrets privilege, or any other privilege, works.   See *General Dynamics Corp.* v. *United States*, 563 U.S. 478, 485 (2011) ("The privileged evidence is excluded.").   The panel was therefore right in its decision to describe

its holding as displacing both "the state secrets privilege *and* its dismissal remedy." App., *infra*, 64a (emphasis added). Such a momentous holding deserves this Court's review.

2. The interlocutory posture of this case provides no basis for deferring this Court's review. The Court frequently grants review of interlocutory decisions where the petition presents an "important and clear-cut issue of law" that "would otherwise qualify as a basis for certiorari" and "is fundamental to the further conduct of the case." Stephen M. Shapiro et al., *Supreme Court Practice* § 4.18, at 283 (10th ed. 2013); see, *e.g.*, *Facebook, Inc.* v. *Duguid*, No. 19-511 (cert. granted, July 9, 2020); *FNU Tanzin* v. *Tanvir*, 140 S. Ct. 550 (2019); *Trump* v. *Hawaii*, 138 S. Ct. 2392 (2018); *Nielsen* v. *Preap*, 138 S. Ct. 1279 (2018); *Burwell* v. *Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 412 n.4 (2013); *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338 (2011). So it is here.

Indeed, interlocutory review is particularly warranted given the potential for harm to the national security posed by further proceedings in this case and others pending in lower courts. Any disclosure of state secrets is "play[ing] with fire." *Sterling* v. *Tenet*, 416 F.3d 338, 344 (4th Cir. 2005), cert. denied, 546 U.S. 1093 (2006). And any disclosure "chance[s] further disclosure—inadvertent, mistaken, or even intentional—that would defeat the very purpose for which the privilege exists." *Ibid.* The court's inquiry itself, including any requests for additional information, could be revealing of the nature of the information the government provided. Even if any such questioning or requests for additional materials were conducted *in camera* and *ex parte*, the outcome of the proceedings—*e.g.*, whether or

33

not relief is granted to any particular plaintiff and for what reason—would tend to disclose some information about the state secrets the government seeks to protect. Cf. *Clapper*, 568 U.S. at 412 n.4 (noting that disposition of matters *in camera* could reveal sensitive national-security information). Such disclosure of state secrets and any concomitant damage to the national security would be irreparable.

Moreover, even if the *in camera* review proceeds without further disclosure, adjudication of the merits on the basis of state secrets still presents serious potential consequences for the government and the national security. In some cases, for example, proceeding on the basis of state-secrets evidence would risk breaking the federal government's promises to foreign governments that have shared information on the condition that it not be used in any court proceeding. See Exec. Order No. 13,526, § 1.1(d), 3 C.F.R. 298 (2009 Comp.) ("The unauthorized disclosure of foreign government information is presumed to cause damage to the national security."); *id.* § 6.1(s), 3 C.F.R. 323 (defining "[f]oreign government information" to include information provided by a foreign government "with the expectation that the information, the source of the information, or both, are to be held in confidence").

Particularly in light of "the importance of the issue and the novel view" adopted by the Ninth Circuit, *Clapper*, 568 U.S. at 408, this Court's review is warranted.

34

**CONCLUSION**

The petition for a writ of certiorari should be granted.

Respectfully submitted.

JEFFREY B. WALL
  *Acting Solicitor General*
JEFFREY BOSSERT CLARK
  *Acting Assistant Attorney
  General*
EDWIN S. KNEEDLER
  *Deputy Solicitor General*
SOPAN JOSHI
  *Senior Counsel to the
  Assistant Attorney General*
JONATHAN Y. ELLIS
  *Assistant to the Solicitor
  General*
SHARON SWINGLE
JOSEPH F. BUSA
  *Attorneys*

DECEMBER 2020